**RAINES FELDMAN LITTRELL LLP**
Robert S. Marticello, State Bar No. 244256
*rmarticello@raineslaw.com*
Michael L. Simon, State Bar No. 300822
*msimon@raineslaw.com*
3200 Park Center Drive, Suite 250
Costa Mesa, CA 92626
Telephone: (310) 440-4100
Facsimile: (310) 499-4877

Proposed Counsel for The Original Mowbray's Tree
Service, Inc., the Debtor and Debtor-In-Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re: | Case No: 8:24-bk-12674-TA |
| THE ORIGINAL MOWBRAY'S TREE SERVICE, INC., | Chapter 11 |
| Debtor and Debtor-in-Possession. | **DEBTOR'S EMERGENCY MOTION OF DEBTOR FOR ENTRY OF ORDER AUTHORIZING PAYMENT OF CERTAIN PRE-PETITION EMPLOYEE-RELATED CLAIMS AND GRANTING RELATED RELIEF; AND MEMORANDUM OF POINTS AND AUTHORITIES** |
| | **[Declaration of Ruben Sainos Filed Concurrently Herewith]** |
| | **[Hearing to be Set]** |

**TO THE HONORABLE THEODOR C. ALBERT, UNITED STATES BANKRUPTCY**

**JUDGE:**

The Original Mowbray's Tree Service, Inc., the debtor and debtor-in-possession in the above-captioned case (the "**Debtor**"), hereby files this *Emergency Motion of Debtor For Entry of Order Authorizing Payment of Certain Pre-Petition Employee-Related Claims and Granting Related Relief* (the "**Motion**"). In support of the Motion, the Debtor submits the following

1

EMERGENCY MOTION FOR ORDER REGARDING EMPLOYEE OBLIGATIONS

10382523.2

memorandum of points and authorities and the concurrently filed *Declaration of Ruben Sainos in Support of Chapter 11 Petition and First Day Pleadings* ("**Sainos Declaration**").

## I.    <u>INTRODUCTION</u>[1]

The Debtor employs nearly 200 individuals who, each day, assist the Debtor with providing critical services to its customers.  This includes the emergency services to communities that Mowbray's helps in response to fires, hurricanes, and other natural disasters.  By this Motion, the Debtor seeks authority to pay pre-petition payroll and honor various obligations to employees in the ordinary course.  The Debtor's employees are essential to the success of the Debtor's business; without them, the Debtor's operations would come to a halt.  The continued uninterrupted operation of the Debtor's business it critical to maximizing value for the estate.  Moreover, the Debtor's employees possess the specialized skills required for the mass vegetation management services the Debtor provides.  The Debtor must maintain a uniquely skilled workforce, whose knowledge base is critical to the Debtor's on-going operations and the success of the Chapter 11 Case.

The Debtor seeks interim and final authority to (i) pay, in its discretion, all pre-petition amounts required under or related to the Debtor's pre-petition obligations to employees; (ii) continue its employee wage and benefits programs (except as otherwise provided herein), both as such were in effect as of the date hereof and as may be modified, amended, or supplemented from time to time in the ordinary course of the Debtor's business; and (iii) honor and pay any related Employee Program Administrative Obligations (as defined below). The Debtor is not seeking to pay any employee in excess of the maximum priority amount of $15,150 per individual.  No insider will be paid absent compliance with the Local Bankruptcy Rules.

In connection with the relief requested herein, the Debtor requests that the Court authorize and direct all applicable banks to receive, process, honor, and pay all checks issued

---

[1]    Capitalized terms used but not defined herein have the meanings given in the Sainos Declaration or below.

EMERGENCY MOTION FOR ORDER REGARDING EMPLOYEE OBLIGATIONS

10382523.2

or to be issued, and electronic funds transfers requested or to be requested, relating to the prepetition obligations to employees authorized to be paid by this Motion.

Because the Debtor cannot operate without its employees, it is critical that the Debtor obtain emergency authorization for the relief requested herein. Accordingly, and as further detailed herein, the Debtor respectfully requests that the Court grant the Motion.

## II.    BACKGROUND

### A.    General Background

On the date hereof (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned chapter 11 case (the "**Chapter 11 Case**" or "**Case**"). The Debtor is operating as the debtor in possession pursuant to §§1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in this Case and no official committees have been appointed or designated.

A more fulsome discussion of the Debtor's operations, structure, and liabilities, and the events leading to the commencement of this Case are set forth in the Sainos Declaration, which is incorporated herein by reference. The following is a shorter version of the discussion in the Sainos Declaration.

Established in 1972 by Gloria and John Mowbray (the "**Founders**"), Mowbray's has been a cornerstone in California for providing vegetation management services for over 50 years. Mowbray's began as a modest venture and has grown into a resilient company, dedicated to safeguarding communities and the environment. Mowbray's continues to be a family owned and operated business, is a member of WMBE (Women and Minority Business Enterprise), and is committed to providing its client-partners with the safest and most efficient solution to their vegetation management needs.

John Mowbray suffered a catastrophic brain injury on the job in 1993, leaving him incapacitated. Gloria Mowbray stepped up to manage the business while also caring for John and raising four children on her own. Gloria Mowbray passed away in April 2021. Gloria

Mowbray was the sole shareholder of the Debtor from 1993 until her passing, at which time Robin Mowbray, her daughter, became the sole shareholder of the Debtor.

The services provided by the Debtor include, without limitation, manual and mechanical clearing, integrated vegetation management, storm and emergency, right-of-way maintenance, and high-hazard tree removal and crane services (collectively, "**Vegetation Management Services**").  Tree-trimming around power lines, clearing vegetation to prevent forest fires, removal of debris and charred remains after major wildfires in California, and assisting with damage remediation in response to hurricanes—these are the types of important services that the Debtor provides to the communities in which it serves.  Historically, utility companies have been the Debtor's primary clients, including California's largest energy utility, PG&E as well as Southern California Edison.  The Debtor also provides services to governmental agencies and cooperatives.

The Debtor is based in California and provides Vegetation Management Services throughout the state.  The Debtor also provides services and has an equipment yard in Ft. White, Florida.  The Debtor's work outside of California has recently expanded in magnitude and scope due to the disaster relief efforts in response to Tropical Storm Helene and Hurricane Milton.  The Debtor's services in Florida have increased and the Debtor has recently begun providing services in North Carolina as well.  The Debtor has mobilized several trucks and crews for FEMA in both North Carolina and Florida.

The Debtor is currently owned by Robin Mowbray, the youngest daughter of the Founders.  Since 2021, Ms. Mowbray has been the Chairwoman of the Debtor's Board.  Richard Mowbray (grandson of the Founders) has been the Debtor's Chief Executive Officer since 2020.  Ruben Sainos has served as the Debtor's CFO for approximately a year.  Prior to the Petition Date, the Debtor retained Brian Weiss of Force 10 Partners as its Chief Restructuring Officer ("**CRO**") to lead the Debtor through its formal restructuring process, including this Case.

EMERGENCY MOTION FOR ORDER REGARDING EMPLOYEE OBLIGATIONS
10382523.2

**B.**    **The Debtor's Employees and Prepetition Employee Obligations**

The Debtor employs nearly 200 individuals (the "**Employees**"), all of whom are employed on a full-time basis.  Approximately 14% of the Debtor's Employees are salaried, while the remainder are paid hourly.  The Debtor's workforce includes corporate personnel, area managers, general foremen, foremen, trimmers, groundmen, journeymen, logistics and fleet specialists, equipment operators, mechanics, arborists and forestry experts as well as office personnel who oversee or perform regular administrations tasks for the company, such as human resources, payroll, IT, accounting, billing, contracts, and safety and management.

Approximately 106 (or 61%) of the Employees (collectively, the "**Represented Employees**") are represented by either Local Union 47 of the International Brotherhood of Electrical Workers, AFL-CIO ("**Union 47**"), or Local Union 1245 of the International Brotherhood of Electrical Workers, AFL-CIO ("**Union 1245**, " and together with Union 47, the "**Unions**").  The Unions are each subject to a collective bargaining agreement entered into as of June 1, 2022, and expiring on September 30, 2027 (each a "**CBA**", and together, the "**CBAs**").[2]  The remaining Employees are not represented.  Many of the Debtor's Employees are certified arborists and highly trained professionals experienced with equipment operations and mitigating vegetation and tree removal risks.

In addition to the Employees, the Debtor regularly utilizes the services of certain independent contractors or temporary personnel (collectively, the "**Independent Contractors**" and together with the Employees, the "**Personnel**").  The Independent Contractors provide services under contract with the Debtor related to logistics, tree trimming, and other services to fulfill various ordinary course operational needs or for special projects.

The Personnel perform a wide variety of functions mission-critical to the preservation of value and the administration of the Debtor's estate.  In many instances, the Personnel include highly skilled professionals and workers who are intimately familiar with the Debtor's

---

[2]    The Unions represent Employees of the Debtor regularly employed in California performing line clearance tree trimming and vegetation control on certain property located in southern California (Union 47) or northern California (Union 1245), and in each case excluding office clerical employees, guards and supervisors.

EMERGENCY MOTION FOR ORDER REGARDING EMPLOYEE OBLIGATIONS

10382523.2

business, processes, and systems.  The Personnel cannot easily be replaced.  The skills and experience of the Personnel are essential to the continuity and quality of the services the Debtor provides and the success of the Debtor's ongoing operations.  Without the continued, uninterrupted services of the Personnel, the Debtor's business operations may be halted immediately and its ability to provide services to the communities it serves will be materially impaired.

The Personnel rely on their compensation and benefits to pay their daily living expenses.

These workers could be irreparably harmed if the Debtor is not permitted to continue paying compensation, including (as applicable) the pre-petition Employee Obligations (defined below), and providing health and other benefits during this Chapter 11 Case. Further, any interruption in payment could jeopardize the Personnel's continued performance and loyalty to the Debtor.  Consequently, the Debtor respectfully submits that the relief requested herein is necessary and appropriate under the facts and circumstances of this Chapter 11 Case.

In light of the nature of its business, the success of this Chapter 11 Case depends on the Debtor's retention of its Personnel.  If the Debtor cannot assure its Personnel that pre-petition obligations will be promptly paid and that the Debtor's benefits programs will continue, the Personnel may unjustly experience significant personal hardship and seek other employment.  The Debtor has always been appreciative of the quality of its Personnel, and these skilled professionals are even more essential to the Debtor's operations during this Chapter 11 Case.

C.    **Employee Obligations**

1.    **Wages**

All Employees are paid wages or salaries (collectively, the "**Wages and Salaries**") in arrears every Friday for work provided during the one-week period ending the prior Friday. The average weekly payroll totals approximately $320,000 with withholding and other obligations.  The weekly payroll amount is drawn from the Debtor's Payroll Account on

6

Wednesday by the Debtor's payroll administrator Paycom Software, Inc. aka Paycom (the **"Payroll Administrator"**)**.**

The Debtor's last regular payroll date prior to the Petition Date was October 18, 2024 (for work performed during the one-week period ending October 12, 2024, and the Debtor's next payroll is scheduled for October 25, 2024.  As of the Petition Date, the Debtor estimates it owes approximately $320,000 on account of accrued but unpaid Wages and Salaries prior to the Petition Date, all of which will become due and owing within the first 21 days of this case.  The Debtor believes that no Employee is owed more than $15,150.  In the event an Employee(s) is owed in excess of the $15,150 statutory cap for unpaid Wages and Salaries, the Debtor is not seeking authority to pay such excess amount for unpaid Wages and Salaries at this time.  The Debtor requests authority to pay Wages and Salaries in the ordinary course and consistent with past practices, and to be authorized, but not directed, to pay any unpaid Wages and Salaries to its Employees accruing after the Petition Date in the ordinary course of business.

The Payroll Administrator processes payroll for the Debtor, and the Debtor is charged approximately $2,200.00 per month for such payroll (paid weekly) administration and related services.  The Debtor believe $550.00 is owed to the Payroll Administrator for prepetition services.  By this Motion, the Debtor requests that it be authorized, but not directed, to continue to honor its obligations the Payroll Administrator in the ordinary course of business in order to ensure that Employee wages are timely paid.

## 2. PTO

The Debtor provide Employees with vacation time, sick leave, and certain other paid time off programs (the **"PTO Programs"**).  In general, such time accrues at rates varying with the Employee's length of employment and title, up to certain caps (not exceeding 80 hours of vacation time for Employees and 40 hours of paid sick leave),[3] and prorated based on hiring date if applicable.  An Employee (other than a Represented Employee) may not

---

[3]  Less than 5 Employees that have been employed by the Company for over ten years may accrue up to 180 hours.

EMERGENCY MOTION FOR ORDER REGARDING EMPLOYEE OBLIGATIONS
10382523.2

accrue more vacation days than 1.5 times the Employee's annual accrual rate (unless otherwise required by applicable state or local law), which rolls over each year.  Sick days do not roll over.  A Represented Employee's PTO Benefits are in accordance with the terms of the applicable CBA, which provide that vacation days are unpaid and do not carry over each year.

To ensure adequate staffing for projects, other than sick leave, pre-approval from a supervisor is required for Employees to use their PTO.  Employees may not elect to receive payment in lieu of any such accrued sick days or vacation time, other than Represented Employees who may elect to receive payment of any unused vacation time at their anniversary date.  In accordance with applicable law, Employees leaving employment for any reason are entitled to payment for accrued but unused vacation time.  Continuing to offer these programs is necessary for the Debtor to retain Employees and maintain uninterrupted operations for the benefit of all stakeholders.

Because time under the PTO Programs is continually accruing and being used by Employees, it is difficult to precisely quantify the cost of such accrued time as of any specific date.  However, the Debtor estimates that, as of the Petition Date, the value of such accrued time is approximately $57,000[4] for about 100 represented Employees and approximately $97,000 for 72 non-represented Employees.  Although some Employees have accrued time with a value exceeding $15,150, the Debtor does not expect such amounts to become payable in the interim period and do not seek authority at this time to make such payments.  The Debtor requests that it be authorized, but not directed, to continue to honor the PTO Programs going forward in the ordinary course of business.

**D.    Independent Contractor Obligations**

The Debtor makes payments directly to its Independent Contractors through its accounts payable system under various agreements.  The Independent Contractors provide important services for the Debtor and are needed to remain in place to minimize disruption to

---

[4] This amount is small because represented Employees do not earn their vacation until their anniversary date, and they have the option of cashing out.

EMERGENCY MOTION FOR ORDER REGARDING EMPLOYEE OBLIGATIONS
10382523.2

the Debtor's operations.  The Debtor's Independent Contractors provide vegetation

management services for special projects and IT, janitorial, and security services.  As of the

Petition Date, the Debtor estimates that Independent Contractors are owed approximately

$39,000 in the aggregate on account of pre-petition services (the "**Independent Contractor**

**Obligations**").  The Debtor seeks authority, but not direction, to pay all unpaid Independent

Contractor Obligations in the ordinary course and consistent with past practices, and to

continue to make payments on these obligations in the ordinary course of business on a post-

petition basis.

### E.    Benefit Plans

Eligible Employees of the Debtor may participate in certain medical, dental and

vision plans, workers' compensation insurance, life insurance, disability insurance, retirement

plans, and other benefits which described below (collectively, the "**Employee Benefit**

**Plans**").[5]  As discussed below, the Employee Benefit Plans are provided through or are

administered by third-parties collectively for eligible personnel of the Debtor and its

subsidiary PTS.

### 1.    Medical/Dental/Vision Plans

The Debtor maintains a choice of general health benefit plans administered by Kaiser

Permanente and Blue Shield (the "**Health Plans**").  The Health Plans are partly funded

through monthly premiums deducted from the paychecks of participating Employees and

partly by monthly premiums paid by the Debtor.

The Employees are also offered dental plans with MetLife (collectively, the "**Dental**

**Plans**") and a vision plan with VSP or EyeMed (collectively, the "**Vision Plans**").  The

Dental Plans and Vision Plans are partly funded through monthly premiums deducted from

the paychecks of participating Employees and partly by monthly premiums paid by the

Debtor.

---

[5]    The descriptions of the Debtor's benefit programs herein are provided as a summary only and are
qualified in all respects by the actual terms of such programs.  Nothing contained herein shall have the effect of
modifying any terms of such programs or any party's rights or obligations thereunder.

EMERGENCY MOTION FOR ORDER REGARDING EMPLOYEE OBLIGATIONS

10382523.2

The Health Plans, Dental Plans and Vision Plans are administered by Acrisure, aka Leo Rodriguez Insurance Agency ("**LRIA**").  The Debtor incurs an average monthly cost of approximately $75,000.00 on account of the Health Plans.  As of the Petition Date, the Debtor believes that approximately $75,000.00 has accrued and is owing for monthly premiums on the Health Plans, Dental Plans and Vision Plans.  By this Motion, the Debtor requests that it be authorized, but not directed, to (a) continue to provide the Health Plans, the Dental Plans and the Vision Plans for its Employees in the ordinary course of business, (b) continue to honor obligations under such benefit programs, including any premiums and administrative fees and (c) pay all such amounts owed under the Health Plans and the Dental Plans to the extent that they remain unpaid on the Petition Date.

### 2.    Personal Insurance Programs

The Debtor offers life and long-term disability insurance for non-Represented Employees (the "**Basic Insurance**").  In addition, all Employees are offered various voluntary life insurance, dependent life insurance, and certain grandfathered whole life insurance coverage, as well as accident, illness, and short-term disability coverage (the "**Voluntary Insurance**" and together with the Basic Insurance, the "**Personal Insurance Plans**"), which are wholly funded by participating Employees.  On average, the Debtor incurs monthly premiums or other costs of approximately $1,300.00 on account of the Basic Insurance.  As of the Petition Date, the Debtor believes that approximately $1,300.00 has accrued and is owing for monthly premiums in connection with the Personal Insurance Plans. By this Motion, the Debtor seeks authority to pay any and all prepetition amounts owed on account of the Personal Insurance Plans and to continue its prepetition practices with respect to such benefits.

### 3.    Workers Compensation

In accordance with applicable law, the Debtor maintains workers' compensation insurance programs to provide Employees with coverage for claims arising from or related to their employment with the Debtor and to satisfy the Debtor's obligations arising under or related to these programs (collectively, the "**Workers' Compensation Program**").  The

10

Workers' Compensation Program covers all Employees and coverage is provided through a workers' compensation insurance policy with Midwestern Insurance Alliance and managed by LRIA that is in effect through March 31, 2025.  This policy covers the Debtor with an annual premium in the estimated amount of $1.9 million, which is payable in monthly installments and has been paid through September 31, 2024.[6]  The monthly installment is approximately $160,000 based on a rate of $9.85 per 100 Employees paid in wages.  The next payment of approximately $160,000.00 is due on November 15, 2024.  It is critical that the Debtor be permitted to continue its Workers' Compensation Program and to pay or finance its premiums for such coverage.  The failure to maintain workers' compensation insurance could result in administrative or legal proceedings against the Debtor and its officers and directors, and the inability of the Debtor to continue as a going concern.  By this Motion, the Debtor requests authority to maintain and continue its prepetition practices with respect to the Workers' Compensation Programs, including, among other things, allowing workers' compensation claimants, to the extent they hold valid claims, to proceed with their claims under the Workers' Compensation Program.

### 4. <u>Retirement Plans</u>

Employees are also eligible to enroll in a 401(k) plan with John Hancock (the "**Retirement Plan**").  Employees may contribute to the Retirement Plan each year through salary deferrals up to the IRS limit.  The Debtor matches up to 3% of an Employee's contribution to its Retirement Plan.  The average contribution payment made this year by the Debtor on account of the Retirement Plan is approximately $600 per payroll.  Employees are always 100% vested in their contributions and cannot forfeit the contributions.  By this Motion, the Debtor requests that it be authorized, but not directed, to continue to honor its obligations with respect to the Retirement Plan in the ordinary course of business.

---

[6]   Further information regarding the Debtor's insurance arrangements and requested related relief is set forth in the *Motion of the Debtor for Entry of Interim and Final Orders Authorizing Continuation of Insurance Coverage and Granting Related Relief*, filed contemporaneously herewith.

EMERGENCY MOTION FOR ORDER REGARDING EMPLOYEE OBLIGATIONS
10382523.2

In addition, the CBA requires the Debtor to make certain contributions to the IBEW-District Ten-NECA Individual Equity Retirement Plan Agreement (the "**IBEW Plan**"), a qualified defined benefit multiemployer plan.  The Debtor's contributions average approximately $300,000 per month.  As of the Petition Date, the Debtor owed approximately $275,000 with respect to such obligations for the month of October, which will come due after the Petition Date.  The Debtor seeks authority, but not direction, to continue to honor its contribution obligations with respect to the IBEW Plan in the ordinary course of *business*.

### 5.    <u>Bereavement Leave</u>

Full Time Employees are eligible to receive up to five (1) day with pay to handle family affairs in the event of the death of his or her immediate family member ("**Bereavement Leave**").  Full Time Employees are not paid for unused bereavement leave upon termination of employment, and the Debtor therefore does not make any cash payments on account of the Bereavement Leave policy.  Part Time Employees are not eligible for paid time off for Bereavement Leave.  The Debtor requests authorization to continue the Bereavement Leave policy.

### 6.    <u>Other Time-Off Policies</u>

The Debtor also maintains policies for requests by Full Time Employees for time off work, whether paid or unpaid, as the result of, among other things, voting time, jury duty, appearance in a court proceeding on behalf of the Debtor, military obligations, inclement weather, family and medical leave, and personal leave.  In addition, the Debtor authorizes leaves of absence in compliance with applicable federal and state laws.  For those requests, such as jury and witness duty, that require the Debtor to make cash payments in connection with these time-off policies, the Debtor seeks authorization to continue to make such cash payments in the ordinary course of business in accordance with these policies.

### F.    <u>Business Expenses</u>

In the course of and in furtherance of their employment duties, Employees may incur expenses on behalf of the Debtor, such as travel, meal and other business expenses (collectively, the "**Business Expenses**").  To the extent not charged to one of the Debtor's

EMERGENCY MOTION FOR ORDER REGARDING EMPLOYEE OBLIGATIONS
10382523.2

business Credit Cards, the Business Expenses are generally paid directly by the Employee or charged to a personal credit card.  Employees submit expense reports detailing the Business Expenses incurred, and the expense reports are channeled through a series of reviews. Reimbursement is contingent on the Debtor's determination that the charges are for legitimate, reimbursable business expenses.

Although the Debtor encourages the prompt submission of expense reports for Business Expenses, the Debtor anticipates that some Employees will not yet have submitted their expense reports for accrued and unpaid Business Expenses as of the Petition Date. Each month, the Debtor reimburses approximately $30,000 on average for Business Expenses, and the Debtor estimates that approximately $30,000 in Business Expenses have been incurred, but remain unpaid as of the Petition Date.  Such charges have either been incurred by Employees using personal funds, personal credit cards, or corporate credit cards for which the Employees are liable.  Therefore, should the Debtor not be permitted to pay the Business Expenses, the individual Employees will be liable for the charges incurred and this may adversely affect the Employees' morale and jeopardize the Debtor's reorganization efforts.  The Debtor seeks authority to continue its prepetition practices with respect to the Business Expenses, and to pay all pre-petition amounts outstanding in connection therewith, and post-petition expenses incurred in the ordinary course of its business, to the extent that such approval is necessary.

## G.    Withholding Obligations

As an employer, the Debtor is required by law to withhold and remit federal, state and local taxes from Wages and Salaries and to pay social security taxes, Medicare taxes, state and federal unemployment insurance (collectively, the "**Payroll Taxes**").  The Debtor, in accordance with the Internal Revenue Code and applicable state law, pays an average of $47,000 per pay period, or $188,000 each month, on account of such Payroll Taxes.  The amount of Payroll Taxes are paid by the Debtor to the Payroll Administrator each pay period.

In addition to applicable Payroll Taxes, in the ordinary course the Debtor withholds certain amounts such as contributions to savings, retirement or pension plans, union dues,

13

garnishments, insurance contributions and other amounts as applicable and are required to transmit such amounts to third parties (together with Payroll Taxes, the "**Withholding Obligations**").  The Debtor believes that such withheld funds, to the extent that they remain in the Debtor's possession, constitute moneys held in trust and therefore, are not property of the Debtor's estate.  Thus, whether or not such funds are pre-petition amounts, the Debtor believes that directing such funds to the appropriate parties does not require Court approval. Nevertheless, out of an abundance of caution, the Debtor seeks authority to pay any outstanding amounts owed for Withholding Obligations, in the ordinary course of business, including those incurred prior to the Petition Date.

## III.    <u>EVENTS LEADING TO THE BANKRUPTCY FILING</u>

By 2021, in response to California's unprecedented wildfire challenges, the Debtor expanded significantly, employing over 1,300 professionals and managing an additional 500 subcontractors.  This period marked the Debtor's peak in operational capacity and industry presence.  However, 2022 brought significant challenges.  The bankruptcy of PG&E, a major client at that time, led to delayed payments to the Debtor.  In addition, PG&E used the bankruptcy to renegotiate the Debtor's contract to a lower price causing severe financial strain. For these reasons, the Debtor made the difficult decision to terminate its contract with PG&E. (*See* Sainos Decl. at ¶ 13.)

Towards the end of 2023, another blow came when the Debtor was underbid for Southern California Edison's ("**SCE**") vegetation management contract, resulting in a substantial loss of revenue for 2024.  The business of SCE has become so competitive that winning SCE's contracts required pricing that was not profitable for the Debtor.  As such, the silver lining of not winning SCE's contract may be a net gain to the Debtor's bottom line.  The loss of PG&E and SCE left the Debtor grappling with managing the cost of the payroll and excess equipment necessary for servicing the large contracts of these former clients.  (*See* Sainos Decl. at ¶ 14.)

As a result of the foregoing, the Debtor experienced a substantial decline in revenue

over the past four years.  The Debtor's gross revenues and net income or loss on such revenues from 2020 to 2024 are set forth in the table below.  The Debtor incurred substantial net losses in 2022 and 2023.  (*See* Sainos Decl. at ¶¶ 38-39.)

| Year | Gross Revenue | Net Income/(Loss) |
|---|---|---|
| 2020 | $471 million | 69.2 million |
| 2021 | $281.9 million | 24.6 million |
| 2022 | $232 million | ($34 million) |
| 2023 | $127 million | ($28.9 million) |
| 2024[7] | $28.7 million | $2.0 million |

In light of the financial difficulties facing the Debtor, the Debtor has undertaken several strategic actions to right-size operations consistent with its reduced revenue, including, among other things: (a) in 2023, hiring Ruben Sainos, a seasoned financial professional with extensive experience in operations and financial distress to stabilize the Debtor's financial health, as CFO; (b) implementing a salary reduction for all non-union personnel; (c) conducting systematic layoffs of hundreds of employees to streamline operations and reduce costs; (d) renegotiating contracts and suspending unnecessary services and expenses; (e) returning or selling leased equipment to reduce liabilities with the support of the Debtor's leasing partners; and (f) negotiating forbearance or other agreements with lenders and lessors. (*See* Sainos Decl. at ¶ 34.)  The beneficial results of these efforts can be seen from the improvement in the Debtor's cash flow.

The Debtor has worked hard with its major creditors to reach consensual arrangements where possible.  This includes the forbearance with PNC discussed above.  The Debtor has, with the consent of leasing companies, sold certain of its leased equipment.  The Debtor previously had more than three times the amount of equipment than it has today.

The Debtor also restructured its management.  Robin Mowbray stepped up from Human Resources to Chairwoman in 2021, Richard Mowbray was promoted to CEO in 2020,

---

[7]    YTD August 31, 2024.

EMERGENCY MOTION FOR ORDER REGARDING EMPLOYEE OBLIGATIONS

10382523.2

and the Debtor retained Ruben Sainos as CFO, to analyze the Debtor's financials and strengthen the Debtor's balance sheet. The Debtor also retained the CRO, Brian Weiss, to assist with its restructuring efforts.

Through all these efforts, the Debtor has made substantial progress downsizing its operations and has markedly improved its cash flow. As reflected in the table above, the Debtor's profitability has improved in 2024 despite the loss of significant revenue.[8] (*See* Sainos Decl. at ¶ 39.) It was possible that, due to consensual arrangements reached or being negotiated by the Debtor with its creditors, the Debtor could avoid bankruptcy (at least at this time). However, Mowbray's is still carrying debt of the much larger company it once was. The extended maturity date for the PNC Loan was looming. Pending litigation has been a drain on resources and would continue to be. Moreover, as discussed in the Sainos Declaration, the Debtor lacks the assets or the liquidity to satisfy the recent Rodriguez Verdict (should it stand), and any attempt to collect a judgment based on the Rodriguez Verdict (while the Debtor pursues a new trial or an appeal) would be severely disruptive to the Debtor's operations. The Debtor could not expose its employees to a loss of jobs or the communities it serves to a loss of services. The Debtor cannot expose its employees to a loss of jobs or the communities it serves to a loss of services, particularly the emergency services Mowbray's provides after natural disasters, such as, wildfires and hurricanes. (*See* Sainos Decl. at ¶ 41.)

The Debtor filed this Case to preserve its operations and nearly 200 jobs, maximize value for the estate and all stakeholders, continue the Debtor's efforts to right size its operations and work towards a more financially stable future, and to address its legitimate obligations in an orderly, fair and equitable manner. (*See* Sainos Decl. at ¶ 42.)

## IV.    THE DEBTOR'S CHAPTER 11 STRATEGY

The Debtor's strategy in this case is simple and straightforward. As discussed above, in response to the loss of significant clients, the Debtor has made significant progress pre-petition

---

[8]    The figures for 2023 and 2024 are preliminary figures, subject to CPA review and revision.

EMERGENCY MOTION FOR ORDER REGARDING EMPLOYEE OBLIGATIONS

10382523.2

downsizing its operations and improving its cash flow.  That process will continue post-petition.  The Debtor intends to develop and propose a plan in short order that reorganizes the PNC Loan, the Debtor's lease obligations, and the Debtor's other debt based on the Debtor's smaller, but stronger, go-forward operations.  To this end, the Debtor will continue to work with its major stakeholders as it did pre-petition to reach consensual arrangements where possible.  The filing of the case also will provide the Debtor with reprieve from the financial drain of pending litigation and prevents collection efforts on a financially crushing verdict pending the Debtor's post-judgment remedies.

## V.     JURISDICTION, VENUE, AND PREDICATES FOR RELIEF

The United States Bankruptcy Court for the Central District of California (the "**Court**") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and may be determined by the Court.

The predicates for the relief requested herein are sections §§ 105(a), 363, 503(b) and 507(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## VI.     REQUESTED RELIEF

By this Motion, pursuant to §§ 105(a), 363, 503(b) and 507(a) of the Bankruptcy Code, the Debtor seeks entry of an order authorizing, but not directing, the Debtor, in its sole discretion, to pay pre-petition obligations to its Personnel (including Wages and Salaries) within the relevant statutory caps, to continue and honor Employee Benefit Plans, Expense Reimbursements, Flexible Spending Program, Bereavement Leave, Independent Contractor Obligations, and related obligations in the ordinary course of business, and satisfy all Withholding Obligations (collectively, the "**Employee Obligations**"), and for related relief.

To enable the requested relief, the Debtor seeks an order authorizing all applicable banks, financial institutions and payroll processors to receive, process, honor and pay any and

EMERGENCY MOTION FOR ORDER REGARDING EMPLOYEE OBLIGATIONS

10382523.2

all checks presented or electronic payment requests made by the Debtor relating to the

Employee Obligations, whether presented or submitted before or after the Petition Date.

The relief requested in this Motion is necessary for the viability of the Debtor's

operations and preservation of the value of the Debtor's assets.  The Debtor submits that the

relief sought herein is consistent with §§ 105(a), 363(b), 503(b), 507(a), and 541(b)(1) of the

Bankruptcy Code

## VII.    BASIS FOR RELIEF REQUESTED

Courts generally acknowledge that it is appropriate to authorize the payment of pre-

petition employee obligations in certain circumstances.  Pursuant to §§ 1107(a) and 1108 of

the Bankruptcy Code, a debtor-in-possessions is authorized to operate its business while

serving as "a fiduciary duty to act in the best interest of the estate as a whole, including its

creditors, equity interest holders and other parties in interest."  *See LaSalle Nat'l Bank v.*

*Perelman*, 82 F. Supp. 2d 279, 292 (D. Del. 2000).  Implicit in the fiduciary duties of any

debtor-in-possession is the obligation "to protect and preserve the estate, including an

operating business's going-concern value."  *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr.

N.D. Tex. 2002).  Courts have noted that there are instances in which a debtor can fulfill this

fiduciary duty "by the preplan satisfaction of a prepetition claim."  *See id*.  The *CoServ* court

specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of

the debtor's fiduciary duty when the payment "is the only means to effect a substantial

enhancement of the estate."  *See id*.

In the instant case, the Debtor is operating as debtor-in-possession consistent with §§

1107(a) and 1108 of the Bankruptcy Code, and payment of the Employee Obligations is

necessary to protect and preserve the Debtor's operations and value for the benefit of the

estate.  Thus, the Court should authorize the relief requested in this Motion.

In addition, certain of the Employee Obligations at issue herein are entitled to priority

under the Bankruptcy Code up to the amount of $15,150 per individual.  *See* 11 U.S.C. §§

507(a)(4), (5).  Priority claims under §§ 507(a)(4) and 507(a)(5) of the Bankruptcy Code are

18

1  entitled to payment in full under a reorganization plan.  *See* 11 U.S.C. § 1129(a)(9)(B)

2  (requiring payment of certain allowed unsecured claims for (a) wages, salaries, or

3  commissions, including sick leave pay earned by an individual and (b) contributions to an

4  employee benefit plan).

5  Consistent with the Debtor's fiduciary duties, this Court may also grant the relief

6  requested herein pursuant to §§ 105(a), 363(b) and 363(c) of the Bankruptcy Code and the

7  "necessity of payment" doctrine.  *See In re CEI Roofing, Inc.*, 315 B.R. 50, 61 (Bankr. N.D.

8  Tex. 2004); *see also In re CoServ, LLC*, 273 B.R. 487, 494 n. 10 (Bankr. N.D. Tex. 2002); *In*

9  *re The Colad Group, Inc.*, 324 B.R. 208, 214 (Bankr. W.D.N.Y. 2005); *see also In re Adams*

10  *Apple, Inc.*, 829 F.2d 1484, 1490 (9th Cir. 1987) (acknowledging the "doctrine of necessity,"

11  and noting that cases have permitted unequal treatment of prepetition debts when necessary for

12  rehabilitation, including specifically within the context of prepetition wages).  Section 105(a)

13  authorizes the bankruptcy court to "issue any order, process, or judgment that is necessary or

14  appropriate to carry out the provisions of [Title 11]."  *See Walls v. Wells Fargo Bank, N.A.*,

15  276 F.3d 502, 506 (9th Cir. 2002).  Section 363(b)(1) of the Bankruptcy Code states in

16  pertinent part that: "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than

17  in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1).  If a

18  debtor's determination to use estate assets represents a reasonable business judgment, the

19  bankruptcy court should approve such use.

20  The business judgment rule is satisfied where "the directors of a corporation acted on

21  an informed basis, in good faith and in the honest belief that the action taken was in the best

22  interests of the company."  *See, e.g., In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y.

23  1992) (*quoting Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *see also F.D.I.C. v.*

24  *Castetter*, 184 F.3d 1040, 1043 (9th Cir. 1999) (the business judgment rule "requires directors

25  to perform their duties in good faith and as an ordinarily prudent person in a like circumstance

26  would"). "Where the debtor articulates a reasonable basis for its business decisions (as distinct

27  from a decision made arbitrarily or capriciously), courts will generally not entertain objections

28  to the debtor's conduct."  *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y.

19

1986).  Courts construing California law have consistently declined to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence, and have upheld a board's decisions as long as such decisions were made in good faith.  *See Scouler & Co., LLC v. Schwartz*, No. 11-CV-06377 NC, 2012 WL 1502762, at *4 (N.D. Cal. Apr. 23, 2012); *see also Berg & Berg Enterprises, LLC v. Boyle*, 178 Cal. App. 4th 1020, 1046 (2009).

The Ninth Circuit has noted that in certain instances pre-petition payments should be authorized regardless of whether they are priority payments under the Bankruptcy Code.  *See In re Adams Apple, Inc.*, 829 F.2d 1484, 1490 (9th Cir. 1987).  In *Adams Apple*, the Ninth Circuit, in rejecting the appellants' argument that the cross-collateralization clause in a financing agreement violated the "fundamental tenet of bankruptcy law that like creditors must be treated alike," noted that the argument was "flawed because the fundamental tenet conflicts with another fundamental tenet – rehabilitation of debtors, which may supersede the policy of equal treatment." *See id.*   The Ninth Circuit further stated that:

> [c]ases have permitted unequal treatment of pre-petition debts when necessary for rehabilitation, in such contexts as (i) pre-petition wages to key employees; (ii) hospital malpractice premiums incurred prior to filing; (iii) debts to providers of unique and irreplaceable supplies; and (iv) peripheral benefits under labor contracts.

*Id.*

Numerous courts within the Ninth Circuit have followed the reasoning of *Adams Apple* in holding that the payment of certain pre-petition claims is not categorically barred when the payments promote the rehabilitation of the debtor.  *See, e.g., In re Pettit Oil Co.*, No. 13-47285, 2015 WL 6684225, at *8 (Bankr. W.D. Wash. Oct. 22, 2015) (*citing In re Adams Apple Inc.* for proposition that it "is permissible to treat prepetition debts unequally when necessary for rehabilitation."); *In re Hines*, 147 F.3d 1185, 1191 (9th Cir. 1998) (applying "essentially a doctrine of necessity" to provide for the payment of the fees of debtor's counsel in chapter 7 cases because without this right the "entire [chapter 7] system would suffer a massive breakdown").  Furthermore, several courts within the Ninth Circuit have granted relief substantially similar to that sought herein. S*ee, e.g., In re Montgomery- Sansome,*

20

*LP*, Case No. 17-30515-HLB (Bankr. N.D. Cal. Sept. 20, 2017) (approving motion for authority to pay, among other things, prepetition claims related to employee wages); *In re LA Steel Servs., Inc.*, Case No. 18-15841-MH (Bankr. C.D. Cal. July 20, 2018) (approving motion to pay certain prepetition employee-related claims); *In re Rdio, Inc.*, Case No. 15-31430 (Bankr. N.D. Cal. Nov. 20, 2015) (same).

Here, the payment of the prepetition Employee Obligations is an exercise of sound business judgment and necessary to facilitate a successful reorganization of the Debtor. The Employees are vital to the continued uninterrupted operation of the Debtor's businesses. The continued operation of the Debtor's business is necessary to provide critical services to the Debtor's customers, generate revenues for the estate, and maximize the value of the Debtor's operations and assets for all stakeholders. Moreover, many of the Employees possess the unique skill and experience needed for the services that the Debtor's provides and could not be easily replaced. Thus, Employees are instrumental to the Debtor's business and the success of this Chapter 11 Case.

Complying with the Employee Obligations in the ordinary course is necessary to avoid undue hardship on the Employees. The Debtor believes that the majority of the Employees rely exclusively on their compensation and, as applicable, the benefits provided under the Employee Wage and Benefits Programs to satisfy their daily living expenses and other basic needs such as access to health, dental, and vision care coverage. Consequently, Employees will be exposed to significant financial difficulties if the Debtor is not permitted to honor the Employee Obligations. Moreover, honoring the prepetition Employee Obligations and continuing the Employee Wage and Benefits Programs will help maintain morale and minimize the adverse effect of the commencement of this Chapter 11 Case on the Debtor's on-going business operations, as well as its relationships with the Unions.

The failure to honor the prepetition Employee Obligations could lead to turnover, attrition, and instability at this critical time in the Chapter 11 Case. This is a risk that is especially consequential due to the highly specialized nature of many of the duties that the Employees perform and the critical nature of the Debtor's vegetation management services it provides to the communities it serves throughout the state of California and in Florida.

EMERGENCY MOTION FOR ORDER REGARDING EMPLOYEE OBLIGATIONS
10382523.2

1   Moreover, in order to strengthen, improve, and, hopefully grow its business for the benefit of

2   all stakeholders, the Debtor needs the assistance of its Employees.  As noted by the court in *In*

3   *re Equalnet Commc'ns Corp.*, 258 B.R. 368 (Bankr. S.D. Tex. 2000), "[t]he need to pay [pre-

4   petition employee wage] claims in an ordinary course of business time frame is simple

5   common sense.  Employees are more likely to stay in place and to refrain from actions which

6   could be detrimental to the case and/or the estate if their pay and benefits remain intact and

7   uninterrupted."  *See id.* at 370.

8        The amounts that the Debtor seek to pay to Employees are entitled to priority status

9   under §§ 507(a)(4) and 507(a)(5) of the Bankruptcy Code and the Debtor will not exceed the

10  maximum priority amount of $15,150 per Employee.  Further, to the extent that the relief

11  herein encompasses the continuation of programs and services for Employees or Independent

12  Contractors after the Petition Date, such obligations constitute administrative expenses in

13  accordance with § 503(b) of the Bankruptcy Code.  Payment and/or honoring of the priority or

14  administrative claims in the ordinary course of business should neither prejudice general

15  unsecured creditors nor materially affect the Debtor's estate because such claims must be paid

16  in full in any event under the Debtor's plan.  Moreover, the Debtor's ability to provide

17  uninterrupted services and ultimately, to preserve and maximize the value of its business as

18  going concerns, is dependent upon the continued service, satisfaction, and loyalty of its

19  Employees.  The Debtor submits, therefore, that its operations, estate and creditors will be

20  adversely affected if the Debtor is unable to pay and/or honor the Employee Obligations.

21       As part of the foregoing relief, the Debtor also seeks authority to pay all Withholding

22  Obligations.  Honoring Withholding Obligations in the ordinary course is appropriate for a

23  number of reasons.  First, the failure to make comply with such obligations may subject the

24  Debtor and the estate to liability.  *See City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 96 (3d

25  Cir. 1994) (state law requiring debtor to withhold city income tax from its employees' wages

26  created trust relationship between debtor and city for payment of withheld taxes); *see also In*

27  *re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (noting the special liabilities for

28  failure to pay trust fund taxes).  Second, the monies payable for amounts held in trust, like the

EMERGENCY MOTION FOR ORDER REGARDING EMPLOYEE OBLIGATIONS
10382523.2

Withholding Obligations, generally are not property of a debtor's estate.  *See Begier v. IRS*, 496 U.S. 53, 59 (1990) (because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not "property of the estate").  Third, the failure to transfer withheld funds could result in hardship to certain Employees or others or could expose Employees to liability.

Payment of Withholding Obligations that constitute "trust fund" taxes will not prejudice general unsecured creditors of the Debtor's estate as the relevant taxing authorities would hold priority claims under § 507(a)(8) of the Bankruptcy Code in respect of such obligations.  Moreover, the monies payable for trust fund taxes, as well as the other funds that are held in trust for the benefit of third parties, such as withheld funds with respect to the Retirement Plan, are not property of the Debtor's estate.  *See Beiger v. IRS*, 496 U.S. 53 (1990).

The Debtor believes that it is an exercise of sound business judgment and necessary to facilitate a successful reorganization to pay the Independent Contractor Obligations.  As stated, the Debtor heavily relies on the Independent Contractors to perform tasks necessary for operations.  This includes vegetation management services for special projects and other services to fulfill various ordinary course operational needs.  If the Debtor fails to pay the Independent Contractors Obligations, such Personnel may refuse to continue to perform services for the Debtor.  Thus, failure to make timely payments on account of the Independent Contractors Obligations could jeopardize the Debtor's ability to continue uninterrupted operations for the benefit of the estate.

The Debtor submits that it is an exercise of sound business judgment and necessary to pay the Payroll Administrator any pre-petition amounts due in the ordinary course in order to facility the timely payment of payroll as requested herein.  In addition, to ensure the relief requested herein is carried out, the Debtor requests that the Court authorize (a) the Payroll Administrator and applicable banks to receive, process, honor, and pay all checks and transfers issued by the Debtor in connection with payment of the claims the Debtor requests authority to pay in this Motion, without regard to whether any check or transfer was issued before or after

23

the Petition Date, (b) the Payroll Administrator and applicable banks to rely on the

representations of the Debtor with respect to whether any check or transfer issued or made by

the Debtor before the Petition Date should be honored pursuant to this Motion; and (c)

authorize the Debtor to issue replacement checks or transfers, to the extent any check or

transfer in relation to the claims the Debtor requests authority to pay in this Motion is

dishonored or rejected by any applicable banks.

For the foregoing reasons, the Debtor requests the Court grant the relief requested

herein.


## VIII.   <u>**LOCAL BANKRUPTCY RULE 2081-1(a)(6) IS SATISFIED**</u>

The Local Bankruptcy Rules (the "**LBR**") provide a roadmap toward the "immediate

payment of claims, often on first day motions, based on the recognition of the critical need to

pay prepetition wage and commission claims to employees so that they continue to work for

the debtor and render services to the debtor to help it continue operations as a going concern

and to reorganize in a Chapter 11 bankruptcy case." *See In re EcoSmart, Inc.,* 2015 WL

9274245, at *4 (Bankr. C.D. Cal. 2015); *see also* LBR 2081-1(a)(6).

The Motion satisfies the requirements of LBR 2081-1(a)(6):

**<u>The Employees are still employed by the Debtors</u>**.  In satisfaction of LBR 2081-

1(a)(6)(A), the Employee Compensation the Debtor proposes to pay pursuant to this Motion is

to Employees who are still employed by the Debtors.

**<u>The proposed payments to Employees are necessary</u>**.  In satisfaction of LBR 2081-

1(a)(6)(B), as discussed above, the timely payment of the Wages and Salaries and the honoring

of Employee Obligations are essential to the uninterrupted operation of the Debtor's business,

which, in turn, is necessary to maximizing the value of the estate and the success of this Case.

**<u>Honoring prepetition Employee programs is beneficial to the Estate</u>**.  For the

reasons outlined above, the Debtor believes that continuing to honor its prepetition programs

for Employees is beneficial to the Estate.  The Employees are vital to the continued

uninterrupted operation of the Debtor's revenue-generating businesses, which is necessary to

EMERGENCY MOTION FOR ORDER REGARDING EMPLOYEE OBLIGATIONS
10382523.2

provide critical services to the Debtor's customers, generate revenues for the estate, and maximize the value of the Debtor's operations for all stakeholders.  Absent the relief herein, the Debtor runs a serious risk of losing Personnel, and the loss of Personnel would be severely detrimental to the Debtor's business, to any prospect of reorganization, and to the Debtor's goal of maximizing a recovery for unsecured creditors.  Accordingly, LBR 2081-1(a)(6)(C) is satisfied.

**The Debtor has strong prospects of reorganization**.  With regard to LBR 2081-1(a)(6)(D), the Debtor's prospect of reorganization are strong and will be enhanced by the continued service and valuable contributions of the Employees.  As discussed herein and in the Sainos Declaration, the Debtor made significant progress downsizing its operations and has markedly improving its cash flow pre-petition.  Those efforts will continue during this Case.  Due to the hard work of the Debtor's management, the Debtor's profitability has improved in 2024 despite the loss of significant revenue.  The Debtor projects generating positive operating cash flow after financing over the next thirteen weeks.  (*See* Sainos Decl. at ¶ 43.)  However, the Debtor cannot achieve these results without is Personnel.  The Personnel are critical to Debtor's operations, the services the Debtor provides, and continuing to generate revenues.  Thus, the relief requested herein will improve the Debtor's prospects of reorganization.

**Insiders will not be paid absent compliance with LBR 2014-1(a)**.  In satisfaction of LBR 2081-1(a)(6)(E), no insider will be paid pursuant the relief sought by this Motion absent compliance with notices of insider compensation requirement set forth in LBR 2014-1(a).

**The Employees' claims are within the limits established by § 507 of the Bankruptcy Code**.  In satisfaction of LBR 2081-1(a)(6)(F), with respect to the amounts to be paid to the Employees, the Debtor seeks authority to: (i) pay and/or honor all prepetition Employee Obligations; and (ii) honor in the ordinary course of business accrued Employee Benefit Obligations and Expense Reimbursements, provided that no Employee shall receive more than $15,150 in value on account of prepetition claims for Employee Compensation.

**The proposed payments will not render the estates administratively insolvent**.  In satisfaction of LBR 2081-1(a)(6)(G), the source of the funds to be used to pay and/or honor the Employee Obligations will be the Debtor's cash.  The amounts requested to be paid by this

1   Motion are contemplated within the proposed Budget attached to the Sainos Declaration.  As

2   demonstrated by the Budget, the Debtor projects generating positive operating cash flow over

3   the next thirteen weeks and to end such thirteen-week period with approximately $4.6 million

4   in cash.  The Debtor believes that its cash is sufficient to pay the Employee Obligations

5   without rendering its estate administratively insolvent.

6

7   **IX.    THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED**

8       Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to

9   avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the

10   petition, grant. . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding

11   property of the estate, including a motion to pay all or part of a claim that arose prior to the

12   filing of the petition . . . ." Fed. R. Bankr. P. 6003(b).  As detailed above and as set forth in the

13   Sainos Declaration, the relief requested in this Motion is necessary to avoid immediate and

14   irreparable harm to the Debtor and its estate.  If the relief requested herein is not obtained

15   during the first twenty-one days of the chapter 11 case it would cause substantial disruption to

16   the Debtor's operations to the detriment of its estate and creditors.  Accordingly, the Debtor

17   submits that Bankruptcy Rule 6003 is satisfied.

18       Similarly, unless the Court orders otherwise, Bankruptcy Rule 6004(a) requires the

19   Debtor to provide 21 days' notice to all creditors and certain other parties in interest of the use

20   of property outside of the ordinary course of business. *See* Fed. R. Bankr. P. 6004(a).

21   Moreover, unless the Court orders otherwise, Bankruptcy Rule 6004(h) automatically stays for

22   14 days any order granting such relief.  *See* Fed. R. Bankr. P. 6004(h).  To the extent

23   applicable, the Debtor submits that, as described above and in the Sainos Declaration, the

24   relief requested in this Motion is necessary to avoid immediate and irreparable harm to the

25   Debtor that would otherwise be caused by a delay in the granting of the relief requested herein.

26   Therefore, to implement the foregoing successfully, the Debtor requests that the Court enter an

27   order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) or

28

EMERGENCY MOTION FOR ORDER REGARDING EMPLOYEE OBLIGATIONS
10382523.2

such notice requirement is waived, and that the Debtor has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## X.      RESERVATION OF RIGHTS

The Debtor hereby reserves any and all rights it may have with respect to the relief requested herein, and nothing contained herein is intended or shall be construed as: (i) an admission as to the validity of any claim against the Debtor, (ii) a waiver of the Debtor's or any party in interest's rights to dispute any claim, or (iii) an approval or assumption or rejection of any Employee Benefits Plans, CBA, agreement, contract, program, policy or lease under § 365 of the Bankruptcy Code.  Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission to the validity of any claim or a waiver of the Debtor's rights to dispute such claim subsequently.  Finally, the relief requested herein shall not oblige the Debtor to accept any services.

EMERGENCY MOTION FOR ORDER REGARDING EMPLOYEE OBLIGATIONS

10382523.2

## XI.  <u>CONCLUSION</u>

WHEREFORE, the Debtor respectfully requests that the Court grant the relief requested herein, and such other and further relief as is just and proper.

DATED:  October 18, 2024          **RAINES FELDMAN LITTRELL LLP**

By:    _____/s/ Robert S. Marticello_____
ROBERT S. MARTICELLO
MICHAEL L. SIMON
*Proposed Counsel for the Debtor and Debtor-In-Possession*

EMERGENCY MOTION FOR ORDER REGARDING EMPLOYEE OBLIGATIONS

10382523.2

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**3200 Park Center Drive, Suite 250, Costa Mesa, CA 92626**

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S EMERGENCY MOTION OF DEBTOR FOR ENTRY OF ORDER AUTHORIZING PAYMENT OF CERTAIN PRE-PETITION EMPLOYEE-RELATED CLAIMS AND GRANTING RELATED RELIEF; AND MEMORANDUM OF POINTS AND AUTHORITIES** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **10/18/2024**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Robert S Marticello**    rmarticello@raineslaw.com, bclark@raineslaw.com;jfisher@raineslaw.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **10/18/2024**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **10/18/2024**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| **10/18/2024** | Ja'Nita Fisher | */s/ Ja'Nita Fisher* |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.