EXHIBIT "A"

1  Kenneth J. Catanzarite (SBN 113750)
   Email: kcatanzarite@catanzarite.com
2  Brandon E. Woodward (SBN 284621)
   Email: bwoodward@catanzarite.com
3  CATANZARITE LAW CORPORATION
   2331 West Lincoln Avenue
4  Anaheim, California 92801
   Telephone: (714) 520-5544
5  Facsimile: (714) 520-0680

6  Attorneys for Plaintiff

7

8                **IN THE SUPERIOR COURT OF CALIFORNIA**

9                **FOR THE COUNTY OF SAN BERNARDINO**

10  RONNIE D. JORDAN, an individual;              Case No. CVISB2201281

11          Plaintiff,                            Assigned for All Purposes to
                                                  Hon. Wilfred J. Schneider, Jr.
12  v.                                            Dept. S32

13  THE ORIGINAL MOWBRAY'S TREE              **FIRST AMENDED VERIFIED**
    SERVICE, INCORPORATED, a California      **COMPLAINT FOR:**
14  corporation; MOWBRAY WATERMAN
    PROPERTY, LLC, a California limited liability   **1. Breach of Oral Employment Contract**
15  company; RICHARD JOHN MOWBRAY, an        **2. Promissory Fraud**
    individual; ROBIN MOWBRAY, an individual;   **3. Breach of the Covenant of Good Faith**
16  and Does 1 through 50 inclusive,         **and Fair Dealing**
                                             **4. Inducement to Relocate by Means of**
17          Defendants.                      **Misrepresentations (*Labor Code***
                                             **§970)**
18                                           **5. Declaratory Relief- Restrictive**
                                             **Provisions and Non-Compete are Not**
19                                           **Enforceable**
                                             **6. Promissory Estoppel**
20                                           **7. Specific Performance of Contract**
                                             **8. Quiet Title to Real Property (*CCP*,**
21                                           **§§760.020 & 761.020)**

22                                           **DEMAND FOR JURY TRIAL**

23                                           Complaint Filed: January 18, 2022

24

25

26

27

28
_____
                **FIRST AMENDED VERIFIED COMPLAINT**

1  Plaintiff for his first amended verified complaint against the defendants, and each of

2  them, alleges and states as follows:

3  **I.**

4  **THE PARTIES**

5  **A.    The "Plaintiff"**

6  1.    Plaintiff RONNIE D. JORDAN ("Plaintiff" and "JORDAN") is an individual, a

7  citizen of the United States and as of the filing of this Complaint is currently a resident of the

8  State of California.

9  **B.    The "Defendants"**

10  2.    Defendant, THE ORIGINAL MOWBRAY'S TREE SERVICE,

11  INCORPORATED ("MOWBRAY"), is a California corporation organized on February 22, 2002

12  Secretary of State No. C2377654 doing business throughout California. MOWBRAY for times

13  relevant to this complaint conducted business from its San Bernardino offices including those

14  located at 686 E. Mill Street San Bernardino CA 92408. Pursuant to its Secretary of State filing

15  ROBIN, described below, is the sole director.

16  3.    Defendant MOWBRAY WATERMAN PROPERTY, LLC ("WATERMAN") is a

17  California limited liability company organized on August 7, 2017 Secretary of State No.

18  201721910272 holding title to California real property. WATERMAN for times relevant to this

19  complaint conducted business from its San Bernardino offices including those offices located at

20  686 E. Mill Street San Bernardino CA 92408. Upon information and belief WATERMAN is a

21  member managed company of which ROBIN, described below, is now the Manager.

22  WATERMAN is the sister company of MOWBRAY and controlled by ROBIN and RICHARD,

23  described below.

24  4.    Defendant RICHARD JOHN MOWBRAY ("RICHARD") is an individual who

25  for all times relevant was a control person of MOWBRAY, an officer and since October 2020

26  President and Chief Executive Officer ("CEO") who works and resides in San Bernardino

27  County California.

28  //

1.

**FIRST AMENDED VERIFIED COMPLAINT**

5.     Defendant ROBIN MOWBRAY ("ROBIN") is an individual who for all times relevant was a control person of, Secretary and a Director of MOWBRAY. ROBIN was also Chief Financial Officer ("CFO") of MOWBRAY until February 24, 2021. ROBIN is also the Manager of WATERMAN. ROBIN is the aunt of RICHARD.

6.     Defendants MOWBRAY, WATERMAN, RICHARD, ROBIN  and Does 1-50 shall be referred to herein jointly and severally as the "Defendants" who, on and after April 1, 2018 for all times relevant to this complaint, have been under the common control of first Gloria Mowbray ("Gloria") now deceased as of April 21, 2021 and now RICHARD and ROBIN. Plaintiff is informed and believes, and on that basis alleges, that at all times herein mentioned RICHARD and ROBIN and the MOWBRAY and WATERMAN and Does 1-50, and each of them, were and remain the alter-egos of each other; that they did and still do dominate, influence and control each other; that there existed and there still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which the other defendants used and still use to conduct their business affairs; that each such entity was and remains inadequately capitalized; and that an injustice and fraud upon Plaintiff will result if the theoretical separateness of the defendants as entities is not disregarded and each such defendant held liable for all relief being sought herein.

7.     Plaintiff is informed and believes, and on that basis alleges, that at all times herein mentioned, Defendants, and each of them, knowingly and willfully conspired, joined and participated with each other in the conduct herein alleged in furtherance of a conspiracy between and among one another to enrich themselves at Plaintiff's expense, and that each such defendant is therefore liable with each other defendant for the conduct herein alleged, for the damages suffered by Plaintiff and for the relief being sought herein.

8.     Does 1-50 are individuals and business entities, form unknown, who would be included in the joint and several references to the Defendants, who, at the time of the events described herein, were and are responsible for acts and omissions related to Plaintiff as alleged herein and, as such, should be included in this complaint as if named and included as such.  The

2.

**FIRST AMENDED VERIFIED COMPLAINT**

1   true names and capacities, whether individual, corporate, associate, or otherwise, of such

2   defendants are unknown to Plaintiff who therefore sues said defendants by such fictitious names.

3   Plaintiff will amend this complaint to allege the true names and capacities of said defendants

4   when the same are ascertained.

5        9.      Plaintiff is informed and believes, and based thereon alleges, that at all times

6   herein mentioned, Doe Defendants, and each of them, were the partners, members, servants,

7   agents and/or employees of the other Defendants and in doing the things herein alleged were

8   acting within the course and scope of their authority as such partners, members, agents, servants

9   and/or employees and with permission and/or consent of their co-defendants.

10       10.     Plaintiff is informed and believes, and based thereon alleges, that, at all relevant

11  times, RICHARD and ROBIN, who are MOWBRAY and WATERMAN's control persons,

12  directors, officers, shareholders  and managers, have dominated MOWBRAY and

13  WATERMAN's affairs; that a unity of interest and ownership has existed between them and

14  MOWBRAY and WATERMAN; that MOWBRAY and WATERMAN is a mere shell and naked

15  framework between RICHARD and ROBIN on the one hand and MOWBRAY and

16  WATERMAN on the other; that MOWBRAY and WATERMAN are a mere shell and naked

17  framework for their manipulations; that MOWBRAY and WATERMAN's income was diverted

18  to their individual use; that MOWBRAY and WATERMAN were, in effect, inadequately

19  capitalized; that MOWBRAY and WATERMAN failed to abide by the formalities of corporate

20  existence; and that adherence to the fiction of separate corporate existence would, under the

21  circumstances, promote injustice, such that RICHARD and ROBIN are the alter egos of

22  MOWBRAY and WATERMAN.

23                          **II.**

24                  **JURISDICTION AND VENUE**

25       11.     This Court has subject matter jurisdiction pursuant to California Constitution

26  Article VI, section 5 and personal jurisdiction over defendants in accordance with Code of Civil

27  Procedure § 410.10 on the grounds that a substantial portion of the actions and events giving rise

28  to this complaint occurred in San Bernardino County, California.

**FIRST AMENDED VERIFIED COMPLAINT**

12.     Venue is proper before this Court because:

a.      The contract which is the subject of this Complaint was entered into requiring performance in San Bernardino County California.

b.      A least one defendant resides in its jurisdictional area.

c.      A substantial part of the acts, events or omissions giving rise to the claims occurred in San Bernardino County, California, and

d.      The parties do business and many reside in San Bernardino County, California.

**III.**

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**Breach of Oral Employment Contract**

**Against MOWBRAY, WATERMAN, RICHARD, ROBIN and Does 1-50**

13.     Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

14.     Plaintiff asserts this claim against MOWBRAY, WATERMAN, RICHARD, ROBIN and Does 1-50.

15.     Plaintiff alleges that because of their control of MOWBRAY, WATERMAN, RICHARD and ROBIN are and were joint employers of Plaintiff.

16.     In 2018 JORDAN had established himself as a highly experienced executive in the field of vegetation management with particular emphasis on harzardous tree removal and fire control and restoration for major utility companies including Pacific Gas and Electric ("PGE") and Southern California Edison ("SCE").

17.     In May 2018 JORDAN and his wife Phyllis Jordan ("Phyllis") were residents of the State of Florida. JORDAN and Phyllis also maintained a residence in North Carolina at that time.

18.     JORDAN was gainfully employed full time in Florida.

//

4.

**FIRST AMENDED VERIFIED COMPLAINT**

19.     MOWBRAY was a family owned company working in the tree service industry.

//

20.     In May 2018 MOWBRAY was experiencing significant difficulty managing its growth opportunities under the direction of Rick Mowbray ("Rick"), the Operations Manager of MOWBRAY and son of Gloria Mowbray ("Gloria") who then controlled all of its common stock.  Rick is the father of RICHARD and brother of ROBIN. Rick negotiated vigorously with the power and authority of Gloria to recruit JORDAN to relocate from Florida to California to take over as CEO of MOWBRAY.

21.     In fact MOWBRAY was in serious need of a Chief Executive Officer who could lead MOWBRAY to the next level of opportunity with increasing revenue and profits and cash flows.

22.     In April 2018 JORDAN visited MOWBRAY's California offices in person spending time with Rick and members of the staff. During those meetings Rick and his team explained that while MOWBRAY could reach a level of $70,000,000 to $80,000,000 in revenues it was unable to control costs, make pricing adjustments and evaluate and contract for work to be consistently profitable. Rick and the staff, in particular Alan Phang ("Phang") then controller and now Chief Financial Officer, further explained that MOWBRAY required gross revenue of $6,000,000 per month to simply breakeven and typically had only 2-3 weeks of cash on hand to keep operating. Rick explained that MOWBRAY critically needed new leadership to make MOWBRAY profitable.

23.     Further, Rick and Phang MOWBRAY admitted to JORDAN, before he accepted the CEO position, that the company required revenue of $6,000,000 per month just to breakeven and for the period January 1, 2018 through May 31, 2018 had Total Revenue of $25,839,872 and for the four months ended April 30, 2018 *a loss of $3,425,443.*

24.     JORDAN indicated he was up to the challenge and accepted the position as of May 28, 2018 which required that he terminate his Florida employment and relocate from Florida to San Bernardino County California to become the CEO.

//

25.     The May 28, 2018 "Oral Agreement" JORDAN mutually reached with Rick on behalf of MOWBRAY provided the following agreed upon material terms:

     a.     JORDAN was hired as CEO of MOWBRAY for a term of five years effective May 28, 2018 through May 27, 2023 and could only be terminated for good cause or death.

     b.     JORDAN would receive an annual salary of $250,000.

     c.     Phyllis would receive an annual salary of $55,000.

     d.     JORDAN would receive 10% of the net operating profits of MOWBRAY.

     e.     JORDAN would be provided housing commensurate with his CEO status without charge during the term.

     f.     JORDAN and Phyllis would each receive new sport utility vehicles every two years which would be transferred to them free and clear upon termination.

     g.     At the end of the term in 2023 JORDAN would receive $30,000 to relocate.

26.     After JORDAN and Phyllis relocated and started work in California JORDAN devoted long hours to make MOWBRAY a success.

27.     JORDAN's leadership soon turned MOWBRAY around from the *loss of $3,425,443* to a profit as of December 31, 2018 of $3,096,637, a positive swing from the net profits JORDAN's leadership generated of $6,522,080.

28.     Further, recall that Rick and Phang told JORDAN that MOWBRAY required Revenue of $6,000,000 per month to breakeven. JORDAN's leadership generated record revenues of $92,621,862 for the full year of 2018 an increase in revenue of $66,781,990 from the $25,839,872 as of May 31, 2018.  Therefore, under JORDAN's direction MOWBRAY enjoyed monthly average revenue in the period June 1, 2018 through December 31, 2018 period of $9,540,284.

29.     Operating income for the period June 1, 2018 to December 31 2018 was $6,522,080 for which JORDAN was entitled to a bonus of 10% of the profits or $652,208. However, amidst excuses about how the calculation would be made he was paid $50,000 with

6.

**FIRST AMENDED VERIFIED COMPLAINT**

1   the promise that MOWBRAY would continue to look into the amount due.

2         30.    In May 2019 JORDAN was leading MOWBRAY to another record year and Rick

3   wanted to express his appreciation to JORDAN and Phyllis with improved housing. On May 10,

4   2019 Rick and ROBIN caused WATERMAN to acquire a single family residence commonly

5   known as 1515 Lucas Land, Redlands, CA 92374-2758 (the "Property") San Bernardino County

6   for $681,500. Rick explained that as a result of JORDAN's excellent work making MOWBRAY

7   millions that JORDAN would be entitled to occupy the Property until the end of his five year

8   term. JORDAN continued his hard work and CEO and he and Phyllis immediately moved into

9   the Property.

10         31.    In late 2019, while now having a huge year and after still not receiving what he

11   believed was the right bonus for 2018, JORDAN prepared a memorandum of the oral agreement

12   as set forth at Paragraph 25 above and set out in the copy of which appears at Exhibit "A" and

13   sent it to Rick and MOWBRAY while he continued to work diligently to increase revenue, avoid

14   losses, institute contract revisions, and pricing and control of costs.

15         32.    While JORDAN continued to work diligently and from time to time inquire about

16   the status of the draft contract he had sent to Rick, Rick developed problems with the family and

17   was abruptly terminated by Gloria through his son RICHARD and ROBIN in February 2020.

18   Gloria called JORDAN and told him that she wanted him to promise that he would never leave

19   MOWBRAY to which he responded he loved his position and planned to stay well into 2023.

20         33.    Notwithstanding the family turmoil, JORDAN's leadership in 2019 resulted in

21   breakout revenues of $213,780,199 and operating income of $17,084,495. JORDAN is entitled to

22   10% of the profits or $1,708,449. Again, following Rick's termination, RICHARD and ROBIN

23   made excuses about the calculations and after payments in February of 2020 JORDAN had

24   received $250,000 towards what they claimed would be his bonus. RICHARD and ROBIN were

25   also aware of the written draft agreement that JORDAN sent to Rick.

26         34.    In 2020 JORDAN had MOWBRAY once again on its way to yet another best year

27   in its history. By midyear 2020, the forecast was for revenue in excess of $400,000,000 with not

28   less than a 12% operating profit.

7.

**FIRST AMENDED VERIFIED COMPLAINT**

35.     On or about September 2020 JORDAN was approached by attorney Stephen Cho ("Cho") of the firm CKB Vienna, LLP ("Vienna Firm") general and litigation counsel for MOWBRAY. Cho was aware of the JORDAN contract terms agreed to with Rick and the writing that JORDAN had sent to Rick at Exhibit "A". Cho and JORDAN had become friends over his employment term given the extensive contract and litigation work the Vienna Firm undertook on behalf of MOWBRAY. Cho advised JORDAN that effective in October 2020, RICHARD and ROBIN wanted him to give up his title as CEO to become Executive Vice President so that RICHARD could assume the CEO role. At that time Cho advised  JORDAN that he should not be concerned because he would be compensated the same and have the same power and authority.

36.     Notwithstanding Cho's statement on behalf of MOWBRAY, JORDAN who dutifully remained ready and willing to continue what could only be described as his stellar performance was marginalized and cutoff from company information.

37.     JORDAN was also advised in October 2020 by RICHARD, ROBIN and Cho in at various times that because of the substantial benefit conferred on MOWBRAY, if he stayed and continued his hard work, then when his employment term ended he would be entitled to title to the Property free and clear. JORDAN agreed to do so.

38.     Upon information and belief, based upon where MOWBRAY was at financially in October 2020, total revenues for 2020 were $450,000 and operating profits at a forecast 12% would be $54,000,000  which entitles JORDAN to his 10% or $5,400,000.

39.     Again, based on estimates JORDAN believes 2021 total revenues are estimated at $200,000,000 and operating profits estimated 12% would be $24,000,000 which entitles JORDAN to his 10% or an estimated $2,400,000.

40.     JORDAN will revise and refine his calculations after he is provided with the actual financial information which he has been precluded access to since October 2020.

41.     On January 7, 2022 MOWBRAY abruptly terminated JORDAN and has failed to pay JORDAN the 10% of net operating profits as promised which is a breach of the oral agreement as follows:

8.

**FIRST AMENDED VERIFIED COMPLAINT**

1          a.      2018 with the 10% profit share of $652,208 less $50,000 paid amount due

2    $602,208.

3          b.      2019 with the 10% profit share of $1,708,449 less $250,000 paid amount

4    due $1,458,449.

5          c.      2020 with the 10% profit share of $5,400,000 less $0 paid amount due

6    $5,400,000.

7          d.      2021 with the 10% profit share of $2,400,000 less $0 paid amount due

8    $2,400,000.

9          e.      Total bonus payments due solely on unpaid profit sharing $9,860.657.

10    42.     At all times continuing to the present, JORDAN has fulfilled all of his obligations

11 under the terms of the contract and/or been excused from performing by Defendants' conduct.

12    43.     Notwithstanding the good cause requirement, JORDAN was terminated on

13 January 7, 2022 without just cause, notwithstanding the remaining contract term.

14    44.     Within the 2 years prior to the filing of this complaint Defendants have breached

15 the contract by inter alia failing and continuing to fail to pay the 10% of net profits due and deed

16 the Property to Plaintiff upon termination under the oral employment contract. Under the Labor

17 Code, Defendant MOWBRAY, WATERMAN, RICHARD, ROBIN and Does 1-50 were

18 obligated to pay JORDAN all amounts due him, i.e., his profits participation, convey the deed to

19 the Property free and clear, immediately at the time that he was fired on January 7, 2022, which

20 they did not do.

21    45.     JORDAN has performed all obligations due to MOWBRAY and WATERMAN

22 under the contract and/or been excused from performance by Defendants' conduct.

23    46.     As a result of Defendants' breach of the contract, JORDAN has suffered damages

24 in excess of $10,000,000 and loss of his rights to title to the Property according to proof at the

25 time of trial.

26 //

27 //

28 //

9.

**FIRST AMENDED VERIFIED COMPLAINT**

**SECOND CAUSE OF ACTION**

**Promissory Fraud**

**Against MOWBRAY, WATERMAN, RICHARD, ROBIN  and Does 1-50**

47.    Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

48.    Plaintiff asserts this claim against MOWBRAY, WATERMAN, RICHARD, ROBIN  and Does 1-50.

49.    On May 28, 2018 Rick on behalf of MOWBRAY induced plaintiff to enter into a contract of employment with defendant by which it was orally agreed between the parties that Defendants would employ Plaintiff and Plaintiff would work for Defendants upon the Oral Agreement terms described in paragraphs 25, 30, 31 and 41 above inclusive.

50.    On May 28, 2018 Rick of MOWBRAY promised that if JORDAN terminated his employment in Florida and relocated to California as MOWBRAY's full time CEO for a period of five years, terminable only for death or good cause, that Plaintiff was eligible to receive, and would receive, the compensation, 10% of the net profits of MOWBRAY while he was employed, and two company cars free and clear at the end of the five year term.

51.    Later in October 2020 RICHARD, ROBIN and Cho promised JORDAN that if he accepted the change in title from CEO to Executive Vice President that nothing would change and he would be entitled to free and clear title to the Property free and clear at the time of his termination.

52.    On May 28, 2018 Plaintiff began his employment with Defendants and continued in such employment until January 7, 2022 when he was wrongfully terminated and the Oral Agreement was breached.

53.    Upon commencement of Plaintiff's employment with Defendants he led MOWBRAY to record revenues and profits.

54.    Defendants were all fully aware of the terms of the Oral Agreement having access to and reviewed the draft at Exhibit "A" and thereby ratified its terms by virtue of JORDAN's continued employment without objection.

10.

**FIRST AMENDED VERIFIED COMPLAINT**

55.     On September 16, 2020 Defendants delivered their signature on a written employment agreement (copy attached as Exhibit "B") that Cho of Vienna Firm had prepared on behalf of MOWBRAY and presented to JORDAN on a take it or leave it basis with the promise and assurance that nothing would change in his authority and ability to lead MOWBRAY as CEO while wrongfully materially modifying the profit sharing to breakpoints. As ROBIN had explained MOWBRAY wanted to change the terms and use gross revenues not net profits as the measure for such bonuses. While JORDAN did not agree he signed the document believing that if he did not he would not receive his bonus for 2018 and 2019 and would be terminated. Because the written contract only applied to periods after January 1, 2020 JORDAN reasoned he was still entitled to his bonus. Moreover, JORDAN relied upon Cho, RICHARD and ROBIN's statements that nothing would change in the relationship.

56.     Then to JORDAN's great surprise in October 2020 RICHARD and ROBIN implemented an immediate and material change to Plaintiff's employment terms and took away all of his power and authority to run the business, eliminated his CEO title and gave it to RICHARD, and refused to discuss his entitlement to bonuses from the Oral Agreement.

57.     Plaintiff is informed and believes and based thereon alleges that MOWBRAY did not intend to pay Plaintiff when Rick make the initial representations to get him to relocate from Florida and that MOWBRAY intended that Plaintiff rely on the representations so that Defendants could reap the benefits of Plaintiff's services.

58.     Plaintiff relied on Defendants' promises to fully compensate Plaintiff and such reliance was reasonable because of the many promises made by Rick, the outstanding record revenues and profits he achieved, the relationship he had built with RICHARD while mentoring him, as well as his belief that Rick, RICHARD, ROBIN and MOWBRAY were trustworthy and honorable.

59.     Defendants, despite their promise to pay Plaintiff, failed and refused to pay Plaintiff pursuant to the Oral Agreement. As a direct result of Defendants' failure to live up to their promise to pay Plaintiff, Plaintiff has been damaged in an amount not less than $10,000,000 plus interest and costs, which continue to accrue, to deliver title to the vehicles and deed to the

11.

**FIRST AMENDED VERIFIED COMPLAINT**

1   Property free and clear. Plaintiff's reliance on Defendants' promises to compensate him was a

2   substantial factor in causing Plaintiff's harm, because without the promises Plaintiff would not

3   have entered into the Oral Agreement and would not have terminated his Florida employment,

4   relocated to California and continued to provide services to MOWBRAY.

5       60.    The acts of Defendants were done with conscious disregard of Plaintiff's rights,

6   and with the specific intent to defraud Plaintiff into entering into the Oral Agreement and

7   providing services to MOWBRAY, such as to constitute fraud, oppression and malice under

8   California Civil Code section 3294. By virtue of Defendants' willful and wrongful conduct,

9   Plaintiff is entitled to punitive and exemplary damages.

10              **THIRD CAUSE OF ACTION**

11          **Breach of the Covenant of Good Faith and Fair Dealing**

12      **Against MOWBRAY, WATERMAN, RICHARD, ROBIN  and Does 1-50**

13      61.    Plaintiff repeats and incorporates herein by reference the allegations in the

14  preceding paragraphs of this Complaint as if set forth fully herein.

15      62.    Plaintiff asserts this claim against MOWBRAY, WATERMAN, RICHARD,

16  ROBIN  and Does 1-50.

17      63.    Implied in every contract is a covenant of good faith and fair dealing by which the

18  contracting parties are bound.

19      64.    Plaintiff has performed all obligations required by the Oral Agreement to the

20  extent not excused by the conduct of  MOWBRAY, WATERMAN, RICHARD, ROBIN and

21  Does 1-50.

22      65.    MOWBRAY, WATERMAN, RICHARD, ROBIN and Does 1-50 breached the

23  Oral Agreement by failing to provide Plaintiff's 10% profit sharing in an amount to be

24  determined according to proof at the time of trial as well as the title to the vehicles and the

25  October 2020 promised deed to the Property.

26      66.    Plaintiff sustained loss, injury and financial damages including the loss of his

27  rightful 10% profits interest as well as the title to the vehicles and deed to the Property, in an

28  amount according to proof at the time of trial as a result of  MOWBRAY, WATERMAN,

12.

**FIRST AMENDED VERIFIED COMPLAINT**

1  RICHARD, ROBIN and Does 1-50's breach of the covenant of good faith and fair dealing due

2  and owing to Plaintiff as above described.

3  **FOURTH CAUSE OF ACTION**

4  **Inducement to Relocate by Means of Misrepresentations (Labor Code § 970)**

5  **Against MOWBRAY, WATERMAN, RICHARD, ROBIN  and Does 1-50**

6      67.    Plaintiff repeats and incorporates herein by reference the allegations in the

7  preceding paragraphs of this Complaint as if set forth fully herein.

8      68.    Plaintiff asserts this claim against MOWBRAY, WATERMAN, RICHARD,

9  ROBIN and Does 1-50.

10      69.    MOWBRAY through Rick made multiple misrepresentations to Plaintiff in order

11  to induce him to leave secure employment and his place of residence in Florida and relocate to

12  San Bernardino County, California. Those misrepresentations were known to Defendants who

13  while reaping the millions in revenues and profits from JORDAN's work said nothing to

14  dissuade his continued good work and efforts.

15      70.    Plaintiff acted in justifiable reliance on MOWBRAY's promises by giving up his

16  job and moving from Florida to work for MOWBRAY in San Bernardino County, California.

17      71.    MOWBRAY knew that the representations made to Plaintiff were false.

18  MOWBRAY used the misrepresentations to induce Plaintiff to relocate. MOWBRAY could not

19  have induced Plaintiff to relocate if it had been honest about MOWBRAY's ability and intention

20  to pay him his 10% of net profits as promised and to convey the title to the vehicles and later as

21  promised in October 2020 the deed to the Property.

22      72.    As a proximate result of the MOWBRAY representations, Plaintiff was persuaded

23  to and did terminate his employment and move from Florida to San Bernardino County

24  California for the purpose of working for MOWBRAY, thereby suffering damages including loss

25  of his 10% net profits interest, title to the vehicles and incurring expenses all subject to proof at

26  time of trial.

27      73.    Plaintiff was damaged by the loss of his 10% net profits, the title to the vehicles

28  and other costs according to proof.

13.

**FIRST AMENDED VERIFIED COMPLAINT**

74.    *California Labor Code* section 973 provides for double damages resulting from MOWBRAY's false representations. Plaintiff alleges that double damages entitles him to not less than twice the $10,000,000 and other damages claimed in the First Cause of Action, subject to proof at the time of trial.

75.    The aforementioned conduct of MOWBRAY was an intentional misrepresentation, deceit or concealment of a material facts known to MOWBRAY with the intention of depriving Plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights so as to justify an award of exemplary and punitive damages against MOWBRAY as well as WATERMAN, RICHARD, ROBIN and Does 1-50 each of which ratified such conduct, subject to proof at the time of trial.

## FIFTH CAUSE OF ACTION

**Declaratory Relief- Restrictive Provisions and Non-Compete are Not Enforceable Against MOWBRAY and Does 1-50**

76.    Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

77.    Plaintiff asserts this claim against MOWBRAY and Does 1-50.

78.    The disputed written agreement attached as Exhibit B contains restrictions that are alleged to prevent JORDAN, who is not now nor has he ever been a shareholder of MOWBRAY, from working in the industry that he has worked in for over twenty years.

79.    A dispute has developed between MOWBRAY and JORDAN as to the scope of these restrictive provisions.

80.    JORDAN asserts that the written agreement is void or voidable as it was procured by fraud, a promise made without intention of performing.

81.    Without waiving JORDAN's position that the written agreement at Exhibit B is void or voidable, and solely as an alternative claim, JORDAN contends that he has no trade secret information nor any information that would prevent his employment by anyone in the same industry as MOWBRAY and that any contention that the agreement contains any in substance

14.

**FIRST AMENDED VERIFIED COMPLAINT**

1  and effect non-competition clause it is not enforceable as a matter of public policy because

2  JORDAN did not own any stock of MOWBRAY which is being redeemed.

3      82.    Upon information and belief MOWBRAY asserts that it can, in substance and

4  effect, prevent JORDAN from working for competitors.

5      83.    The declaratory relief sought concerns a present, ascertained or ascertainable state

6  of facts or present controversy as to whether or not the written agreement at Exhibit "B" is void,

7  voidable or otherwise enforceable and the scope thereof.

8      84.    WHEREFORE, Plaintiff prays that this Court grant him a declaration and

9  judgment against MOWBRAY and Does 1-50, as of a date certain determined at the time of trial,

10  for judgment that said agreement at Exhibit "B" is void or voidable at Plaintiff's option, and that

11  he may work in the same industry as MOWBRAY without restriction, and for such other and

12  further relief as is just and equitable.

13  **SIXTH CAUSE OF ACTION**

14  **Promissory Estoppel**

15  **Against MOWBRAY, RICHARD, ROBIN and Does 1-50**

16      85.    Plaintiff repeats and incorporates herein by reference the allegations in the

17  preceding paragraphs of this Complaint as if set forth fully herein.

18      86.    Plaintiff asserts this claim against MOWBRAY, RICHARD, ROBIN and Does

19  1-50.

20      87.    As set forth above, the Oral Agreement, the terms of which MOWBRAY,

21  RICHARD, ROBIN and Does 1-50 had actual notice of, required that Plaintiff diligently assist

22  Rick, MOWBRAY, RICHARD, ROBIN and Does 1-50 in pursuit if its operations and business

23  plan.

24      88.    Plaintiff did in fact diligently assist Rick, MOWBRAY, RICHARD, ROBIN and

25  Does 1-50 in pursuit of its operations and business plan.

26      89.    Rick, MOWBRAY, RICHARD, ROBIN and Does 1-50 were fully apprised of the

27  aforementioned services provided by Plaintiff from inception of the Oral Agreement as well as its

28  terms through the date of commencement of his services as CEO.

15.
**FIRST AMENDED VERIFIED COMPLAINT**

90. Plaintiff's reliance on the promise that those with notice of his diligent service and work in accordance with the Oral Agreement and its terms, specifically Rick, MOWBRAY, RICHARD, ROBIN and Does 1-50, would pay and compensate him for the services that he provided in the manner set out in the Oral Agreement was both reasonable and foreseeable.

91. Plaintiff suffered significant financial detriment in reliance on MOWBRAY, RICHARD, ROBIN and Does 1-50's promises, which were knowingly ratified and affirmed by each of the Defendants.

92. The Doctrine of Promissory Estoppel prevents MOWBRAY, RICHARD, ROBIN and Does 1-50 from asserting that there was no acceptance and/or consideration for its/his/her/their agreement to compensate Plaintiff in accordance with the Oral Agreement and the promise concerning title to the Property in October 2020.

93. As a direct and proximate result of MOWBRAY, RICHARD, ROBIN and Does 1-50's failure to perform according to the promises and representations which it/he/she/they made and assumed, Plaintiff sustained damages in that he has not received his promised 10% of net profits, title to the vehicles and the deed to the Property free and clear, as well as other damages according to proof.

### SEVENTH CAUSE OF ACTION

### Specific Performance of Contract

### Against MOWBRAY, WATERMAN, RICHARD, ROBIN and Does 1-50

94. Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

95. Plaintiff asserts this claim against MOWBRAY, WATERMAN, RICHARD, ROBIN and Does 1-50.

96. Plaintiff has an enforceable Oral Agreement and modification as of October 2020 that entitles him to title to the Property free and clear. Plaintiff since January 7, 2022 when he was terminated JORDAN has been ready, willing and able to receive title but MOWBRAY, WATERMAN, RICHARD, ROBIN and Does 1-50 have breached the agreement, as above alleged, without justification, thereby excusing Plaintiff's continued performance and after notice

16.
**FIRST AMENDED VERIFIED COMPLAINT**

1    Defendants continued their breach refusing to convey title.

2    //

3        97.    Plaintiff alleges the Oral Agreement provides and provided consideration in the

4    form of Plaintiff's performance as CEO then changed from CEO to Executive Vice President and

5    his occupancy of and caring for the Property.

6        98.    Plaintiff alleges the consideration thereby provided by JORDAN pursuant to the

7    Oral Agreement and change in title to Executive Vice President is good and new consideration.

8        99.    Plaintiff alleges that his performance of the Oral Agreement and change in title to

9    Vice President meets all of the standards of *Sutton v. Warner* (1993) 12 Cal. App. 4th 415, 422

10   (hereafter *Sutton*) specifically: "[t]he doctrine of part performance by the purchaser is a

11   well-recognized exception to the statute of frauds as applied to contracts for the sale or lease of

12   real property." "Under the doctrine of part performance, the oral agreement for the transfer of an

13   interest in real property is enforced **when the <u>buyer has taken possession of the property</u> and**

14   **either <u>makes a full or partial payment of the purchase price</u>, or makes valuable and**

15   **substantial improvements on the property, in reliance on the oral agreement."***Bold and*

16   *underline added,  Sutton*, 12 Cal. App. 4th 422 citing 1 *Miller & Starr, Cal. Real Estate* 2d

17   (1989) § 1:60, p. 168.

18       100.    Plaintiff's performance met all of the *Sutton* standards. Specifically Plaintiff

19   entered the Property and took exclusive possession while providing substantial employment

20   services " full or partial payment of the purchase price... [P]roperty, in reliance on the [Oral

21   Agreement and title change]."

22       101.    Under the *Sutton* based theory, Plaintiff has thereby performed all covenants,

23   conditions, and promises in accordance with the terms and conditions of the Oral Agreement and

24   change in title, except for those obligations Plaintiff was prevented or excused from performing

25   by Defendants' breaches.

26       102.    As a direct and proximate result of Defendants' failure to transfer the Property to

27   Plaintiff, as required under the Oral Agreement and change in title on or before January 7, 2022,

28   Plaintiff has been damaged in an amount according to proof at trial, together with interest

17.

**FIRST AMENDED VERIFIED COMPLAINT**

1    thereon.

2       103.    Despite the demands by Plaintiff, Defendants refused and it/he/she/they have

3    continued to refuse to convey to Plaintiff the grant deed to the Property in accordance to the Oral

4    Agreement and change in title.

5       104.    Plaintiff has no adequate remedy at law because the Oral Agreement and change

6    in title described herein includes consideration for real property, and pursuant to *Civil Code*

7    section 3387 money damages are presumed inadequate for its breach.

8       105.    Plaintiff prays for specific performance of the contract since:

9              a.    The legal remedy is inadequate;

10             b.    The underlying Oral Agreement and change in title is reasonable and

11    supported by adequate consideration - that is performance of the employment services

12    and the value of the Property price to be conveyed on termination is fair and reasonable;

13             c.    A mutuality of remedies exists;

14             d.    The contractual terms of the Oral Agreement and change in title are

15    sufficiently certain such that the court knows what it is to enforce; and

16             e.    The requested performance is substantially similar to that promised in the

17    Oral Agreement and change in title.

18       106.    Based on the foregoing, Plaintiff is entitled to the equitable remedy of specific

19    performance to receive conveyance of the Property deed from Defendants in accordance with the

20    terms set forth in the Oral Agreement and change in title.

21       107.    As a result of Defendants' breach, Plaintiff has suffered incidental damages by

22    virtue of the delay and refusal of Defendants, in conveying the Property, including attorneys fees

23    and costs and any other damages allowed by law according to proof.

24       108.    As a result of Defendants' breach of the contract, Plaintiff has suffered damages in

25    an amount in excess of the jurisdiction of this Court.

26    //

27    //

28    //

18.

**FIRST AMENDED VERIFIED COMPLAINT**

**EIGHTH CAUSE OF ACTION**

**Quiet Title to Real Property (*CCP*, §§760.020 & 761.020)**

**Against MOWBRAY, WATERMAN, RICHARD, ROBIN and Does 1-50**

109.     Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

110.     Plaintiff asserts this claim against MOWBRAY, WATERMAN, RICHARD, ROBIN and Does 1-50.

111.     WATERMAN holds title to the Property, a single family residence, commonly known as 1515 Lucas Land, Redlands, CA 92374-2758 San Bernardino County for which it paid $681,500 with the following Legal Description contained in the Grant Deed attached hereto as Exhibit "C" and further described below:

LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED REDLANDS, IN THE

COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA, AND IS DESCRIBED

AS FOLLOWS:

LOT 46 OF TRACT NO. 18979, IN THE CITY OF REDLANDS, AS SHOWN ON

MAP FILED IN BOOK 347, PAGES 1 THROUGH 5, INCLUSIVE OF MAPS, IN THE

OFFICE OF THE COUNTY RECORDER OF SAN BERNARDINO COUNTY,

CALIFORNIA.

Parcel Number 0168-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.

112.     As described in the First and Seventh Causes of Action MOWBRAY promised JORDAN free and clear title to the Property owned by its sister company WATERMAN at the end of his contract term.

113.     Code of Civil Procedure section 761.020, subdivision (d) provides "the complaint shall. .. include ... the date as of which the determination is sought."

114.     Plaintiff seeks to quiet title to the Property as of January 7, 2020 or such other date as the court shall determine.

//

19.

**FIRST AMENDED VERIFIED COMPLAINT**

115.   Upon information and belief, MOWBRAY, WATERMAN, RICHARD, ROBIN and Does 1-50 did not intend to perform the promise while JORDAN agreed to the change in title, moved into the Property and took care of it as his own, and presently resides in the Property as his residence.

116.   Plaintiff seeks to quiet title to the Property as of January 7, 2022 against Defendants, and for a judicial declaration and judgment that:

    a.   As of January 7, 2022, or such other date as the court shall determine, that none of the Defendants, including without limitation  MOWBRAY, WATERMAN, RICHARD, ROBIN and Does 1-50, has any right, title or interest to the Property; and

    b.   For such other relief as the Court deems proper.

## NINTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### Against MOWBRAY, WATERMAN, RICHARD, ROBIN and Does 1-50

117.   Dismissed without prejudice.

## IV.

## JURY TRIAL DEMAND

118.   Plaintiff demands a trial by jury for all causes of action so triable.

## V.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally as follows:

1.   For compensatory damages in an amount according to proof.

2.   For special damages in an amount  according to proof.

3.   For punitive and exemplary damages in an amount  according to proof.

4.   For double damages pursuant to Labor Code ¶970.

5.   For a declaration and judgment that Plaintiff is free to pursue gainful employment without restriction for either alleged trade secret or proprietary information and/or non-competition.

20.

**FIRST AMENDED VERIFIED COMPLAINT**

6.      For title to the vehicles presently in possession of Plaintiff and his wife Phyllis free and clear.

7.      For title to the Property conveyed free and clear of debts and liens to Plaintiff.

8.      For such other and further relief as may be just and proper.

9.      For attorneys fees and costs per contract as the case may be.

10.    For costs of suit incurred.

11.    For statutory damages, if any.

12.    For statutory attorney fees and costs, if any.

13.    For prejudgment and post judgment interest, according to law.

DATED: July 25, 2022.                    CATANZARITE LAW CORPORATION

By: _____
    Kenneth J. Catanzarite
    Attorneys for Plaintiff

21.

**FIRST AMENDED VERIFIED COMPLAINT**

**VERIFICATION**

I, Ronnie D. Jordan, am plaintiff in the above-entitled action. I have read the foregoing FIRST AMENDED VERIFIED COMPLAINT FOR: 1) Breach of Oral Employment Contract; 2) Promissory Fraud; 3) Breach of the Covenant of Good Faith and Fair Dealing; 4) Inducement to Relocate by Means of Misrepresentations (Labor Code §970); 5) Declaratory Relief- Restrictive Provisions and Non-Compete are Not Enforceable; 6) Promissory Estoppel; 7) Specific Performance of Contract; 8) Quiet Title to Real Property (CCP, §§760.020 & 761.020) and know the contents thereof.  The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED: _____7/25/2022_____

By: _Ronnie D. Jordan_____

Ronnie D. Jordan

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

**FIRST AMENDED VERIFIED COMPLAINT**

**Exhibit A**

May 28, 2018

Re: Employment Contract between Ronnie Jordan and The Original Mowbray's Tree Service, Inc.

Ronnie Jordan has accepted the position of CEO for The Original Mowbray's Tree Service, Inc. (hereafter referred to as "Mowbray's") for the term of 5 years; effective May 28th, 2018, and terminating on May 27th, 2023. Renewal of the employee contract between Ronnie Jordan and Mowbray's will be executed, as applicable, 90 days before the end of the current contract period.

Ronnie Jordan will receive an annual salary of $250,000.00, and will be entitled to 10% of all Mowbray's profits. Profits for this employee contract are defined as revenue minus operational expenses. Operational expenses are defined as salaries and wages for employees that are approved by Ronnie Jordan, normal operating expenses that include office rental and equipment associated with business expenses that are approved by Ronnie Jordan, equipment expenses that are approved by Ronnie Jordan, insurance and legal fees approved by Ronnie Jordan, and any other applicable business costs approved by Ronnie Jordan. Bonus pool structure and discretionary monies shall be distributed after the profits for each fiscal year have been determined.

Phyllis Jordan will receive an annual salary of $55,000.00.

Mowbray's will supply housing with utilities for the duration of the employment contract. Mowbray's will provide Ronnie Jordan 90 days written notice to vacated prior to the termination of the contract.

Mowbray's will pay for full Medicare and Blue Cross for both Ronnie and Phyllis during the full term of the contract.

Travel home will be as needed not to exceed once a month (unless emergency arises). Travel arrangements shall be first-class at Mowbray's expense.

Vehicles to be replaced with new SUV's (equivalent to a fully loaded Chevy Tahoe) every 2 years and upon the completion of the contract, Phyllis and Ronnie will also each receive brand new SUV's (equivalent to a fully loaded Chevy Tahoe), purchased by Mowbray's, and registered in Phyllis and Ronnie's names. Ronnie Jordan's salary will be uplifted prior to the termination of the employment contract to cover the tax liability for the two SUV's.

Mowbray's will pay for moving expenses from Florida to Yucaipa, California. Upon completion of the contract, Ronnie Jordan will receive $30,000.00 to re-locate to the destination of his choice.

Signature:

Ronnie Jordan: _____    Phyllis Jordan: _____

Date: _____

Mowbray's Authorized Signature(s)

Signature #1: _____    Printed Name: _____

Signature #2: _____    Printed Name: _____

Date: _____

**Exhibit B**



## Employment Agreement

This Employment Agreement (the "**Agreement**") is made and entered into as of January 1, 2020, by and between Ronnie Jordan (the "**Executive**") and The Original Mowbray's Tree Services, Inc., a California corporation (the "**Company**").

WHEREAS, the Company desires to employ the Executive on the terms and conditions set forth herein; and

WHEREAS, the Executive desires to be employed by the Company on such terms and conditions.

NOW, THEREFORE, in consideration of the mutual covenants, promises, and obligations set forth herein, the parties agree as follows:

1. <u>Term</u>. The Executive's employment hereunder shall be effective as of January 1, 2020 (the "**Effective Date**") and shall continue until the third anniversary thereof, unless terminated earlier under Section 5 of this Agreement. The period during which the Executive is employed by the Company hereunder is hereinafter referred to as the "**Employment Term**."

2. <u>Position and Duties</u>.

   2.1 <u>Position</u>. During the Employment Term, the Executive shall serve as the Chief Executive Officer of the Company, reporting to the board of directors of the Company (the "**Board**"). In such position, the Executive shall have such duties, authority, and responsibilities as shall be determined from time to time by the Board. The Board, in its sole discretion, has the right and authority to change the duties, authority, responsibilities, and title of the Executive.

   2.2 <u>Duties</u>. During the Employment Term, the Executive shall devote substantially all of Executive's business time and attention to the performance of the Executive's duties hereunder and will not engage in any other business, profession, or occupation for compensation or otherwise which would conflict or interfere with the performance of such services either directly or indirectly without the prior written consent of the Board. Notwithstanding the foregoing, the Executive will be permitted to (a) with the prior written consent of the Board (which consent can be withheld by the Board in its sole discretion) act or serve as a director, trustee, committee member, or principal of any type of business, civic, or charitable organization as long as such activities are disclosed in writing to the Board, and (b) purchase or own less than five percent (5%) of the publicly traded securities of any corporation; provided that, such ownership represents a passive investment and that the Executive is not a controlling person of, or a member of a group that controls, such corporation; provided further that, the activities described in clauses (a) and (b) do not interfere with the performance of the Executive's duties and responsibilities to the Company as provided hereunder, including, but not limited to, the obligations outlined in Section 2 hereof.

3. <u>Place of Performance</u>. The principal place of the Executive's employment shall be the Company's principal executive office; provided that, the Executive may be required to travel on Company business during the Employment Term.

4. <u>Compensation</u>.

   4.1 <u>Base Salary</u>. The Company shall pay the Executive an annual base salary of $250,000.00 in periodic installments in accordance with the Company's customary payroll practices and applicable wage payment laws less payroll deductions and all required withholdings. The Executive's base salary may not be decreased during the Employment Term other than as part of an across-the-board salary reduction that applies in the same manner to all senior executives. The Executive's annual base salary, as in effect from time to time, is hereinafter referred to as "**Base Salary**".

   4.2 <u>Annual Bonus</u>.

   (a) For each complete calendar year of the Employment Term, the Executive shall be eligible to receive an annual

bonus (the "**Annual Bonus**"). As of the Effective Date, the Executive's annual bonus opportunity shall be based on the achievement of the Company's performance goals as follows:

 i.  If the Company achieves $200,000,000.00 in annual revenue per year (as determined by the Company's CPA's review of financials), the Executive will receive a bonus of $500,000.00.

 ii.  The Executive will receive an additional bonus of $250,000.00 for every additional $50,000,000.00 in annual revenue above $200,000,000.00.

 iii.  In addition to the annual revenue markers, the Company must achieve at least five percent (5%) in net profits for the Executive to be eligible to receive the Annual Bonus as prescribed above. If the net profits for the Company are less than 5%, the Annual Bonus shall be reduced based on the percentage of net profits on a pro-rata basis. For example, if the Company achieves $265,000,000 in annual revenue for 2020, and 5%+ of net profits, the Executive would be entitled to $750,000.00, but if the net profits equal 3% ($7,950,000) of the annual revenue, the Executive would receive $450,000.

(b) The Annual Bonus, if any, will be paid within the first quarter after the end of the applicable calendar if the Company's cash flow permits.

(c) Except as otherwise provided in Section 5, to be eligible to receive an Annual Bonus, the Executive must be continuously employed by the Company through the last day of the applicable calendar year.

4.3 Signing Bonus. The Company shall pay the Executive a lump sum cash signing bonus of $250,000.00 (the "**Signing Bonus**") within six (6) months following the Effective Date; provided that, the Executive shall repay the gross amount of the Signing Bonus if, before December 31, 2020, the Executive terminates the Executive's employment without Good Reason (as defined below) or the Company terminates the Executive's employment for Cause (as defined below).

4.4 Additional Compensation. The Executive shall be eligible to receive a long-term incentive award upon completion of the Employment Term. At the end of the Employment Term, 1515 Lucas Lane, Redlands, CA 92375 ("Property") (Approximate value of $900,000.00, including improvements), the 2019 Land Rover Range Rover (VIN No.: SALGV5RE0KA542328) and 2020 GMC Yukon (VIN No. 1GKS2CKJKLR119169) will be transferred to the Executive; all taxes will be the Executive's responsibility as with any other compensation.

4.5 Fringe Benefits and Perquisites. During the Employment Term, the Executive shall be entitled to fringe benefits and perquisites consistent with the practices of the Company and governing benefit plan requirements (including plan eligibility provisions), and to the extent, the Company provides similar benefits or perquisites (or both) to similarly situated executives of the Company. Notwithstanding the foregoing, during the Employment Term, the Company shall provide the Executive with the use of the 2019 Land Rover Range Rover (VIN No.: SALGV5RE0KA542328) and 2020 GMC Yukon (VIN No. 1GKS2CKJKLR119169), current company housing at the Property, and non-business travel benefits.

4.6 Employee Benefits. During the Employment Term, the Executive shall be entitled to participate in all employee benefit plans, practices, and programs maintained by the Company, as in effect from time to time (collectively, "**Employee Benefit Plans**"), on a basis which is no less favorable than is provided to other similarly situated executives of the Company, to the extent consistent with applicable law and the terms of the applicable Employee Benefit Plans. The Company reserves the right to amend or terminate any Employee Benefit Plans at any time in its sole discretion, subject to the terms of such Employee Benefit Plan and applicable law.

4.7 Vacation; Paid Time Off. During the Employment Term, the Executive will be entitled to paid vacation on a basis that is at least as favorable as that provided to other similarly situated executives of the Company. The Executive shall receive other paid time off in accordance with the Company's policies for executive officers as such policies may exist from time to time.

4.8 Business Expenses. The Executive shall be entitled to reimbursement for all reasonable and necessary out-of-pocket business, entertainment, and travel expenses incurred by the Executive in connection with the performance of the Executive's duties hereunder in accordance with the Company's expense reimbursement policies and procedures.

4.9 Indemnification. In the event that the Executive is made a party or threatened to be made a party to any action, suit, or proceeding, whether civil, criminal, administrative, or investigative (a "**Proceeding**"), other than any Proceeding initiated by the Executive or the Company related to any contest or dispute between the Executive and the Company or any of its affiliates with respect to this Agreement or the Executive's employment hereunder, by reason of the fact that the Executive is or was a director or officer of the Company, or any affiliate of the Company, or is or was serving at the request of the Company as a director, officer, member, employee, or agent of another corporation or a partnership, joint venture, trust, or other enterprises, the Executive shall be indemnified and held harmless by the Company [to the fullest extent applicable to any other officer or director of the Company/to the maximum extent permitted under applicable law and the Company's bylaws from and against any liabilities, costs, claims, and expenses, including all costs and expenses incurred in defense of any Proceeding (including attorneys' fees). Costs and expenses incurred by the Executive in defense of such Proceeding

(including attorneys' fees) shall be paid by the Company in advance of the final disposition of such litigation upon receipt by the Company of: (i) a written request for payment; (ii) appropriate documentation evidencing the incurrence, amount, and nature of the costs and expenses for which payment is being sought; and (iii) an undertaking adequate under applicable law made by or on behalf of the Executive to repay the amounts so paid if it shall ultimately be determined that the Executive is not entitled to be indemnified by the Company under this Agreement.

5.  Termination of Employment. The Employment Term and the Executive's employment hereunder may be terminated by either the Company or the Executive at any time and for any reason; provided that, unless otherwise provided herein, either party shall be required to give the other party at least 60 days advance written notice of any termination of the Executive's employment. On termination of the Executive's employment during the Employment Term, the Executive shall be entitled to the compensation and benefits described in this Section 5 and shall have no further rights to any compensation or any other benefits from the Company or any of its affiliates.

5.1  For Cause, or Without Good Reason.

(a)  The Executive's employment hereunder may be terminated by the Company for Cause, or by the Executive without Good Reason. If the Executive's employment is terminated by the Company for Cause, or by the Executive without Good Reason, the Executive shall be entitled to receive:

(i)  any accrued but unpaid Base Salary and accrued but unused vacation which shall be paid on the Termination Date (as defined below);

(ii)  reimbursement for unreimbursed business expenses properly incurred by the Executive, which shall be subject to and paid in accordance with the Company's expense reimbursement policy; and

(iii)  such employee benefits, if any, to which the Executive may be entitled under the Company's employee benefit plans as of the Termination Date.

Items 5.1(a)(i) through 5.1(a)(iii) are referred to herein collectively as the "**Accrued Amounts**".

(b)  For purposes of this Agreement, "**Cause**" shall mean:

(i)  the Executive's failure to perform Executive's duties (other than any such failure resulting from incapacity due to physical or mental illness);

(ii)  the Executive's failure to comply with any valid and legal directive of the Board;

(iii)  the Executive's engagement in dishonesty, illegal conduct, or misconduct, which is, in each case, injurious to the Company or its affiliates;

(iv)  the Executive's embezzlement, misappropriation, or fraud, whether or not related to the Executive's employment with the Company;

(v)  the Executive's conviction of or plea of guilty or nolo contendere to a crime that constitutes a felony (or state law equivalent) or a crime that constitutes a misdemeanor involving moral turpitude;

(vi)  the Executive's violation of the Company's written policies or codes of conduct, including written policies related to discrimination, harassment, the performance of illegal or unethical activities, and ethical misconduct;

(vii)  the Executive's willful unauthorized disclosure of Confidential Information (as defined below);

(viii)  the Executive's material breach of any material obligation under this Agreement or any other written agreement between the Executive and the Company;

(ix)  the Executive's engagement in conduct that brings or is reasonably likely to bring the Company negative publicity or into public disgrace, embarrassment, or disrepute;

(x)  the Executive's engagement in any competitive activity; or

(xi)  the Executive's engagement in conduct that is a conflict of interest.

(c)  For purposes of this Agreement, "**Good Reason**" shall mean the occurrence of any of the following, in each case during the Employment Term without the Executive's written consent:

(i)  a material reduction in the Executive's Base Salary other than a general reduction in Base Salary that affects

all similarly situated executives in substantially the same proportions;

(ii)   a material reduction in the Executive's Annual Bonus opportunity;

(iii)  relocation of the Executive's principal place of employment by more than 100 miles;

(iv)  any material breach by the Company of any material provision of this Agreement; or

(v)   the Company's failure to obtain an agreement from any successor to the Company to assume and agree to perform this Agreement in the same manner and to the same extent that the Company would be required to perform if no succession had taken place, except where such assumption occurs by operation of law;

The Executive cannot terminate employment for Good Reason unless the Executive has provided written notice to the Company of the existence of the circumstances providing grounds for termination for Good Reason within ten (10) days of the initial existence of such grounds and the Company has had at least thirty (30) days from the date on which such notice is provided to cure such circumstances.

5.2  <u>Without Cause or for Good Reason</u>. The Employment Term and the Executive's employment hereunder may be terminated by the Executive for Good Reason or by the Company without Cause. In the event of such termination, the Executive shall be entitled to receive the Accrued Amounts and subject to the Executive's compliance with Section 6, Section 7, Section 8, and Section 9 of this Agreement and the Executive's execution of a release of claims in favor of the Company, its affiliates, and their respective officers and directors in a form provided by the Company (the "Release") and such Release becoming effective within 30 days following the Termination Date (such 30-day period, the "**Release Execution Period**"), the Executive shall be entitled to receive the following:

(a)  An Annual Bonus based on the annual revenue (for the applicable calendar year) for the Company up to the Termination Date. For example, if the Executive terminates employment for Good Reason (and the Termination Date is October 31, 2021) and the annual revenues at the time the Termination Date is $205,000,000.00, the Executive shall receive $500,000.00. This amount shall be paid within the first quarter after the end of the applicable calendar in which the Termination Date occurs; and

(b)  Additional Compensation as follows: The Executive will be given a prorated dollar amount based on the number of full months employed before the Termination Date multiplied by $25,000.00. For example, if the Executive completes sixteen (16) months of the Employment Term, the Executive shall receive $400,000.00. This amount shall be paid within the first quarter after the end of the applicable calendar in which the Termination Date occurs.

5.3  <u>Death or Disability</u>.

(a)  The Executive's employment hereunder shall terminate automatically on the Executive's death or Disability during the Employment Term.

(b)  If the Executive's employment is terminated during the Employment Term on account of the Executive's death or Disability, the Executive (or the Executive's estate and/or beneficiaries, as the case may be) shall be entitled to receive the following:

(i)   the Accrued Amounts;

(ii)  an Annual Bonus based on the annual revenue (for the applicable calendar year) for the Company up to the date of Executive's death or Disability. For example, if the Executive dies or becomes disabled (and the death or Disability Date is October 31, 2021) and the annual revenue at the time death or Disability is $205,000,000.00, the Executive (or the Executive's estate and/or beneficiaries, as the case may be) shall receive $500,000.00. This amount shall be paid within the first quarter after the end of the applicable calendar in which the death or Disability occurs; and

(iii) the Executive (or the Executive's estate and/or beneficiaries, as the case may be) will be given a prorated dollar amount based on the number of full months employed before death or Disability multiplied by $25,000.00. For example, if the Executive completes sixteen (16) months of the Employment Term, Executive (or the Executive's estate and/or beneficiaries, as the case may be) shall receive $400,000.00. This amount within the first quarter after the end of the applicable calendar in which the death or Disability occurs.

(c)  For purposes of this Agreement, "**Disability**" shall mean the Executive's inability, due to physical or mental incapacity, to perform the essential functions of the Executive's job for one hundred eighty (180) days out of any three hundred sixty-five (365) day period or one hundred twenty (120) consecutive days. Any question as to the existence of the Executive's Disability as to which the Executive and the Company cannot agree shall be determined in writing by a qualified independent physician mutually acceptable to the Executive and the Company. If the Executive and the

Company cannot agree as to a qualified independent physician, each shall appoint such a physician and those two physicians shall select a third who shall make such determination in writing. The determination of Disability made in writing to the Company and the Executive shall be final and conclusive for all purposes of this Agreement.

5.4  Notice of Termination. Any termination of the Executive's employment hereunder by the Company or by the Executive during the Employment Term (other than termination pursuant to Section 5.3(a) on account of the Executive's death) shall be communicated by written notice of termination ("**Notice of Termination**") to the other party hereto in accordance with Section 27. The Notice of Termination shall specify:

(a)  The termination provision of this Agreement relied upon;

(b)  To the extent applicable, the facts and circumstances claimed to provide a basis for termination of the Executive's employment under the provision so indicated; and

(c)  The applicable Termination Date.

5.5  Termination Date. The Executive's "**Termination Date**" shall be:

(a)  If the Executive's employment hereunder terminates on account of the Executive's death, the date of the Executive's death;

(b)  If the Executive's employment hereunder is terminated on account of the Executive's Disability, the date that it is determined that the Executive has a Disability;

(c)  If the Company terminates the Executive's employment hereunder for Cause, the date the Notice of Termination is delivered to the Executive;

(d)  If the Company terminates the Executive's employment hereunder without Cause, the date specified in the Notice of Termination, which shall be no less than 60 days following the date on which the Notice of Termination is delivered;

(e)  If the Executive terminates his employment hereunder with or without Good Reason, the date specified in the Executive's Notice of Termination, which shall be no less than 60 days following the date on which the Notice of Termination is delivered; provided that, the Company may waive all or any part of the 60-day notice period for no consideration by giving written notice to the Executive and for all purposes of this Agreement, the Executive's Termination Date shall be the date determined by the Company; and

5.6  Resignation of All Other Positions. On termination of the Executive's employment hereunder for any reason, the Executive shall be deemed to have resigned from all positions that the Executive holds as an officer or member of the Board (or a committee thereof) of the Company or any of its affiliates.

5.7  Vacating Property. On termination of the Executive's employment hereunder for any reason, the Executive and any other resident of the Property must vacate the Property within 30 days of the Termination Date.

6.  Cooperation. The parties agree that certain matters in which the Executive will be involved during the Employment Term may necessitate the Executive's cooperation in the future. Accordingly, following the termination of the Executive's employment for any reason, to the extent reasonably requested by the Board, the Executive shall cooperate with the Company in connection with matters arising out of the Executive's service to the Company; provided that, the Company shall make reasonable efforts to minimize disruption of the Executive's other activities. The Company shall reimburse the Executive for reasonable expenses incurred in connection with such cooperation and, to the extent that the Executive is required to spend substantial time on such matters, the Company shall compensate the Executive at an hourly rate.

7.  Confidential Information. The Executive understands and acknowledges that during the Employment Term, the Executive will have access to and learn about Confidential Information, as defined below.

7.1  Confidential Information Defined.

(a)  Definition.

For purposes of this Agreement, "**Confidential Information**" includes, but is not limited to, all information not generally known to the public, in spoken, printed, electronic or any other form or medium, relating directly or indirectly to: business processes, practices, methods, policies, plans, publications, documents, research, operations, services, strategies, techniques, agreements, contracts, terms of agreements, transactions, potential transactions, negotiations, pending negotiations, know-how, trade secrets, computer programs, computer software, applications, operating systems, software design, source code, web design, work-in-process, databases, manuals, records, articles, systems, material, sources of material, supplier information, vendor information, financial information, results, accounting information,

accounting records, legal information, marketing information, advertising information, pricing information, credit information, design information, payroll information, staffing information, personnel information, employee lists, supplier lists, vendor lists, developments, reports, internal controls, security procedures, graphics, drawings, sketches, market studies, sales information, revenue, costs, formulae, notes, communications, algorithms, product plans, designs, styles, models, ideas, audiovisual programs, inventions, unpublished patent applications, original works of authorship, discoveries, experimental processes, experimental results, specifications, customer information, customer lists, client information, client lists, manufacturing information, factory lists, distributor lists, and buyer lists of the Company or its businesses or any existing or prospective customer, supplier, investor or other associated third party, or of any other person or entity that has entrusted information to the Company in confidence.

The Executive understands that the above list is not exhaustive and that Confidential Information also includes other information that is marked or otherwise identified as confidential or proprietary, or that would otherwise appear to a reasonable person to be confidential or proprietary in the context and circumstances in which the information is known or used.

The Executive understands and agrees that Confidential Information includes information developed by Executive in the course of employment by the Company as if the Company furnished the same Confidential Information to the Executive in the first instance. Confidential Information shall not include information that is generally available to and known by the public at the time of disclosure to the Executive; provided that, such disclosure is through no direct or indirect fault of the Executive or person(s) acting on the Executive's behalf.

(b) Company Creation and Use of Confidential Information.

The Executive understands and acknowledges that the Company has invested, and continues to invest, substantial time, money, and specialized knowledge into developing its resources, creating a customer base, generating customer and potential customer lists, training its employees, and improving its offerings. The Executive understands and acknowledges that as a result of these efforts, the Company has created, and continues to use and create Confidential Information. This Confidential Information provides the Company with a competitive advantage over others in the marketplace.

(c) Disclosure and Use Restrictions.

The Executive agrees and covenants: (i) to treat all Confidential Information as strictly confidential; (ii) not to directly or indirectly disclose, publish, communicate, or make available Confidential Information, or allow it to be disclosed, published, communicated, or made available, in whole or part, to any entity or person whatsoever (including other employees of the Company) not having a need to know and authority to know and use the Confidential Information in connection with the business of the Company and, in any event, not to anyone outside of the direct employ of the Company except as required in the performance of the Executive's authorized employment duties to the Company (and then, such disclosure shall be made only within the limits and to the extent of such duties or consent); and (iii) not to access or use any Confidential Information, and not to copy any documents, records, files, media, or other resources containing any Confidential Information, or remove any such documents, records, files, media, or other resources from the premises or control of the Company, except as required in the performance of the Executive's authorized employment duties to the Company (and then, such disclosure shall be made only within the limits and to the extent of such duties or consent).

(d) Permitted disclosures. Nothing herein shall be construed to prevent disclosure of Confidential Information as may be required by applicable law or regulation, or pursuant to the valid order of a court of competent jurisdiction or an authorized government agency, provided that the disclosure does not exceed the extent of disclosure required by such law, regulation, or order.

8. Restrictive Covenants.

8.1 Acknowledgement. The Executive understands that the nature of the Executive's position gives the Executive access to and knowledge of Confidential Information and places the Executive in a position of trust and confidence with the Company. The Executive understands and acknowledges that the intellectual or artistic services the Executive provides to the Company are unique, special, or extraordinary.

The Executive further understands and acknowledges that the Company's ability to reserve these for the exclusive knowledge and use of the Company is of great competitive importance and commercial value to the Company, and that improper use or disclosure by the Executive is likely to result in unfair or unlawful competitive activity.

8.2 Non-Competition. Because of the Company's legitimate business interest as described herein and the good and valuable consideration offered to the Executive, during the Employment Term, the Executive agrees and covenants not to engage in Prohibited Activity.

For purposes of this Section 8, "**Prohibited Activity**" is activity in which the Executive contributes the Executive's knowledge, directly or indirectly, in whole or in part, as an employee, employer, owner, operator, manager, advisor, consultant, agent, employee, partner, director, stockholder, officer, volunteer, intern, or any other similar capacity to an entity engaged in the same or similar business as the Company, including those engaged in the business of vegetation management. Prohibited Activity also includes activity that may require or inevitably requires disclosure of trade secrets, proprietary information, or Confidential Information.

Nothing herein shall prohibit the Executive from purchasing or owning less than five percent (5%) of the publicly traded securities of any corporation, provided that such ownership represents a passive investment and that the Executive is not a controlling person of, or a member of a group that controls, such corporation.

This Section 8 does not, in any way, restrict or impede the Executive from exercising protected rights to the extent that such rights cannot be waived by agreement or from complying with any applicable law or regulation or a valid order of a court of competent jurisdiction or an authorized government agency, provided that such compliance does not exceed that required by the law, regulation, or order.

8.3 <u>Non-Solicitation of Employees</u>. During the period that the Executive is employed by the Company and, in the event of termination, for two years, to run consecutively, beginning on the last day of the Executive's employment with the Company, the Executive agrees and covenants not to disrupt or interfere with the business of the Company by directly or indirectly soliciting, recruiting, attempting to recruit, or raiding the employees of the Company, or otherwise inducing the termination of employment of any employee of the Company. The Executive also agrees and covenants not to use any of the Company's trade secrets and/or confidential information to directly or indirectly solicit the employees of the Company.

8.4 <u>Non-Solicitation of Customers</u>. The Executive understands and acknowledges that because of the Executive's experience with and relationship to the Company, the Executive will have access to and learn about much or all of the Company's customer information. "**Customer Information**" includes, but is not limited to, names, phone numbers, addresses, email addresses, order history, order preferences, chain of command, decisionmakers, pricing information, and other information identifying facts and circumstances specific to the customer.

The Executive understands and acknowledges that loss of this customer relationship and/or goodwill will cause significant and irreparable harm.

The Executive agrees and covenants, for a period of 3 years, beginning on the last day of the Executive's employment with the Company, not to use any of the Company's trade secrets and/or confidential or proprietary information to directly or indirectly solicit the customers/clients of the Company, or to interrupt, disturb, or interfere with the relationships of the Company with its customers/clients, directly or indirectly solicit, contact (including but not limited to email, regular mail, express mail, telephone, fax, instant message, or social media), attempt to contact, or meet with the Company's current, former or prospective customers for purposes of offering or accepting goods or services similar to or competitive with those offered by the Company.

9. <u>Non-Disparagement</u>. The Executive agrees and covenants that the Executive will not at any time make, publish, or communicate to any person or entity or in any public forum any defamatory or disparaging remarks, comments, or statements concerning the Company or its businesses, or any of its employees, officers, and existing and prospective customers, suppliers, investors, and other associated third parties.

This Section 9 does not, in any way, restrict or impede the Executive from exercising protected rights to the extent that such rights cannot be waived by agreement or from complying with any applicable law or regulation or a valid order of a court of competent jurisdiction or an authorized government agency, provided that such compliance does not exceed that required by the law, regulation, or order.

The Company agrees and covenants that it shall direct its officers and directors to refrain from making any defamatory or disparaging remarks, comments, or statements concerning the Executive to any third parties.

10. <u>Acknowledgment</u>. The Executive acknowledges and agrees that the services to be rendered by the Executive to the Company are of a special and unique character; that the Executive will obtain knowledge and skill relevant to the Company's industry, methods of doing business and marketing strategies by virtue of the Executive's employment; and that the restrictive covenants and other terms and conditions of this Agreement are reasonable and reasonably necessary to protect the legitimate business interest of the Company.

The Executive further acknowledges that the benefits provided to the Executive under this Agreement, including the amount of the Executive's compensation, reflects, in part, the Executive's obligations and the Company's rights under Section 7, Section 8, and Section 9 of this Agreement; that the Executive has no expectation of any additional compensation, royalties, or other payment of any kind not otherwise referenced herein in connection herewith; and that the Executive will not suffer undue hardship by reason of full compliance with the terms and conditions of Section 7, Section 8, and Section 9 of this Agreement or the

Company's enforcement thereof.

11. Remedies. In the event of a breach or threatened breach by the Executive of Section 7, Section 8, or Section 9 of this Agreement, the Executive hereby consents and agrees that the Company shall be entitled to seek, in addition to other available remedies, a temporary or permanent injunction or other equitable relief against such breach or threatened breach from any court of competent jurisdiction, and that money damages would not afford an adequate remedy, without the necessity of showing any actual damages, and without the necessity of posting any bond or other security. The aforementioned equitable relief shall be in addition to, not in lieu of, legal remedies, monetary damages, or other available forms of relief.

12. Proprietary Rights.

12.1 Work Product. The Executive acknowledges and agrees that all right, title, and interest in and to all writings, works of authorship, technology, inventions, discoveries, processes, techniques, methods, ideas, concepts, research, proposals, materials, and all other work product of any nature whatsoever, that are created, prepared, produced, authored, edited, amended, conceived, or reduced to practice by the Executive individually or jointly with others during the Employment Term and relate in any way to the business or contemplated business, products, activities, research, or development of the Company or result from any work performed by the Executive for the Company (in each case, regardless of when or where prepared or whose equipment or other resources is used in preparing the same), all rights and claims related to the foregoing, and all printed, physical and electronic copies, and other tangible embodiments thereof (collectively, "Work Product"), as well as any and all rights in and to US and foreign (a) patents, patent disclosures and inventions (whether patentable or not), (b) trademarks, service marks, trade dress, trade names, logos, corporate names, and domain names, and other similar designations of source or origin, together with the goodwill symbolized by any of the foregoing, (c) copyrights and copyrightable works (including computer programs), and rights in data and databases, (d) trade secrets, know-how, and other confidential information, and (e) all other intellectual property rights, in each case whether registered or unregistered and including all registrations and applications for, and renewals and extensions of, such rights, all improvements thereto and all similar or equivalent rights or forms of protection in any part of the world (collectively, "Intellectual Property Rights"), shall be the sole and exclusive property of the Company.

For purposes of this Agreement, Work Product includes, but is not limited to, Company information, including plans, publications, research, strategies, techniques, agreements, documents, contracts, terms of agreements, negotiations, know-how, computer programs, computer applications, software design, web design, work in process, databases, manuals, results, developments, reports, graphics, drawings, sketches, market studies, formulae, notes, communications, algorithms, product plans, product designs, styles, models, audiovisual programs, inventions, unpublished patent applications, original works of authorship, discoveries, experimental processes, experimental results, specifications, customer information, client information, customer lists, client lists, manufacturing information, marketing information, advertising information, and sales information.

12.2 Work Made for Hire; Assignment. The Executive acknowledges that, by reason of being employed by the Company at the relevant times, to the extent permitted by law, all of the Work Product consisting of copyrightable subject matter is "work made for hire" as defined in 17 U.S.C. § 101 and such copyrights are therefore owned by the Company. To the extent that the foregoing does not apply, the Executive hereby irrevocably assigns to the Company, for no additional consideration, the Executive's entire right, title, and interest in and to all Work Product and Intellectual Property Rights therein, including the right to sue, counterclaim, and recover for all past, present, and future infringement, misappropriation, or dilution thereof, and all rights corresponding thereto throughout the world. Nothing contained in this Agreement shall be construed to reduce or limit the Company's rights, title, or interest in any Work Product or Intellectual Property Rights so as to be less in any respect than that the Company would have had in the absence of this Agreement.

12.3 Further Assurances; Power of Attorney. During and after the Employment Term, the Executive agrees to reasonably cooperate with the Company to (a) apply for, obtain, perfect, and transfer to the Company the Work Product as well as any and all Intellectual Property Rights in the Work Product in any jurisdiction in the world; and (b) maintain, protect and enforce the same, including, without limitation, giving testimony and executing and delivering to the Company any and all applications, oaths, declarations, affidavits, waivers, assignments, and other documents and instruments as shall be requested by the Company. The Executive hereby irrevocably grants the Company power of attorney to execute and deliver any such documents on the Executive's behalf in his name and to do all other lawfully permitted acts to transfer the Work Product to the Company and further the transfer, prosecution, issuance, and maintenance of all Intellectual Property Rights therein, to the full extent permitted by law, if the Executive does not promptly cooperate with the Company's request (without limiting the rights the Company shall have in such circumstances by operation of law). The power of attorney is coupled with an interest and shall not be affected by the Executive's subsequent incapacity.

12.4 No License. The Executive understands that this Agreement does not, and shall not be construed to, grant the Executive any license or right of any nature with respect to any Work Product or Intellectual Property Rights or any Confidential Information, materials, software, or other tools made available to the Executive by the Company.

13. Security.

13.1 <u>Security and Access</u>. The Executive agrees and covenants (a) to comply with all Company security policies and procedures as in force from time to time including without limitation those regarding computer equipment, telephone systems, voicemail systems, facilities access, monitoring, key cards, access codes, Company intranet, internet, social media and instant messaging systems, computer systems, email systems, computer networks, document storage systems, software, data security, encryption, firewalls, passwords and any and all other Company facilities, IT resources, and communication technologies ("**Facilities and Information Technology Resources**"); (b) not to access or use any Facilities and Information Technology Resources except as authorized by the Company; and (iii) not to access or use any Facilities and Information Technology Resources in any manner after the termination of the Executive's employment by the Company, whether termination is voluntary or involuntary. The Executive agrees to notify the Company promptly in the event the Executive learns of any violation of the foregoing by others or of any other misappropriation or unauthorized access, use, reproduction, or reverse engineering of, or tampering with any Facilities and Information Technology Resources or other Company property or materials by others.

13.2 <u>Exit Obligations</u>. Upon (a) voluntary or involuntary termination of the Executive's employment or (b) the Company's request at any time during the Executive's employment, the Executive shall (i) provide or return to the Company any and all Company property, including keys, key cards, access cards, identification cards, security devices, employer credit cards, network access devices, computers, cell phones, smartphones, PDAs, pagers, fax machines, equipment, speakers, webcams, manuals, reports, files, books, compilations, work product, email messages, recordings, tapes, disks, thumb drives, or other removable information storage devices, hard drives, negatives, and data and all Company documents and materials belonging to the Company and stored in any fashion, including but not limited to those that constitute or contain any Confidential Information or Work Product, that are in the possession or control of the Executive, whether they were provided to the Executive by the Company or any of its business associates or created by the Executive in connection with the Executive's employment by the Company; and (ii) delete or destroy all copies of any such documents and materials not returned to the Company that remain in the Executive's possession or control, including those stored on any non-Company devices, networks, storage locations, and media in the Executive's possession or control.

14. <u>Publicity</u>. The Executive hereby irrevocably consents to any and all uses and displays, by the Company and its agents, representatives, and licensees, of the Executive's name, voice, likeness, image, appearance, and biographical information in, on or in connection with any pictures, photographs, audio, and video recordings, digital images, websites, television programs and advertising, other advertising and publicity, sales and marketing brochures, books, magazines, other publications, CDs, DVDs, tapes, and all other printed and electronic forms and media throughout the world, at any time during or after the Employment Term, for all legitimate commercial and business purposes of the Company ("**Permitted Uses**") without further consent from or royalty, payment, or other compensation to the Executive. The Executive hereby forever waives and releases the Company and its directors, officers, employees, and agents from any and all claims, actions, damages, losses, costs, expenses, and liability of any kind, arising under any legal or equitable theory whatsoever at any time during or after the Employment Term, arising directly or indirectly from the Company's and its agents', representatives', and licensees' exercise of their rights in connection with any Permitted Uses.

15. <u>Governing Law; Jurisdiction and Venue</u>. This Agreement, for all purposes, shall be construed in accordance with the laws of California without regard to conflicts of law principles. Any action or proceeding by either of the parties to enforce this Agreement shall be brought only in a state or federal court located in the state of California, County of San Bernardino. The parties hereby irrevocably submit to the exclusive jurisdiction of such courts and waive the defense of inconvenient forum to the maintenance of any such action or proceeding in such venue.

16. <u>Entire Agreement</u>. Unless specifically provided herein, this Agreement contains all of the understandings and representations between the Executive and the Company pertaining to the subject matter hereof and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, with respect to such subject matter. The parties mutually agree that the Agreement can be specifically enforced in court and can be cited as evidence in legal proceedings alleging breach of the Agreement.

17. <u>Modification and Waiver</u>. No provision of this Agreement may be amended or modified unless such amendment or modification is agreed to in writing and signed by the Executive and the Chairman of the Board of the Company. No waiver by either of the parties of any breach by the other party hereto of any condition or provision of this Agreement to be performed by the other party hereto shall be deemed a waiver of any similar or dissimilar provision or condition at the same or any prior or subsequent time, nor shall the failure of or delay by either of the parties in exercising any right, power, or privilege hereunder operate as a waiver thereof to preclude any other or further exercise thereof or the exercise of any other such right, power, or privilege.

18. <u>Severability</u>. Should any provision of this Agreement be held by a court of competent jurisdiction to be enforceable only if modified, or if any portion of this Agreement shall be held as unenforceable and thus stricken, such holding shall not affect the validity of the remainder of this Agreement, the balance of which shall continue to be binding upon the parties with any such modification to become a part hereof and treated as though originally set forth in this Agreement.

The parties further agree that any such court is expressly authorized to modify any such unenforceable provision of this Agreement in lieu of severing such unenforceable provision from this Agreement in its entirety, whether by rewriting the offending

provision, deleting any or all of the offending provision, adding additional language to this Agreement or by making such other modifications as it deems warranted to carry out the intent and agreement of the parties as embodied herein to the maximum extent permitted by law.

The parties expressly agree that this Agreement as so modified by the court shall be binding upon and enforceable against each of them. In any event, should one or more of the provisions of this Agreement be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions hereof, and if such provision or provisions are not modified as provided above, this Agreement shall be construed as if such invalid, illegal, or unenforceable provisions had not been set forth herein.

19. Captions. Captions and headings of the sections and paragraphs of this Agreement are intended solely for convenience and no provision of this Agreement is to be construed by reference to the caption or heading of any section or paragraph.

20. Counterparts. This Agreement may be executed in separate counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

21. Notification to Subsequent Employer. When the Executive's employment with the Company terminates, the Executive agrees to notify any subsequent employer of the restrictive covenants sections contained in this Agreement. The Executive will also deliver a copy of such notice to the Company before the Executive commences employment with any subsequent employer. In addition, the Executive authorizes the Company to provide a copy of the restrictive covenants sections of this Agreement to third parties, including but not limited to, the Executive's subsequent, anticipated, or possible future employer.

22. Successors and Assigns. This Agreement is personal to the Executive and shall not be assigned by the Executive. Any purported assignment by the Executive shall be null and void from the initial date of the purported assignment. The Company may assign this Agreement to any successor or assign (whether direct or indirect, by purchase, merger, consolidation, or otherwise) to all or substantially all of the business or assets of the Company. This Agreement shall inure to the benefit of the Company and permitted successors and assigns.

23. Notice. Notices and all other communications provided for in this Agreement shall be in writing and shall be delivered personally or sent by registered or certified mail, return receipt requested, or by overnight carrier to the parties at the addresses set forth below (or such other addresses as specified by the parties by like notice):

If to the Company:

Chairman of the Board
1845 Business Center Dr., Suite 215
San Bernardino, CA 92408

If to the Executive:

1515 Lucas Lane
Redlands, CA 92375

24. Representations of the Executive. The Executive represents and warrants to the Company that:

(a) The Executive's acceptance of employment with the Company and the performance of duties hereunder will not conflict with or result in a violation of, a breach of, or a default under any contract, agreement, or understanding to which the Executive is a party or is otherwise bound.

(b) The Executive's acceptance of employment with the Company and the performance of duties hereunder will not violate any non-solicitation, non-competition, or other similar covenant or agreement of a prior employer.

25. Withholding. The Company shall have the right to withhold from any amount payable hereunder any Federal, state, and local taxes in order for the Company to satisfy any withholding tax obligation it may have under any applicable law or regulation.

26. Joint Drafting. This Agreement is the product of negotiation and preparation by and among the parties and their respective attorneys. Neither this Agreement nor any provision thereof shall be deemed prepared or drafted by one party or another, or its attorneys, and shall not be construed more strongly against any party. Additionally, the parties hereby waive the provisions of California Civil Code, Section 1654, which provides:

"In cases of uncertainty not removed by the proceeding rules, the language of a contract shall be interpreted most strongly against the party who caused the uncertainty to exist."

27. Survival. Upon the expiration or other termination of this Agreement, the respective rights and obligations of the parties

hereto shall survive such expiration or other termination to the extent necessary to carry out the intentions of the parties under this Agreement.

28.  Attorney's fees. In the event of any action, suit or other proceeding concerning the interpretation, validity, performance or breach of any of the terms and conditions of this Agreement, the prevailing party shall recover reasonable attorney's fees, costs and expenses incurred in each and every such action, suit or other proceeding, including any and all appeals and/or petitions relating thereto.

29.  Acknowledgement of Full Understanding. THE EXECUTIVE ACKNOWLEDGES AND AGREES THAT THE EXECUTIVE HAS FULLY READ, UNDERSTANDS AND VOLUNTARILY ENTERS INTO THIS AGREEMENT. THE EXECUTIVE ACKNOWLEDGES AND AGREES THAT THE EXECUTIVE HAS HAD AN OPPORTUNITY TO ASK QUESTIONS AND CONSULT WITH AN ATTORNEY OF THE EXECUTIVE'S CHOICE BEFORE SIGNING THIS AGREEMENT.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

The Original Mowbray's Tree Service, Inc.

By_____
Name: Robin Mowbray
Title: Director

EXECUTIVE
Signature: _____
Print Name: Ronnie Jordan

‹ Back

Stephen ›

# Search

**Tom Melzoni**  ›

Tough to know with
Covid. Pastor is a grea...

Wed, Sep 16, 6:56 PM

### Monday

›



**Kosha Pino**

That's a start, butt... it's
more than that. Begga...

›

### Stephen Cho

Thanks **Cho**
**10/9/20**

Fri, Sep 18, 9:37 AM

›

Any way I need to prep for the meet-
ing?

No.... nothing.... see you there

### Josh Jordan ICE

Ok

You can have **chocolate**
delight at Thanksgivin...
**10/6/20**



**Exhibit C**

**RECORDING REQUESTED BY:**
Fidelity National Title Company

**Escrow No.:** 00601225-005-SM5
**Title No.:** 992-30006979-A-KC6

**WHEN RECORDED MAIL DOCUMENT AND
TAX STATEMENT TO:**
Gloria Mowbray
1515 Lucas Lane
Redlands, CA 92374

Electronically Recorded in Official Records, County of San Bernardino    5/10/2019
01:49 PM
ALS

**BOB DUTTON**
ASSESSOR - RECORDER - CLERK
688  Fidelity National Title MA

Doc# **2019-0151325**

| | |
|---|---|
| Titles  1 | Pages  11 |
| Fees | 44.00 |
| Taxes | 760.65 |
| CA SB2 Fee | .00 |
| Others | .00 |
| Paid | 804.65 |

**APN:** 0168-071-62-0-000

SPACE ABOVE THIS LINE FOR RECORDER'S USE

The undersigned declares exemption under the following:

Exempt from fee per GC 27388.1 (a) (2); recorded in connection
with a transfer subject to the imposition of documentary transfer tax
'Concurrently herewith'

# GRANT DEED

THE UNDERSIGNED GRANTOR(s) DECLARE(s)
DOCUMENTARY TRANSFER TAX is $ _____760.65_____    CITY TAX $ _0.00_

☒ computed on full value of interest or property conveyed, or
☐ computed on full value of items or encumbrances remaining at time of sale,
☐ Unincorporated area    ☒ City of _Redlands_____, and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**Redlands Pioneer, LLC, a Delaware limited liability company**

hereby GRANT(s) to
Mowbray Waterman Property, LLC, A California limited liabilty
~~Gloria Mowbray~~                                    company

the following real property in the County of **San Bernardino**, State of California:

**Legal Description exhibit A, attached hereto and made a part hereof.**

**Addendum to Grant Deed attached hereto and made a part hereof.**

Document Date: _May 6, 2019_

**GRANTOR**
Redlands Pioneer, LLC, a Delaware limited liability company

By: Diversified Pacific Communities, LLC,
a Delaware limited liabilty company
its Managing Member

By: Kristinna Sellers
**Authorized Signer**

Grant Deed
GRANTDEE (DSI Rev. 4/6/18)                    Page 1

Last Saved:  5/6/2019 11:42 AM by BH
Escrow No.:  00601225-005-SM5

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of ___California_____ )  SS:
County of _San Bernardino_____ )
On _May 6, 2019_____ before me, _Kim A. Maenza_____
a Notary Public, personally appeared _Kristinna Sellers_____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

KIM A. MAENZA
Notary Public – California
San Bernardino County
Commission # 2193146
My Comm. Expires Apr 22, 2021

## EXHIBIT A

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED  REDLANDS, IN THE COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 46 OF TRACT NO. 18979, IN THE CITY OF REDLANDS, AS SHOWN ON MAP FILED IN BOOK 347, PAGES 1 THROUGH 5, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAN BERNARDINO COUNTY, CALIFORNIA.

# ADDENDUM TO GRANT DEED
# RE SB 800

<u>Fit and Finish Limited One Year Warranty</u>.  Grantee, by accepting title to the subject property, hereby acknowledges that Grantor has provided, and Buyer has received, Grantor's Fit and Finish One Year Limited Warranty.  Grantee shall cause a copy of such Fit and Finish One Year Limited Warranty to be provided to any subsequent purchaser of the subject property who acquires the property on or before the first anniversary of the date of the recordation of this Grant Deed in the official records of the county in which the subject property is located.

<u>Maintenance and Preventive Maintenance Recommendations</u>.  Grantee, by accepting title to the subject property, hereby acknowledges that Grantor has provided, and Buyer has received, all maintenance and preventive maintenance recommendations that pertain to the subject property as of the date such information was compiled by Grantor.  Notwithstanding the foregoing, Grantor and Grantee acknowledge that as of the date hereof, all such relevant information may not be available and, therefore, Grantor shall have the right, by written notice to Grantee, to supplement and/or amend such maintenance and preventive maintenance recommendations from time to time.  Nothing in the maintenance and preventive maintenance recommendations provided by Grantor to Grantee is intended to constitute, or shall be interpreted to constitute, "enhanced protection agreement" as defined in Section 901 of the California Civil Code.  Grantee agrees that Grantee shall faithfully follow all such maintenance and preventive maintenance recommendations and Grantee shall cause any tenant of Grantee to follow all such recommendations.  Grantee agrees that Grantee shall provide all such maintenance and preventive maintenance recommendations to any subsequent purchaser of the subject property from Grantee.

<u>Products Maintenance, Preventive Maintenance and Limited Warranty Information</u>.  Grantee, by accepting title to the subject property, hereby acknowledges that Grantor has provided, and Buyer has received, all manufactured product maintenance, preventive maintenance and limited warranty information that pertain to the subject property as of the date such information was compiled by Grantor.  Notwithstanding the foregoing, Grantor and Grantee acknowledge that as of the date hereof, all such relevant information may not be available and, therefore, Grantor shall have the right, by written notice to Grantee, to supplement and/or amend such manufactured product maintenance, preventive maintenance and limited warranty information from time to time.  Nothing in the products maintenance, preventive maintenance and limited warranty information provided by Grantor to Grantee is intended to constitute, or shall be interpreted to constitute, "enhanced protection agreement" as defined in Section 901 of the California Civil Code.  Grantee agrees that Grantee shall faithfully follow all such maintenance recommendations contained in all such manufactured product maintenance, preventive maintenance and limited warranty information and Grantee shall cause any tenant of Grantee to follow all such recommendations.  Grantee agrees that Grantee shall provide all such manufactured

1

Initials    Initials

product maintenance, preventive maintenance and limited warranty information to any subsequent purchaser of the subject property from Grantee.

SB 800 Procedures.  Grantor hereby notifies Grantee of the existence of the pre-litigation procedures as set forth in Chapter 4 of Title 7 (commencing with Section 910) of Part 2 of Division 2 of the California Civil Code and further notifies Grantee that such procedures impact the legal rights of Grantee.  Grantee acknowledges that Grantor has provided to Grantee a written copy of Title 7 of Part 2 (commencing with Section 895) of Division 2 of the California Civil Code.  Grantee hereby acknowledges and agrees that Grantee shall provide such documents to any subsequent purchaser of the subject property from Grantee.

Indemnity of Grantor by Grantee.  Grantee hereby agrees to indemnify, defend and hold Grantor harmless for any loss, costs or damages arising from Grantee's failure to carry out Grantee's obligations under the terms of this Addendum to Grant Deed re SB 800.

Covenants to Run With the Land.  The subject property shall be held, conveyed, hypothecated, encumbered, leased, rented, used and occupied subject to the covenants, conditions, restrictions and other limitations set forth in this Addendum to Grant Deed re SB 800 (collectively, the **"Restrictions"**).  The Restrictions are intended and shall be construed as covenants and conditions running with and binding the subject property and equitable servitudes upon the subject property, and every part thereof, and all and each of the Restrictions shall be binding upon and burden all persons having or acquiring any right, title or interest in the subject property (during their ownership of such interest), or any part thereof, and their successors and assigns.  Restrictions shall inure to the benefit of Grantor and its successors and assigns.  The Restrictions shall terminate and be of no further force or effect upon the first to occur of (a) the expiration of all applicable statutes of limitations for the filing of a complaint or suit or other legal remedies against Grantor in any way relating to or arising out of the development, construction and sale of the subject property by Grantor, or (b) the date fifteen (15) years from the date of the recordation of this Grant Deed in the Official Records of the county in which the subject property is located.

Rights of Mortgagees.  Notwithstanding any other provision of this Addendum to Grant Deed, no violation of any of the covenants, conditions or restrictions contained herein shall defeat or render invalid, affect or impair the lien or charge of any mortgage or deed of trust on the subject property made in good faith and for value, but such covenants, conditions and restrictions shall be binding upon and effective against any owner of the subject property, or any portion thereof, whose title thereto is acquired by foreclosure, trustee sale or otherwise under such mortgage or deed of trust.

Affiliated Contractor.  In the event any "affiliated contractor" (defined in Civil Code Section 911) is utilized in the construction of any of the improvements to the Property, the provisions of this Addendum shall apply to such contractor and the delivery of all SB 800-related notices, documentation and materials described above shall be

2



Initials        Initials

deemed given or delivered on behalf of such contractor. The parties intend and agree that any entity that falls within the definition of "affiliated contractor" is an intended third party beneficiary of the provisions of this Addendum.

**SELLER:**

Redlands Pioneer, LLC
a Delaware limited liability company

By:     DIVERSIFIED PACIFIC
        COMMUNITIES, LLC.
        a Delaware limited liability company,
        Its: Managing Member

By: _____
    Kristinna Sellers
Its: Authorized Representative

**BUYER(S):** Mowbray Waterman Property, LLC

Gloria Mowbray,          4-28-19
Managing Member          4-28-19

3

Initials     Initials

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                                    CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _San Bernardino_

On _May 6, 2019_ before me, _Kim A. Maenza, Notary Public_,
    *Date*                       *Here Insert Name and Title of the Officer*

personally appeared _Kristinna Selters_
                              *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

> KIM A. MAENZA
> Notary Public - California
> San Bernardino County
> Commission # 2193146
> My Comm. Expires Apr 22, 2021

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                          *Signature of Notary Public*

*Place Notary Seal and/or Stamp Above*

━━━━━━━━━━━━━━━━━━ **OPTIONAL** ━━━━━━━━━━━━━━━━━━

*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
□ Corporate Officer – Title(s): _____
□ Partner – □ Limited □ General
□ Individual    □ Attorney in Fact
□ Trustee    □ Guardian of Conservator
□ Other: _____
Signer is Representing: _____

Signer's Name: _____
□ Corporate Officer – Title(s): _____
□ Partner – □ Limited □ General
□ Individual    □ Attorney in Fact
□ Trustee    □ Guardian of Conservator
□ Other: _____
Signer is Representing: _____

©2017 National Notary Association

ADDENDUM TO GRANT DEED
RE SB 800

Fit and Finish Limited One Year Warranty. Grantee, by accepting title to the subject property, hereby acknowledges that Grantor has provided, and Buyer has received, Grantor's Fit and Finish One Year Limited Warranty. Grantee shall cause a copy of such Fit and Finish One Year Limited Warranty to be provided to any subsequent purchaser of the subject property who acquires the property on or before the first anniversary of the date of the recordation of this Grant Deed in the official records of the county in which the subject property is located.

Maintenance and Preventive Maintenance Recommendations. Grantee, by accepting title to the subject property, hereby acknowledges that Grantor has provided, and Buyer has received, all maintenance and preventive maintenance recommendations that pertain to the subject property as of the date such information was compiled by Grantor. Notwithstanding the foregoing, Grantor and Grantee acknowledge that as of the date hereof, all such relevant information may not be available and, therefore, Grantor shall have the right, by written notice to Grantee, to supplement and/or amend such maintenance and preventive maintenance recommendations from time to time. Nothing in the maintenance and preventive maintenance recommendations provided by Grantor to Grantee is intended to constitute, or shall be interpreted to constitute, "enhanced protection agreement" as defined in Section 901 of the California Civil Code. Grantee agrees that Grantee shall faithfully follow all such maintenance and preventive maintenance recommendations and Grantee shall cause any tenant of Grantee to follow all such recommendations. Grantee agrees that Grantee shall provide all such maintenance and preventive maintenance recommendations to any subsequent purchaser of the subject property from Grantee.

Products Maintenance, Preventive Maintenance and Limited Warranty Information. Grantee, by accepting title to the subject property, hereby acknowledges that Grantor has provided, and Buyer has received, all manufactured product maintenance, preventive maintenance and limited warranty information that pertain to the subject property as of the date such information was compiled by Grantor. Notwithstanding the foregoing, Grantor and Grantee acknowledge that as of the date hereof, all such relevant information may not be available and, therefore, Grantor shall have the right, by written notice to Grantee, to supplement and/or amend such manufactured product maintenance, preventive maintenance and limited warranty information from time to time. Nothing in the products maintenance, preventive maintenance and limited warranty information provided by Grantor to Grantee is intended to constitute, or shall be interpreted to constitute, "enhanced protection agreement" as defined in Section 901 of the California Civil Code. Grantee agrees that Grantee shall faithfully follow all such maintenance recommendations contained in all such manufactured product maintenance, preventive maintenance and limited warranty information and Grantee shall cause any tenant of Grantee to follow all such recommendations. Grantee agrees that Grantee shall provide all such manufactured

1


Initials _____    Initials _____

product maintenance, preventive maintenance and limited warranty information to any subsequent purchaser of the subject property from Grantee.

SB 800 Procedures. Grantor hereby notifies Grantee of the existence of the pre-litigation procedures as set forth in Chapter 4 of Title 7 (commencing with Section 910) of Part 2 of Division 2 of the California Civil Code and further notifies Grantee that such procedures impact the legal rights of Grantee. Grantee acknowledges that Grantor has provided to Grantee a written copy of Title 7 of Part 2 (commencing with Section 895) of Division 2 of the California Civil Code. Grantee hereby acknowledges and agrees that Grantee shall provide such documents to any subsequent purchaser of the subject property from Grantee.

Indemnity of Grantor by Grantee. Grantee hereby agrees to indemnify, defend and hold Grantor harmless for any loss, costs or damages arising from Grantee's failure to carry out Grantee's obligations under the terms of this Addendum to Grant Deed re SB 800.

Covenants to Run With the Land. The subject property shall be held, conveyed, hypothecated, encumbered, leased, rented, used and occupied subject to the covenants, conditions, restrictions and other limitations set forth in this Addendum to Grant Deed re SB 800 (collectively, the **"Restrictions"**). The Restrictions are intended and shall be construed as covenants and conditions running with and binding the subject property and equitable servitudes upon the subject property, and every part thereof, and all and each of the Restrictions shall be binding upon and burden all persons having or acquiring any right, title or interest in the subject property (during their ownership of such interest), or any part thereof, and their successors and assigns. Restrictions shall inure to the benefit of Grantor and its successors and assigns. The Restrictions shall terminate and be of no further force or effect upon the first to occur of (a) the expiration of all applicable statutes of limitations for the filing of a complaint or suit or other legal remedies against Grantor in any way relating to or arising out of the development, construction and sale of the subject property by Grantor, or (b) the date fifteen (15) years from the date of the recordation of this Grant Deed in the Official Records of the county in which the subject property is located.

Rights of Mortgagees. Notwithstanding any other provision of this Addendum to Grant Deed, no violation of any of the covenants, conditions or restrictions contained herein shall defeat or render invalid, affect or impair the lien or charge of any mortgage or deed of trust on the subject property made in good faith and for value, but such covenants, conditions and restrictions shall be binding upon and effective against any owner of the subject property, or any portion thereof, whose title thereto is acquired by foreclosure, trustee sale or otherwise under such mortgage or deed of trust.

Affiliated Contractor. In the event any "affiliated contractor" (defined in Civil Code Section 911) is utilized in the construction of any of the improvements to the Property, the provisions of this Addendum shall apply to such contractor and the delivery of all SB 800-related notices, documentation and materials described above shall be

Initials          Initials

deemed given or delivered on behalf of such contractor. The parties intend and agree that any entity that falls within the definition of "affiliated contractor" is an intended third party beneficiary of the provisions of this Addendum.

SELLER:

Redlands Pioneer, LLC
a Delaware limited liability company

By:    DIVERSIFIED PACIFIC
       COMMUNITIES, LLC.
       a Delaware limited liability company,
       Its: Managing Member

By: _____
        Kristinna Sellers
Its: Authorized Representative

BUYER(S): MowBray Waterman Property, LLC

_____ 4-28-19
 Gloria Mowbray,
Managing Member           4-28-19

3

## CALIFORNIA CERTIFICATE OF ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )
County of _SAN BERNARDINO_ )

On _MAY 09, 2019_ before me, _GEORGE RUIZ, NOTARY PUBLIC,_
(here insert name and title of the officer)

personally appeared _GLORIA MOWBRAY_ ——————————————

——————————————————————————————————————,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the
State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

**GEORGE RUIZ**
COMM. #2167357
Notary Public - California
San Bernardino County
My Comm. Expires Nov. 6, 2020

Signature _____

(Seal)

---

## Optional Information

Although the information in this section is not required by law, it could prevent fraudulent removal and reattachment of this acknowledgment to an unauthorized document and may prove useful to persons relying on the attached document.

### Description of Attached Document

The preceding Certificate of Acknowledgment is attached to a document titled/for the purpose of _ADDENDUM TO GRANT DEED RE SB 800_,
containing _03_ pages, and dated _____.

The signer(s) capacity or authority is/are as:
- [ ] Individual(s)
- [ ] Attorney-in-Fact
- [ ] Corporate Officer(s) _____
      Title(s)
- [ ] Guardian/Conservator
- [ ] Partner - Limited/General
- [ ] Trustee(s)
- [ ] Other: _____

representing: _____
Name(s) of Person(s) or Entity(ies) Signer is Representing

### Additional Information

**Method of Signer Identification**

Proved to me on the basis of satisfactory evidence:
- ○ form(s) of identification  ○ credible witness(es)

Notarial event is detailed in notary journal on:
       Page #          Entry #

Notary contact: _____

**Other**
- [ ] Additional Signer(s)    [ ] Signer(s) Thumbprint(s)
- [ ] _____

© Copyright 2007-2016 Notary Rotary, Inc. PO Box 41400, Des Moines, IA 50311-0507. All Rights Reserved. Item Number 101772. Please contact your Authorized Reseller to purchase copies of this form.

PROOF OF SERVICE

STATE OF CALIFORNIA )
COUNTY OF ORANGE )         ss:

The undersigned certifies and declares as follows:

I am over the age of 18 and not a party to this action. My business address is 2331 West Lincoln Avenue, Anaheim, California 92801, which is in the county where the mailing described below took place.

On July 26, 2022 I served the within **First Amended Complaint** by:

[ ] (Facsimile Transmission) I caused the above mentioned document to be served by facsimile transmission to the parties at the fax numbers listed on the attached service list.

[ ] (Mail) I placed a true and correct copy thereof in a sealed envelope addressed as set forth on the attached service list and caused such envelope, with first class postage thereon fully prepaid, to be placed in the U.S. Mail at Anaheim, California, and certify that such envelope was placed for collection and mailing following ordinary business practices.

[ ] (Overnight Delivery) I placed a true and correct copy thereof in a sealed envelope addressed as set forth on the attached service list and caused such envelope to be delivered the next day by overnight courier to the addressee(s) listed on the attached service list.

[ ] (Personal Service) I placed a true and correct copy thereof in a sealed envelope addressed as set forth on the attached service list and caused such envelope to be delivered by hand as set forth on the attached service list.

[X] (E-mail) I caused the above mentioned document to be served via PDF e-mail attachment to the parties at the e-mail addresses listed on the attached service list.

[X] (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed July 26, 2022 at Anaheim, California.

_____
Typed Name: Becky Phillips

SERVICE LIST

**<u>Attorney for Defendants:</u>**
Michael I. Kim, Esq.
CKB VIENNA, LLP
9531 Pittsburgh Avenue
Rancho Cucamonga, CA 91730
Facsimile: (909) 614-7400
mkim@ckbvienna.com

1  Kenneth J. Catanzarite (SBN 113750)
   kcatanzarite@catanzarite.com
2  Brandon E. Woodward (SBN 284621)
   bwoodward@catanzarite.com
3  CATANZARITE LAW CORPORATION
   2331 West Lincoln Avenue
4  Anaheim, California 92801
   Telephone: (714) 520-5544
5  Facsimile: (714) 520-0680

6  Attorneys for Plaintiff

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    COUNTY OF SAN BERNARDINO

10  RONNIE D. JORDAN, an individual,        Case No. CIVSB2201281

11          Plaintiff,                      Assigned for All Purposes to the
                                            Honorable Wilfred J. Schneider, Jr.
12      vs.                                 Dept. S32

13  THE ORIGINAL MOWBRAY'S TREE            **JOINT STATEMENT OF CASE**
    SERVICE, INCORPORATED, a California
14  corporation; MOWBRAY WATERMAN
    PROPERTY, LLC, a California limited liability   DATE:    October 17, 2024
15  company, RICHARD JOHN MOWBRAY, an       TIME:    10:00 A.M.
    individual; ROBIN MOWBRAY, an individual;   DEPT:    S32
16  and Does 1 through 50 inclusive,

17          Defendants.                      Complaint: January 18, 2022
                                            Trial:     October 21, 2024
18

19

20

21

22

23

24

25          Plaintiff Ronnie D. Jordan ("Plaintiff") Along With Defendant The Original Mowbray's

26  Tree Service, Inc., Mowbray Waterman Property, LLC, Richard John Mowbray, Robin

27  Mowbray (collectively "Defendants") submit the following Joint Statement of Case for trial in

28  this matter:

1

**Joint Statement of Case**

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

OCT 17 2024

BY _____
ANTHONY MARTINEZ, DEPUTY

1     The plaintiff Ronnie Jordan entered into an oral contract in 2018 with defendant The

2   Original Mowbray's Tree Service, Inc. to relocate from Florida to San Bernardino, California to

3   be employed as its Chief Executive Officer or CEO in the tree service and vegetation

4   management industry in consideration for an annual salary of $250,000, annual bonuses of 10%

5   of net profits, and later title to real property located in San Bernardino. Later in 2020 a written

6   contract was signed calling for a base salary and a bonus structure. Ronnie Jordan disputes that

7   the 2020 written contract is enforceable. Defendants The Original Mowbray's Tree Service, Inc.,

8   Mowbray Waterman Property, LLC, Richard John Mowbray, and Robin Mowbray dispute the

9   10% of net profits component of Ronnie Jordan's oral contact.

10     Ronnie Jordan as plaintiff in this case alleges defendants The Original Mowbray's Tree

11   Service, Inc., Mowbray Waterman Property, LLC, Richard John Mowbray, and Robin Mowbray

12   breached both the oral and if enforceable written employment contract, committed promissory

13   fraud, breached their covenant of good faith and fair dealing, and induced Mr. Jordan to relocate

14   from Florida to California by means of misrepresentations causing Mr. Jordan injury.

15     The Defendants deny they committed any wrongful acts against Plaintiff and as to the

16   2020 written agreement contend Ronnie Jordan was terminated for cause. Ronnie Jordan

17   disputes the 2020 written agreement is enforceable, that he was terminated for cause and if

18   enforceable was breached.

19     The Judge will instruct you the Jury on what the law requires Plaintiff to prove to hold

20   each Defendant responsible for Plaintiff's alleged claims.

21     We thank you for performing the important civic duty of serving as jurors.

22

23   Dated: ___14/15___, 2024.          CATANZARITE LAW CORPORATION

                              By: _____
24                                 Kenneth J. Catanzarite
                                   Brandon E. Woodward
25                                 Attorneys Plaintiff

26   Dated: ___10/15___, 2024.          CKB VIENNA, LLP

                              By: _____
27                                 Michael I. Kim, Esq
                                   Steven Cho, Esq.
28                                 Attorneys for Defendants

                                        2

1    Kenneth J. Catanzarite (SBN 113750)
     kcatanzarite@catanzarite.com
2    Brandon E. Woodward (SBN 284621)
     bwoodward@catanzarite.com
3    CATANZARITE LAW CORPORATION
     2331 West Lincoln Avenue
4    Anaheim, California 92801
     Telephone: (714) 520-5544
5    Facsimile: (714) 520-0680

6    Attorneys for Plaintiff

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

OCT 17 2024

BY _____
ANTHONY MARTINEZ, DEPUTY

7

8             SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                 COUNTY OF SAN BERNARDINO

10   RONNIE D. JORDAN, an individual,

11         Plaintiff,

12       vs.

13   THE ORIGINAL MOWBRAY'S TREE
     SERVICE, INCORPORATED, a California
14   corporation; MOWBRAY WATERMAN
     PROPERTY, LLC, a California limited liability
15   company, RICHARD JOHN MOWBRAY, an
     individual; ROBIN MOWBRAY, an individual;
16   and Does 1 through 50 inclusive,

17   Defendants.

Case No. CIVSB2201281

Assigned for All Purposes to the
Honorable Wilfred J. Schneider, Jr.
Dept. S32

**JOINT TRIAL EXHIBIT LIST**

DATE:      October 17, 2024
TIME:      10:00 A.M.
DEPT:      S32

Complaint: January 18, 2022
Trial:        October 21, 2024

24       Plaintiff RONNIE D. JORDAN ("Plaintiff") along with defendants THE ORIGINAL

25   MOWBRAY'S TREE SERVICE, INC, MOWBRAY WATERMAN PROPERTY, LLC,

26   RICHARD JOHN MOWBRAY, ROBIN MOWBRAY (collectively "Defendants") submit the

27   following Joint Trail Exhibit list, subject to redactions and/or revisions and/or *Evidence Code*

28   §402 hearing for trial in this matter:

1

__Joint Trial Exhibit List__

| Trial Ex. | Description | Offered by (π/Δ) | Stipulate to Authen.? (Yes/No) | Stipulate to Admiss.? (Yes/No) | Evidentiary Objection | Date Marked for ID | Date Admitted |
|---|---|---|---|---|---|---|---|
| | **JOINT EXHIBIT LIST** | | | | | | |
| | **Plaintiff's Exhibits** | | | | | | |
| 1 | Ronnie Jordan Narrative | π | | | | | |
| 2 | Ronnie Jordan's Resume | π | | | | | |
| 3 | Mowbray Financial Statements 2017 to May 2018 | π | | | | | |
| 4 | Meeting Memo May 28, 2018 | π | | | | | |
| 5 | June 2018 Ronnie CEO Announcement by Rick Mowbray | π | | | | | |
| 6 | 2020 Jordan Resume as Mowbray's CEO | π | | | | | |
| 7 | July 17, 2018 Ronnie CEO Shotcaller Facebook Announcement | π | | | | | |
| 8 | September 13, 2018 Texts $750 Week Per Diem, Never Doubt Not Good Move | π | | | | | |
| 9 | December 2018 Rick, Robin, Denise  Ronnie Preaching Give 10% | π | | | | | |
| 10 | Various Meeting Minutes | π Δ | | | | | |
| 11 | 2018 Monthly Sales | π | | | | | |
| 12 | March 15, 2019 Cho Letter to Auditor 2018 Year | π | | | | | |
| 13 | Leadership Team Ronnie CEO Feb 2019 - leadership team | π | | | | | |
| 14 | March 2019 Text Exchange Ronnie $19 Million Future Had Been In Doubt Ex. 14-Ex. 17 - 190305 DM-RJ Rick never had someone like you  last year thought future doubt | π | | | | | |

2

| Trial Ex. | Description | Offered by (π/Δ) | Stipulate to Authen.? (Yes/No) | Stipulate to Admiss.? (Yes/No) | Evidentiary Objection | Date Marked for ID | Date Admitted |
|---|---|---|---|---|---|---|---|
| | **JOINT EXHIBIT LIST** | | | | | | |
| 15 | May 10, 2019 Grant Deed (1515 Lucas Ln) | π | | | | | |
| 16 | Typed Version Meeting Memo to Mowbrays | π | | | | | |
| 17 | November 26, 2019 Veg Man MSA - Wildfire | π | | | | | |
| 18 | December 2019 Facetime Call Mobrays with Ronnie | π | | | | | |
| 19 | December 25, 2019 Group Text Rick to Jordan Reason Here no 2nd RoM Love u guys | π | | | | | |
| 20 | January 23, 2020 Ricky to All Rick Terminated | π | | | | | |
| 21 | March 5, 2020 $500,000 SCE Invoice | π Δ | | | | | |
| 22 | March 18, 2020 Robin to Jordan Restraining Orders has proof | π | | | | | |
| 23 | April 24, 2020 Robin to Jordan Mowbray | π | | | | | |
| 24 | June 3, 2020 Phang to Jordan GCL Invoices Flexible Inquiry | π | | | | | |
| 25 | September 16, 2020 Jordan Signed Employment Agreement | π Δ | | | | | |
| 26 | 2020 Thanksgiving Texts Ricky Removes Jordan | π | | | | | |
| 27 | 2015-2020 HUB Mid-Term Ins & Management Planning | π Δ | | | | | |
| 28 | December 15, 2020 Mark Shipp Email on Insurance and Wildfire | π | | | | | |
| 29 | August-September 2020 Randy GCL Terminated - PIs and Buckets | π | | | | | |

3

| | | JOINT EXHIBIT LIST | | | | | |
|---|---|---|---|---|---|---|---|
| Trial Ex. | Description | Offered by (π/Δ) | Stipulate to Authen.? (Yes/No) | Stipulate to Admiss.? (Yes/No) | Evidentiary Objection | Date Marked for ID | Date Admitted |
| 30 | December 28, 2020 Flexible Demand Letter to Kim GCL $4,152,917 | π Δ | | | | | |
| 31 | So Cal Edison Undated SCE RFP 80m Ins req consider 25m | π | | | | | |
| 32 | Est. December 2021 Settlement Agreement Draft $3,500,000 With Jordan Representations | π Δ | | | | | |
| 33 | June 29, 2021 SCE Withdrawal of Default | π Δ | | | | | |
| 34 | January 7, 2022 Termination Letter Ricky to Jordan | π Δ | | | | | |
| 35 | February 10, 2022 Jordan Notice Term Emp & Occupancy | π | | | | | |
| 36 | January 13, 2022 Robin Decl against Rick 20k | π | | | | | |
| 37 | June 1, 2022 Notice of Unlawful Detainer | π | | | | | |
| 38 | June 1, 2022 Unlawful Detainer Complaint Package mailed to Jordan | π | | | | | |
| 39 | December 2018 & 2017 Financial Statement | π | | | | | |
| 40 | 2018-2019 Financials and YTD 2020 | π | | | | | |
| 41 | 2020 Income Statement & Balance Sheet | π | | | | | |
| 42 | 2021 Income Statement & Balance Sheet | π | | | | | |
| 43 | Balance Sheet - 2022-2023 YTD | π | | | | | |
| 44 | P&L 2022 - 2023 YTD | π | | | | | |
| 45 | Creal Report | π Δ | | | | | |

4

| | JOINT EXHIBIT LIST | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Trial Ex. | Description | Offered by (π/Δ) | Stipulate to Authen.? (Yes/No) | Stipulate to Admiss.? (Yes/No) | Evidentiary Objection | Date Marked for ID | Date Admitted |
| 46 | Expert Ken Creal Damages | π | | | | | |
| 47 | Kahn Report | π Δ | | | | | |
| 48 | March 1, 2022 Richard E. Mowbray Sworn Statement | π | | | | | |
| 49 | June 1, 2023 Ronnie Jordan Depo Transcript | π | | | | | |
| 50 | October 2, 2024 Richard Rick E. Mowbray Depo Transcript | π | | | | | |
| 51 | May 30, 2023 Robin Mowbray Depo Transcript | π | | | | | |
| 52 | June 15, 2023 Robin Mowbray Depo Transcript | | | | | | |
| 53 | June 14, 2023 Richard J. Mowbray Depo Transcript | π | | | | | |
| 54 | September 29, 2023 Alan Phang Depo Transcript | π | | | | | |
| 55 | October 3, 2023 Mark Shipp Depo Transcript | π | | | | | |
| 56 | June 23, 2023 Mike Bartelli Depo Transcript | π | | | | | |
| 57 | September 15, 2023 Josh Caudill Depo Transcript | π | | | | | |
| 58 | June 22, 2023 Greggory Pegg Depo Transcript | π | | | | | |
| 59 | Mowbray's Tax Returns | | | | | | |
| 59-100 | RESERVED | | | | | | |
| 101 | Unsigned employment agreement between Mowbray and Jordan | Δ | | | | | |
| 102 | Mowbray's Employee Handbook | Δ | | | | | |

5

| Trial Ex. | Description | Offered by (π/Δ) | Stipulate to Authen.? (Yes/No) | Stipulate to Admiss.? (Yes/No) | Evidentiary Objection | Date Marked for ID | Date Admitted |
|---|---|---|---|---|---|---|---|
| | **JOINT EXHIBIT LIST** | | | | | | |
| 103 | Fully executed written Employment agreement between Mowbray's and Jordan | Δ | | | | | |
| 104 | Lucas Lane Insurance | Δ | | | | | |
| 105 | Jordan Auto insurance | Δ | | | | | |
| 106 | Email exchange with Southern California Edison regarding Master Services Agreement and Insurance | Δ | | | | | |
| 107 | Mowbray's Insurance Policies | Δ | | | | | |
| 108 | RESERVED | Δ | | | | | |
| 109 | Emails with Flexible | Δ | | | | | |
| 110 | Complaint filed by Mowbray's against Flexible Funding, et al. on 2/1/21 in Case No. CGC-21-598522 | Δ | | | | | |
| 111 | Notice of stay in proceedings in Case No. CGC-21-598522 – RJN | Δ | | | | | |
| 112 | Flexible Funding-Notice of Bankruptcy and of Automatic Stay in Case No. CGC-21-598522 | Δ | | | | | |
| 113 | Cross-Complaint filed by Graham County Land Company against Mowbray's on 2/1/21 in Case No. CGC-21-598522 | Δ | | | | | |
| 114 | First Amended Complaint filed by Mowbray's against ABC Landscaping & Excavation, Inc., et al. in Case No. CIVDS2020971 | Δ | | | | | |

6

| | | | JOINT EXHIBIT LIST | | | | | |
|---|---|---|---|---|---|---|---|---|
| Trial Ex. | Description | Offered by ($\pi/\Delta$) | Stipulate to Authen.? (Yes/No) | Stipulate to Admiss.? (Yes/No) | Evidentiary Objection | Date Marked for ID | Date Admitted |
| 115 | Complaint filed by Mowbray's against Slickrock Development, LLC on April 7, 2022, in Case No. CIVSB2207062 | $\Delta$ | | | | | |
| 116 | Mowbray's judgment against Slickrock | $\Delta$ | | | | | |
| 117 | Apex Lease | $\Delta$ | | | | | |
| 118 | Email exchange with Plaintiff, Mowbray's, and Leo Rodriguez regarding workers compensation insurance and wildfire coverage from March 31, 2020 to April 1, 2020 | $\Delta$ | | | | | |
| 119 | RESERVED | $\Delta$ | | | | | |
| 120 | RESERVED | $\Delta$ | | | | | |
| 121 | RESERVED | $\Delta$ | | | | | |
| 121 | RESERVED | $\Delta$ | | | | | |
| 123 | RESERVED | $\Delta$ | | | | | |
| 124 | RESERVED | $\pi\,\Delta$ | | | | | |
| 125 | Barbara Luna CV | $\Delta$ | | | | | |
| 126 | Barbara Luna Report | $\Delta$ | | | | | |
| 127 | Kenneth Creal CV | $\pi\,\Delta$ | | | | | |
| 128 | Kenneth Creal Report | $\pi\,\Delta$ | | | | | |
| 129 | Lawrence Kahn CV Lawrence Kahn Report | $\pi\,\Delta$ | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

7

Joint Trial Exhibit List

| | JOINT EXHIBIT LIST | | | | | | |
|---|---|---|---|---|---|---|---|
| Trial Ex. | Description | Offered by (π/Δ) | Stipulate to Authen.? (Yes/No) | Stipulate to Admiss.? (Yes/No) | Evidentiary Objection | Date Marked for ID | Date Admitted |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Dated: 10/16 , 2024.  CATANZARITE LAW CORPORATION

By: _____
Kenneth J. Catanzarite
Brandon E. Woodward
Attorneys Plaintiff

Dated: 10/16 , 2024.  CKB VIENNA, LLP

By: _____
M. Stephen Cho
Michael I. Kim
Attorneys for Defendants

8

1  Kenneth J. Catanzarite (SBN 113750)
   kcatanzarite@catanzarite.com
2  Brandon E. Woodward (SBN 284621)
   bwoodward@catanzarite.com
3  CATANZARITE LAW CORPORATION
   2331 West Lincoln Avenue
4  Anaheim, California 92801
   Telephone: (714) 520-5544
5  Facsimile: (714) 520-0680

6  Attorneys for Plaintiff

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

OCT 17 2024

BY _____
ANTHONY MARTINEZ, DEPUTY

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                     COUNTY OF SAN BERNARDINO

10

11  RONNIE D. JORDAN, an individual,          Case No. CIVSB2201281

12              Plaintiff,                     Assigned for All Purposes to the
                                               Honorable Wilfred J. Schneider, Jr.
13       vs.                                   Dept. S32

14  THE ORIGINAL MOWBRAY'S TREE               **JOINT WITNESS LIST**
    SERVICE, INCORPORATED, a California
15  corporation; MOWBRAY WATERMAN
    PROPERTY, LLC, a California limited liability   DATE:    October 17, 2024
16  company, RICHARD JOHN MOWBRAY, an         TIME:    10:00 A.M.
    individual; ROBIN MOWBRAY, an individual;  DEPT:    S32
17  and Does 1 through 50 inclusive,
                                               Complaint: January 18, 2022
18              Defendants.                    Trial:     October 21, 2024

19

20

21

22

23

24       Plaintiff RONNIE D. JORDAN ("Plaintiff") along with Defendant THE ORIGINAL

25  MOWBRAY'S TREE SERVICE, INC, MOWBRAY WATERMAN PROPERTY, LLC,

26  RICHARD JOHN MOWBRAY, ROBIN MOWBRAY (collectively "Defendants") submit the

27  following Joint Witness List for trial in this matter for the Court's use:

28  //

                                    1
                          Joint Witness List

| Name (State if Expert) | Party Calling (π/Δ) | Actually Expected To Testify? (Yes/No) | Brief Description of Testimony | Length of Direct (in hours) | Length of Cross (in hours) | Total Length (in hours) |
|---|---|---|---|---|---|---|
| **Joint Witness List** | | | | | | |
| Ronnie D. Jordan | π | Yes | The basis of his case and claims. | 4.0 | 2.0 | 6.0 |
| Phyllis Jordan | π | Yes | Foundation for MOU. | 0.5 | 0.5 | 1.0 |
| Josh Caudil | π | yes | Safety conditions at company and contract arrangements | 1.0 | 0.5 | 1.5 |
| Mark Shipp | π | yes | Insurance coverage at company including wildfire coverage | 1.5 | 0.5 | 2.0 |
| Dwight Anderson | π | yes | Who was in charge of company | 0.5 | 0.5 | 1.0 |
| Mike Bartelli | π | Yes | Recruitment of Plaintiff and activities at company | 0.5 | 0.5 | 1.0 |
| John A. Boyd | π | yes | Settlement offers imposing testimony conditions | 0.5 | 0.5 | 1.0 |
| Richard ("Rick") Mowbray | π | yes | Contract with Plaintiff and performance as CEO | 1.5 | 0.5 | 2.0 |
| Alan Phang | π | yes | As CFO financial condition and performance of company from 2016 and earlier to present | 2.0 | 0.5 | 2.5 |
| Gregory Pegg | π | yes | Safety practices for company | 0.5 | 0.5 | 1.0 |
| Richard ("Ricky") John Mowbray | π | | Denial of Plaintiff's claims and basis for affirmative defenses. | 2.0 | 2.0 | 4.0 |
| Robin Mowbray | π | | Denial of Plaintiff's claims and basis for affirmative defenses. | 2.0 | 2.0 | 4.0 |
| PMK at The Original Mowbray's Tree Service, Inc. | π | | Denial of Plaintiff's claims and basis for affirmative defenses. | 1.0 | 1.0 | 2.0 |
| PMK at Mowbray Waterman | π | | Denial of Plaintiff's claims and basis for affirmative defenses. | 1.0 | 1.0 | 2.0 |

2

| | | | | | | |
|---|---|---|---|---|---|---|
| Property, LLC | | | | | | |
| Lawrence J. Khan | π | | Opinions regarding the business operations and conduct of the Original Mowbray's Tree Service, Incorporated ("MTS") pre and post engagement of Plaintiff in 2018 and his termination in January 2022, the tree service industry nature and operation on a scale achieved by MTS under Plaintiff's service as President and Chief Executive Officer, the nature and role of companies like MTS in the vegetation management industry and will offer rebuttal testimony to any retained and non-retained experts of MTS. | 2.0 | 2.0 | 4.0 |
| Kenneth Creal, C.P.A. (Expert Witness) | π | | Opinions regarding Plaintiff's damages due from the Original Mowbray's Tree Service, Incorporated, Mowbray Waterman Property, LLC, Richard John Mowbray, and Robin Mowbray based upon the witness testimony, documents and financial statements reviewed in his preparation. | 2.0 | 2.0 | 4.0 |
| Dr. Barbara Luna (Expert Witness) | Δ | | Opinions regarding Plaintiff's damages. | 2.0 | 2.0 | 4.0 |
| Leo Rodriguez | Δ | | Insurance coverage including wildfire | 0.5 | 0.5 | 1.0 |

3

**Joint Witness List**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Ana Sainz | Δ | | | | | | |
| John Boyd | Δ | | Former counsel for Jordan | 0.5 | 0.50 | 1.0 |
| **TOTAL** | | | | 23.5 | 17 | 44.5 |
| | | | | | | | |
| | | | | | | | |

Dated: _10/15_, 2024.          CATANZARITE LAW CORPORATION

                              By: _____
                                  Kenneth J. Catanzarite
                                  Brandon E. Woodward
                                  Attorneys Plaintiff


Dated: _10/15_, 2024.          CKB VIENNA, LLP

                              By: _____
                                  Michael I. Kim, Esq
                                  Steven Cho, Esq.
                                  Attorneys for Defendants

Joint Witness List

1   Kenneth J. Catanzarite (SBN 113750)
    Email: kcatanzarite@catanzarite.com
2   Brandon E. Woodward (SBN 284621)
    Email: bwoodward@catanzarite.com
3   CATANZARITE LAW CORPORATION
    2331 West Lincoln Avenue
4   Anaheim, California 92801
    Telephone: (714) 520-5544
5   Facsimile: (714) 520-0680

6   Attorneys for Plaintiff and
    Movant

7

*FILED*
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

OCT 17 2024

BY _____
ANTHONY MARTINEZ, DEPUTY

8           **IN THE SUPERIOR COURT OF CALIFORNIA**

9           **FOR THE COUNTY OF SAN BERNARDINO**

10  RONNIE D. JORDAN, an individual,          Case No. CIVSB2201281

11              Plaintiff,                     Assigned for All Purposes to
                                               Hon. Wilfred J. Schneider, Jr.
12  v.                                         Dept. S32

13  THE ORIGINAL MOWBRAY'S TREE
    SERVICE, INCORPORATED, et al,             **[PROPOSED] JURY INSTRUCTIONS**
14
                Defendants.
15                                             Filed:        January 18, 2022
                                               Trial:        October 21, 2024
16

17  _____

    AND RELATED CASE NO.
18  LLTVA2201963

19

20              **[PROPOSED] JURY INSTRUCTIONS**

21                  **I. FACE PAGE**

22

| Inst. No. | Title | Given (Yes/No) |
|-----------|-------|----------------|
|           | PRETRIAL INSTRUCTIONS |  |
| CACI. 100 | Preliminary Admonitions |  |
| CACI. 101 | Overview of Trial |  |
| CACI. 102 | Taking Notes During the Trial |  |
| CACI. 103 | Multiple Parties |  |
| CACI. 104 | Nonperson Party |  |

**[Proposed] Jury Instructions**

| Inst. No. | Title | Given (Yes/No) |
|-----------|-------|----------------|
| CACI. 105 | Insurance | |
| CACI. 106 | Evidence | |
| CACI. 107 | Witnesses | |
| CACI. 109 | Removal of Claims or Parties | |
| CACI. 110 | Service Provider for Juror With Disability | |
| CACI. 111 | Instruction to Alternate Jurors | |
| CACI. 112 | Questions From Jurors | |
| CACI.113 | Bias | |
| CACI.114 | Bench Conferences and Conferences in Chambers | |
| CACI.116 | Why Electronic Communications and Research Are Prohibited | |
| CACI.117 | Wealth of Parties | |
| CACI. 118 | Personal Pronouns | |
| | EVIDENCE INSTRUCTIONS | |
| CACI. 200 | Obligation to Prove—More Likely True Than Not True | |
| CACI. 201 | Highly Probable—Clear and Convincing Proof | |
| CACI. 202 | Direct and Indirect Evidence | |
| CACI. 203 | Party Having Power to Produce Better Evidence | |
| CACI. 204 | Willful Suppression of Evidence | |
| CACI. 205 | Failure to Explain or Deny Evidence | |
| CACI. 206 | Evidence Admitted for Limited Purpose | |
| CACI. 207 | Evidence Applicable to One Party | |
| CACI. 208 | Deposition as Substantive Evidence | |
| CACI.209 | Use of Interrogatories of a Party | |
| CACI.210 | Requests for Admissions | |
| CACI.212 | Statements of a Party Opponent | |
| CACI.213 | Adoptive Admissions | |
| CACI.215 | Exercise of a Communication Privilege | |
| CACI.219 | Expert Witness Testimony | |
| CACI.220 | Experts—Questions Containing Assumed Facts | |

**[Proposed] Jury Instructions**

| Inst. No. | Title | Given (Yes/No) |
|---|---|---|
| CACI.221 | Conflicting Expert Testimony | |
| CACI.223 | Opinion Testimony of Lay Witness | |
| | CONTRACTS INSTRUCTIONS | |
| CACI.300 | Breach of Contract—Introduction | |
| CACI.302 | Contract Formation—Essential Factual Elements | |
| CACI.303 | Breach of Contract—Essential Factual Elements | |
| CACI.304 | Oral or Written Contract Terms | |
| CACI.305 | Implied-in-Fact Contract | |
| CACI.306 | Unformalized Agreement | |
| CACI.310 | Contract Formation—Acceptance by Silence | |
| CACI.313 | Modification | |
| CACI.318 | Interpretation—Construction by Conduct | |
| CACI.320 | Interpretation—Construction Against Drafter | |
| CACI.325 | Breach of Implied Covenant of Good Faith and Fair Dealing—Essential Factual Elements | |
| CACI.350 | Introduction to Contract Damages | |
| CACI.351 | Special Damages | |
| CACI.361 | Reliance Damages | |
| CACI.380 | Agreement Formalized by Electronic Means—Uniform Electronic Transactions Act (Civ. Code, § 1633.1 et seq.) | |
| SPECIAL-1 | Contract Restraining Engagement of Profession or Business Is Void (*Business & Professions Code*, §16600.) | |
| | FRAUD OR DECEIT INSTRUCTIONS | |
| CACI.1902 | False Promise | |
| CACI.1904 | Opinions as Statements of Fact | |
| CACI.1907 | Reliance | |
| CACI.1908 | Reasonable Reliance | |
| | WRONGFUL TERMINATION | |
| CACI.2404 | Breach of Employment Contract—Unspecified Term—"Good Cause" Defined | |
| CACI.2420 | Breach of Employment Contract—Specified Term—Essential Factual Elements | |

3.

[Proposed] Jury Instructions

| Inst. No. | Title | Given (Yes/No) |
|---|---|---|
| CACI.2423 | Breach of Implied Covenant of Good Faith and Fair Dealing—Employment Contract—Essential Factual Elements | |
| CACI.2430 | Wrongful Discharge in Violation of Public Policy—Essential Factual Elements (ILLEGAL SETTLEMENT) | |
| CACI.2710 | Solicitation of Employee by Misrepresentation-Essential Factual Elements (*Labor Code*, §970) | |
| | DAMAGES | |
| CACI.3900 | Introduction to Tort Damages—Liability Contested | |
| CACI.3901 | Introduction to Tort Damages—Liability Established | |
| CACI.3902 | Economic and Noneconomic Damages | |
| CACI.3903 | Items of Economic Damage | |
| CACI.3903P | Damages From Employer for Wrongful Discharge (Economic Damage) | |
| CACI.3925 | Arguments of Counsel Not Evidence of Damages | |
| CACI.3933 | Damages From Multiple Defendants | |
| CACI.3934 | Damages on Multiple Legal Theories | |
| CACI.3935 | Prejudgment Interest (*Civil Code*, § 3288) | |
| CACI.3943 | Punitive Damages Against Employer or Principal for Conduct of a Specific Agent or Employee—Trial Not Bifurcated | |
| CACI.3947 | Punitive Damages—Individual and Entity Defendants—Trial Not Bifurcated | |
| CACI.3964 | Jurors Not to Consider Attorney Fees and Court Costs | |
| | CONCLUDING INSTRUCTIONS | |
| CACI.5000 | Duties of the Judge and Jury | |
| CACI.5002 | Evidence | |
| CACI.5003 | Witnesses | |
| CACI.5004 | Service Provider for Juror With Disability | |
| CACI.5005 | Multiple Parties | |
| CACI.5006 | Nonperson Party | |
| CACI.5007 | Removal of Claims or Parties and Remaining Claims and Parties | |
| CACI.5009 | Predeliberation Instructions | |

**[Proposed] Jury Instructions**

| Inst. No. | Title | Given (Yes/No) |
|---|---|---|
| CACI.5010 | Taking Notes During the Trial | |
| CACI.5011 | Reading Back of Trial Testimony in Jury Room | |
| CACI.5012 | Introduction to Special Verdict Form | |
| CACI.5014 | Substitution of Alternate Juror | |
| CACI.5015 | Instruction to Alternate Jurors on Submission of Case to Jury | |
| CACI.5016 | Judge's Commenting on Evidence | |
| CACI.5017 | Polling the Jury | |
| CACI.5019 | Questions From Jurors | |
| CACI.5020 | Demonstrative Evidence | |
| CACI.5021 | Electronic Evidence | |
| CACI.5022 | Introduction to General Verdict Form | |
| CACI.5090 | Final Instruction on Discharge of Jury | |
| | VERDICT FORMS | |
| CACI.VF-300 | Breach of Contract | |
| CACI.VF-304 | Breach of Implied Covenant of Good Faith and Fair Dealing | |
| CACI.VF-1902 | False Promise | |
| SPCL.VF-1 | Contract Restraining Engagement of Profession or Business Is Void (*Business & Professions Code*, §16600.) | |
| CACI.VF-2404 | Employment—Breach of the Implied Covenant of Good Faith and Fair Dealing | |
| CACI.VF-2406 | Wrongful Discharge in Violation of Public Policy | |
| CACI.VF-2704 | Solicitation of Employee by Misrepresentation (*Labor Code*, §970) | |
| CACI.VF-5001 | General Verdict Form—Single Plaintiff—Single Defendant—Multiple Causes of Action | |
| CACI.VF-3900 | Punitive Damages | |
| CACI.VF-3901 | Punitive Damages Against Employer or Principal for Conduct of a Specific Agent or Employee | |
| CACI.VF-3902 | Punitive Damages—Entity Defendant | |
| CACI.VF-3920 | Damages on Multiple Legal Theories | |
| SPECIAL -2 | Joint Employer Relationship | |
| SPECIAL -3 | Definition of Employer | |

5.

**[Proposed] Jury Instructions**

| Inst. No. | Title | Given (Yes/No) |
|---|---|---|
| SPECIAL -4 | Alter Ego Relationship | |

## II.  [PROPOSED] JURY INSTRUCTIONS

## (ATTACHED)

DATED: October 16, 2024             CATANZARITE LAW CORPORATION

By: _____
       Kenneth J. Catanzarite
       Brandon E. Woodward
       Attorneys for Plaintiff

[Proposed] Jury Instructions