**RAINES FELDMAN LITTRELL LLP**
Robert S. Marticello, State Bar No. 244256
*rmarticello@raineslaw.com*
Michael L. Simon, State Bar No. 300822
*msimon@raineslaw.com*
3200 Park Center Drive, Suite 250
Costa Mesa, CA 92626
Telephone:    (310) 440-4100
Facsimile:    (310) 499-4877

Counsel for The Original Mowbray's Tree Service, Inc., Debtor and Debtor-In-Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>THE ORIGINAL MOWBRAY'S TREE SERVICE, INC., a Delaware corporation<br><br>Debtor and<br>Debtor-in-Possession. | Case No. 8:24-bk-12674-TA<br><br>Chapter 11<br><br>**STIPULATION AUTHORIZING USE OF CASH COLLATERAL**<br><br>**Continued Hearing (via ZoomgGov):**<br>**Date:** January 21, 2025<br>**Time:** 10:30 a.m.<br>**Place:** Courtroom 5B<br>411 West Fourth Street<br>Santa Ana, CA 92701 |

   This stipulation (the "**Stipulation**") is entered into by and between the Original Mowbray's Tree Service, Inc., the debtor and debtor-in-possession in the above-captioned case ("**Debtor**"), on the one hand, and secured creditor PNC Bank, N.A. ("**PNC**"), on the other hand (together, the "**Parties**"). This Stipulation is entered into with reference to the following recitals:

1
STIPULATION AUTHORIZING USE OF CASH COLLATERAL
10451569.1
321834002.9

**RECITALS**

A. Pursuant to a loan agreement dated as of October 28, 2022 (as amended, supplemented, or modified from time to time, the "**PNC Loan Agreement**") between PNC and the Debtor, PNC provided Debtor with a secured revolving line of credit not to exceed $20,000,000 and letters of credit not to exceed $5,000,000 (the "**PNC Loan**"). The PNC Loan is secured by the Prepetition Collateral (as defined below), as further described in that certain security agreement dated as of October 28, 2022, between PNC and the Debtor (as amended, supplemented, or modified from time to time, the "**Security Agreement**"). The PNC Loan Agreement, the Security Agreement, and all other agreements and documents entered into related to the PNC Loan, including, without limitation, the Forbearance Agreement (as defined below), in each case, as amended, supplemented, or modified from time to time, are hereinafter referred to collectively as the "**Prepetition Loan Documents**."

B. The PNC Loan was a 12-month loan that matured in October 2023.

C. Prepetition, after extensive negotiations, the Debtor, certain affiliates of the Debtor, and PNC entered into a forbearance agreement dated as of July 9, 2024 (as amended, restated, or modified from time to time, the "**Forbearance Agreement**"). Under the terms of the Forbearance Agreement, among other things, PNC agreed to forbear on exercising certain rights and remedies through December 31, 2024, subject to the terms and conditions contained in the Forbearance Agreement.

D. On October 18, 2024 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code to, among other things, preserve its operations while it continues its efforts to right-size its operations and work toward a more financially stable future, and to address its legitimate obligations in an orderly and fair and equitable manner.

E.  As of the Petition Date, the Debtor owed PNC approximately $7,038,514.41 in principal under the PNC Loan (the "**Prepetition Principal Balance**"), which is secured by first priority perfected liens in favor of PNC on the Prepetition Collateral.  This amount does not include interest, default interest, late fees, attorney's fees and costs, or any other amount that may have been due under the PNC Loan as of the Petition Date.

F.  PNC holds a security interest in, among other things, the Debtor's cash collateral.  The Debtor requires the use of such cash collateral, as that term is defined in § 363(a) of the Bankruptcy Code ("**Cash Collateral**"), to pay reasonable and necessary operating expenses, and expenses to administer its chapter 11 case (the "**Chapter 11 Case**").

G.  The Parties have reached an agreement on the Debtor's use of Cash Collateral in the Chapter 11 Case, on the terms and conditions set forth below.

## STIPULATION

**NOW, THEREFORE**, based on the above Recitals and in consideration of the mutual provisions, covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree and stipulate as follows:

1.  <u>Bankruptcy Court Approval</u>.  This Stipulation is conditioned upon the entry by the Bankruptcy Court of an order approving this Stipulation and authorizing the Debtor to use Cash Collateral as provided herein (the date of the Bankruptcy Court's entry of such order shall be the "**Effective Date**").  Any form of order submitted to the Bankruptcy Court regarding this Stipulation or use of Cash Collateral shall be in form and substance acceptable to PNC.

2.  <u>Use of Cash Collateral</u>.  The Debtor is authorized to use Cash Collateral in accordance with the budget attached hereto as **Exhibit 1** (the "**Initial Budget**") through and including the end of the period covered by the Initial Budget or such further date as may be agreed upon between the parties, permitted pursuant to orders of the Court, and covered by a

Budget (as defined below) (the "**Cash Collateral Period**").  The Debtor may use Cash Collateral solely to pay the expenses set forth in the Initial Budget and such further budget(s) that may be prepared by the Debtor and approved by PNC in its sole discretion or the Bankruptcy Court (as such budget(s) may be updated or amended by the Debtor with PNC's written consent in its sole discretion, the or a "**Budget**").  Actual expenditures during the Cash Collateral Period are not to exceed 115% per budget line item set forth in the controlling Budget for such period (*i.e.*, a 15% cumulative variance); *provided*, *however*, that the total cash expenditures during the Cash Collateral Period shall not exceed 110% of the total budgeted disbursements in the Budget (*i.e.*, a 10% cumulative variance on disbursements).  During the Cash Collateral Period, (i) any unused amount for any given line item in the Budget for a particular week shall carry forward and can be used in later weeks, and (ii) any amounts budgeted for a given line item in a particular week through the end of the current Cash Collateral Period may be spent up to two weeks earlier than budgeted provided the total amount spent for such line item does not exceed the total amount budgeted for that line item with the variance permitted herein.  Upon the occurrence of an Uncured Event of Default (as defined herein), the Debtor's authorization to use Cash Collateral shall immediately and automatically terminate without the need for any notice or action.

3.  Payments.  Beginning in February 2025, on or before the fifteenth (15th) day of each calendar month during the Cash Collateral Period, the Debtor shall pay to PNC the amount of $150,000 (each, a "**Monthly Payment**" and collectively, the "**Monthly Payments**").  Each party reserves its rights as to whether the Monthly Payments shall be applied to principal or interest as provided in the Bankruptcy Code and the Prepetition Loan Documents; provided, however, solely for purposes of the calculation in Paragraph 10(e) below, the difference between the interest due for particular month under the PNC Loan Agreement and the Monthly Payment, shall be applied to the Prepetition Principal Balance (resulting in the "**Termination Formula Balance**").

4.  Debtor's Acknowledgements.  As of the Effective Date, the Debtor acknowledges, agrees and stipulates that:

a.  As of the Petition Date, the PNC Loan balance was $7,038,514.41 (plus any additional obligations, such as, interest, default interest, late fees, attorney's fees, expenses, other charges and costs, provided for under the Prepetition Loan Documents and as permitted by the Bankruptcy Code, the "**Prepetition Debt**").

b.  The Prepetition Debt is secured by a valid, perfected, and unavoidable first-priority security interest (collectively, the "**Prepetition Liens**") in and liens on all of the Debtor's personal property assets including, without limitation, the Debtor's interest in (i) its subsidiary and (ii) accounts and loans receivable from insiders and affiliates (including, without limitation, its subsidiary Pino Tree Service, Inc.), as set forth in the Prepetition Loan Documents (collectively, "**Prepetition Collateral**").

c.  Pursuant to the Prepetition Loan Documents, the Debtor granted to PNC the Prepetition Liens on the Prepetition Collateral.

d.  The Prepetition Loan Documents and the Prepetition Debt owing to PNC thereunder constitute legal, valid, and binding obligations of the Debtor, enforceable against it in accordance with their respective terms, and neither any Prepetition Loan Document, the Prepetition Debt, nor any portion of either is subject to avoidance, recharacterization, attack, effect, reduction (except to the extent payments are made), set-off, offset, counterclaim, cross-claim, recoupment, rejection, defenses, disallowance, impairment, recovery, subordination (whether equitable, contractual, or otherwise), or any other claim or challenge pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity.

e.  The Prepetition Liens granted to PNC: (i) constitute legal, valid, binding, enforceable, and properly perfected security interests in and liens on the Prepetition Collateral, (ii) were granted to, or for the benefit of, PNC for fair consideration and reasonably equivalent value, and (iii) are not subject to any defense, counterclaim, recharacterization, subordination (whether equitable, contractual, or otherwise), avoidance, recovery, attack, recoupment, rejection, reduction (except to the extent payments are made),

set-off, disallowance, impairment, counterclaim, cross-claim, defense, or claim pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity.

   f. The Debtor agrees that no offsets, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Loan Documents, Prepetition Liens, or the Prepetition Debt exist, and neither the Prepetition Loan Documents, Prepetition Liens, nor the Prepetition Debt, or any portion of any of the foregoing, is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable, contractual, or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law, all of which the Debtor hereby waives as of the Effective Date.

   g. The Debtor agrees that it has no, and it hereby waives any and all, valid claims (including as such term is defined in § 101(5) of the Bankruptcy Code), objections, challenges, causes of action, and/or choses in action against PNC or any of its successors, assigns, affiliates, subsidiaries, parents, officers, directors, shareholders, employees, attorneys, or agents related to the Prepetition Loan Documents, the Prepetition Debt, or the Prepetition Liens whether arising at law or at equity, including, without limitation, any challenge, recharacterization, subordination, avoidance, recovery, disallowance, reduction (except to the extent payments are made), or other claims arising under or pursuant to §§105, 502, 510, 541, 542 through 553 (inclusive but excluding section 552(b)), or 558 of the Bankruptcy Code or applicable state law equivalents.

   h. The Debtor acknowledges that the Prepetition Debt constitutes an allowed, secured claim within the meaning of §§ 502 and 506 of the Bankruptcy Code.

  5. <u>Milestones</u>.  The Debtor will comply with the following milestones (collectively, the "**Milestones**," and each, a "**Milestone**"):

   a. The Debtor will file a chapter 11 plan and a disclosure statement by February 28, 2025;

   b. An order by the Court approving the Debtor's disclosure statement shall be entered by April 30, 2025; and

        c.        An order by the Court confirming the Debtor's chapter 11 plan shall be entered by June 30, 2025.

        d.        Each Milestone herein can be extended by the Debtor for up to 30 days with the written consent of PNC in its sole discretion.

6.      <u>Adequate Protection</u>.  Pursuant to §§ 361, 362, 363 and 552(b) of the Bankruptcy Code, PNC shall receive adequate protection in the following forms in order to account for any aggregate diminution in value with respect to PNC's Prepetition Liens in the Prepetition Collateral from and after the Petition Date as calculated and determined in accordance with the Bankruptcy Code ("**Diminution in Value**"):

        a.        Payment of the Monthly Payments, in the amount of $150,000, in accordance with the terms set forth herein.  The parties' respective rights with respect to whether such payments are applied to interest and or principal are reserved; provided, however, solely for purposes of the calculation in Paragraph 10(e) below, the difference between the interest due for a particular month under the PNC Loan Agreement and the Monthly Payment, shall be applied to the Prepetition Principal Balance.

        b.        Valid, attached, enforceable, perfected and continuing replacement security interests in, and replacement liens upon, on all of the Debtor's currently owned or hereafter acquired personal property and assets (including such assets acquired by the Debtor on or after the Petition Date), of any kind or nature, wherever located, and all proceeds thereof, of the same extent, validity, and priority as the Prepetition Liens, to the extent of any Diminution in Value; *provided, however*, that the replacement security interests and liens will not attach to Bankruptcy Code Chapter 5 causes of action of the Debtor or the estate and the proceeds thereof.  For the avoidance of doubt, these replacement security interests and liens do not encumber any real property.

        c.        A superpriority administrative claim in the Chapter 11 Case pursuant to § 503 and 507(b) of the Bankruptcy Code with priority over any and all administrative expenses or priority claims against the Debtor of the kind specified in, or ordered pursuant to,

*inter alia*, §§ 105, 326, 328, 330, 331, 364(c)(1), 365, 503(a), 503(b), 507(a), 507(b), 546(c), 726, 1113, or 1114 of the Bankruptcy Code to the extent of any Diminution in Value.

      d.     The terms of the adequate protection arrangements and the Debtor's use of the Collateral, including Cash Collateral, are fair and reasonable, reflect the Debtor's prudent exercise of business judgment, and constitute reasonably equivalent value and fair consideration for the use of the Cash Collateral.

    7.     PNC Depository.  The Debtor will use PNC as its debtor-in-possession account depository.

    8.     Reporting.  Within five (5) business days after the end of each calendar week (ending Sunday), the Debtor will provide to PNC a cumulative Budget to date, Budget to actual comparison for the prior two calendar weeks, an accounts receivable aging report for the Debtor and its subsidiary, and an accounts payable report for the Debtor and its subsidiary, along with such other reports and information required pursuant to the Prepetition Loan Documents or which PNC may reasonably request.

    9.     Professional Fees.

      a.     Fees and expenses incurred by persons or firms retained by the Debtor pursuant to §§ 327, 328, or 363 of the Bankruptcy Code (hereafter, a "**Professional**"), up to the amounts provided in the Budget(s), all fees required to the be paid to the Clerk of the Court, and all statutory fees of the Office of the United States Trustee, may be paid by the Debtor during the Cash Collateral Period prior to the occurrence of an Uncured Event of Default.

      b.     The Debtor is authorized to fund a separate segregated account consisting of those amounts set forth in the applicable Budget for the payment of fees and expenses of the Professionals (the "**Professional Fee Account**").  The fees and expenses payable to Professionals pursuant to this Paragraph 6 shall be placed in the Professional Fee Account as such fees and expenses are accrued under the applicable Budget, and any and all withdrawals from the Professional Fee Account shall be subject to further orders of the Court. Amounts funded into the Professional Fee Account shall be considered used by the Debtor at

such time as they are deposited into the Professional Fee Account for distribution to professionals in accordance with orders of the Bankruptcy Court.

        c.     For the avoidance of doubt, PNC is not subordinating its superpriority administrative claim to any postpetition payments including, without limitation, payments made pursuant to this Section 6.  Notwithstanding anything herein to the contrary, should any disgorgement be sought by PNC with respect to any postpetition payment(s) permitted by a Budget, including, without limitation, payments made pursuant to this Section 6, then the rights of the Debtor pursuant to 11 U.S.C. § 506(c) with respect to such payments are preserved and not waived.

    10.    <u>Events of Default</u>.  The occurrence of any of the following shall constitute an "**Event of Default**" herein (a) an order is entered dismissing or converting the Chapter 11 Case or appointing a trustee or examiner in the Chapter 11 Case, (b) the Debtor fails to comply with any provision of this Stipulation, (c) the Debtor fails to meet a Milestone (as such may be extended in accordance with Paragraph 2 hereof), (d) any order is entered modifying, reversing, revoking, staying, rescinding, vacating, or amending any Court order approving this Stipulation without the express written consent of PNC, or (e) the ratio of the Debtor's (i) cash and cash equivalents plus (ii) accounts receivable outstanding less than 120 days (and further excluding any accounts receivable that become uncollectible as reasonably determined by the Debtor and PNC), divided by the amount of the Termination Formula Balance, declines below 1.40.  Upon the Debtor's failure to cure any Event of Default within five (5) business days after receipt of notice from PNC of such Event of Default shall constitute an "**Uncured Event of Default.**"  Upon the occurrence of an Uncured Event of Default, the Debtor's authorization to use Cash Collateral as provided herein shall immediately and automatically terminate without the need for any notice or action. Notwithstanding anything herein to the contrary, nothing in this Stipulation shall limit PNC from, following a material adverse change, seeking to terminate the use of Cash Collateral, subject to the Debtor's rights in response or opposition thereto.

11. <u>Proofs of Claim</u>.  Notwithstanding any notice, motion or other order entered by the Court in relation to the establishment of a bar date in this Chapter 11 Case, PNC shall not be required to file proofs of claim or requests for approval of administrative expenses in this Chapter 11 Case.  The acknowledgement by the Debtor of the Prepetition Debt and its obligations under the Prepetition Loan Documents, and of the liens, rights, priorities, and protections granted in favor of PNC in respect of the Collateral as set forth herein and in the Prepetition Loan Documents shall be deemed timely filed proofs of claim on behalf of PNC in this Chapter 11 Case.

12. Except for the use of Cash Collateral as set forth in this Stipulation, this Stipulation is without prejudice to, and nothing contained herein constitutes or shall be deemed a waiver (expressly or implicitly) by PNC of any rights, claims or defenses that it may have against the Debtor or any other party-in-interest in this Chapter 11 Case or otherwise, all of which are expressly reserved.  Without limiting the generality of the foregoing, PNC reserves any and all rights to contest or object on any basis to (i) any right, claim, defense or proceeding asserted by the Debtor or any other party-in-interest against PNC or any of its affiliates; (ii) any further request by the Debtor for the use of Cash Collateral beyond the terms of this Stipulation (whether on a final or further interim basis), including any proposed budget in connection therewith, or (iii) any other motion, application, or other request or pleading by the Debtor (except with respect to the use of Cash Collateral in accordance with its terms of this Stipulation).  Except with respect to the use of Cash Collateral as set forth in this Stipulation, PNC reserves its rights to seek any form of relief under the Bankruptcy Code, including, but not limited to, relief from the automatic stay and conversion of this case to a case under chapter 7 of the Bankruptcy Code, and the Debtor's rights in response or opposition thereto are reserved.

DATED: January 15, 2025        **RAINES FELDMAN LITTRELL, LLP**

By: _____
Robert S. Marticello
Michael L. Simon
Attorneys for The Original Mowbray's
Tree Service, Inc., Debtor and Debtor-in-
Possession

DATED: January 15, 2025        **K&L GATES LLP**

By: _____
Michael B. Lubic
Attorneys for PNC Bank, N.A.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**3200 Park Center Drive, Suite 250, Costa Mesa, CA 92626.**

A true and correct copy of the foregoing document entitled (*specify*): **STIPULATION AUTHORIZING USE OF CASH COLLATERAL** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **1/16/2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **1/16/2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **1/16/2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| **1/16/2025** | Ja'Nita Fisher | */s/ Ja'Nita Fisher* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                                   **F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:
   - **Kenneth J Catanzarite    kcatanzarite@catanzarite.com**
   - **Marshall F Goldberg    mgoldberg@glassgoldberg.com, jbailey@glassgoldberg.com**
   - **Alan Craig Hochheiser    ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com**
   - **Raffi Khatchadourian    raffi@hemar-rousso.com**
   - **James MacLeod    jmacleod@dunninglaw.com, nancy@dunninglaw.com**
   - **Robert S Marticello    rmarticello@raineslaw.com, bclark@raineslaw.com;jfisher@raineslaw.com**
   - **David W. Meadows    david@davidwmeadowslaw.com**
   - **Queenie K Ng    queenie.k.ng@usdoj.gov**
   - **Estela O Pino    epino@epinolaw.com, staff@epinolaw.com;clerk@epinolaw.com**
   - **Amitkumar Sharma    amit.sharma@aisinfo.com**
   - **Thomas E Shuck    tshuck@pmcos.com, efilings@pmcos.com**
   - **Michael Simon    msimon@raineslaw.com, bclark@raineslaw.com;jfisher@raineslaw.com**
   - **Ahren A Tiller    ahren.tiller@blc-sd.com, 4436097420@filings.docketbird.com;brett.bodie@blc-sd.com;anika@blc-sd.com;derek@blc-sd.com;kreyes@blc-sd.com;megan@blc-sd.com;nicole@blc-sd.com;danny@blc-sd.com;angie@blc-sd.com;kreyes@blc-sd.com**
   - **United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov**
   - **Sharon Z. Weiss    sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com,sharon-weiss-7104@ecf.pacerpro.com**
   - **Roye Zur    rzur@elkinskalt.com, TParizad@elkinskalt.com;lwageman@elkinskalt.com;1648609420@filings.docketbird.com**

2. **SERVED BY UNITED STATES MAIL**:

20 LARGEST CREDITORS:

Amtrust Financial Services, Inc.
903 Nw 65Th St. Ste 300
Boca Raton, FL 33487

First Insurance Funding Corporation
450 Skokie Blvd Ste 1000
Northbrook, IL 60062-7917

Premium Assignment Corporation
dba IPFS
P.O. Box 412086
Kansas City, KA 64141-2086

Peerless Network
433 W. Van Buren
Suite 410S
Chicago, IL 60607

The Goodyear Tire And Rubber Co.
P.O. Box 277808
Atlanta, GA 30384-7808

Burtronics Business Systems
P.O. Box 11529
San Bernardino, CA 92423

Mobile Mini - William Scotsman
PO Box 91975
Chicago, IL 60693-1975

Marlin Lease Servicing/Peac
P.O. Box 13604
Philadelphia, PA 19101-3604

Vestis
2680 Palumbo Dr
Lexington, KY 40509

Pape Machinery
P.O. Box 35144
Seattle, WA 98124-5144

The Toll Roads
Violations Department
Irvine, CA 92619

Oklahoma Turnpike Authority
Plate-Pay
PO Box 11255
Oklahoma City, OK 73136

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**

Fastrak Violation Processing Dept
PO Box 26925
San Francisco, CA 94126

Velocity Truck Center
Los Angeles Truck Centers, LLC
Pasadena, CA 91189-1284

Grainger
Dept. 887538815
Palatine, IL 60038-0001

Linebarger Goggan Blair & Sampson
4828 Loop Central Drive
Suite 600
Houston, TX 77081

Kansas Turnpike Authority
PO Box 802746
Kansas City, MO 64180

Florida Dept of Transportation
PO Box 31241
Tampa, FL 33631

City of Los Angeles
Parking Violations Bureau
PO Box 30420
Los Angeles, CA 90030

North Texas Tollway Authority
PO Box 660244
Dallas, TX 75266

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                    **F 9013-3.1.PROOF.SERVICE**