**RAINES FELDMAN LITTRELL LLP**
Robert S. Marticello, State Bar No. 244256
*rmarticello@raineslaw.com*
Michael L. Simon, State Bar No. 300822
*msimon@raineslaw.com*
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Telephone: (310) 440-4100
Facsimile: (310) 691-1943

Counsel for The Original Mowbray's Tree
Service, Inc., Debtor and Debtor-In-Possession

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>THE ORIGINAL MOWBRAY'S TREE SERVICE, INC.,<br><br>    Debtor and Debtor-In-Possession. | Case No. 8:24-bk-12674-TA<br><br>Chapter 11<br><br>**DEBTOR'S OPPOSITION TO NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (ACTION IN NONBANKRUPTCY FORUM); DECLARATION OF RUBEN SAINOS IN SUPPORT**<br><br>**Hearing (via Zoom for Government):**<br>Date: February 11, 2025<br>Time: 10:30 a.m.<br>Place: Courtroom 5B<br>    411 West Fourth Street<br>    Santa Ana, CA 92701 |

**TO THE HONORABLE THEODOR C. ALBERT, UNITED STATES BANKRUPTCY JUDGE:**

The Original Mowbray's Tree Service, Inc., the debtor and debtor-in-possession in the above-captioned case (the "**Debtor**"), hereby submits this opposition (the "**Opposition**") to the *Notice of Motion and Motion for Relief From the Automatic Stay Under 11 U.S.C. § 362* [Docket

1

No. 260] (the "**Motion**") filed by Ping Liu and Guifen He (together, the "**Movants**"). In support of the Opposition, the Debtor submits the attached declaration of Ruben Sainos.

## I.  INTRODUCTION

The Movants assert general unsecured claims totaling $7,525,000 based on unliquidated claims that are the subject of a pending state court action. The state court action is in its early stages, with trial scheduled to start on August 18, 2025. The Movants request stay relief: (1) to allow the state court action to proceed to judgment; and (2) to allow the Movants to "satisfy any judgment or order entered in the State Action against the Debtor from available insurance coverage." (*See* Mot. at 28 of 41.) The Motion should be denied for multiple reasons.

First, stay relief could lead to the inequitable distribution to creditors. The Movants seek to enforce any judgment against the Debtor's insurance. The Debtor is a party to multiple state court actions involving car accidents and the applicable insurance policies have limits. Granting stay relief, assuming the Movants prevail on their lawsuit, could allow the Movants to collect from insurance otherwise available to pay the allowed claims of similarly situated creditors on a *pro rata* basis. Granting stay relief could thus undermine the automatic stay's basic purpose of ensuring equitable treatment among creditors. The proceeds of the insurance policies should be preserved for an equitable distribution to creditors. The Debtor intends to address the potential availability of insurance to pay applicable allowed claims in its plan.

Second, stay relief could interfere with the administration of the case. *See In re Towner Petroleum Co.,* 48 B.R. 182, 190 (Bankr. W.D. Okla. 1985) ("Even slight interference with the administration may be sufficient to deny relief. . . .") The Debtor was a party to 23 pending lawsuits as of the Petition Date. The Court has granted stay relief as to two pending matters (both with different procedural postures, *i.e.*, one was closer to trial, and the second was post-verdict). Granting the Motion could lead to other litigants seeking stay relief. The Debtor is currently working to prepare its plan projections and its chapter 11 plan, which must be filed by March 1, 2025. It is in the best interests of the estate for the Debtor and its counsel to focus on moving this

1 case forward towards a successful conclusion—a confirmed plan of reorganization benefitting

2 creditors. Granting stay relief could distract the Debtor from this focus. The Debtor should be

3 permitted to prioritize its reorganization and litigate unsecured claims on its own timing when

4 needed and in an orderly fashion. *See In re Patel*, 291 B.R. 169, 173 (Bankr. D. Ariz. 2003).

5 Accordingly, and as further detailed below, the Motion should be denied for a lack of

6 cause.

## II. BACKGROUND

### A. The Filing of the Case

On October 18, 2024 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") commencing the above-captioned chapter 11 case (the "**Chapter 11 Case**" or "**Case**"). The Debtor is operating as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in this Case and no official committees have been appointed or designated.

On November 15, 2024, the Debtor filed its schedules and statement of financial affairs. The Debtor's statement of financial affairs lists 23 pending actions, including the Liu Action. (*See* SOFA, Docket No. 170, at 136-139 of 166.)

Per the Court's order, the Debtor's deadline to file a plan is March 1, 2025. (*See* Docket No. 206.) The Debtor is currently working on its plan and plan projections. (*See* Sainos Decl. at ¶ 3.)

### B. The Debtor's Operations

Established in 1972 by Gloria and John Mowbray (the "**Founders**"), the Debtor has been a cornerstone in California for providing vegetation management services for over 50 years. The Debtor began as a modest venture and has grown into a resilient company, dedicated to safeguarding communities and the environment. The Debtor continues to be a family owned and operated business, is a member of WMBE (Women and Minority Business Enterprise), and is

3

committed to providing its client-partners with the safest and most efficient solution to their vegetation management needs.

The services provided by the Debtor include, without limitation, manual and mechanical tree clearing, integrated vegetation management, storm and emergency right-of-way maintenance, high-hazard tree removal and crane services, and natural disaster-caused damage remediation (collectively, "**Vegetation Management Services**").  Tree-trimming around power lines, clearing vegetation to prevent forest fires, removal of debris and charred remains after major wildfires in California, and assisting with damage remediation in response to hurricanes—these are the types of important services that the Debtor provides to the communities in which it serves.  Historically, utility companies have been the Debtor's primary clients, including California's largest energy utility, PG&E as well as SCE.  The Debtor also provides services to governmental agencies, like FEMA, and cooperatives.

A more fulsome discussion of the Debtor's operations, structure, and liabilities, and the events leading to the commencement of this case are set forth in the *Declaration of Ruben Sainos in Support of Chapter 11 Petition and First Day Pleadings* [Docket No. 3] (the "**Prior Sainos Declaration**"), which is incorporated herein by reference.

**C.    The Liu Action**

On November 29, 2024, the Movants filed a complaint in the Superior Court of California, County of Placer, Case No. S-CV-0049514 (the "**Liu Action**"), against the Debtor and a third-party defendant, Jackson Ray Berry.  By the complaint, the Movants assert causes of action for negligence related to a car accident.  As of the Petition Date, the Liu Action was in its early stages of deposition discovery and trial was scheduled for August 18, 2025.

In the bankruptcy case, Movant Ping Liu filed a proof of claim asserting an unsecured claim of $250,000 and Movant Guifen He filed a proof of claim asserting an unsecured claim of $7,500,000.  (*See* Proofs of Claim Nos. 136-1 and 137-1.)

The Debtor understands that the applicable insurance policy covers the one-year period from June 1, 2022, to June 1, 2023, has a $2,000,000 aggregate limit, and covers up to $1,000,000

4

1  per claim (subject to any and all limitations and terms and conditions in the policy).  The Debtor
2  further understands that there is also potentially an applicable $5,000,000 excess insurance policy.
3  (*See* Sainos Decl. at ¶ 5.)
4        The Debtor does not know at this stage whether there are claimants other than the Movants
5  who would attempt to collect from the applicable insurance policies.  However, the Debtor's
6  schedules list 23 lawsuits pending as of the Petition Date.  (*See* Schedules [Docket No 170] at 136
7  to 139 of 166.)  This includes multiple actions based on motor vehicle accidents.  (*See, e.g.*, *id.* at
8  138 of 166.)

9        **D.**      **The Ronnie Jordan Stay Relief Motion**

10        On October 25, 2024, another pre-petition litigant, Ronnie D. Jordan ("**Jordan**"), filed a
11  motion for relief from the automatic stay [Docket No. 141] (the "**Jordan RFS Motion**") to
12  proceed to judgment in the suit he commenced against the Debtor and certain other parties,
13  including the Debtor's CEO and the Debtor's sole shareholder, Case No. CVISB2201281 (the
14  "**Jordan Matter**").  The Jordan Matter is scheduled for a fourteen (14) day jury trial in San
15  Bernardino Superior Court.  The Jordan Matter was approaching trial as of the Debtor's
16  bankruptcy filing on October 18, 2024.  The matter was scheduled for a trial readiness conference
17  as of October 17, 2024, and for trial commencing on October 21, 2024.
18        The Court heard the Jordan RFS Motion on November 19, 2024.  The Court granted the
19  Jordan RFS Motion, but, in order to provide the Debtor with additional time, delayed the
20  effectiveness of the requested stay relief until January 15, 2025.

21        **E.**      **The Rodriguez Stay Relief Motion**

22        On November 26, 2024, other pre-petition litigants, Jaime Rodriguez and Ana Lidia
23  Gomez (the "**Rodriguez Plaintiffs**"), filed a motion for relief from the automatic stay [Docket No.
24  189] (the "**Rodriguez RFS Motion**") related to a suit they commenced against the Debtor and
25  certain other parties, Case No. CIVDS2003809 (the "**Rodriguez Matter**").  A verdict was
26  rendered in the Rodriguez Matter prior to the Petition Date.  The Rodriguez Plaintiffs sought stay
27  relief to allow the state court to enter judgement based on the pre-petition verdict, to proceed
28

5

through any post-judgment motion practice and any appeals, including by the Debtor, and to allow the Rodriguez Plaintiffs to seek to collect from applicable insurance. The Court granted the Rodriguez RFS Motion. (*See* Order [Docket No. 236].)

### III.   THE LIU ACTION SHOULD REMAIN STAYED

As recognized by the Supreme Court, the automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws." *See Midlantic Nat. Bank v. New Jersey Dep't of Env't Prot.*, 474 U.S. 494, 503 (1986) (citing S. REP. No. 95-989, 54 (1978); H.R. REP. No. 95-595-340 (1977)). "The purpose of the automatic stay is three-fold: 'to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor.'" *See In re Advanced Med. Spa Inc.,* 2016 WL 3003203, at *3 (B.A.P. 9th Cir. Mar. 30, 2016)*; see also In re First All. Mortg. Co.*, 264 B.R. 634, 635 (C.D. Cal. 2001) ("the primary purpose of the automatic stay is to . . . ensure equal treatment of creditors."). "The automatic stay is intended to prevent a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts." *See In re Curtis*, 40 B.R. 795, 798 (Bankr. D. Utah 1984) (internal citations omitted).

As set forth below, the automatic stay should remain in effect as to the Liu Action for multiple reasons.

#### A.   Stay Relief Could Lead to An Inequitable Distribution to Creditors

"[T]he Ninth Circuit has determined that a debtor's insurance policies are property of the estate." *Groshong v. Sapp (In re Mila, Inc.)*, 423 B.R. 537, 542 (B.A.P. 9th Cir. 2010) citing *The Minoco Group of Cos., Ltd. v. First State Underwriters Agency of New Eng. Peins. Corp. (In re The Minoco Group of Cos. Ltd.)*, 799 F.2d 517, 519 (9th Cir. 1986). Granting stay relief could thus undermine the automatic stay's basic purpose of ensuring equitable treatment among creditors. *See In re First All. Mortg. Co.*, 264 B.R. 634, 635 (C.D. Cal. 2001) ("the primary purpose of the automatic stay is to . . . ensure equal treatment of creditors.")

"A number of courts have declined to grant stay relief to one claimant where . . . the available insurance coverage was inadequate to compensate other similarly situated claimants." *In re Sunland, Inc.*, 508 B.R. 739, 744 (Bankr. D.N.M. 2014). As stated by one bankruptcy court:

> Very likely, if a number of the claimants are successful in their claims against [the debtor,] Gatke, Gatke's insurance coverage will be inadequate to cover all of its potential liability. The threat of inequitable distribution of the insurance proceeds in this case thus is very real.
>
> The court further considers that allowing Illinois Central relief from the automatic stay would encourage the filing of similar requests for relief by plaintiffs of pending lawsuits involving similar claims and would result in undue prejudice to Gatke and its creditors.

*Matter of Gatke Corp.*, 117 B.R. 406, 410 (Bankr. N.D. Ind. 1989).

As similarly stated by the Eight Circuit:

> Allowing one claimant to collect the policy proceeds in a state court judgment would, in those cases, deplete the insurance pool to the detriment of all remaining creditors. Further, disbursing the policy proceeds in such a haphazard manner could slow the debtor's reorganization effort. Recognizing these hazards, the courts above shared two common goals—to insure equitable division of a limited insurance fund, and to facilitate the debtor's swift and efficient reorganization.

*In re Titan Energy, Inc.*, 837 F.2d 325, 330 (8th Cir. 1988); *see also Tringali v. Hathaway Mach. Co.*, 796 F.2d 553, 560 (1st Cir. 1986) ("Any contrary holding could start a race to the courthouse whenever a policy is too small to satisfy several potential plaintiffs. Such a race could mean unfair results as between potential plaintiffs; it could also prevent a bankruptcy court from marshalling the insurance proceeds, and, along with other assets, arranging for their distribution so as to maximize their ability both to satisfy legitimate creditor claims and to preserve the debtor's estate.").

The Motion should be denied because stay relief could interfere with the Debtor's plan and lead to an inequitable distribution of insurance proceeds. The Movants seek to enforce any judgment against the Debtor's insurance coverage. (*See* Mot. at 28 of 41, lines 13-14.) As the Debtor understands it, the applicable insurance policies in question have limits. (*See* Sainos Decl.

at ¶ 5.) As of the Petition Date, the Debtor was a party to 23 pending lawsuits, including multiple lawsuits involving automobile accidents. (*See* Schedules [Docket No 170] at 138 of 166.) There may be other asserted claims that could be satisfied from the applicable insurance policies. Granting stay relief to the Movants, assuming the Movants prevail on their lawsuit, could lead to an inequitable distribution of the applicable insurance proceeds by allowing them to have priority to such proceeds over any other similarly situated creditors with allowed claims. Instead, the proceeds of the applicable policies should be preserved for an equitable distribution to all similarly situated creditors with allowed claims (subject to the limitations and the terms and conditions of such policies). The Debtor should be given an opportunity to address the availability of insurance to satisfy allowed claims in its plan.

**B.     Stay Relief Would Interfere With the Administration of the Case**

A fundamental purpose for the "breathing spell" afforded by the automatic stay is "relief from litigation." *See In re Patel*, 291 B.R. 169, 173 (Bankr. D. Ariz. 2003). A debtor should be permitted to control the timing of claims litigation and, instead, focus on reorganization efforts for the benefit of the estate as a whole. As stated by the bankruptcy court in the *Patel* decision:

> While plaintiffs typically choose the forum and direct the pace of litigation in nonbankruptcy courts, it is the debtor who chooses the forum and directs the pace of much litigation in bankruptcy court. For example, while creditors can file proofs of claim at virtually any time, they are not in charge of scheduling the litigation to resolve those claims. There is not even a contested matter until the debtor or someone else objects to such claims, and the Bankruptcy Code imposes no deadlines for such objections. **Consequently the timing of the initiation of contested claims litigation is basically put in the hands of the debtor, debtor–in–possession or trustee. This breathing spell permits the debtor to focus on matters of more general importance to the estate and the creditor body, such as stabilizing operations, stemming losses and returning to profitability, selling burdensome assets, and negotiating a plan of reorganization**. While the debtor focuses on those issues, it can put off claims litigation even until after confirmation of a plan by the simple expedient of not filing objections to claims until it is ready to focus on that process. Consequently the "breathing spell" provided by the automatic stay is not merely for the benefit of the debtor, but is for the benefit of the entire estate and creditor body. **Thus for this reason as well, the administrative bankruptcy processes are better suited to the interests of multiple parties, which is a valuable benefit to the estate that should not lightly be foregone simply due to the happenstance that a creditor's**

8

> **litigation was close to trial or close to judgment before the bankruptcy case was filed**. That fluke of timing has little or nothing to do with what the debtor's energies and resources should be focused on for the benefit of the entire estate and creditor body.

*In re Patel*, 291 B.R. 169, 173 (Bankr. D. Ariz. 2003) (emphasis added).

> The most important factor in determining whether to grant relief from the automatic stay to permit litigation against the debtor to go forward in another forum **is the effect of such litigation on the administration of the estate. Even slight interference with the administration may be sufficient to deny relief in the absence of a commensurate benefit**.

*In re Towner Petroleum Co.*, 48 B.R. 182, 190 (Bankr. W.D. Okla. 1985) (emphasis added).

Granting the Motion could interfere with the administration of the case. The Liu Action is in its early stages. The parties have not completed discovery and a trial is not scheduled to begin until August 18, 2025. The Debtor is already juggling two state court matters for which stay relief was granted with its bankruptcy case. As discussed above, the Debtor's SOFA lists 23 pending lawsuits. Granting the Motion could lead to more stay relief motions by other pre-petition litigants.

The Debtor is currently focused on matters of "more general importance to the estate and the creditor body[.]" *See In re Patel*, 291 B.R. at 173. The Debtor is preparing its plan projections and plan (currently due March 1, 2025). (*See* Sainos Decl. at ¶ 3.) The Debtor is also continuing the good work it began pre-petition to improve its operations and cash flow. As stated by the court in *Patel*, the Debtor should be permitted to prioritize its reorganization and to control the process and the timing related to the liquidation of unsecured claims. Granting stay relief could distract the Debtor from its important work, *i.e.* reorganizing its affairs, moving this case forward towards a confirmed plan, and maximizing value for the benefit all stakeholders.

In addition, granting stay relief to the Movants could provide them with an unfair advantage. As stated by the bankruptcy court in *Patel*:

> [I]t is important for a bankruptcy court to preserve a level playing field for all parties to negotiate a plan. . . . To do so, no creditor should be given the opportunity to liquidate his claim on his schedule in his chosen forum, while other creditors are denied that strategic advantage.[3] Indeed, it would be particularly inappropriate to grant such preferential leverage to one creditor simply because he got closer

> to judgment before bankruptcy intervened, because such a policy would encourage a rush to the courthouse that has always been recognized as contrary to sound bankruptcy policy, as evidenced by the preference provisions of § 547.

*In re Patel*, 291 B.R. 169, 174–75 (Bankr. D. Ariz. 2003) (internal citation omitted).

For all these reasons, the Movants' request for stay relief should be denied.

## VI. CONCLUSION

Based on the foregoing, the Debtor respectfully requests that the Court deny the Motion.

Respectfully submitted,

DATED: January 28, 2025         **RAINES FELDMAN LITTRELL LLP**


By:    */s/ Robert S. Marticello*
ROBERT S. MARTICELLO
MICHAEL L. SIMON
*Counsel to the Debtor and Debtor-In-Possession*

# DECLARATION OF RUBEN SAINOS

I, Ruben Sainos, declare as follows:

1. I am the CFO of The Original Mowbray's Tree Service, Inc., the debtor and debtor-in-possession in the above-captioned case (the "**Debtor**").  I know each of the following facts to be true of my own personal knowledge, except as otherwise stated and, if called as a witness, I could and would competently testify with respect thereto.  I make this declaration in support of the opposition (the "**Opposition**") to the *Motion for Relief From the Automatic Stay Under 11 U.S.C. § 362* [Docket No. 260] (the "**Motion**") filed by Ping Liu and Guifen He (together, the "**Movants**").  Unless otherwise defined in this declaration, all terms defined in the Opposition are incorporated herein by this reference.

2. I incorporate by reference my prior *Declaration of Ruben Sainos in Support of Chapter 11 Petition and First Day Pleadings* [Docket No. 3] (the "**Prior Sainos Declaration**").

3. The Debtor is currently focused on preparing its chapter 11 plan and plan projections.  The Debtor is also focused on continuing the good work it began pre-petition, as set forth in the Prior Sainos Declaration, to improve its operations and cash flow.

4. Granting relief from the automatic stay as requested in the Motion could distract the Debtor from its efforts to improve operations, reorganize its affairs, and maximize value for the benefit all stakeholders.

5. I understand that the applicable insurance policies related to the lawsuit commenced by the Movants covers the one-year period from June 1, 2022, to June 1, 2023, has a $2,000,000 aggregate limit, and covers up to $1,000,000 per claim (subject to any and all limitations and terms and conditions in the policies).  I also understand that there is potentially an applicable $5,000,000 excess insurance policy.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 28th day of January, 2025.

1

1
2  _____
      RUBEN SAINOS
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**3200 Park Center Drive, Suite 250, Costa Mesa, CA 92626.**

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S OPPOSITION TO NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (ACTION IN NONBANKRUPTCY FORUM); AND DECLARATION OF RUBEN SAINOS IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **1/28/2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) **1/28/2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **1/28/2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| **1/28/2025** | Ja'Nita Fisher | */s/ Ja'Nita Fisher* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                                 **F 9013-3.1.PROOF.SERVICE**

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- **Kenneth J Catanzarite**   kcatanzarite@catanzarite.com
- **Marshall F Goldberg**   mgoldberg@glassgoldberg.com, jbailey@glassgoldberg.com
- **Alan Craig Hochheiser**   ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com
- **Raffi Khatchadourian**   raffi@hemar-rousso.com
- **Valery Loumber**   valloumlegal@gmail.com
- **James MacLeod**   jmacleod@dunninglaw.com, nancy@dunninglaw.com
- **Robert S Marticello**   rmarticello@raineslaw.com, bclark@raineslaw.com;jfisher@raineslaw.com
- **David W. Meadows**   david@davidwmeadowslaw.com
- **Queenie K Ng**   queenie.k.ng@usdoj.gov
- **Estela O Pino**   epino@epinolaw.com, staff@epinolaw.com;clerk@epinolaw.com
- **Amitkumar Sharma**   amit.sharma@aisinfo.com
- **Thomas E Shuck**   tshuck@pmcos.com, efilings@pmcos.com
- **Michael Simon**   msimon@raineslaw.com, bclark@raineslaw.com;jfisher@raineslaw.com
- **Ahren A Tiller**   ahren.tiller@blc-sd.com, 4436097420@filings.docketbird.com;brett.bodie@blc-sd.com;anika@blc-sd.com;derek@blc-sd.com;kreyes@blc-sd.com;megan@blc-sd.com;nicole@blc-sd.com;danny@blc-sd.com;angie@blc-sd.com;kreyes@blc-sd.com
- **United States Trustee (SA)**   ustpregion16.sa.ecf@usdoj.gov
- **Sharon Z. Weiss**   sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com,sharon-weiss-7104@ecf.pacerpro.com
- **Mandy Youngblood**   csbk@gmfinancial.com
- **Roye Zur**   rzur@elkinskalt.com, TParizad@elkinskalt.com;lwageman@elkinskalt.com;1648609420@filings.docketbird.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*   **F 9013-3.1.PROOF.SERVICE**