**RAINES FELDMAN LITTRELL LLP**
Robert S. Marticello, State Bar No. 244256
*rmarticello@raineslaw.com*
Michael L. Simon, State Bar No. 300822
*msimon@raineslaw.com*
4675 MacArthur Ct, Suite 1550
Newport Beach, CA 92660
Telephone:   (310) 440-4100
Facsimile:   (310) 691-1943

Counsel for The Original Mowbray's Tree
Service, Inc., Debtor and Debtor-In-Possession

### UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>THE ORIGINAL MOWBRAY'S TREE SERVICE, INC.,<br><br>Debtor and<br>Debtor-In-Possession. | Case No. 8:24-bk-12674-TA<br><br>Chapter 11<br><br>**MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 TO APPROVE SETTLEMENT AGREEMENT; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF BRIAN WEISS IN SUPPORT THEREOF**<br><br>[No Hearing Required Pursuant to Local Bankruptcy Rule 9013-1(o)] |

**TO THE HONORABLE THEODOR C. ALBERT, UNITED STATES BANKRUPTCY JUDGE:**

The Original Mowbray's Tree Service, Inc., the debtor and debtor-in-possession in the above-captioned case (the "**Debtor**"), moves this Court for an order approving the settlement agreement (the "**Settlement Agreement**") by and between the Debtor and Local Union 47 of the International Brotherhood of Electrical Workers, AFL-CIO (the "**Union**").  In support of the Motion, the Debtor submits the following memorandum of points and authorities and the attached declaration of Brian Weiss ("**Weiss Declaration**"), and respectfully represents as follows:

## I. INTRODUCTION

An essential component of the Debtor's Vegetation Management Services (as defined below) is the Debtor's workforce, a portion of which is represented by the Union. Every few years, the Debtor and the Union negotiate a collective bargaining agreement that outlines the rights, remedies, and expectations for both the employees and the Debtor. Under the terms of a certain collective bargaining agreement, the Union filed a grievance in June 2023, claiming a breach of the agreement with respect to laying off eight employees. The Debtor and the Union agreed to resolve the grievance through arbitration, set for February 21, 2025. However, in an effort to avoid further litigation, the parties have entered into the Settlement Agreement attached hereto as **Exhibit 1** (the "**Settlement Agreement**").

The terms of the Settlement Agreement are fair and reasonable. Under the terms of the Settlement Agreement, the Debtor will make a one-time payment in the collective sum of $28,000 ($3,500 per each of the 8 subject employees). This sum approximates the amount the Debtor expects to incur if the arbitration proceeds. In exchange for the payment, the grievance and the Debtor will be released of any claims related thereto. The Settlement Agreement will resolve the grievance efficiently, preserve estate resources, and avoid the uncertainty and expense of arbitration. Accordingly, the Debtor requests that the Court approve the Settlement Agreement.

## II. STATEMENT OF FACTS

### A. General Background

On October 18, 2024 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned chapter 11 case (the "**Chapter 11 Case**" or "**Case**"). The Debtor is operating as debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

Established in 1972 by Gloria and John Mowbray (the "**Founders**"), Mowbray's has been a cornerstone in California for providing vegetation management services for over 50 years. Mowbray's began as a modest venture and has grown into a resilient company, dedicated to

1  safeguarding communities and the environment.  Mowbray's continues to be a family owned and
2  operated business, is a member of WMBE (Women and Minority Business Enterprise), and is
3  committed to providing its client-partners with the safest and most efficient solution to their
4  vegetation management needs.

5        The services provided by the Debtor include, without limitation, manual and mechanical
6  clearing, integrated vegetation management, storm and emergency, right-of-way maintenance, and
7  high-hazard tree removal and crane services (collectively, "**Vegetation Management Services**").
8  Tree-trimming around power lines, clearing vegetation to prevent forest fires, removal of debris
9  and charred remains after major wildfires in California, and assisting with damage remediation in
10 response to hurricanes―these are the types of important services that the Debtor provides to the
11 communities in which it serves.  Historically, utility companies have been the Debtor's primary
12 clients.  The Debtor also provides services to governmental agencies and cooperatives.

13       The Debtor is based in California and provides Vegetation Management Services
14 throughout the state.  The Debtor also provides services in Florida and North Carolina.

15       Prior to the Petition Date, the Debtor retained Brian Weiss of Force Ten Partners, LLC as
16 its Chief Restructuring Officer to lead the Debtor through its formal restructuring process,
17 including this Case.

18       **B.**      **<u>Events Leading to the Settlement Agreement</u>**

19       The Debtor and the Union are signatories to a certain collective bargaining agreement (the
20 "**CBA**"), effective June 1, 2022 through September 30, 2027.  On or about June 5, 2023, the Union
21 submitted to the Debtor a grievance pursuant to Article XV of the CBA, alleging that the Debtor
22 violated the CBA by failing to follow certain procedures in connection with the layoff of eight
23 employees (the "**Grievance**").  By the Grievance, the Union asserts that the Debtor owes the sum
24 of $204,000.  The Debtor and the Union agreed to an arbitration, scheduled for February 21, 2025,
25 to resolve the Grievance (the "**Arbitration**").  In a desire to compromise, settle, and conclude the
26 Grievance and Arbitration, the Debtor and the Union entered into the Settlement Agreement.

27
28

**C.    Summary of the Settlement Agreement**

Subject to the approval of the Court, the Settlement Agreement provides for the following:[1]

(1)    The Debtor agrees to pay each of the eight employees identified in the Settlement Agreement the gross amount of $3,500;

(2)    The Debtor agrees to pay the full amount of any cancellation fee charged, if any, by the arbitrator assigned to hear the Arbitration, following cancellation of the Arbitration;

(3)    The Union agrees that the Grievance shall be and is deemed withdrawn with prejudice upon entry of an order approving the Settlement Agreement;

(4)    The Union will notify the arbitrator assigned to hear the Arbitration and request that the Arbitration be withdrawn, dismissed, or otherwise administratively closed; and

(5)    The Union, and its employees, knowingly and voluntarily release the Debtor from any and all claims concerning the Grievance and Arbitration, or that otherwise relate to or arise out of the Grievance and Arbitration.

**III.    LEGAL ARGUMENT**

Bankruptcy Rule 9019(a) provides, in part, that a court may approve a compromise per motion by the trustee and after a hearing on notice to the debtor, all creditors, and all interested parties. The standard to be applied to the approval of a settlement includes the probability of success of any litigation, the difficulties in collection on a judgment, the complexity of the matter, the expense, inconvenience or delay occasioned by resolution through litigation, and interests of creditors, and the reasonableness of the compromise. *In re A & C Properties,* 784 F.2d 1377, 1380-81 (9th Cir. 1986).

In approving a settlement agreement, the court must find that it is fair and equitable and the product of good-faith negotiations. *See id.* Generally speaking, the court may defer to the business judgment of the debtor-in-possession or trustee in deciding whether to settle a matter.

---

[1] In the event of an inconsistency between the Settlement Agreement and the summary in this Motion, the Settlement Agreement shall control.

*See In re Mickey Thompson Entertainment Group, Inc.,* 292 B.R. 415, 420 (B.A.P. 9th Cir. 2003). The court need not conclude that the proposed settlement is the best possible compromise, but only that the settlement is "within the reasonable range of litigation possibilities." *See In re World Health Alternatives, Inc.,* 344 B.R. 291, 296 (Bankr. D. Del. 2006) (citation omitted). Similarly, the court need not, and should not conduct a "mini-trial" on the compromised claims but simply determine that disputes related to those claims exist. *See In re Schmitt,* 215 B.R. 417, 423 (B.A.P. 9th Cir. 1997) ("When assessing a compromise, courts need not rule upon disputed facts and questions of law, but rather only canvass the issues. A mini-trial on the merits is not required."); *see also In re Hermitage Inn, Inc.,* 66 B.R. 71, 72 (Bankr. D. Colo. 1986) ("[T]he court's assessment does not require resolution of the issues, but only their identification, so that the reasonableness of the settlement may be evaluated."). It is enough that the court conclude the probability of success is uncertain. *See, e.g., In re America West Airlines, Inc.,* 214 B.R. 382, 386 (Bankr. D. Ariz. 1997).

The Settlement Agreement provides for a fair and efficient resolution of the disputes and claims among the Debtor and the Union. While the Debtor believes it will prevail in the Arbitration, the Settlement Agreement avoids the risk that the Union could prevail and that the Debtor is found liable for an amount greater than the settlement payment. The Union asserts that the Debtor is required to pay the sum of $204,000. In addition, under the Settlement Agreement, the Union is to dismiss the Arbitration and release all claims related to the Grievance, enabling the Debtor to direct resources toward the reorganization process as opposed to litigation with the Union.

Importantly, the settlement payment is comparable to the amount the Debtor would expect to incur if the Arbitration were to proceed, making the settlement a financially prudent resolution. (Weiss Decl. ¶ 4.) The Arbitration could be viewed as a matter subject to the automatic stay under 11 U.S.C. § 362. However, the Second Circuit has held that § 1113(f) of the Bankruptcy Code precludes the application of the automatic stay to an arbitration pursuant to a collective bargaining agreement. *See In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 992 & 996 (2d Cir. 1990) ("We hold

that application of the automatic stay provisions of § 362 of the Bankruptcy Code is precluded by § 1113(f) only to the extent that they permit a debtor unilaterally to terminate or alter a collective bargaining agreement. With respect to the LPP decision, we hold that application of the automatic stay to the arbitration brought pursuant to the collective bargaining agreement violated § 1113(f) since it allowed Eastern unilaterally to avoid its obligation to arbitrate."). Other courts have followed the Second Circuit's decision in *Ionosphere Clubs*. *See In re Fulton Bellows & Components, Inc.*, 307 B.R. 896, 903 (Bankr. E.D. Tenn. 2004) (debtor's attempt to forego arbitration of its disputes with union is a unilateral modification of the collective-bargaining agreement and expressly prohibited under § 1113, rendering the automatic stay inapplicable to pending arbitration). While there is no Ninth Circuit case law on this issue, if the Court were to follow *Ionosphere Clubs*, then the automatic stay would be inapplicable to the Arbitration and the Debtor would be forced to incur the cost of defense. Moreover, the Debtor would be likely to incur the cost of seeking an order from the Court on the applicability of the stay. Thus, the settlement payment is an amount that the Debtor may incur whether the Settlement Agreement is approved or not. The Settlement Agreement eliminates the risk that the Debtor could incur costs in excess of the settlement payment and still be found liable to the Union.

## IV.    CONCLUSION

For the reasons set forth above, the Debtor believes it is in the best interests of the estate and a proper exercise of its business judgment and requests that the Settlement Agreement be approved.

Respectfully submitted,

DATED: March 20, 2025        **RAINES FELDMAN LITTRELL LLP**

By: */s/ Robert S. Marticello*
ROBERT S. MARTICELLO
MICHAEL L. SIMON
Counsel to the Debtor and Debtor-In-Possession, The Original Mowbray's Tree Service, Inc

## DECLARATION OF BRIAN WEISS

I, Brian Weiss, declare as follows:

1. I am the Chief Restructuring Officer of The Original Mowbray's Tree Service, Inc. ("**Debtor**"), the debtor and debtor in possession in the above-captioned chapter 11 case. I know each of the following facts to be true of my own personal knowledge, except as otherwise stated and, if called as a witness, I could and would competently testify with respect thereto. I make this declaration in support of the *Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019 to Approve Settlement Agreement* (the "**Motion**"). Unless otherwise defined in this declaration, all terms defined in the Motion are incorporated herein by this reference.

2. The Arbitration with the Union was scheduled for February 21, 2025, to address the Grievance.

3. Through counsel, the Debtor engaged in settlement discussions with the Union that resulted in the Settlement Agreement. A true and correct copy of the Settlement Agreement is attached as **Exhibit 1**.

4. The Settlement Agreement represents a fair and equitable compromise. The Settlement Agreement resolves disputes between the Debtor and the Union with respect to the Grievance. While the Debtor believes it will prevail in the Arbitration, the Settlement Agreement avoids the risk that the Union could prevail and that the Debtor is found liable for an amount greater than the settlement payment. The Union asserts that the Debtor is required to pay the sum of $204,000. In addition, under the Settlement Agreement, the Union is to dismiss the Arbitration and release all claims related to the Grievance, enabling the Debtor to direct resources toward the reorganization process as opposed to litigation with the Union.

5. The cost the Debtor expects to incur if the Arbitration proceeds is approximately $35,000. As such, the settlement payment in the collective amount of $28,000 is comparable to the amount the Debtor would expect to incur if the Arbitration were to proceed, making the settlement a financially prudent resolution. The Settlement Agreement eliminates the risk that the Debtor could incur costs in excess of the settlement payment and be found liable to the Union.

1    6.    In addition to eliminating the risk of litigation, the Settlement Agreement fosters a more stable working relationship with the Union, helping boost employee morale and demonstrate the Debtor's support for its skilled workforce.

7.    For all of these reasons, I believe that the Settlement Agreement represents a positive outcome for the estate that will inure to the benefit of all of the Debtor's creditors.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 12th day of March, 2025, at Irvine, California.

_____
BRIAN WEISS

# EXHIBIT "1"

## GRIEVANCE SETTLEMENT AGREEMENT

This **GRIEVANCE SETTLEMENT AGREEMENT** ("Agreement") is entered into by and between **Local Union 47 of the International Brotherhood of Electrical Workers, AFL-CIO** (the "Union") and **The Original Mowbray's Tree Service, Incorporated d/b/a Mowbray's Tree Service** (the "Company"), to be effective as of February ___, 2025 (the "Execution Date"). The Union and the Company are referred to herein each as a "Party" and collectively as the "Parties."

### RECITALS

**WHEREAS**, the Union and the Company are signatory to a Collective Bargaining Agreement effective June 1, 2022 through September 30, 2027 (the "CBA");

**WHEREAS**, on or about June 5, 2023, the Union submitted to the Company a grievance pursuant to Article XV of the CBA alleging that the Company violated the CBA by failing to follow the layoff procedures specified in the CBA in connection with layoffs of Company employees and Union members implemented by the Company on or about May 19, 2023; May 31, 2023; and June 2, 2023 (the "Grievance");

**WHEREAS**, the Company denied the Grievance;

**WHEREAS**, the Union elected to arbitrate the Grievance;

**WHEREAS**, arbitration of the Grievance is scheduled for February 21, 2025 before Arbitrator Joan Parker (the "Arbitration");

**WHEREAS**, on or about October 18, 2024, the Company filed a Petition pursuant to Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court, Central District of California, Santa Ana Division ("Bankruptcy Court"), in Case No. 8:24-bk-12674-TA (the "Bankruptcy Case");

**WHEREAS**, the Parties desire to compromise, settle, and conclude the Grievance and the Arbitration and all other claims and controversies related to or otherwise arising out of the Grievance, including with regard to the circumstances of the Employees' (as defined herein) separation from employment with the Company.

### AGREEMENT

**NOW, THEREFORE**, in consideration of the promises and undertakings set forth herein, the Parties have agreed to resolve the Grievance, the Arbitration, and all other matters relating to or arising out of the employment of the Employees, including, without limitation, the circumstances of the Employees' separation from employment with the Company, on the following terms and conditions.

1. The recitals set forth above are true, accurate, and correct, and are incorporated into this Agreement by this reference and made a material part of this Agreement.

2. The Parties understand, acknowledge, and agree that the effectiveness of this Agreement is expressly contingent on approval of this Agreement by the Bankruptcy Court in the Bankruptcy Case. Should the Bankruptcy Court fail or otherwise refuse or decline to approve this Agreement in the Bankruptcy Case, this Agreement shall be null, void, and of no legal effect, and neither Party shall be under any obligation to perform under this Agreement, *provided, however,* that if the Bankruptcy Court fails or otherwise refuses or declines to approve this Agreement in the Bankruptcy Case, the Parties shall work collaboratively to reschedule the Arbitration for a mutually agreeable date and time.

3. The Company agrees to request the Bankruptcy Court approve this Agreement in the Bankruptcy Case by filing appropriate pleadings with the Bankruptcy Court in the Bankruptcy Case. This Agreement shall not be binding or effective on the Company unless and until the Bankruptcy Court enters a final order granting the Company's motion to approve the Agreement (the "Effective Date").

4.  The Company agrees to pay each of the eight employees identified below (collectively, the "Employees") the gross amount of Three Thousand Five Hundred Dollars and Zero Cents ($3,500.00) each, less required deductions for applicable federal, state, and local tax withholding, in settlement of the Grievance and the Arbitration.

| | |
|---|---|
| Marlon Piril Chavarria | Marcelino Vazquez |
| Sergio Rodriguez | Mateo Vazquez |
| Tomas Gonzalez Juarez | Manuel Vargas |
| Hugo Mendoza Dorantes | Gustavo Dominguez |

The Company will tender payment to the Employees within fifteen (15) calendar days of the Effective Date in the form of a check. The Company will send payment for each of the Employees to the Union, care of its counsel, Carlos Coye, Rothner, Segall & Greenstone, 510 South Marengo Avenue, Pasadena, California, 91101-3115.

5.  The Company agrees to pay the full amount of any cancelation fee charged, if any, by the Arbitrator assigned to hear the Arbitration (Joan Parker) following cancelation of Arbitration, as required by Paragraph 6.b. herein.

6.  In exchange for the Company's agreement to adjust the Grievance and the Arbitration as set forth in Paragraphs 4 and 5 of this Agreement, the Union agrees as follows.

    a.  The Union agrees that the Grievance shall be and is deemed withdrawn with prejudice as of the Effective Date.

    b.  The Union will notify the Arbitrator assigned to hear the Arbitration (Joan Parker) and the Federal Mediation and Conciliation Service ("FMCS") within two (2) business days of the Effective Date that the Grievance has been resolved and the Union will request that the Arbitration be withdrawn, dismissed, or otherwise administratively closed by the FMCS.

7.  In consideration of the Company's agreement to adjust the Grievance and the Arbitration on the terms and conditions set forth in Paragraphs 4 and 5 of this Agreement, the Union, for itself and behalf of the Employees to the extent permitted by law, knowingly and voluntarily releases the Company and its parents, subsidiaries, affiliates, and commonly controlled corporate entities from, and promises not to bring, pursue, or otherwise seek to recover from or accept recovery under, any and all claims under or pursuant to the Grievance or the Arbitration as well as any other claim or other legal action concerning the subject matter the Grievance or the Arbitration or that otherwise relates to or arises out of the Company's employment of the Employees (or any of them), including, without limitation, with respect to the Employees' (or any of their) separation from employment with the Company, and including any Union claim or claim by the Employees or any of them that it or the Employees or any of them is entitled to any additional compensation, including, but not limited to, back wages, front wages, compensatory damages, liquidated damages, interest, or any other consideration, arising out of or on account of the Grievance or the Arbitration. For purposes of clarity and the avoidance of doubt, this Agreement resolves only the Grievance and the Arbitration (as those terms are each defined in this Agreement) and related matters, and does not resolve in any way any other grievances, including the Union's grievances related to the Company's alleged misreporting of hours to the Union's Employees Benefit Agreement of the National Electrical Benefit Fund, the National Electrical Annuity Plan Agreement and Trust, and the Line Construction Benefit Fund subject to any and all rights of the Company in response and defense thereto. This release also does not however apply to any rights the Union or any of the Employees may have to enforce this Agreement or to challenge the validity of this Agreement. Further, nothing in this Agreement prevents or prohibits any Party from filing a charge with or participating, testifying, or assisting in any investigation, hearing, or other proceeding before any federal, state, or local government agency. However, to the maximum extent permitted by law, the Union agrees that if such an administrative claim is made, neither the Union nor any of the Employees shall be entitled to recover any individual monetary relief or other individual remedies.

8.  The Union agrees that the Company's agreement to adjust the Grievance and the Arbitration as provided in <u>Paragraphs 4 and 5</u> of this Agreement is sufficient consideration for the waiver and release provided by the Union in <u>Paragraph 7</u> of this Agreement and all other promises made by the Union in this Agreement.

9.  The Parties agree that no Party, nor any officer, agent, employee, representative, or attorney for any Party, has made any statement or representation to any other Party regarding any fact relied upon by any Party in entering into this Agreement, and no Party relies upon any such statement or representation in executing this Agreement, or in making the settlement herein provided. In agreeing to the terms herein and executing this Agreement, each Party represents and warrants that it has relied only and wholly upon the Party's own judgment, belief, and knowledge of the existence or nonexistence of any fact, material or not. Each Party has made such investigation of the facts pertaining to the settlement and this Agreement as the Party deems necessary.

10.  The Parties agree that they each have entered into this Agreement freely and voluntarily and without duress. By entering into this Agreement, no Party admits any liability or fault with respect to the Grievance or the Arbitration or as to any other matter.

12.  No addition, deletion, or amendment to this Agreement shall have any force or effect, except as mutually agreed to in a writing signed by authorized representatives of all Parties.

13.  This Agreement and the exhibits to it constitute the entire understanding of the Parties with respect to the settlement of the Grievance, the settlement of the Arbitration, and the resolution of all other matters relating to or arising out of the Employees' employment with the Company, and there are no other terms or agreements, verbal or written, respecting the settlement or resolution of any of those matters.

14.  The Parties agree that the agreements and understandings set forth in this Agreement were the result of good faith compromise and that the resolution of the Grievance, of the Arbitration, and of all other matters arising out of or relating to the Employees' employment with the Company on the terms set forth herein shall be non-precedential and that neither this Agreement nor the terms and conditions set forth herein in any way, modify, alter and/or change any provision in the CBA. The Parties further agree that in entering into this Agreement, the Company does not admit that it violated the CBA nor does the Company admit any liability with respect to the Grievance, the Arbitration, or any other matter. This Agreement shall not be introduced, referred to, or in any other way used or relied upon in any subsequent grievance, arbitration, litigation, or administrative hearing except as necessary to enforce the terms of this Agreement.

15.  By signing below, each Party represents and warrants to the other Party that the individual executing this Agreement on behalf of that Party has full power and authority to execute, deliver, and perform this Agreement. By signing below, the Union further and additionally represents and warrants that to the extent such consent is required, it has the consent of the Employees and any other member of the Union whose consent may be necessary or required to execute this Agreement.

16.  Should any provision in this Agreement be declared or determined by a court of competent jurisdiction to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected, and the illegal or invalid part, term, or provision shall be deemed not to be a part of this Agreement.

17.  The Parties hereto acknowledge and agree that each Party has participated or had the opportunity to participate in the drafting of this Agreement, that each Party has had the opportunity to have this document reviewed by the respective legal counsel for the Parties hereto, and that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be applied to the interpretation of this Agreement. No inference in favor of, or against, any Party shall be drawn from the fact that one Party has drafted any portion hereof.

1103708848\1\AMERICAS

18. This Agreement may be signed in original or in counterparts. Each counterpart shall be deemed an original and, taken together, the counterparts shall constitute one and the same agreement, which shall be binding and effective. Electronic signatures transmitted via Adobe Acrobat .pdf file format or via DocuSign or similar electronic signature platform shall be sufficient and fully binding.

19. The Union acknowledges the existence of and, with respect to the release of all claims given by the Union in Paragraph 7 of this Agreement, expressly waives and relinquishes any and all rights and benefits the Union has or may have under California Civil Code, Section 1542, which provides:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR"

The Union acknowledges that the Union is aware that the Union may hereafter discover facts or law different from or in addition to the facts or law that the Union now knows or believes to be true with respect to the matters released in Paragraph 7 above and agrees that the release so given by the Union in Paragraph 7 above shall be and shall remain in effect as a full and complete release of the respective claims, notwithstanding any such different or additional facts.

| | |
|---|---|
| **LOCAL UNION 47 OF THE INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO** | **THE ORIGINAL MOWBRAY'S TREE SERVICE, INCORPORATED d/b/a MOWBRAY'S TREE SERVICE** |
| By: _[signature]_ | By: _[signature]_ |
| Printed Name: Colin Lavin | Printed Name: Brian Weiss |
| Title: Business Manager | Title: Chief Restructuring Officer |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

**4675 MacArthur Ct., Suite 1550, Newport Beach, CA 92660.**

A true and correct copy of the foregoing document entitled (*specify*): **MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 TO APPROVE SETTLEMENT AGREEMENT; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF BRIAN WEISS IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **3/20/2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) **3/20/2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **3/20/2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| **3/20/2025** | Ja'Nita Fisher | */s/ Ja'Nita Fisher* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                           **F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:
   - **Kenneth J Catanzarite    kcatanzarite@catanzarite.com**
   - **Jessica L Giannetta    jessica@giannettaenrico.com, melanie@giannettaenrico.com**
   - **Marshall F Goldberg    mgoldberg@glassgoldberg.com, jbailey@glassgoldberg.com**
   - **Alan Craig Hochheiser    ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com**
   - **Raffi Khatchadourian    raffi@hemar-rousso.com**
   - **Valery Loumber    valloumlegal@gmail.com**
   - **Michael B Lubic    michael.lubic@klgates.com, jonathan.randolph@klgates.com,klgatesbankruptcy@klgates.com**
   - **James MacLeod    jmacleod@dunninglaw.com, nancy@dunninglaw.com**
   - **Robert S Marticello    rmarticello@raineslaw.com, bclark@raineslaw.com;jfisher@raineslaw.com**
   - **David W. Meadows    david@davidwmeadowslaw.com**
   - **Queenie K Ng    queenie.k.ng@usdoj.gov**
   - **Estela O Pino    epino@epinolaw.com, staff@epinolaw.com;clerk@epinolaw.com**
   - **Donald W Reid    don@donreidlaw.com, 5969661420@filings.docketbird.com**
   - **Amitkumar Sharma    amit.sharma@aisinfo.com**
   - **Jeffrey S Shinbrot    jeffrey@shinbrotfirm.com, sandra@shinbrotfirm.com;tanya@shinbrotfirm.com**
   - **Thomas E Shuck    tshuck@pmcos.com, efilings@pmcos.com**
   - **Michael Simon    msimon@raineslaw.com, bclark@raineslaw.com;jfisher@raineslaw.com**
   - **Ahren A Tiller    ahren.tiller@blc-sd.com, 4436097420@filings.docketbird.com;brett.bodie@blc-sd.com;anika@blc-sd.com;derek@blc-sd.com;kreyes@blc-sd.com;megan@blc-sd.com;nicole@blc-sd.com;danny@blc-sd.com;angie@blc-sd.com;kreyes@blc-sd.com**
   - **United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov**
   - **Sharon Z. Weiss    sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com,sharon-weiss-7104@ecf.pacerpro.com**
   - **Mandy Youngblood    csbk@gmfinancial.com**
   - **Roye Zur    rzur@elkinskalt.com, lwageman@elkinskalt.com;1648609420@filings.docketbird.com;rzur@ecf.courtdrive.com**

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                                  **F 9013-3.1.PROOF.SERVICE**