1

**RAINES FELDMAN LITTRELL LLP**
Robert S. Marticello, State Bar No. 244256

2
*rmarticello@raineslaw.com*
Michael L. Simon, State Bar No. 300822

3
*msimon@raineslaw.com*
4675 MacArthur Ct, Suite 1550

4
Newport Beach, CA 92660
Telephone:    (310) 440-4100

5
Facsimile:    (310) 499-4877

6
Counsel for The Original Mowbray's Tree Service,
Inc., Debtor and Debtor-In-Possession

7

8
### UNITED STATES BANKRUPTCY COURT

9
### CENTRAL DISTRICT OF CALIFORNIA

10
### SANTA ANA DIVISION

11
| | |
|---|---|
| In re | Case No. 8:24-bk-12674-TA |

12
THE ORIGINAL MOWBRAY'S TREE SERVICE, INC., a Delaware corporation

Chapter 11

13

14
Debtor and
Debtor-in-Possession.

**DEBTOR'S MOTION FOR ENTRY OF ORDER AUTHORIZING CONTINUED USE OF CASH COLLATERAL; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATIONS OF BRIAN WEISS AND RUBEN SAINOS IN SUPPORT**

15

16

17

18
**Hearing Information (via ZoomGov):**
**Date:**    TBD
**Time:**    TBD
**Place:**    Courtroom 5B

19

20
411 West Fourth Street,
Santa Ana, CA 92701

21

22

23

24

25

26

27

28

**TO THE HONORABLE THEODOR C. ALBERT, UNITED STATES BANKRUPTCY JUDGE:**

The Original Mowbray's Tree Service, Inc., the debtor and debtor-in-possession in the above-captioned case (the "**Debtor**"), hereby files this *Motion for Entry of Order Authorizing Continued Use of Cash Collateral* (the "**Motion**").  In support of the Motion, the Debtor submits the following memorandum of points and authorities and the attached declarations of Brian Weiss (the "**Weiss Declaration**") and Ruben Sainos (the "**Sainos Declaration**").

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    <u>INTRODUCTION</u>**

By this Motion, the Debtor requests authorization to continue to use cash collateral in accordance with the 13-week budget attached hereto as <u>**Exhibit 1**</u> (as may be amended and supplemented, the "**Budget**") and pursuant to the proposed order granting the Motion attached hereto as <u>**Exhibit 2**</u>.

The Debtor's business provides vegetation management services that include mitigating vegetation hazards and assisting with emergency responses to damage caused by wildfires, hurricanes, and other natural disasters.  The Debtor requests authority to use cash collateral to pay ordinary course operating expenses and professional fees allowed by the Court and make payments to secured parties.

PNC Bank ("**PNC**") is the only creditor holding a lien in the Debtor's cash.  By the order entered on January 24, 2025 [Docket No. 268] (the "**Final Order**"), the Court authorized the Debtor to use cash collateral on a final basis in accordance with the *Stipulation Authorizing Use of Cash Collateral* [Docket No. 255] (the "**Stipulation**").  The Stipulation provides for the Debtor's use of cash collateral pursuant to the Initial Budget attached to the Final Order and such other budgets prepared by the Debtor and approved by PNC.  The Initial Budget ends on April 18, 2025.  The Debtor requests that the Court enter an order authorizing the continued use of cash collateral pursuant to the Budget on the same terms as set forth in the Stipulation.

MOTION FOR ENTRY OF ORDER
AUTHORIZING CONTINUED USE OF CASH COLLATERAL

10501651.1

1    The use of cash collateral is appropriate.  The use of cash collateral is necessary for the

2    continued operation of the Debtor's business, to preserve the Debtor as a going-concern, and to

3    maximize the value of the estate.  Absent the use of cash collateral, the Debtor will suffer

4    immediate and irreparable harm to the detriment of the Debtor, its estate, and its creditors.

5    The Debtor has shared the Budget with PNC and expects to reach a further consensual

6    cash collateral arrangement with PNC.  In addition, PNC is adequately protected against any

7    diminution in value for multiple reasons.  First, the Debtor proposes to continue payments to

8    PNC as provided in the Stipulation in the amount of $150,000 per month.  Second, PNC's

9    security interests will be protected by replacement liens in the Debtor's post-petition revenues

10   and superpriority administrative claims if and to the extent of any diminution in value.  The

11   Debtor has generated positive cash flow post-petition and, over the next 13 weeks, the Debtor's

12   operations are essentially projected to breakeven before payments to lenders and on account of

13   professional fees.  Third, the operation of the Debtor's business protects PNC and all creditors

14   by maximizing the value of the Debtor, its operations, and assets as a whole.  Accordingly, the

15   Debtor respectfully requests that the Court grant the Motion and authorize the use of cash

16   collateral.

17

18   **II.    DISCLOSURES REQUIRED BY FRBP 4001**

19   The Debtor makes the following disclosures with respect to the proposed use of cash

20   collateral:

| Summary of Material Terms | |
|---|---|
| **Entities Who May Have an Interest in Cash Collateral** | The entities that assert, or may assert, an interest in all or a portion of the Debtor's cash are as follows: PNC. |
| **Purpose of Cash Collateral Use** | The purpose of the use of cash collateral is for operating expenses, payments to lenders, and professionals fees as set forth in the Budget.  The Budget will be deemed a "Budget" as defined in the Stipulation. |

MOTION FOR ENTRY OF ORDER
AUTHORIZING CONTINUED USE OF CASH COLLATERAL

10501651.1

| Summary of Material Terms | |
|---|---|
| **Material Terms of the Use of Cash Collateral** | The Debtor requests authority to use cash collateral on final basis in accordance with the Budget.<br><br>The terms of the use of cash collateral are as follows:<br><br>The Debtor may use cash collateral from April 19, 2025, through and including July 18, 2025 (the "**Cash Collateral Period**"), in accordance with the Budget, with expenditures during this period not to exceed 115% of the per budget line item (*i.e.*, a 15% variance); *provided, however,* that the total cash expenditures during the Cash Collateral shall not exceed 110% of the total budgeted disbursements in the Budget (*i.e.*, a 10% cumulative variance).[1]<br><br>During the Cash Collateral Period, (i) any unused amount for any given line item in the Budget for a particular week shall carry forward and can be used in later weeks, and (ii) any amounts budgeted for a given line item in a particular week through the end of the Cash Collateral Period may be spent up to two weeks earlier than budgeted provided the total amount spent for such line item does not exceed the total amount budgeted for that line item with the variance permitted above. |
| **Adequate Protection** | Pursuant to §§ 361, 362, 363 and 552(b) of the Bankruptcy Code, PNC shall receive adequate protection in the following forms in order to account for any aggregate diminution in value with respect to PNC's Prepetition Liens in the Prepetition Collateral (as such terms are defined in the Stipulation) from and after the Petition Date as calculated and determined in accordance with the Bankruptcy Code ("**Diminution in Value**"):<br><br>(1) By the fifteenth (15th) of each calendar month during the Cash Collateral Period, the Debtor shall pay to PNC the amount of $150,000 (each, a "**Monthly Payment**" and collectively, the "**Monthly Payments**"). The Debtor reserves all rights with respect to the application of such payments to interest or principal under the Bankruptcy Code and the Debtor's agreements with PNC.<br><br>(2) Valid, attached, enforceable, perfected and continuing replacement security interests in, and replacement liens upon, on all of the Debtor's currently owned or hereafter acquired personal property and assets (including such assets acquired by the Debtor on or after the Petition Date), of any kind or nature, wherever located, and all proceeds thereof, of the same extent, validity, and priority as the Prepetition Liens, to the extent of any Diminution in Value; *provided, however*, that the replacement security interests and liens will not attach to Bankruptcy Code Chapter 5 causes of action of the Debtor or the estate and the proceeds thereof.<br><br>(3) Superpriority administrative claim pursuant to § 503 and 507(b) of the Bankruptcy Code with priority over any and all administrative *inter* |

MOTION FOR ENTRY OF ORDER
AUTHORIZING CONTINUED USE OF CASH COLLATERAL

10501651.1

| Summary of Material Terms | |
|---|---|
| | *alia*, §§ 105, 326, 328, 330, 331, 364(c)(1), 365, 503(a), 503(b), 507(a), 507(b), 546(c), 726, 1113, or 1114 of the Bankruptcy Code to the extent of any Diminution in Value.<br><br>Nothing herein shall limit the rights afforded to the Debtor or PNC in the Stipulation. |
| **Professional Fees** | Fees and expenses incurred by persons or firms retained by the Debtor pursuant to §§ 327, 328, or 363 of the Bankruptcy Code (hereafter, a "**Professional**"), up to the amounts provided in the Budget, all fees required to be paid to the Clerk of the Court, and all statutory fees of the Office of the United States Trustee, may be paid by the Debtor during the Cash Collateral Period prior to the occurrence of an Uncured Event of Default as defined in the Stipulation.<br><br>The Debtor is authorized to fund a separate segregated account consisting of those amounts set forth in the applicable Budget for the payment of fees and expenses of the Professionals (the "**Professional Fee Account**"). The fees and expenses payable to Professionals shall be placed in the Professional Fee Account as such fees and expenses are accrued under the Budget, and any and all withdrawals from the Professional Fee Account shall be subject to further orders of the Court. Amounts funded into the Professional Fee Account shall be considered used by the Debtor at such time as they are deposited into the Professional Fee Account for distribution to professionals in accordance with orders of the Bankruptcy Court.<br><br>For the avoidance of doubt, PNC is not subordinating its superpriority administrative claim to any postpetition payments including, without limitation, payments made pursuant to the foregoing provisions. Notwithstanding anything herein to the contrary, should any disgorgement be sought by PNC with respect to any postpetition payment(s) permitted by the Budget, including, without limitation, payments made pursuant to made pursuant to the foregoing provisions, then the rights of the Debtor pursuant to 11 U.S.C. § 506(c) with respect to such payments are preserved and not waived. |

## III.    JURISDICTION, VENUE, AND PREDICATES FOR RELIEF

The United States Bankruptcy Court for the Central District of California (the "**Court**") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and may be determined by the Court.

The predicates for the relief requested herein are sections 105, 361, 363 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), and Rules 4001(b), 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

**IV.    BACKGROUND**

    **A.    General Background**

On October 18, 2024 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned chapter 11 case (the "**Chapter 11 Case**" or "**Case**"). The Debtor is operating as the debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

Established in 1972 by Gloria and John Mowbray (the "**Founders**"), Mowbray's has been a cornerstone in California for providing vegetation management services for over 50 years. Mowbray's began as a modest venture and has grown into a resilient company, dedicated to safeguarding communities and the environment. Mowbray's continues to be a family owned and operated business, is a member of WMBE (Women and Minority Business Enterprise), and is committed to providing its client-partners with the safest and most efficient solution to their vegetation management needs.

The services provided by the Debtor include, without limitation, manual and mechanical clearing, integrated vegetation management, storm and emergency, right-of-way maintenance, and high-hazard tree removal and crane services (collectively, "**Vegetation Management Services**"). Tree-trimming around power lines, clearing vegetation to prevent forest fires, removal of debris and charred remains after major wildfires in California, and assisting with damage remediation in response to hurricanes—these are the types of important services that the Debtor provides to the communities in which it serves. Historically, utility companies have been the Debtor's primary clients. The Debtor also provides services to governmental agencies and cooperatives.

1    The Debtor is based in California and provides Vegetation Management Services

2    throughout the state.  The Debtor also provides services in Florida and North Carolina.

3    Prior to the Petition Date, the Debtor retained Brian Weiss of Force Ten Partners, LLC,

4    as its Chief Restructuring Officer to lead the Debtor through its formal restructuring process,

5    including this Case.

6    **B.    The Debtor's Funded Debt**

7    Pursuant to a loan agreement dated October 28, 2022 (the "**PNC Loan Agreement**")

8    between PNC and the Debtor, PNC has provided the Debtor with a secured revolving line of

9    credit not to exceed $20,000,000 and letters of credit not to exceed $5,000,000 (the "**PNC**

10   **Loan**").  In the Stipulation, the Debtor acknowledged that, as of the Petition Date, the PNC

11   Loan balance was $7,038,514.41, plus any additional obligations, such as, interest, default

12   interest, late fees, attorney's fees, expenses, other charges and costs, provided for under the

13   Prepetition Loan Documents and as permitted by the Bankruptcy Code.  The PNC Loan was

14   guaranteed by Robin Mowbray and an entity she owns, Mowbray's Waterman Property, LLC

15   ("**MWP**").  The guaranty from MWP is secured by certain of its real property.

16   **C.    The Debtor's Prior Cash Collateral Use**

17   On October 18, 2024, the Debtor filed a motion for entry of interim and final orders

18   authorizing use of cash collateral [Docket No. 5] (the "**First Cash Collateral Motion**").  On

19   October 24, 2024, the Court entered an order granting the First Cash Collateral Motion on an

20   interim basis.  (*See* Docket No. 72.)  Pursuant to a stipulation with PNC that was approved by

21   order entered on January 24, 2025, the Court granted the First Cash Collateral Motion on a

22   final basis and authorized the Debtor to use cash collateral through April 18, 2025, in

23   accordance with the budget attached to that order.  (*See* Docket No. 268.)  To date post-

24   petition, the Debtor has generated positive cash flow.  The Debtor's cash on hand increased

25   from approximately $4,479,479 to $12,412,652 as of March 28, 2025.  Moreover, the Debtor

26   has kept its operations within the Initial Budget or has performed better than projected.

27   Attached hereto as **Exhibit 3** is a variance report of the Debtor's actual operations as compared

28

to the Initial Budget through March 28, 2025.  From January 24, 2024, through March 28, 2025, the Debtor has exceeded its receipts by $1,262,812 or 25.6% as compared to the Initial Budget and its operating expenses were less than budgeted by $657,321 or 11.9%.  (*See* Ex. 3.) During the period covered by the Initial Budget through March 28, 2025, the Debtor paid $942,156 to PNC, equipment lenders, and equipment lessors collectively, which included principal payments.  (*See id.*)

## V.    THE COURT SHOULD AUTHORIZE THE USE OF CASH COLLATERAL

Section 363(c) provides that a trustee or debtor-in-possession may not use cash collateral, unless secured parties consent, or the court, after notice and a hearing, authorizes the proposed use.  *See* 11 U.S.C. § 363(c).  A bankruptcy court may authorize a debtor's use of cash collateral without the consent of a secured creditor provided the secured creditor's interest in such cash collateral is adequately protected.  *See* 11 U.S.C. §§ 363(c), (e).  "However, the protection afforded to secured creditors is not absolute."  *In re ProAlert, LLC*, 314 B.R. 436, 441 (B.A.P. 9th Cir. 2004).  Rather, as articulated by the United States Supreme Court, a secured creditor is entitled to adequate protection only from a post-petition decline in value of its collateral, as of the petition date.  *See In re Timbers of Inwood Forest*, 484 U.S. 365, 370 (1988).

The Debtor requires the use of cash collateral to pay necessary operating expenses and to posts of administering this Case.  The Debtor is proposing to use cash collateral in accordance with the Budget.  The expenses that the Debtor seeks authority to pay are those necessary to operate the business, *i.e.*, payroll, equipment maintenance, fuel, union dues, insurance, payments on account of operating and capital leases, expenses for personnel in the field, and other key operating costs due over the next thirteen weeks.  The Debtor's proposed use of cash collateral is necessary to preserve the value of the Debtor's estate for the benefit of all creditors.

8

10501651.1

A.    **The Proposed Use of Cash Collateral Will Not Cause a Decline in the Value of the Cash Collateral**

Secured creditors are adequately protected where income is being generated and the used cash is replaced by new revenues from operations.  For example, as stated by one bankruptcy court:

> With regards to rents, a court must look to the stream of future rents to determine whether adequate protection is required.  This is because the lien on each month's rents replaces the lien on the prior month's rents, so there is a replacement lien of equal value under Section 361 of the Bankruptcy Code.  Therefore, as long as the debtor generates a continuous income stream, the debtor's use of the rental income does not diminish the value of the collateral.  The rationale is that the protected cash proceeds are being used to generate new collateral which will be of at least equivalent value of those replaced. Accordingly, if the underlying collateral is not declining in value, the additional cash collateral may be used by the debtor to pay administrative expenses as well as to maintain and improve the underlying collateral.

*In re Wrecclesham Grange, Inc.*, 221 B.R. 978, 981 (Bankr. M.D. Fla. 1997) (citations omitted); *see also In re Ledgemere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990) (stating that a secured creditor is adequately protected so long as receivables being collected and used by debtor are being replaced by sufficient new receivables in which creditor is granted a security interest).

Here, the proposed use of cash collateral will not cause a decline in the value of any interests in such cash collateral.  As of the Petition Date, the Debtor had approximately $4,479,479 on hand and is projected to have $8,935,946 on hand at the end of the Budget. (*See* Ex. 1.)   The Debtor seeks to use cash collateral to pay only those expenses necessary to operate the Debtor's business in the ordinary course to fund the costs of this case.  The Budget is reasonable based on the Debtor's actual income and expenses post-petition.  The Debtor's projected revenues and expenses are based on the Debtor's recent historical trends adjusted based on management's expectations regarding future operations.  (*See* Weiss Decl. at ¶ 3.) Moreover, as demonstrated by variance report, the Debtor has remained on budget during this case.  (*See* Ex. 3.)

MOTION FOR ENTRY OF ORDER
AUTHORIZING CONTINUED USE OF CASH COLLATERAL

10501651.1

1     The value of PNC's interest in cash will not decline by the proposed use of cash

2  collateral.  PNC is being granted a replacement lien on the Debtor's post-petition revenues.  As

3  stated above, the Debtor is projected to end the budgeted period with far more cash than it had

4  as of the Petition Date.  Moreover, the Debtor's positive performance to date is to continue.

5  Over the next 13 weeks, the Debtor's operations are essentially projected to breakeven before

6  payments to lenders and on account of professional fees, and the Debtor's operating expenses

7  include a significant one-time insurance expense.  The Debtor is projected to make significant

8  payments to PNC, equipment lenders, and equipment lessors in the collective amount of

9  $2,272,132, including a one-time catchup payment for certain lenders in week 1.  As compared

10  to the end of the Initial Budget, the Debtor's projected receipts from its core tree service

11  operations are projected to increase, as are the Debtor's receipts from Pino Tree Service, Inc.,

12  and Phoenix Traffic Management, Inc.  (*Compare* Ex. 1; *with* Final Order, Ex. 2.)  The value

13  of any interest in cash collateral as of the Petition Date will not decline over the proposed

14  cash-collateral period.  Because there is no decline, any creditors asserting an interest in the

15  Debtor's cash as of the Petition Date are adequately protected.  Nevertheless, the Debtor

16  proposes to pay PNC $150,000 per month, for a grand total of $450,000.

17     **B.    Entities Holding an Interest in the Debtor's Cash Are Adequately Protected**

18     Secured creditors are adequately protected by the use of cash collateral to continue the

19  operation of the debtor's business.  *See, e.g.*, *In re Glasstream Boats, Inc.*, 110 B.R. 611, 612

20  (M.D. Ga. 1990) (stating that it was in best interest of both debtor and creditor that debtor

21  "continue in its operation as a manufacturing facility" and that "denial of this motion would

22  result in another shut down of the assembly line, which the court doesn't feel is in the best

23  interest of either party"); *In re Cann & Saul Steel Co.*, 76 B.R. 479, 483 (E.D. Pa.

24  1987) (stating that continued operation of manufacturer debtor was in best interest of secured

25  creditor in that it was likely that secured creditor would realize more funds than it would by

26  requiring the debtor to cease operations); *In re Stein*, 19 B.R. 458, 460 (Bankr. E.D. Pa.

27  1982) (finding that use of cash collateral was necessary to continued operations of debtor, and

28

10501651.1

that creditor's "secured position can only be enhanced by the continued operation of the [debtor's business]"); *In re Pine Lake Village Apartment Co.*, 16 B.R. 750, 756 (Bankr. S.D.N.Y. 1982) (permitting debtor to use cash collateral generated from rental income to preserve value of real property which also secured creditor's claim); *In re 499 W. Warren Street Assoc., Ltd. P'ship*, 142 B.R. 53, 56 (Bankr. N.D.N.Y. 1992) ("A secured creditor's interest in the collateral itself is adequately protected when a portion of the rents are applied to its operation and maintenance."); *In re Karl A. Neise, Inc.*, 16 B.R. 600, 602 (Bankr. S.D. Fla. 1981) (holding that a marginally secured creditor is adequately protected by lien in post-petition property acquired by debtors; debtors can use cash collateral "in the normal operation of their business").

The proposed use of cash collateral will enable the Debtor to continue to operate its business and preserve its value as a going concern. The Debtor seeks to use cash collateral to pay necessary expenses to continue the operation of its business without interruption. The operation of the Debtor's business protects PNC and all creditors by maximizing the value of the Debtor, its operations, and assets as a whole as a going concern. The Debtor has performed well to date and has increased the value of the estate. (*See, e.g.*, Ex. 3.) As evidenced by the Budget, continued operation of the Debtor's business will generate additional revenues and preserve the value of cash collateral and of the Debtor's overall business. (*See* Ex. 1.) In contrast, the cessation of the Debtor's business would cause the loss of revenues and a decline in the value of the Debtor's business.

## VI.    **RESERVATION OF RIGHTS**

Nothing contained herein shall operate as a waiver of any of the Debtor's claims, rights, objections, or remedies as to any party or claim. Without limiting the foregoing, the Debtor reserves the right to seek to modify the relief requested herein as may be necessary to facilitate the case and the Debtor's operations, or as may otherwise be necessary to comply with the requirements of any order entered in this case. Moreover, nothing contained herein, the

MOTION FOR ENTRY OF ORDER
AUTHORIZING CONTINUED USE OF CASH COLLATERAL

10501651.1

1   Budget, or any actions taken pursuant to such relief requested is intended or shall be construed

2   as: (i) an admission as to the validity, priority, or enforceability of any claim against the

3   Debtor or lien against the Debtor's property, (ii) a waiver of the Debtor's rights to dispute any

4   claim on any grounds, (iii) a promise to pay any claim; or (iv) an approval or assumption of

5   any agreement, contract, or lease under § 365 of the Bankruptcy Code (or otherwise affect the

6   Debtor's rights under § 365 of the Bankruptcy Code to assume or reject any executory contract

7   with any party).  Likewise, if this Court grants the relief sought herein, any payment made

8   pursuant to the Court's order is not intended and should not be construed as an admission to the

9   validity of any claim or a waiver of the Debtor's rights to dispute such claim subsequently.

10   Finally, the relief requested herein shall not oblige the Debtor to accept any services.

11

12   **VII.    <u>CONCLUSION</u>**

13          WHEREFORE, the Debtor respectfully requests that the Court enter an order granting

14   the relief requested herein, and such other and further relief as is just and proper.

15

16   DATED:  April 8, 2025                    RAINES FELDMAN LITTRELL, LLP

17

18                                    By:      */s/ Robert S. Marticello*
                                            _____
19                                          ROBERT S. MARTICELLO
                                            MICHAEL L. SIMON
20                                          Counsel for The Original Mowbray's Tree
                                            Service, Inc., Debtor and Debtor-In-Possession

21

22

23

24

25

26

27

28

1    **<u>DECLARATION OF BRIAN WEISS</u>**

2         I, Brian Weiss, declare as follows:

3         1.      I am a co-founder and partner of Force Ten Partners, LLC ("**Force 10**") and the

4    Chief Restructuring Officer of The Original Mowbray's Tree Service, Inc., the debtor and

5    debtor-in-possession in the above-captioned case (the "**Debtor**").  I know each of the

6    following facts to be true of my own personal knowledge, except as otherwise stated and, if

7    called as a witness, I could and would competently testify with respect thereto.  I make this

8    declaration in support of the *Motion for Entry of Order Authorizing Continued Use of Cash*

9    *Collateral* (the "**Motion**").  Unless otherwise defined in this declaration, all terms defined in

10   the Motion are incorporated herein by this reference.

11        2.      The budget attached to the Motion as **<u>Exhibit 1</u>** (the "**Budget**") was prepared

12   by Ruben Sainos, the Debtor's CFO, with the assistance of myself and others at Force 10

13   under my supervision and at my direction.  I believe the Budget is reasonable based on the

14   Debtor's actual recent pre-petition income and expenses.  The Budget includes those expenses

15   necessary to operate over the next 13-week period, such as payroll, equipment maintenance,

16   fuel, union dues, insurance, payments on account of capital and operating leases, and other

17   operating costs, payments to PNC Bank, and the costs to fund this case.

18        3.      The Debtor's projected receipts and expenses are based on its recent historical

19   trends adjusted based on the expectations of the Debtor's management.  As set forth in the

20   Budget, the Debtor projects an ending cash balance over such thirteen-week period of

21   $8,935,946 (including after anticipated payment of restructuring costs), an amount in excess

22   of the Debtor's $4,479,479 cash balance as of the October 18, 2024, petition date (the

23   "**Petition Date**").

24   ///

25   ///

26   ///

27   ///

28

MOTION FOR ENTRY OF ORDER
AUTHORIZING CONTINUED USE OF CASH COLLATERAL

10501651.1

1     4.     In my opinion, the use of cash collateral will enable the Debtor to continue to

2    operate and preserve its value as a going concern, generate additional revenue, and preserve

3    the value of any interest in cash collateral as of the Petition Date over the 13-week period in

4    the Budget.

5

6     I declare under penalty of perjury under the laws of the United States of America that

7    the foregoing is true and correct.

8     Executed on this _ 7 day of April, 2025

9

10     BRIAN WEISS

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR ENTRY OF ORDER
AUTHORIZING CONTINUED USE OF CASH COLLATERAL

10501651.1

# DECLARATION OF RUBEN SAINOS

I, Ruben Sainos, declare as follows:

1.      I am the Chief Financial Officer ("**CFO**") of The Original Mowbray's Tree Service, Inc., the debtor and debtor-in-possession in the above-captioned case (the "**Debtor**") and have served in such capacity since October 2023.  I know each of the following facts to be true of my own personal knowledge, except as otherwise stated and, if called as a witness, I could and would competently testify with respect thereto.  I make this declaration in support of the *Motion for Entry of Order Authorizing Continued Use of Cash Collateral* (the "**Motion**").  Unless otherwise defined in this declaration, all terms defined in the Motion are incorporated herein by this reference.

2.      I prepared the budget attached to the Motion as **<u>Exhibit 1</u>** (the "**Budget**") with the assistance of the Debtor's CRO and others at Force Ten Partners, LLC.  In my opinion, the Budget is reasonable based on the Debtor's actual recent income and expenses.  The Debtor's projected revenues are based on the Debtor's recent historical trends adjusted based on the expectations of Debtor's management.  The Debtor's projected expenses are similarly based on the Debtor's recent historical expense trends and future expected costs.  As set forth in the Budget, the Debtor projects an ending cash balance over such thirteen-week period of $8,935,946 (including after restructuring costs), an amount in excess of the Debtor's $4,479,479 cash balance as of the October 18, 2024, petition date.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this <u>07</u> day of April, 2025

RUBEN SAINOS

MOTION FOR ENTRY OF ORDER
AUTHORIZING CONTINUED USE OF CASH COLLATERAL

10501651.1

# EXHIBIT "1"

| The Original Mowbray's Tree Service Inc. Weekly Cash Flow | Week 1 Ended 4/25/2025 | Week 2 Ended 5/2/2025 | Week 3 Ended 5/9/2025 | Week 4 Ended 5/16/2025 | Week 5 Ended 5/23/2025 | Week 6 Ended 5/30/2025 | Week 7 Ended 6/6/2025 | Week 8 Ended 6/13/2025 | Week 9 Ended 6/20/2025 | Week 10 Ended 6/27/2025 | Week 11 Ended 7/4/2025 | Week 12 Ended 7/11/2025 | Week 13 Ended 7/18/2025 | 13 Week Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Operating Receipts** | | | | | | | | | | | | | | |
| Tree Service Collections | 209,010 | 229,010 | 229,011 | 229,011 | 229,012 | 249,012 | 249,012 | 249,012 | 249,012 | 249,012 | 249,012 | 249,012 | 249,012 | 3,117,150 |
| Pino/Phoenix Mgmt. Fees, Interest Income, Leases | 228,375 | 188,810 | 188,810 | 188,810 | 188,810 | 188,810 | 226,635 | 226,635 | 226,635 | 226,635 | 226,635 | 226,635 | 226,635 | 2,758,870 |
| Pino/Phoenix Line of Credit | 61,250 | 61,000 | 61,000 | 61,000 | 61,000 | 61,000 | 61,250 | 61,250 | 61,250 | 61,250 | 61,250 | 61,250 | 61,250 | 795,000 |
| **Total Receipts** | 498,635 | 478,820 | 478,821 | 478,821 | 478,822 | 498,822 | 536,897 | 536,897 | 536,897 | 536,897 | 536,897 | 536,897 | 536,897 | 6,671,020 |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Salaries & Wages | 170,607 | 170,346 | 170,423 | 170,568 | 170,627 | 170,576 | 175,317 | 175,037 | 175,159 | 175,211 | 175,444 | 175,321 | 175,247 | 2,249,883 |
| Health Insurance | 84,955 | - | - | - | 84,955 | - | - | - | 84,955 | - | - | - | 84,955 | 339,820 |
| Worker's Comp | - | - | 43,323 | - | - | - | 54,153 | - | - | - | 44,622 | - | - | 142,098 |
| Union Dues | - | - | 39,562 | 28,000 | - | - | 49,452 | - | - | - | 40,748 | - | - | 157,762 |
| Occupancy | 19,571 | - | - | - | - | 19,571 | - | - | - | - | 19,571 | - | - | 58,713 |
| Insurance | 872,322 | - | - | 58,292 | 416,965 | - | - | - | - | 416,965 | - | - | - | 1,764,544 |
| Utilities | 7,986 | 7,975 | 9,058 | 15,450 | 7,868 | 7,894 | 8,972 | 16,249 | 8,781 | 8,701 | 8,980 | 16,261 | 8,754 | 132,930 |
| Repair and Maintenance | 10,506 | 10,509 | 10,591 | 10,432 | 10,508 | 10,590 | 10,678 | 10,507 | 10,506 | 10,587 | 10,432 | 10,508 | 10,519 | 136,874 |
| Office Supplies | 5,512 | 5,766 | 5,538 | 5,563 | 5,574 | 5,594 | 5,862 | 5,635 | 30,632 | 5,569 | 5,782 | 5,569 | 48,571 | 141,167 |
| Vehicles Expenses | 131,175 | 41,237 | 41,173 | 41,253 | 41,393 | 41,277 | 41,419 | 41,557 | 41,719 | 41,767 | 41,929 | 41,365 | 41,386 | 628,651 |
| OC Professionals | 3,120 | 3,235 | 13,859 | 60,924 | 2,945 | 12,549 | 4,159 | 2,921 | 12,522 | 3,131 | 3,247 | 13,555 | 3,072 | 139,240 |
| Tools and Supplies | 48,495 | 48,466 | 48,462 | 48,463 | 48,419 | 48,425 | 48,431 | 48,436 | 48,441 | 48,446 | 48,451 | 48,455 | 48,454 | 629,843 |
| Property Taxes - Real | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Bank Expenses | - | 4,000 | - | - | - | - | 4,000 | - | - | - | 4,000 | - | - | 12,000 |
| Other | 11,388 | 11,387 | 11,486 | 11,592 | 11,706 | 11,828 | 11,959 | 12,099 | 12,248 | 12,410 | 12,572 | 11,739 | 11,784 | 154,199 |
| **Total Operating Disbursements** | 1,365,638 | 302,920 | 393,474 | 450,537 | 800,962 | 328,305 | 414,403 | 312,440 | 424,963 | 722,786 | 415,779 | 322,774 | 432,742 | 6,687,724 |
| **Operating Cash Flow** | (867,003) | 175,900 | 85,347 | 28,284 | (322,140) | 170,517 | 122,494 | 224,457 | 111,934 | (185,889) | 121,118 | 214,123 | 104,155 | (16,704) |
| **Cumulative Operating Cash Flow** | (867,003) | (691,103) | (605,757) | (577,472) | (899,612) | (729,095) | (606,601) | (382,144) | (270,210) | (456,100) | (334,982) | (120,859) | (16,704) | (16,704) |
| **Financing** | | | | | | | | | | | | | | |
| PNC Adequate Protection | - | 150,000 | - | - | - | 150,000 | - | - | - | - | 150,000 | - | - | 450,000 |
| Equipment Loans | 1,000,423 | 143,535 | 26,245 | 50,444 | 15,885 | 27,986 | 122,938 | 54,991 | 20,756 | 14,249 | 134,992 | 23,998 | 51,879 | 1,688,323 |
| Equipment Rentals | - | 44,603 | - | - | - | - | 44,603 | - | - | - | 44,603 | - | - | 133,809 |
| **Total Financing** | 1,000,423 | 338,138 | 26,245 | 50,444 | 15,885 | 177,986 | 167,541 | 54,991 | 20,756 | 14,249 | 329,595 | 23,998 | 51,879 | 2,272,132 |
| **Cash Flow After Financing** | (1,867,427) | (162,238) | 59,102 | (22,160) | (338,025) | (7,470) | (45,047) | 169,466 | 91,178 | (200,139) | (208,477) | 190,125 | 52,276 | (2,288,837) |
| **Cumulative Cash Flow After Financing** | (1,867,427) | (2,029,665) | (1,970,563) | (1,992,723) | (2,330,748) | (2,338,217) | (2,383,265) | (2,213,799) | (2,122,621) | (2,322,760) | (2,531,237) | (2,341,112) | (2,288,837) | (2,288,837) |
| **Restructuring Disbursements** | | | | | | | | | | | | | | |
| Force Ten Partners (CRO) | 203,503 | 75,000 | - | - | - | - | 75,000 | - | - | - | 75,000 | - | - | 428,503 |
| Raines Feldman (Debtor's Counsel) | 375,000 | 75,000 | - | - | - | - | 75,000 | - | - | - | 75,000 | - | - | 600,000 |
| Grobstein Teeple | 50,000 | 10,000 | - | - | - | - | 10,000 | - | - | - | 10,000 | - | - | 80,000 |
| Examiner Fees | - | - | - | - | - | - | - | - | - | - | - | - | 150,000 | 150,000 |
| United States Trustee | 58,149 | - | - | - | - | - | - | - | - | - | - | - | - | 58,149 |
| **Total Restructuring Disbursements** | 686,652 | 160,000 | - | - | - | - | 160,000 | - | - | - | 160,000 | - | 150,000 | 1,316,652 |
| **Beginning Cash Balance** | 12,541,435 | 9,987,356 | 9,665,118 | 9,724,220 | 9,702,060 | 9,364,035 | 9,356,566 | 9,151,518 | 9,320,984 | 9,412,162 | 9,212,023 | 8,843,546 | 9,033,671 | 12,541,435 |
| Net Change in Cash | (2,554,079) | (322,238) | 59,102 | (22,160) | (338,025) | (7,470) | (205,047) | 169,466 | 91,178 | (200,139) | (368,477) | 190,125 | (97,724) | (3,605,489) |
| **Ending Cash Balance** | 9,987,356 | 9,665,118 | 9,724,220 | 9,702,060 | 9,364,035 | 9,356,566 | 9,151,518 | 9,320,984 | 9,412,162 | 9,212,023 | 8,843,546 | 9,033,671 | 8,935,946 | 8,935,946 |

| The Original Mowbray's Tree Service Inc. Weekly Cash Flow | Week 1 Ended 4/25/2025 | Week 2 Ended 5/2/2025 | Week 3 Ended 5/9/2025 | Week 4 Ended 5/16/2025 | Week 5 Ended 5/23/2025 | Week 6 Ended 5/30/2025 | Week 7 Ended 6/6/2025 | Week 8 Ended 6/13/2025 | Week 9 Ended 6/20/2025 | Week 10 Ended 6/27/2025 | Week 11 Ended 7/4/2025 | Week 12 Ended 7/11/2025 | Week 13 Ended 7/18/2025 | 13 Week Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| *Collateral Package* | | | | | | | | | | | | | | |
| Cash | 9,987,356 | 9,665,118 | 9,724,220 | 9,702,060 | 9,364,035 | 9,356,566 | 9,151,518 | 9,320,984 | 9,412,162 | 9,212,023 | 8,843,546 | 9,033,671 | 8,935,946 | 8,935,946 |
| Accounts Receivable | 2,998,855 | 3,018,855 | 3,038,855 | 3,068,855 | 3,098,855 | 3,108,855 | 3,118,855 | 3,128,855 | 3,138,855 | 3,148,855 | 3,158,855 | 3,168,855 | 3,178,855 | 3,178,855 |
| FF&E (Net Book Value) | 334,343 | 334,343 | 334,343 | 334,343 | 334,343 | 334,343 | 334,343 | 334,343 | 334,343 | 334,343 | 334,343 | 334,343 | 334,343 | 334,343 |
| Pledged Allen Street Property (net, non debtor) | 1,762,500 | 1,762,500 | 1,762,500 | 1,762,500 | 1,762,500 | 1,762,500 | 1,762,500 | 1,762,500 | 1,762,500 | 1,762,500 | 1,762,500 | 1,762,500 | 1,762,500 | 1,762,500 |
| Pledged Sacramento Property (net, non debtor) | 1,500,000 | 1,500,000 | 1,500,000 | 1,500,000 | 1,500,000 | 1,500,000 | 1,500,000 | 1,500,000 | 1,500,000 | 1,500,000 | 1,500,000 | 1,500,000 | 1,500,000 | 1,500,000 |
| | 16,583,055 | 16,280,817 | 16,359,919 | 16,367,759 | 16,059,734 | 16,062,264 | 15,867,217 | 16,046,682 | 16,147,860 | 15,957,722 | 15,599,245 | 15,799,369 | 15,711,645 | 15,711,645 |
| *PNC Debt* | | | | | | | | | | | | | | |
| Beginning | 7,038,464 | 7,038,464 | 7,038,464 | 7,038,464 | 7,038,464 | 7,038,464 | 7,038,464 | 7,038,464 | 7,038,464 | 7,038,464 | 7,038,464 | 7,038,464 | 7,038,464 | 7,038,464 |
| (+) Interest Principal | - | 150,000 | - | - | - | 150,000 | - | - | - | - | 150,000 | - | - | 450,000 |
| (-) Payments | - | (150,000) | - | - | - | (150,000) | - | - | - | - | (150,000) | - | - | (450,000) |
| **Ending Balance** | **7,038,464** | **7,038,464** | **7,038,464** | **7,038,464** | **7,038,464** | **7,038,464** | **7,038,464** | **7,038,464** | **7,038,464** | **7,038,464** | **7,038,464** | **7,038,464** | **7,038,464** | **7,038,464** |
| *Accounts Receivable Roll Forward* | | | | | | | | | | | | | | |
| **Accounts Receivable - Beginning Balance** | **2,988,855** | **2,998,855** | **3,018,855** | **3,038,855** | **3,068,855** | **3,098,855** | **3,108,855** | **3,118,855** | **3,128,855** | **3,138,855** | **3,148,855** | **3,158,855** | **3,168,855** | **2,988,855** |
| (+) Sales - Tree Services | 219,010 | 249,010 | 249,011 | 259,011 | 259,012 | 259,012 | 259,012 | 259,012 | 259,012 | 259,012 | 259,012 | 259,012 | 259,012 | 3,307,150 |
| (+) Sales - Pino/Phx Mgmt. Fees, Interest Income, Leases | 228,375 | 188,810 | 188,810 | 188,810 | 188,810 | 188,810 | 226,635 | 226,635 | 226,635 | 226,635 | 226,635 | 226,635 | 226,635 | 2,758,870 |
| (-) Collections - Tree Services | (209,010) | (229,010) | (229,011) | (229,011) | (229,012) | (249,012) | (249,012) | (249,012) | (249,012) | (249,012) | (249,012) | (249,012) | (249,012) | (3,117,150) |
| (-) Collections - Pino/Phx Mgmt. Fees, Interest Income, Leases | (228,375) | (188,810) | (188,810) | (188,810) | (188,810) | (188,810) | (226,635) | (226,635) | (226,635) | (226,635) | (226,635) | (226,635) | (226,635) | (2,758,870) |
| **Accounts Receivable - Ending Balance** | **2,998,855** | **3,018,855** | **3,038,855** | **3,068,855** | **3,098,855** | **3,108,855** | **3,118,855** | **3,128,855** | **3,138,855** | **3,148,855** | **3,158,855** | **3,168,855** | **3,178,855** | **3,178,855** |

# EXHIBIT "2"

**RAINES FELDMAN LITTRELL LLP**
Robert S. Marticello, State Bar No. 244256
*rmarticello@raineslaw.com*
Michael L. Simon, State Bar No. 300822
*msimon@raineslaw.com*
4675 MacArthur Ct, Suite 1550
Newport Beach, CA 92660
Telephone:     (310) 440-4100
Facsimile:     (949) 247-3998

Counsel for The Original Mowbray's Tree Service,
Inc., Debtor and Debtor-In-Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re: | Case No: 8:24-bk-12674-TA |
| THE ORIGINAL MOWBRAY'S TREE SERVICE, INC., | Chapter 11 |
| Debtor and Debtor-in-Possession. | **ORDER GRANTING DEBTOR'S MOTION FOR ENTRY OF ORDER AUTHORIZING CONTINUED USE OF CASH COLLATERAL**<br><br>**Hearing:**<br>**Date:**<br>**Time:**<br>**Place:** Courtroom 5B<br>411 West Fourth Street<br>Santa Ana, CA 92701 |

On April _, 2025 at _____, a hearing was held on the *Emergency Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral* (the "**Motion**") filed by The Original Mowbray's Tree Service, Inc., the debtor and debtor-in-possession in the above-captioned case (the "**Debtor**"). Appearances were as noted on the record. Capitalized terms not expressly defined herein shall have the meanings ascribed to them in the Motion.

1

10394880.1

Having considered the Motion, all papers submitted in support thereof and opposition thereto, the statements and arguments of counsel on the record, and finding that notice and service of the Motion were proper,

**IT IS HEREBY ORDERED** that:

1.    The Motion is granted to the extent provided herein.

2.    The Debtor is authorized to use cash collateral on a final basis from April 19, 2025, through and including July 18, 2025 (the "**Cash Collateral Period**") in accordance with the budget attached to this order as Exhibit "1" (the "**Budget**").  The expenditures during the Cash Collateral Period covered by the Budget are not to exceed 115% per budget line item set forth in the Budget for such period (*i.e.*, a 15% variance); *provided, however*, that the total cash expenditures during the Cash Collateral Period shall not exceed 110% of the total budgeted disbursements in the Budget (*i.e.*, a 10% cumulative variance on disbursements).

3.    During the Cash Collateral Period, any unused amount for any given line item in the Budget for a particular week shall carry forward and can be used in later weeks, and any amounts budgeted for a given line item in a particular week through the end of the current Cash Collateral Period may be spent up to two weeks earlier than budgeted provided the total amount spent for such line item does not exceed the total amount budgeted for that line item with the variance permitted above.

4.    If and to the extent that, as of the October 18, 2024, petition date (the "**Petition Date**"), PNC Bank ("**PNC**") holds a duly perfected, unavoidable, and valid lien in all, or a portion of, the Debtor's assets (collectively, the "**Prepetition Collateral**"), PNC will receive a replacement lien in the Debtor's post-petition assets in the same extent, validity, and priority as PNC's security interests in the Prepetition Collateral (collectively, the "**Security Interests**") to the extent of any aggregate diminution in value with respect to PNC's Security Interests post-petition, as calculated in accordance with § 506(a) of the Bankruptcy Code.  The replacement liens granted by this order shall be deemed perfected without the need for additional actions otherwise required by applicable law.  The replacement liens will not attach to Bankruptcy

2

1   Code Chapter 5 causes of action of the Debtor or the proceeds thereof.  The replacement liens

2   will not apply to any reduction in cash value caused from the payment of an expense that is

3   later surcharged against any collateral based on Bankruptcy Code § 506(c).  For the

4   avoidance of doubt, this order shall not be interpreted to mean that PNC is or is not entitled to

5   liens on post-petition assets to the extent such assets constitute proceeds of any duly perfected,

6   enforceable and unavoidable security interests and the parties reserve all rights and arguments

7   on this issue.

8       5.    The Debtor reserves any and all rights, arguments and objections with respect

9   to the validity and scope of any lien asserted by any creditor in the Debtor's cash.

10      6.    The Debtor is authorized to make the monthly payments to PNC and any other

11  secured creditors as provided in the Budget (each, a "**Monthly Payment**" and collectively, the

12  "**Monthly Payments**").  The respective rights of the parties as to whether the Monthly

13  Payments are applied to principal or interest as provided in the Bankruptcy Code and the

14  parties' respective loan documents are preserved.

                                    ###

ORDER GRANTING MOTION FOR ENTRY OF ORDER
AUTHORIZING CONTINUED USE OF CASH COLLATERAL

10394880.1

# EXHIBIT "3"

**The Original Mowbray's Tree Service Inc.**
Weekly Cash Flow

| Variance Reporting | Week 10 Actual 3/28/25 | Week 10 Projected 3/28/25 | Week 10 Variance $ 3/28/25 | Week 10 Variance % 3/28/25 | Post-Petition Cumulative through Week 10 Actual 3/28/25 | Projected 3/28/25 | Variance $ 3/28/25 | Variance % 3/28/25 |
|---|---|---|---|---|---|---|---|---|
| **Operating Receipts** | | | | | | | | |
| Collections | 274,130 | 214,008 | 60,122 | 28.1% | 3,209,662 | 2,469,055 | 740,607 | 30.0% |
| Pino Mgmt. Fees / Lease | 212,327 | 193,250 | 19,077 | 9.9% | 2,379,325 | 1,857,120 | 522,205 | 28.1% |
| Pino Line of Credit | 60,000 | 60,000 | - | 0.0% | 600,000 | 600,000 | - | 0.0% |
| **Total Receipts** | **546,457** | **467,258** | **79,199** | **16.9%** | **6,188,987** | **4,926,175** | **1,262,812** | **25.6%** |
| **Operating Disbursements** | | | | | | | | |
| Salaries & Wages | 114,379 | 169,212 | 54,833 | 32.4% | 1,578,316 | 1,693,364 | 115,048 | 6.8% |
| Health Insurance | 58,154 | 84,955 | 26,801 | 31.5% | 182,464 | 254,865 | 72,401 | 28.4% |
| Worker's Comp | - | - | - | 0.0% | 85,021 | 191,880 | 106,859 | 55.7% |
| Union Dues | - | - | - | 0.0% | 77,265 | 129,000 | 51,735 | 40.1% |
| Occupancy | 25,542 | 10,252 | (15,290) | -149.1% | 35,829 | 37,744 | 1,915 | 5.1% |
| Insurance | - | 96,698 | 96,698 | 100.0% | 1,744,812 | 1,901,828 | 157,016 | 8.3% |
| Utilities | 8,754 | 4,461 | (4,293) | -96.2% | 56,796 | 57,125 | 329 | 0.6% |
| Repair and Maintenance | 1,873 | 10,381 | 8,508 | 82.0% | 58,918 | 94,945 | 36,027 | 37.9% |
| Office Supplies | 4,473 | 5,666 | 1,193 | 21.1% | 89,480 | 57,590 | (31,890) | -55.4% |
| Vehicles Expenses | 29,367 | 37,343 | 7,976 | 21.4% | 338,939 | 426,671 | 87,733 | 20.6% |
| OC Professionals | 4,434 | 11,457 | 7,023 | 61.3% | 45,489 | 107,895 | 62,406 | 57.8% |
| Tools and Supplies | 32,714 | 44,827 | 12,113 | 27.0% | 451,537 | 459,024 | 7,487 | 1.6% |
| Property Taxes | - | 39,000 | 39,000 | 100.0% | (164) | 39,000 | 39,164 | 100.4% |
| Bank Expenses | - | - | - | 0.0% | 3,538 | 8,000 | 4,462 | 55.8% |
| Other | 13,600 | 6,927 | (6,673) | -96.3% | 123,931 | 70,560 | (53,371) | -75.6% |
| **Total Operating Disbursements** | **293,290** | **521,180** | **227,890** | **43.7%** | **4,872,172** | **5,529,493** | **657,321** | **11.9%** |
| **Operating Cash Flow** | **253,167** | **(53,922)** | **307,089** | **-569.5%** | **1,316,815** | **(603,318)** | **1,920,133** | **-318.3%** |
| **Financing** | | | | | | | | |
| PNC Adequate Protection | - | - | - | 0.0% | 300,000 | 300,000 | - | 0.0% |
| Equipment Loans | - | 14,522 | 14,522 | 100.0% | 543,495 | 933,340 | 389,845 | 41.8% |
| Equipment Rentals | - | - | - | 0.0% | 98,661 | 168,117 | 69,456 | 41.3% |
| Note Payable - Jacobus Pino | - | - | - | 0.0% | - | - | - | 0.0% |
| **Total Financing** | **-** | **14,522** | **14,522** | **100.0%** | **942,156** | **1,401,457** | **459,301** | **32.8%** |
| **Cash Flow After Financing** | **253,167** | **(68,444)** | **321,611** | **-469.9%** | **374,659** | **(2,004,775)** | **2,379,433** | **-118.7%** |
| **Restructuring Disbursements** | | | | | | | | |
| Utility Deposits | - | - | - | 0.0% | - | - | - | 0.0% |
| Force Ten Partners (CRO) | - | - | - | 0.0% | - | 240,000 | 240,000 | 100.0% |
| Raines Feldman (Debtor's Counsel) | - | - | - | 0.0% | - | 300,000 | 300,000 | 100.0% |
| Grobstein Teeple | - | - | - | 0.0% | - | 40,000 | 40,000 | 100.0% |
| United States Trustee | - | - | - | 0.0% | 59,069 | 48,261 | (10,808) | -22.4% |
| **Total Restructuring Disbursements** | **-** | **-** | **-** | **0.0%** | **59,069** | **628,261** | **569,192** | **90.6%** |
| **Beginning Cash Balance** | 12,159,485 | 9,639,967 | 2,519,518 | 26.1% | 12,097,063 | 12,204,559 | (107,497) | -0.9% |
| Net Change in Cash | 253,167 | (68,444) | 321,611 | -469.9% | 315,589 | (2,633,036) | 2,948,625 | -112.0% |
| **Ending Cash Balance** | **12,412,652** | **9,571,523** | **2,841,129** | **29.7%** | **12,412,652** | **9,571,523** | **2,841,129** | **29.7%** |

**The Original Mowbray's Tree Service Inc.**
**Weekly Cash Flow**

| Variance Reporting | Week 10 | Week 10 | Week 10 | Week 10 | | Post-Petition Cumulative through Week 10 | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Actual | Projected | Variance $ | Variance % | | Actual | Projected | Variance $ | Variance % |
| Week Ending | 3/28/25 | 3/28/25 | 3/28/25 | 3/28/25 | | 3/28/25 | 3/28/25 | 3/28/25 | 3/28/25 |
| *Collateral Package* | | | | | | | | | |
| Cash | 12,412,652 | 9,571,523 | 2,841,129 | 29.7% | | 12,412,652 | 9,571,523 | 2,841,129 | 29.7% |
| Accounts Receivable | 3,016,856 | 2,567,996 | 448,860 | 17.5% | | 3,016,856 | 2,567,996 | 448,860 | 17.5% |
| FF&E (Net Book Value) | 334,343 | 334,343 | - | 0.0% | | 334,343 | 334,343 | - | 0.0% |
| Pledged Allen Street Property (net, non debtor) | 1,762,500 | 1,762,500 | - | 0.0% | | 1,762,500 | 1,762,500 | - | 0.0% |
| Pledged Sacramento Property (net, non debtor) | 1,500,000 | 1,500,000 | - | 0.0% | | 1,500,000 | 1,500,000 | - | 0.0% |
| | 19,026,351 | 15,736,363 | 3,289,988 | 20.9% | | 19,026,351 | 15,736,363 | 3,289,988 | 20.9% |
| *PNC Debt* | | | | | | | | | |
| Beginning | 7,041,686 | 7,038,464 | 3,222 | 0.0% | | 7,041,686 | 7,038,464 | 3,222 | 0.0% |
| (+) Interest Accrual | - | - | - | 0.0% | | 300,000 | 300,000 | - | 0.0% |
| (-) Payments | - | - | - | 0.0% | | (300,000) | (300,000) | - | 0.0% |
| **Ending Balance** | **7,041,686** | **7,038,464** | **3,222** | **0.0%** | | **7,041,686** | **7,038,464** | **3,222** | **0.0%** |
| **Equity Cushion (Deficiency)** | **2.70x** | **2.24x** | **0.47x** | **20.9%** | | **2.70x** | **2.24x** | **0.47x** | **20.9%** |
| **Equity Cushion (Deficiency) in $** | **11,984,665** | **8,697,898** | **3,286,766** | **37.8%** | | **11,984,665** | **8,697,898** | **3,286,766** | **37.8%** |
| *Accounts Receivable Roll Forward* | | | | | | | | | |
| **Accounts Receivable - Beginning Balance** | **3,330,557** | **2,561,996** | **768,561** | **30.0%** | | **3,267,663** | **2,836,996** | **430,667** | **15.2%** |
| (+) Sales | 172,755 | 412,008 | (239,253) | -58.1% | | 5,338,180 | 4,045,175 | 1,293,005 | 32.0% |
| (-) Collections | (486,457) | (406,008) | (80,449) | 19.8% | | (5,588,987) | (4,314,175) | (1,274,812) | ($30k) |
| **Accounts Receivable - Ending Balance** | **3,016,856** | **2,567,996** | **448,860** | **17.5%** | | **3,016,856** | **2,567,996** | **448,860** | **17.5%** |

# EXHIBIT "4"

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| RAINES FELDMAN LITTRELL LLP<br>Robert S. Marticello, State Bar No. 244256<br>rmarticello@raineslaw.com<br>Michael L. Simon, State Bar No. 300822<br>msimon@raineslaw.com<br>4675 MacArthur Ct, Suite 1550<br>Newport Beach, CA 92660<br>Telephone: (310) 440-4100<br>Facsimile: (310) 499-4877<br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:* The Original Mowbray's Tree Service | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA -  SANTA ANA DIVISION**

| In re:<br><br>THE ORIGINAL MOWBRAY'S TREE SERVICE, INC., a Delaware corporation<br><br><br><br><br><br><br><br>Debtor(s). | CASE NO.:  8:24-bk-12674-TA<br><br>CHAPTER:  11 |
|---|---|
| | **STATEMENT REGARDING CASH COLLATERAL OR DEBTOR IN POSSESSION FINANCING [FRBP 4001; LBR 4001-2]** |
| | DATE:<br>TIME:<br>COURTROOM:<br>ADDRESS:        411 West Fourth Street<br>                          Santa Ana, CA 92701 |

| Secured party(ies): PNC Bank |
|---|

The Debtor has requested the approval of either (1) a motion for use of cash collateral, or postpetition financing, or both, or (2) through a separately-filed motion, a stipulation providing for the use of cash collateral, or postpetition financing, or both.  The proposed form of order on the motion or the stipulation contains the following provisions or findings of fact:

| Disclosures Tracking FRBP 4001(c)(1)(B)(i) through (xi) and (d)(1)(B) | Page No.: | Line No. (if applicable) |
|---|---|---|
| ☐ (i): "[A] grant of priority or a lien on property of the estate under § 364(c) or (d)" | | |
| ☐ (ii): "[T]he providing of adequate protection or priority for a claim that arose before the commencement of the case, including the granting of a lien on property of the estate to secure the claim, or the use of property of the estate or credit obtained under § 364 to make cash payments on account of the claim"<br>　　☐ Cross-collateralization, *i.e.*, clauses that secure prepetition debt by postpetition assets in which the secured party would not otherwise have a security interest by virtue of its prepetition security agreement or applicable law<br>　　☐ Roll-up, *i.e.*, provisions deeming prepetition debt to be postpetition debt or using postpetition loans from a prepetition secured party to pay part or all of that secured party's prepetition debt, other than as provided in § 552(b) | | |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| | | | |
|---|---|---|---|
| *Continued from page 1* | | | |
| | ☐ Grant a replacement lien in an amount in excess of the dollar amount of the lien on cash collateral as of the petition date | | |
| ☐ | (iii): "[A] determination of the validity, enforceability, priority, or amount of a claim that arose before the commencement of the case, or of any lien securing the claim" | | |
| ☐ | (iv): "[A] waiver or modification of Code provisions or applicable rules relating to the automatic stay"<br>☐ Automatic relief from the automatic stay upon occurrence of certain events. | | |
| ☐ | (v): "[A] waiver or modification of any entity's authority or right to file a plan, seek an extension of time in which the debtor has the exclusive right to file a plan, request the use of cash collateral under § 363(c), or request authority to obtain credit under § 364" | | |
| ☐ | (vi): "[T]he establishment of deadlines for filing a plan of reorganization, for approval of a disclosure statement, for a hearing on confirmation, or for entry of a confirmation order" | | |
| ☐ | (vii): "[A] waiver or modification of the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate, or on the foreclosure or other enforcement of the lien" | | |
| ☐ | (viii): "[A] release, waiver, or limitation on any claim or other cause of action belonging to the estate or the trustee, including any modification of the statute of limitations or other deadline to commence an action" | | |
| ☐ | (ix): "[T]he indemnification of any entity" | | |
| ☐ | (x): "[A] release, waiver, or limitation of any right under § 506(c)"<br>☐ The granting of any lien on any claim or cause of action arising under § 506(c) | | |
| ☐ | (xi): "The granting of any lien on any claim or cause of action arising under §§ 544, 545, 547, 548, 549, 553(b), 723(a), or 724(a)" | | |
| **Additional Disclosures Required by LBR 4001-2** | | **Page No.:** | **Line No. (if applicable)** |
| ☐ | With respect to a professional fee carve out, disparate treatment for professionals retained by a creditors' committee from that provided for the professionals retained by the debtor | | |
| ☐ | Pay down prepetition principal owed to a creditor | | |
| ☐ | Findings of fact on matters extraneous to the approval process | | |

04/03/2025      Robert S. Marticello                        /s/ Robert S. Marticello
*Date*             *Printed Name*                              *Signature*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**4675 MacArthur Ct, Suite 1550, Newport Beach, CA 92660.**

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S MOTION FOR ENTRY OF ORDER AUTHORIZING CONTINUED USE OF CASH COLLATERAL; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATIONS OF BRIAN WEISS AND RUBEN SAINOS IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **4/8/2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) **4/8/2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **4/8/2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| <u>4/8/2025</u> | Ja'Nita Fisher | */S/ Ja'Nita Fisher* |
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:
- **Kenneth J Catanzarite    kcatanzarite@catanzarite.com**
- **Jessica L Giannetta    jessica@giannettaenrico.com, melanie@giannettaenrico.com**
- **Marshall F Goldberg    mgoldberg@glassgoldberg.com, jbailey@glassgoldberg.com**
- **Alan Craig Hochheiser    ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com**
- **Raffi Khatchadourian    raffi@hemar-rousso.com**
- **Valery Loumber    valloumlegal@gmail.com**
- **Michael B Lubic    michael.lubic@klgates.com, jonathan.randolph@klgates.com,klgatesbankruptcy@klgates.com**
- **James MacLeod    jmacleod@dunninglaw.com, nancy@dunninglaw.com**
- **Robert S Marticello    rmarticello@raineslaw.com, bclark@raineslaw.com;jfisher@raineslaw.com**
- **David W. Meadows    david@davidwmeadowslaw.com**
- **Karen S. Naylor    Becky@ringstadlaw.com, Karen@ringstadlaw.com;Arlene@ringstadlaw.com**
- **Queenie K Ng    queenie.k.ng@usdoj.gov**
- **Estela O Pino    epino@epinolaw.com, staff@epinolaw.com;clerk@epinolaw.com**
- **Donald W Reid    don@donreidlaw.com, 5969661420@filings.docketbird.com**
- **Todd C. Ringstad    becky@ringstadlaw.com, arlene@ringstadlaw.com**
- **Amitkumar Sharma    amit.sharma@aisinfo.com**
- **Jeffrey S Shinbrot    jeffrey@shinbrotfirm.com, sandra@shinbrotfirm.com;tanya@shinbrotfirm.com**
- **Thomas E Shuck    tshuck@pmcos.com, efilings@pmcos.com**
- **Michael Simon    msimon@raineslaw.com, bclark@raineslaw.com;jfisher@raineslaw.com**
- **Ahren A Tiller    ahren.tiller@blc-sd.com, 4436097420@filings.docketbird.com;brett.bodie@blc-sd.com;anika@blc-sd.com;derek@blc-sd.com;kreyes@blc-sd.com;megan@blc-sd.com;nicole@blc-sd.com;danny@blc-sd.com;angie@blc-sd.com;kreyes@blc-sd.com**
- **United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov**
- **Sharon Z. Weiss    sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com,sharon-weiss-7104@ecf.pacerpro.com**
- **Mandy Youngblood    csbk@gmfinancial.com**
- **Roye Zur    rzur@elkinskalt.com, lwageman@elkinskalt.com;1648609420@filings.docketbird.com;rzur@ecf.courtdrive.com**

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                        **F 9013-3.1.PROOF.SERVICE**