**RAINES FELDMAN LITTRELL LLP**
Robert S. Marticello, State Bar No. 244256
*rmarticello@raineslaw.com*
Michael L. Simon, State Bar No. 300822
*msimon@raineslaw.com*
4675 MacArthur Ct, Suite 1550
Newport Beach, CA 92660
Telephone: (310) 440-4100
Facsimile: (310) 691-1943

Counsel for The Original Mowbray's Tree Service,
Inc., Debtor and Debtor-In-Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>THE ORIGINAL MOWBRAY'S TREE SERVICE, INC.,<br><br>Debtor and Debtor-In-Possession | Case No. 8:24-bk-12674-SC<br><br>Chapter 11<br><br>**REPLY TO CREDITOR RONNIE JORDAN'S OBJECTION TO DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DISCLOSURE STATEMENT**<br><br><u>**Hearing Information:**</u><br>Date: August 6, 2025<br>Time: 1:30 p.m.<br>Ctrm: 5C<br>      411 W Fourth Street<br>      Santa Ana, CA 92701 |

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE:**

The Original Mowbray's Tree Service, Inc., the debtor and debtor-in-possession in the above-captioned case (the "**Debtor**"), hereby submits this reply (the "**Reply**") to *Creditor Ronnie Jordan's Objection to Disclosure Statement Describing Chapter 11 Plan of Reorganization* [Docket No. 569] (the "**Objection**") and memorandum of points and authorities in support of its *Disclosure Statement Describing Chapter 11 Plan of*

1

*Reorganization* [Docket No. 363] (the "**Disclosure Statement**").  In support of the Reply, the Debtor submits the concurrently filed index of exhibits (the "**Reply Index**").  Attached to the Reply Index as **Exhibit 1** and **Exhibit 2** are the redlined proposed First Amended Disclosure statement (the "**Amended Disclosure Statement**") and the redlined proposed First Amended Plan (the "**Amended Plan**"), respectively.[1]

## I. INTRODUCTION

As an initial matter, the Debtor's Plan and Disclosure Statement have been amended. The amendments are the product of extensive negotiations by the Debtor and its advisors with key parties over a period of many months.  With these amendments, the Debtor believes that it has resolved objections of the United States Trustee and creditors Altec, Pathward, and John Deere.  The amendments reflect the Debtor's discussions with the Examiner.  In addition, the Amended Plan incorporates the terms of a settlement with the Estate's largest asserted general unsecured creditor, the Rodriguez Plaintiffs.  Based on the settlement with the Rodriguez Plaintiffs, the Debtor has increased the minimum to be paid to the Holders of Allowed General Unsecured Claims to $25,000,000 and such Holders will also have the opportunity to share in the Reorganized Debtor's post-confirmation profits.  The Amended Plan moves this Case forward towards a largely consensual conclusion.

The Disclosure Statement, as amended, should be approved for dissemination.  The Disclosure Statement is a 111-page document with substantial information regarding the Debtor, detailed financial projections, and historical financial information.  The financial information supporting the Disclosure Statement and the Plan reflect the thorough work and analysis of the Debtor, the CRO, and the Debtor's professionals.  Moreover, the Disclosure Statement includes financial projections and a liquidation analysis for both the Debtor and its wholly-owned subsidiary, PTS.  The Disclosure Statement contains "adequate information"—

---

[1] Capitalized terms not expressly defined herein shall the meanings ascribed to them in the Disclosure Statement.

information that is reasonable under the circumstances and allows creditors to make an informed decision on the Plan.

      Jordan's objections should be overruled. Jordan does not seek or need more information to make an informed decision on whether to vote in favor or against the Plan. As evidenced by Jordan's improvidently filed competing plan, Jordan's decision to vote against the Plan has already been made. Jordan understands the Plan. Jordan's objections are nothing more than his personal criticisms regarding the Plan. Jordan's objections are not to elicit additional, helpful information for creditors, but, instead, to further his own competing narrative and ulterior motive to improperly solicit support on his futile plan. Moreover, Jordan's various critiques concerning the Plan can be raised in connection with the hearing to confirm the Plan. The sole issue before the Court is whether the Disclosure Statement contains adequate information that allows creditors to make informed judgments about the Plan. With this standard in mind, the Disclosure Statement, as amended, should be approved.

## II.    THE DEBTOR'S NEGOTIATIONS AND AMENDMENTS TO THE DISCLOSURE STATEMENT AND PLAN

      The Debtor has been engaged in robust ongoing negotiations with many creditors. The Debtor, the CRO, and the Debtor's counsel have been in the process of negotiating with creditors over an extended period of time to resolve objections to the Plan and the Disclosure Statement. Thus far, the Debtor reached consensual plan treatment with Pathward, Altec, and John Deere. Moreover, the Debtor reached an agreement in principle with the Rodriguez Plaintiffs, the parties who assert the largest general unsecured claim in the Case and who previously sought the appointment of a trustee (among other relief). The terms of that settlement are incorporated into the Amended Plan.

      In addition to providing revised treatment for Pathward, Altec, and John Deere, the Amended Disclosure Statement and Amended Plan were revised to do the following:

- Provide for the substantive consolidation of MWP with the Debtor. (*See* Reply Index, Ex. 1, First Amended Disclosure Statement at 73-75; Ex. 2, First Amended Plan at 53-54.)
- Improve the treatment for Holders of General Unsecured Claims by increasing the GUC Payment Amount to $25,000,000 and to provide for the newly-added GUC Bonus and to implement such improved treatment. (*See* Ex. 1, First Amended Disclosure Statement at 64-66; Ex. 2, First Amended Plan at 43-46.)
- Include and implement related compromises among Robin Mowbray, MWP, and the Gloria Mowbray Separate Property Trust, and the Rodriguez Plaintiffs. (*See* Ex. 1, First Amended Disclosure Statement at 68-72; Ex. 2, First Amended Plan at 47-51.)
- Remove the $100,000 New Value Contribution and related overbid process based on the new compromises in the Plan. (*See* Ex. 1, First Amended Disclosure Statement at 72-73; Ex. 2, First Amended Plan at 51-52.)
- Add new reporting by the Reorganized Debtor to the Plan Trust. (*See* Ex. 1, First Amended Disclosure Statement at 82.)
- Revise the injunction, exculpation and release provisions to resolve an objection by the U.S. Trustee. (*See* Ex. 1, First Amended Disclosure Statement at 108-109; Ex. 2, First Amended Plan at 61.)
- Update the description of certain events that occurred during the Case since the Disclosure Statement was filed on March 14, 2025. (*See* Ex. 1, First Amended Disclosure Statement at 16-20.)
- Update the projected claim amounts of certain secured creditors as of the Effective Date. (*See* Ex. 1, First Amended Disclosure Statement at 35-59; Ex. 2, First Amended Plan at 14-39.)
- Include new treatment for Sierra Bank. (*See* Ex. 1, First Amended Disclosure Statement at 62-63; Ex. 2, First Amended Plan at 41-42.)

- Improve the treatment for PNC. (*See* Ex. 1, First Amended Disclosure Statement at 32; Ex. 2, First Amended Plan at 11.)
- Revise the Class 13 claimant to be Hanmi Bank. (*See* Ex. 1, First Amended Disclosure Statement at 32; Ex. 2, First Amended Plan at 58.)

The Debtor is updating certain figures in its Projections based on the most current information available concerning the revenues and expenses of the Debtor and PTS. The Debtor will have such updated Projections ready for dissemination with the Amended Disclosure Statement and Amended Plan. The Debtor will make any needed corresponding changes in the body of the Amended Plan and Amended Disclosure Statement for consistency purposes resulting from the updates to the Projections. The disclosures and assumptions related to the updated Projections will not change.

### III. LEGAL STANDARD

Adequate information is all the Bankruptcy Code requires. *See In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 171 (Bankr. S.D. Ohio 1988); *see also* 11 U.S.C. § 1125(a)(1). Adequate information is defined as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records" that would enable a hypothetical investor "to make an informed judgment about the plan. . . ." *See* 11 U.S.C. § 1125(a)(1). "[I]n determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information. . . ." 11 U.S.C. § 1125(a)(1).

A disclosure statement must, as a whole, provide information that is "reasonably practicable" to permit an "informed judgment" by creditors to vote on a plan of reorganization. *See In re Momentum Mfg. Corp.,* 25 F.3d 1132, 1136 (2d Cir. 1994). What is "adequate information" must be determined on a case-by-case basis under a flexible and practical standard, focusing on the unique facts and circumstances of each case. *See In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988); *see also In re*

*Phoenix Petroleum Co.,* 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001). As stated in the legislative history:

> Precisely what constitutes adequate information in any particular instance will develop on a case-by-case basis. Courts will take a practical approach as to what is necessary under the circumstances of each case, such as the cost of preparation of the statements, the need for relative speed in solicitation and confirmation . . . . In chapter 11 cases, there is frequently great uncertainty. Therefore the need for flexibility is greatest.

*See* H.R. Rep. 595, at 408-09 (1977). Courts are vested with wide discretion to determine whether a disclosure statement contains "adequate information" within the meaning of § 1125(a). *See Kirk v. Texaco, Inc.,* 82 B.R. 678, 682 (S.D.N.Y. 1988); *see also In re Oxford Homes,* 204 B.R. 264, 267 (Bankr. D.Me. 1977).

Confirmation issues, such as the feasibility of a plan, should not be adjudicated at the disclosure statement stage. *See, e.g., In re Sunshine Precious Metals, Inc.*, 142 B.R. 918, 920 (Bankr. D. Idaho 1992) ("[Classification and feasibility] are also confirmation issues, and the record at present does not justify the conclusion that the proposed chapter 11 plan is not confirmable on these grounds as a matter of law."); *In re Scioto Valley Mortg. Co.*, 88 B.R. at 171 ("If creditors oppose their treatment in the plan, but the Disclosure Statement contains adequate information, issues respecting the plan's confirmability will await the hearing on confirmation.").

**IV.    THE DISCLOSURE STATEMENT PROVIDES ADEQUATE INFORMATION**

    **A.    The Disclosure Statement Provides Detailed Information Concerning the Debtor's Plan**

The Disclosure Statement contains adequate information. The Disclosure Statement contains a thorough and lengthy narrative of the events leading to the Debtor's case and the Debtor's assets and liabilities. (*See* Disclosure Statement at 7:14-10:15; and 14:7-15:6.) The Disclosure Statement extensively discusses the potential risks of the Plan. (*See id.* at 89:21-91:15.) The Disclosure Statement is supported by detailed liquidation analyses and financial

projections for the Plan with the underlying assumptions. (*See* Reply Index, Exs. 1-3.) In fact, the Disclosure Statement and Plan are accompanied by separate financial projections and liquidation analyses for both the Debtor and PTS. The financial projections include a forecasted income statement, balance sheet, and cash flow statement, and tax calculations. (*See Index of Exhibits In Support of Disclosure Statement Describing Chapter 11 Plan of Reorganization* [Docket No. 364] ("**DS Index**"), Ex. 1.) The Disclosure Statement contains substantial information concerning the Affiliates, including their transactions with the Debtor. (*See* Disclosure Statement at 10:16-14:6.) Moreover, the Disclosure Statement includes the Insider Payment Schedule prepared from the Debtor's books and records of payments to or for the benefit of any insider within the four-year period prior to the Petition Date. (*See* DS Index, Ex. 6.) In short, the Debtor has provided extensive information in and with its Disclosure Statement.

### B. Jordan's Disclosure Statement Objections Should Be Overruled

#### 1. Jordan's Objections Concerning the Stalking Horse Bidder are Moot

Jordan's objections concerning Robin Mowbray's prior new value contribution are moot. (*See* Obj. at 11:28-12:12.) The Plan, as amended, and due to the compromise now included in the Plan, eliminates the $100,000 New Value Contribution from Robin Mowbray. (*See* Ex. 1 at 72-73.) Jordan's argument that the Disclosure Statement must disclose Robin Mowbray's capacity to overbid (while at the same time admitting she had the financial wherewithal to pay the initial $100,000 sum) was for competitive purposes, as opposed to providing adequate information. Jordan's speculation that there is some other secret and mysterious "true bidder" for the equity in the Reorganized Debtor is just that—speculation. It is also untrue. In any event, all such arguments by Jordan are, at this stage, irrelevant.

The Disclosure Statement adequately discloses the post-confirmation management of the Reorganized Debtor. (*See* Disclosure Statement at 64:18-23.) The Disclosure Statement states when each such person was promoted to their present role with the Debtor. (*See id.* at 6:19-24.) The Disclosure Statement provides significant detail concerning the Debtor's

historical operations, including its annual gross revenue and net income (or loss) over the last five years leading to the Petition Date. (*See id.* at 7-8.) The Disclosure Statement discusses the Debtor's efforts to remedy its financial distress. (*See id.* at 8-9.) The Disclosure Statement includes information concerning the Debtor's performance during this Case, while under the same management team. (*See id.* at 19-21.) The Disclosure Statement also clearly states the projected period of time it will take to pay the GUC Payment Amount, as reflected in the Objection. (*See id.* at 1-2 and 53:18-19.) The Disclosure Statement is accompanied by detailed Projections of the Reorganized Debtor's revenues, and the bases for the projected revenues. (*See* DS Index, Ex. 1 at 7-11 of 172.)

The Debtor is not required to amend the Disclosure Statement to include Jordan's critiques of the Debtor's management, the Debtor's revenue projections, and/or the Debtor's financing prospects. (*See* Obj. at 12:13-26; *see also id*. at 13:4-12.) Besides, Jordan's self-serving arguments are contrary to the actual facts. The Debtor's ability to survive the decline of revenues discussed in the Disclosure Statement and to strengthen its cash flow during this Case are remarkable and demonstrate the extraordinary resilience of the Debtor and its current management team. (*See* Disclosure Statement at 19-20.) Including Jordan's views would not arm creditors with adequate information, but, instead, would mislead them.

### 2. **The Debtor Adequately Discloses Jacobus Pino's Role With PTS**

The Disclosure Statement adequately details the risks associated with the Plan. Jordan's objections on this point, as with all others, reflect his personal views of the Debtor's business and are designed to push forward his own narrative regarding the same. The Debtor is not required to include Jordan's opinions in the Disclosure Statement. Moreover, Jordan's objections overlook the robust disclosures in the Risk Section of the Disclosure Statement.

The Disclosure Statement discloses the risks associated with the duration of the Debtor's contracts:

> In addition, the Debtor's customer contracts are, in general, of short duration, typically 2 years. There is no guarantee that a particular customer will select the Debtor for future work after the expiration of the Debtor's current contract(s). As discussed above, the financial distress that led to the

> Case was, in part, caused by a decline in revenues due to the Debtor's loss of certain customers, which left the Debtor with expenses it could not pay.

(*See* Disclosure Statement at 90:19-24.)  The Disclosure Statement also discloses the risk associated with the concentration of PTS's customer base:

> PTS's revenues are largely concentrated in one customer, SCE.  SCE represents approximately 99% of PTS's revenues.  The loss of SCE's contracts would result in a severe disruption to PTS's operations (absent PTS replacing the loss with revenues from another source).  Without SCE's contracts, PTS would lack the ability to make the projected payments to the Reorganized Debtor.  PTS's current SCE contracts expire December 31, 2026.  Similar to the Debtor, there is no guarantee that PTS will secure future work from SCE after the expiration of the current contracts.  However, PTS is attempting to extend its existing contracts with SCE and win work from other prospective customers.

(*See id.* at 90:27-91:6.)  Jordan's objections amount to descriptions of risk factors that are already included in the Disclosure Statement.

The Disclosure Statement adequately describes the relationship of Jacobus De Pino ("**Pino**") with the Debtor.  The Disclosure Statement states that Pino is the CEO of PTS.  (*See* Disclosure Statement at 10:24-25.)  The Disclosure Statement accurately discloses that the Debtor owns all of PTS's outstanding stock.  (*See id.* at 10:18-25.)  These disclosures are consistent with the declaration of Jacobus De Pino filed in this Case.  (*See* Docket No. 399.)  Jordan's arguments concerning the contractual status of Pino relate to the innerworkings of a non-debtor entity.  As such, more information concerning Pino is not reasonable and is not needed to provide adequate information.  Moreover, as Jordan seems to be someone that intends to compete with the Debtor and disrupt its operations, providing additional information concerning Pino's contractual status and any non-compete agreement to Jordan could be harmful to this Estate.

        **3.**      <u>**The Debtor Adequately Discloses Robin Mowbray's Interest in PTM**</u>

Jordan's objection that the Disclosure Statement lacks sufficient information concerning PTM's relationship to the Debtor is false.  The Disclosure Statement discloses that PTM is owned by Robin Mowbray.  (*See* Disclosure Statement at 12:4-11.)  The fact that

PTM has an outstanding loan owing to the Debtor is disclosed, as it has been since the beginning of the case. (*See id.* at 12:18-25.) The Projections disclose the amount that is projected to be paid by PTM to the Reorganized Debtor post-confirmation. The loan payments are in addition to the management fees and lease payments to be paid by PTM. (*See* DS Index, Ex. 1 at 11 of 172; *see also* Disclosure Statement at 2:14-16.) The Amended Disclosure Statement includes a statement that the amount projected to be paid by PTM to the Reorganized Debtor is based on the CRO's understanding of the amount that can reasonably be paid by PTM during the projected period. (*See* Ex. 1 at 67.) Moreover, under the Amended Plan, any claim to collect the balance of the PTM Loan (in in excess of the amount projected to be paid to the Reorganized Debtor) is being vested in the Plan Trust. (*See* Disclosure Statement at 57:8; *see also id.* at 98:17-19, definition of Loan Causes of Action.) Thus, the collection of the PTM Loan will be left to the independent Plan Trustee, not Robin Mowbray. There is no conflict of interest as claimed by Jordan.

Jordan's opinion that Robin Mowbray should not be the owner of PTM is not something the Debtor is required to include in its Disclosure Statement. The Debtor is also not required to include financial information for a non-debtor sister company with its Disclosure Statement. The Disclosure Statement adequately discloses PTM's relationship to the Debtor, the Debtor's transactions with PTM, and the amounts projected by PTM to be paid to the Reorganized Debtor.

### 4. The Debtor's Disclosures Concerning the Ownership of PTS Are Adequate

Jordan asserts that the Contractors State Licensing Board ("**CSLUB**") provides that Pino owns at least 10% of PTS, which conflicts with the Disclosure Statement's assertion that the Debtor owns 100% of PTS. (*See* Obj. at 15:5-27.) It appears that Jordan makes this assertion because the CSLUB provides that Jordan owned 10% or more of PTS as of January 10, *2012*, in one section on its website regarding PTS's license #903079, which involves whether certain bonding information is required. (*See* Supp. RJN at Ex. 13.) The Disclosure Statement accurately discloses that the Debtor acquired all of PTS's outstanding stock in *2022*.

(*See* Disclosure Statement at 10:18-25.)  These disclosures are consistent with the declaration of Pino filed during the Case. (*See* Docket No. 399.)  In any event, whether CSLUB's information concerning PTS is accurate or needs to be updated is not relevant to whether the Disclosure Statement contains accurate information.  The Debtor owns all of PTS's outstanding stock as set forth in the Disclosure Statement.

### 5. The Debtor's Liquidation Value of PTS is Accurate

The Debtor believes that its valuation of PTS in the Liquidation Analysis is accurate and reasonable.  First, Jordan's assertion that PTS is valued at $338,000 is false. (*See* Obj. at 16:1-18.)  The Liquidation Analysis values PTS at between $7,779,000 and $10,649,000. (*See* DS Index, Ex. 3 at 45 of 172.)  The $338,000 figure represents the projected distribution on account of the Debtor's ownership interest in PTS from PTS's liquidation *after* the payment of PTS's debt, including the PTS Loan (in the low amount of $4,256,000 and the high amount of $5,954,000). (*See id.*; *see also id.* at 43 of 172.)

Second, the Debtor's methodology for valuing PTS is appropriate.  The Debtor respectfully disagrees with the Examiner's suggestion that PTS must be valued as a going concern.  The Liquidation Analysis assumes that, upon the Debtor's liquidation in a Chapter 7, PTS would also cease operations.  The Debtor believes that, notwithstanding the Examiner's Report [Docket No. 538], this assumption remains sound.  The Debtor's reasons for this are summarized in the Liquidation Analysis. (*See* DS Index, Ex. 3 at 43 of 172.)  The liquidation of the Debtor would cause PTS to lose infrastructure, services, and equipment critical to its operations. (*See id.*)  The Debtor would cease providing the management and administrative support services set forth in the PTS Management Agreement.  This includes officer and director services, financial oversight and planning, human resources, payroll, and benefits services, and fleet management.  In addition, the majority of the equipment being utilized by PTS for the services it provides is leased from the Debtor.  PTS is currently leasing over 300 pieces of equipment.  Thus, the liquidation of the Debtor's equipment in a hypothetical Chapter 7 occurring on the Effective Date of the Plan, would deprive PTS of the equipment it needs to continue servicing its clients.

From the Debtor's perspective, the Examiner's contrary suggested valuation is based on a series of hypothetical assumptions, such as a Chapter 7 trustee being able to continue PTS's operations and equipment leasing pending a sale and locating a buyer with the significant capital PTS would need.  (*See* Examiner's Report at 39-40 of 64.)  In any event, whether the Plan satisfies 11 U.S.C. § 1129(a)(7) (and it does) is a confirmation issue.

### 6. **Jordan's Objection Regarding the Debtor's Borrowing Capacity Does Not Require Further Disclosure**

Jordan's criticism that the Plan lacks a funding source is misleading.  (*See* Obj. at 16:29-17:3.)  The Disclosure Statement makes clear that the payments under the Plan by the Reorganized Debtor will be funded by the Reorganized Debtor's operations.  (*See* Disclosure Statement at 53:5-6.)  The Debtor's Plan does not require financing.  Jordan's argument that access to credit must be available is his personal belief and is not something that the Debtor must include in its Disclosure Statement.  As discussed above, the risks associated with the expiration of the Debtor's and PTS's contracts are included in the Disclosure Statement.  (*See* Disclosure Statement at 90-91.)  Jordan's objections are not designed to elicit additional information needed for voting purposes, but are part of his narrative in opposition to the Plan and his agenda to garner support for his futile competing plan.  Jordan's criticism regarding an alleged lack of funding does not raise a disclosure issue.

### 7. **Jordan's Objection Concerning PG&E Should Be Overruled**

Amendments to the discussion in the Disclosure Statement concerning the Debtor's business with PG&E is not required.  (*See* Obj. at 17:19-18:4.)  The Disclosure Statement does not state when PG&E filed and exited Chapter 11 and, as such, there is no factual inaccuracy related thereto.  Rather, the Disclosure Statement discloses that the bankruptcy of PG&E led to delayed payments to the Debtor and lower pricing on the Debtor's contracts, which caused severe financial strain on the Debtor.  (*See* Disclosure Statement at 7:20-27.)  This is accurate.  (*See* Richard Mowbray Decl., Docket No. 577, at ¶ 5.)  Moreover, the Disclosure Statement adequately describes the Debtor's pre-petition revenue decline, detailing the Debtor's annual gross revenue and net income from 2020-2024 and explaining that the

revenue decline was due to losing contracts with PG&E and SCE.  (*See* Disclosure Statement at 7:20-8:11.)  The Debtor is not required to amend the Disclosure Statement to include Jordan's personal view of events with PG&E.

### 8. **Jordan's Objection Concerning the San Bernardino Equipment Yard Should Be Overruled**

Jordan's assertion that the Debtor needs replacement property for real property that MWP intends to sell is false.  (*See* Obj. at 18:21-19:2.)  By "San Bernardino equipment yard[,]" the Debtor assumes that Jordan is referring to the real property located at 386 S. Allen St., San Bernardino, CA ("**Allen St.**")  The Debtor does not store its equipment at Allen St. or on any other real property that MWP is attempting to sell.  As a result, this argument should be overruled.

### 9. **The Disclosure Statement Contains Sufficient Information Regarding the Plan Trustee**

The Disclosure Statement, as amended, now identifies the Plan Trustee.  The Debtor proposes that the Plan Trustee be Donald T. Fife, the Examiner.  Mr. Fife, who was independently chosen by the U.S. Trustee to serve as the Examiner, is now familiar with the operations of the Debtor and the parties in this Case.  Mr. Fife is particularly suited to serve as the Plan Trustee and could do so without the expense of getting up to speed.  From the Debtor's perspective, nothing in § 321(b) prohibits Mr. Fife from serving as the trustee under the Plan, as opposed to as a trustee pre-confirmation in the Case.  Should the Court decide differently, the Debtor is willing to propose an alternative candidate in consultation with the Rodriguez Plaintiffs.  If Jordan would like to object to the Debtor's proposal regarding the Plan Trustee, he can do so in connection with the confirmation hearing.  Jordan's assertion that there is no mechanism for him to object to the Debtor's selection of the Plan Trustee is simply false. Robin Mowbray has not interviewed anyone for the Plan Trustee role and, as such, there is nothing to disclose in this regard (assuming it would otherwise be appropriate).  The Disclosure Statement provides adequate information regarding the selection of the Plan Trustee.

|    |    |    |
|---|---|---|
| 1 | **10.** | **The Debtor Adequately Describes Its Assets and Their Values** |

The Disclosure Statement adequately describes the Debtor's assets and their values. The Disclosure Statement contains a narrative concerning the Debtor's assets. (*See* Disclosure Statement at 14:7-26.) The Debtor's assets are further described in both the balance sheet included with the Debtor's financial projections and in the Liquidation Analysis. (*See* DS Index., Ex. 1 at 5-6 of 18; *see also id.*, Ex. 3.) Moreover, such accompanying financial information includes the assumptions for the Debtor's asset values. The Debtor's financial projections include a table detailing the items on the balance sheets for both the Debtor and PTS with the assumptions for each item. (*See* DS Index, Ex. 1 at 5-6 of 6.) The Liquidation Analysis explains the assumptions for the values ascribed to the Debtor's assets therein. (*See id.*, Ex. 3.)

Jordan's argument regarding the description of the Debtor's assets and their values should be overruled. Jordan offers nothing more than conclusory statements that the Debtor's description of its assets is "woefully inadequate and appears to be purposefully misleading" without identifying anything specifically inadequate or misleading. (*See* Obj. at 23:3-4.) Similarly, Jordan's argument that the Debtor's asset values have been prepared to enrich Robin Mowbray is unsupported by any evidence or specifics. The Debtor provided detailed assumptions explaining how the asset values were determined. Jordan has not demonstrated that *any* of the Debtor's assumptions are unreasonable. Jordan's unsupported allegations are contrary to the facts of this Case, the Plan, and the Examiner's Report. (*See* Obj. at 23:5-7.) For example, according to the Examiner, the Debtor is not "promoting the interests of the Affiliates at the expense of Creditors of the Estate." (*See* Examiner's Report [Docket No. 538] at 24:14-17.) Moreover, the Examiner's Report states that the Debtor reasonably valued the Debtor's equipment (using a reputable third-party appraiser). (*See id.* at 30-39, concluding **"The Examiner does not see evidence to conclude that there has been any deliberate effort to conceal items of value, failure to account for items of significant value, or artificially reduce the remaining inventor of vehicles and equipment"** (emphasis in original).)

1  Jordan's argument that the Debtor fails to provide "virtually any information about significant avoidance claims it possesses" is false. The Debtor took extra steps to detail and disclose the possible avoidance actions against insiders, including, in particular, Robin Mowbray. The Disclosure Statement is accompanied by the Debtor's SOFA, which includes pre-petition transfer information. In addition, the Debtor prepared from its books and records and included with the Disclosure Statement a detailed 22-page schedule with all payments to insiders within the four-year period prior to the Petition Date. (*See* DS Index, Ex. 6.) The Liquidation Analysis does not include a value for any avoidance actions because the recoveries on such actions in a hypothetical Chapter 7 case, if any, involve numerous legal questions. As set forth in the Examiner's Report, there could be impediments to prevailing and collecting on any such claims. (*See* Examiner's Report at 25-30.) However, the Insider Payment Schedule sets forth each transfer with the recipient/beneficiary, the date, and the face amount. (*See* DS Index, Ex. 6.)

Ultimately, the Disclosure Statement provides adequate information regarding the Debtor's assets and their values.

### 11. **The Debtor Adequately Describes the Avoidance Actions and the Plan Trustee**

As addressed above, the Amended Disclosure Statement identifies the Plan Trustee. If Jordan dislikes the Debtor's proposed selection, he can object to confirmation of the Plan.

The Disclosure Statement extensively discloses potential avoidance actions. In fact, the Debtor could not have been more candid in its disclosure of the potential avoidance actions. Again, the Debtor prepared a detailed schedule of all payments to insiders within the four-year period prior to the Petition Date. (*See* DS Index, Ex. 6.) Jordan's argument that "there should be candid disclosure of preferential or voidable transfers in this case" ignores the Insider Payment Schedule. (*See* Obj. at 23:22-23; *id.* at 19:6, stating that "more disclosure is needed as to the claims themselves. . . .") Jordan does not identify what transfers are not adequately disclosed. Indeed, the alleged avoidance transfers that he refers to, payments to

PTM and the liens granted by MWP to PNC, are all disclosed. (*See* DS Index, Ex. 6; Disclosure Statement at 67:4-5.)

### 12. The Debtor Adequately Describes the Risks Under the Plan

As discussed above, the Disclosure Statement extensively discusses the potential risks of the Plan. (*See* Disclosure Statement at 89:21-91:15.) This includes a discussion of the risks associated with the future operations of the Reorganized Debtor, PTS, and PTM. The Disclosure Statement specifically addresses the risk associated with the expiration of the Debtor's and PTS's contracts. Moreover, the Disclosure Statement identifies the persons who shall manage the Reorganized Debtor post-confirmation and contains substantial information regarding the operations of the Debtor under such management. (*See* Disclosure Statement at 64:19-22; *see id.* at 7-9 and 19-21.) Jordan's argument that more information is needed regarding the alleged risk of current management is merely his personal view and is designed to further his own self-serving narrative. (*See* Obj. at 24:1-6.) The Disclosure Statement adequately describes the risks under the Plan.

### C.    Jordan's Plan Objections Should Be Overruled

"[W]here a plan is on its face nonconfirmable, as a matter of law, it is appropriate for the court to deny approval of the disclosure statement describing the nonconfirmable plan." *In re Silberkraus,* 253 B.R. 890, 899 (Bankr. C.D. Cal. 2000). "A plan is patently unconfirmable where (1) confirmation 'defects [cannot] be overcome by creditor voting results' and (2) those defects 'concern matters upon which all material facts are not in dispute or have been fully developed at the disclosure statement hearing." *In re American Capital Equipment, LLC,* 688 F.3d 145, 154-55 (3d. Cir. 2012) quoting *In re Monroe Well Serv.,* 80 B.R. 324, 333 (Bankr. E.D. Pa. 1987).

Jordan's objections that the Plan is unconfirmable are premature and do not meet the high standard for denying approval of the Disclosure Statement. The Plan must ultimately satisfy 11 U.S.C. § 1129, and the Debtor believes it will meet that burden at the appropriate time. Nonetheless, because such objections are without merit and should be overruled, the Debtor addresses them below.

### 1. **The Plan Will Not Violate the Absolute Priority Rule**

Jordan's argument that the Plan violates the absolute priority rule, even assuming it had any merit to begin with, is now moot. (*See* Obj. at 25: 3-27.) The Amended Plan dispenses with the prior $100,000 New Value Contribution and related overbid process due to the compromise embodied in the Amended Plan negotiated, in large part, with the Rodriguez Plaintiffs. Moreover, Jordan's arguments concerning the existence of some other mysterious "true bidder" is pure and unfounded speculation. Jordan's absolute priority rule argument is also premature. The absolute priority rule is triggered only if a class votes against the Plan. The Debtor expects the Amended Plan will be confirmed without resort to cramdown under § 1129(b).

### 2. **The Plan Satisfies the "Best Interest of Creditors Test" Under 11 U.S.C. § 1129(a)(7)**

The Plan satisfies the "best interests of creditors test" under 11 U.S.C. § 1129(a)(7). Jordan's arguments to the contrary are based on a host of unsupported allegations that have nothing to do with the best interests of creditors test in the first instance. (*See* Obj. at 26:1-17.) Jordan's argument concerning the contractual relationship with Pino is a red herring. The Disclosure Statement includes Liquidation Analyses for both the Debtor and PTS. The assumptions used in those analyses are fully explained. (*See* DS Index, Ex. 3 at 42-44 and 46-47 of 172.) The Debtor believes those assumptions remain sound. As discussed above, the potential avoidance actions are not valued because any recoveries on such actions are subject to a number of legal disputes. However, the Disclosure Statement is accompanied by the Insider Payment Schedule listing the face amount of the payments to insiders within the four-year period prior to the Petition Date. Importantly, while Jordan complains about the Debtor's Liquidation Analysis, he has provided *zero* evidence to demonstrate that the Liquidation Analysis is inaccurate. Nor has he proven that the Debtor does not meet the best interests of creditors test.

As amended, the Plan provides for far more value than a Chapter 7 liquidation. Based on the Debtor's Liquidation Analysis, in a Chapter 7 case, the Holders of Allowed General

Unsecured Claims would receive a *pro rata* share of $15,674,000.  Jordan has not demonstrated that this conclusion is incorrect.  The Amended Plan provides a minimum return of $25,000,000 (*i.e.*, approximately $9,000,000 more than in a Chapter 7 liquidation).  Moreover, the Holders of Allowed General Unsecured Claims will have the opportunity to share in the Reorganized Debtor's post-confirmation profits.  By the GUC Bonus, the Holders of Allowed General Unsecured Claims could receive a *pro rata* distribution of up to $55,000,000 (inclusive of the $25,000,000 GUC Payment Amount).  (*See* Reply Index, Ex. 1 at 65:25-66-9.)  The improvement in the value to be paid under the Plan is the product of the Debtor's extensive discussions with the Examiner and the settlement negotiations with the Rodriguez Plaintiffs.

## V.     CONCLUSION

Based on the foregoing, the Debtor request that the Amended Disclosure Statement attached to the Reply Index **Exhibit 1** be approved.

Respectfully submitted,

DATED:  July 30, 2025                RAINES FELDMAN LITTRELL LLP


By:      */s/ Michael L. Simon*
           ROBERT S. MARTICELLO
           MICHAEL L. SIMON
           Counsel for Debtor and Debtor-in-Possession

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
4675 MacArthur Court, Suite 1550, Newport Beach, CA 92660

A true and correct copy of the foregoing document entitled (*specify*): **REPLY TO CREDITOR RONNIE JORDAN'S OBJECTION TO DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DISCLOSURE STATEMENT**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **July 30, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **July 30, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**Personal Delvery**
Hon. Scott C. Clarkson
U.S. Bankruptcy Court
Ronald Reagan Federal Building
411 West Fourth Street, Suite 5130
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 30, 2025 | Connie-Marie Santiago | /s/ Connie-Marie Santiago |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012    F 9013-3.1.PROOF.SERVICE

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- **Jeffrey W Broker**   jbroker@brokerlaw.biz
- **Kenneth J Catanzarite**   kcatanzarite@catanzarite.com
- **Lauren N Gans**   lgans@elkinskalt.com, lmasse@elkinskalt.com
- **Jessica L Giannetta**   jessica@giannettaenrico.com, melanie@giannettaenrico.com
- **Robert P Goe**   kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com
- **Marshall F Goldberg**   mgoldberg@glassgoldberg.com, jbailey@glassgoldberg.com
- **Alan Craig Hochheiser**   ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com
- **Merdaud Jafarnia**   bkca@alaw.net, mjafarnia@ecf.inforuptcy.com
- **Raffi Khatchadourian**   raffi@hemar-rousso.com
- **Valery Loumber**   valloumlegal@gmail.com
- **Michael B Lubic**   michael.lubic@klgates.com, jonathan.randolph@klgates.com,klgatesbankruptcy@klgates.com
- **James MacLeod**   jmacleod@dunninglaw.com, nancy@dunninglaw.com
- **Kathleen P March**   kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net
- **Robert S Marticello**   rmarticello@raineslaw.com, bclark@raineslaw.com;csantiago@raineslaw.com
- **David W. Meadows**   david@davidwmeadowslaw.com
- **Karen S. Naylor**   Becky@ringstadlaw.com, Karen@ringstadlaw.com;Arlene@ringstadlaw.com
- **Estela O Pino**   epino@epinolaw.com, staff@epinolaw.com;clerk@epinolaw.com
- **Donald W Reid**   don@donreidlaw.com, 5969661420@filings.docketbird.com
- **Todd C. Ringstad**   becky@ringstadlaw.com, arlene@ringstadlaw.com
- **Amitkumar Sharma**   amit.sharma@aisinfo.com
- **Jeffrey S Shinbrot**   jeffrey@shinbrotfirm.com, sandra@shinbrotfirm.com;tanya@shinbrotfirm.com
- **Thomas E Shuck**   tshuck@pmcos.com, efilings@pmcos.com
- **Michael Simon**   msimon@raineslaw.com, bclark@raineslaw.com;csantiago@raineslaw.com
- **Ahren A Tiller**   ahren.tiller@blc-sd.com, 4436097420@filings.docketbird.com;brett.bodie@blc-sd.com;anika@blc-sd.com;derek@blc-sd.com;kreyes@blc-sd.com;megan@blc-sd.com;nicole@blc-sd.com;danny@blc-sd.com;angie@blc-sd.com;kreyes@blc-sd.com
- **United States Trustee (SA)**   ustpregion16.sa.ecf@usdoj.gov
- **Sharon Z. Weiss**   sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com,sharon-weiss-7104@ecf.pacerpro.com
- **Jennifer C Wong**   bknotice@mccarthyholthus.com, jwong@ecf.courtdrive.com
- **Mandy Youngblood**   csbk@gmfinancial.com
- **Roye Zur**   rzur@elkinskalt.com, lwageman@elkinskalt.com;1648609420@filings.docketbird.com;rzur@ecf.courtdrive.com;lmasse@elkinskalt.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                                                        **F 9013-3.1.PROOF.SERVICE**