1  **RAINES FELDMAN LITTRELL LLP**
   Robert S. Marticello, State Bar No. 244256
2  *rmarticello@raineslaw.com*
   Michael L. Simon, State Bar No. 300822
3  *msimon@raineslaw.com*
   4675 MacArthur Ct, Suite 1550
4  Newport Beach, CA 92660
   Telephone:    (310) 440-4100
5  Facsimile:    (310) 499-4877

6  Counsel for The Original Mowbray's Tree Service,
   Inc., Debtor and Debtor-In-Possession
7

8                **UNITED STATES BANKRUPTCY COURT**

9                **CENTRAL DISTRICT OF CALIFORNIA**

10                     **SANTA ANA DIVISION**

11  | In re: | Case No.: 8:24-bk-12674-SC |

12  THE ORIGINAL MOWBRAY'S TREE     Chapter: 11
    SERVICE, INC., a Delaware corporation,
13                                 (Jointly Administered with Case Nos.
         Debtor and Debtor-in-Possession.   8:25-bk-10542-SC and 8:25-bk-10543-SC)
14

15  In re:                         **DEBTOR'S MOTION FOR ENTRY OF**
                                   **ORDER AUTHORIZING**
16  MOWBRAY WATERMAN PROPERTY,     **CONTINUED USE OF CASH**
    LLC,                           **COLLATERAL; MEMORANDUM OF**
17                                 **POINTS AND AUTHORITIES; AND**
         Debtor and Debtor-in-Possession.   **DECLARATIONS OF BRIAN WEISS**
18                                 **AND RUBEN SAINOS IN SUPPORT**

19  In re:

    ROBIN ELAINE MOWBRAY,          **Hearing Information:**
20                                 **Date:**    October 15, 2025
         Debtor and Debtor-in-Possession.   **Time:**    1:30 p.m.
21                                 **Place:**   Courtroom 5C
    ☒  Affects THE ORIGINAL MOWBRAY            411 West Fourth Street,
22     TREE SERVICE, INC.                      Santa Ana, CA 92701

23  ☐  Affects MOWBRAY WATERMAN
       PROPERTY, LLC
24
    ☐  Affects ROBIN ELAINE MOWBRAY
25
    ☐  Affects All Debtors
26

27

28

                                   1

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE:**

The Original Mowbray's Tree Service, Inc., the affected debtor and debtor-in-possession in the above-captioned jointly-administered cases (the **"Debtor"**), hereby files this *Motion for Entry of Order Authorizing Continued Use of Cash Collateral* (the **"Motion"**).  In support of the Motion, the Debtor submits the following memorandum of points and authorities and the attached declarations of Brian Weiss (the **"Weiss Declaration"**) and Ruben Sainos (the **"Sainos Declaration"**).

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

By this Motion, the Debtor requests authorization to continue to use cash collateral through the week ending February 27, 2026, in accordance with the budget attached hereto as **Exhibit 1** (as may be amended and supplemented, the **"Budget"**) and the proposed order granting the Motion attached hereto as **Exhibit 2**.  The proposed 19-week period covered by the Budget will carry this case through the hearing on the Debtor's plan of reorganization.

The Debtor's business provides vegetation management services that include mitigating vegetation hazards and assisting with emergency responses to damage caused by wildfires, hurricanes, and other natural disasters.  The Debtor requests authority to continue to use cash collateral to pay ordinary course operating expenses, to fund the costs of this case, including professional fees allowed by this Court, and make payments to secured parties.

PNC Bank (**"PNC"**) is the only creditor holding a lien in the Debtor's cash.  The Debtor and PNC have entered into three stipulations authorizing the final use of cash collateral on agreed upon terms.  The Debtor proposes to continue to use cash collateral pursuant to the Budget on the same terms and conditions as set forth in the Debtor's prior stipulations with PNC.

MOTION FOR ENTRY OF ORDER
AUTHORIZING CONTINUED USE OF CASH COLLATERAL

The use of cash collateral is appropriate.  The use of cash collateral is necessary for the continued operation of the Debtor's business, to preserve the Debtor as a going-concern, and to maximize the value of the estate.  Absent the use of cash collateral, the Debtor will suffer immediate and irreparable harm to the detriment of the Debtor, its estate, and its creditors.

The Debtor is hopeful that it and PNC will reach a further consensual cash collateral arrangement as they have previously done.  In addition, PNC is adequately protected against any diminution in value for multiple reasons.  First, the Debtor seeks authority to use cash collateral on the terms previously negotiated with PNC.  Second, the Debtor will continue payments to PNC in the negotiated amount of $350,000 per month.  This monthly payment is a substantial sum that far exceeds any alleged diminution in value.  Third, PNC's security interests will be protected by replacement liens in the Debtor's post-petition revenues and superpriority administrative claims if and to the extent of any diminution in value.  The Debtor has generated positive cash flow post-petition to date and its operations have been consistent with, or better than, its prior approved budgets.  Over the next 19 weeks, the Debtor's operations are projected to continue generating positive operating cash flow before payments to secured creditors and on account of allowed professional fees.  Fourth, the operation of the Debtor's business protects PNC and all creditors by maximizing the value of the Debtor, its operations, and assets as a whole.  Accordingly, the Debtor respectfully requests that the Court grant the Motion and authorize the use of cash collateral.

## II.    DISCLOSURES REQUIRED BY FRBP 4001

The Debtor makes the following disclosures with respect to the proposed use of cash collateral:

| Summary of Material Terms | |
| --- | --- |
| **Entities Who May Have an Interest in Cash Collateral** | The entities that assert, or may assert, an interest in all or a portion of the Debtor's cash are as follows: PNC. |

3

| Summary of Material Terms | |
|---|---|
| **Purpose of Cash Collateral Use** | The purpose of the use of cash collateral is for operating expenses, payments to secured creditors, and allowed professionals fees as set forth in the Budget.  The Budget will be deemed a "Budget" as defined in the *Stipulation Authorizing Use of Cash Collateral* [Docket No. 255] (the "**First Stipulation**"). |
| **Material Terms of the Use of Cash Collateral** | The Debtor requests authority to use cash collateral on final basis in accordance with the Budget.<br><br>The terms of the use of cash collateral are as follows:<br><br>The Debtor may use cash collateral from October 18, 2025, through and including February 27, 2026 (the "**Cash Collateral Period**"), in accordance with the Budget, with expenditures during this period not to exceed 115% of the per budget line item (*i.e.*, a 15% variance); *provided, however,* that the total cash expenditures during the Cash Collateral shall not exceed 110% of the total budgeted disbursements in the Budget (*i.e.*, a 10% cumulative variance).<br><br>During the Cash Collateral Period, (i) any unused amount for any given line item in the Budget for a particular week shall carry forward and can be used in later weeks, and (ii) any amounts budgeted for a given line item in a particular week through the end of the end of the Cash Collateral Period may be spent up to two weeks earlier than budgeted provided the total amount spent for such line item does not exceed the total amount budgeted for that line item with the variance permitted above. |
| **Adequate Protection** | Pursuant to §§ 361, 362, 363 and 552(b) of the Bankruptcy Code, PNC shall receive adequate protection in the following forms in order to account for any aggregate diminution in value with respect to PNC's Prepetition Liens in the Prepetition Collateral (as such terms are defined in the Stipulation) from and after the Petition Date as calculated and determined in accordance with the Bankruptcy Code ("**Diminution in Value**"):<br><br>(1) By the fifteenth (15th) of each calendar month during the Cash Collateral Period, the Debtor shall pay to PNC the amount of $350,000 (each, a "**Monthly Payment**" and collectively, the "**Monthly Payments**").  The Debtor reserves all rights with respect to the application of such payments to interest or principal under the Bankruptcy Code and the Debtor's agreements with PNC.<br><br>(2) Valid, attached, enforceable, perfected and continuing replacement security interests in, and replacement liens upon, on all of the Debtor's currently owned or hereafter acquired personal property and assets (including such assets acquired by the Debtor on or after the Petition Date), of any kind or nature, wherever located, and all proceeds thereof, of the same extent, validity, and priority as the Prepetition Liens, to the extent of any Diminution in Value; *provided, however*, that the replacement security interests and liens will not attach to |

4

| Summary of Material Terms | | |
|---|---|---|
| | | Bankruptcy Code Chapter 5 causes of action of the Debtor or the estate and the proceeds thereof. |
| | | (3) Superpriority administrative claim in the pursuant to § 503 and 507(b) of the Bankruptcy Code with priority over any and all administrative *inter alia*, §§ 105, 326, 328, 330, 331, 364(c)(1), 365, 503(a), 503(b), 507(a), 507(b), 546(c), 726, 1113, or 1114 of the Bankruptcy Code to the extent of any Diminution in Value. |
| | | Nothing herein shall limit the rights afforded to the Debtor or PNC in the First Stipulation, as modified by the subsequent stipulations between the parties. (*See* Docket Nos. 459 and 531.) |
| **Professional Fees** | | Fees and expenses incurred by persons or firms retained by the Debtor pursuant to §§ 327, 328, or 363 of the Bankruptcy Code (hereafter, a **"Professional"**), up to the amounts provided in the Budget, all fees required to the be paid to the Clerk of the Court, and all statutory fees of the Office of the United States Trustee, may be paid by the Debtor during the Cash Collateral Period prior to the occurrence of an Uncured Event of Default as defined in the First Stipulation.

The Debtor is authorized to fund a separate segregated account consisting of those amounts set forth in the applicable Budget for the payment of fees and expenses of the Professionals (the **"Professional Fee Account"**). The fees and expenses payable to Professionals shall be placed in the Professional Fee Account as such fees and expenses are accrued under the Budget, and any and all withdrawals from the Professional Fee Account shall be subject to further orders of the Court. Amounts funded into the Professional Fee Account shall be considered used by the Debtor at such time as they are deposited into the Professional Fee Account for distribution to professionals in accordance with orders of the Bankruptcy Court.

For the avoidance of doubt, PNC is not subordinating its superpriority administrative claim to any postpetition payments including, without limitation, payments made pursuant to the foregoing provisions. Notwithstanding anything herein to the contrary, should any disgorgement be sought by PNC with respect to any postpetition payment(s) permitted by the Budget, including, without limitation, payments made pursuant to made pursuant to the foregoing provisions, then the rights of the Debtor pursuant to 11 U.S.C. § 506(c) with respect to such payments are preserved and not waived. |

MOTION FOR ENTRY OF ORDER
AUTHORIZING CONTINUED USE OF CASH COLLATERAL

III.    **JURISDICTION, VENUE, AND PREDICATES FOR RELIEF**

The United States Bankruptcy Court for the Central District of California (the "**Court**") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and may be determined by the Court.

The predicates for the relief requested herein are sections 105, 361, 363 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), and Rules 4001(b), 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

IV.    **BACKGROUND**

A.    **General Background**

On October 18, 2024 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned chapter 11 case (the "**Chapter 11 Case**" or "**Case**").  The Debtor is operating as the debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.  On September 5, 2025, the Court entered an order approving the joint administered of the Case with the above-captioned chapter 11 cases of Mowbray Waterman Property, LLC ("**MWP**"), and Robin Elaine Mowbray ("**Robin Mowbray**" and together with the Debtor and MWP, the "**Debtors**").

Established in 1972 by Gloria and John Mowbray (the "**Founders**"), Mowbray's has been a cornerstone in California for providing vegetation management services for over 50 years.  Mowbray's began as a modest venture and has grown into a resilient company, dedicated to safeguarding communities and the environment.  Mowbray's continues to be a family owned and operated business, is a member of WMBE (Women and Minority Business Enterprise), and is committed to providing its client-partners with the safest and most efficient solution to their vegetation management needs.

MOTION FOR ENTRY OF ORDER
AUTHORIZING CONTINUED USE OF CASH COLLATERAL

The services provided by the Debtor include, without limitation, manual and mechanical clearing, integrated vegetation management, storm and emergency, right-of-way maintenance, and high-hazard tree removal and crane services (collectively, "**Vegetation Management Services**").  Tree-trimming around power lines, clearing vegetation to prevent forest fires, removal of debris and charred remains after major wildfires in California, and assisting with damage remediation in response to hurricanes—these are the types of important services that the Debtor provides to the communities in which it serves.  Historically, utility companies have been the Debtor's primary clients.  The Debtor also provides services to governmental agencies and cooperatives.

The Debtor is based in California and provides Vegetation Management Services throughout the state.  Prior to the Petition Date, the Debtor retained Brian Weiss of Force Ten Partners, LLC, as its Chief Restructuring Officer to lead the Debtor through its formal restructuring process, including this Case.

On September 18, 2025, the Court entered the *Order (1) Approving Second Amended Disclosure Statement Describing Second Amended Joint Chapter 11 Plan of Reorganization; and (2) Continuing Status Conference* [Docket No. 896] and scheduled a confirmation hearing on the Debtors' *Second Amended Joint Chapter 11 Plan of Reorganization* [Docket No. 893] for February 18, 2026 (the "**Confirmation Hearing**").

B. <u>The Debtor's Funded Debt</u>

Pursuant to a loan agreement dated October 28, 2022 (the "**PNC Loan Agreement**") between PNC and the Debtor, PNC has provided the Debtor with a secured revolving line of credit not to exceed $20,000,000 and letters of credit not to exceed $5,000,000 (the "**PNC Loan**").  In the First Stipulation, the Debtor acknowledged that, as of the Petition Date, the PNC Loan balance was $7,038,514.41, plus any additional obligations, such as, interest, default interest, late fees, attorney's fees, expenses, other charges and costs, provided for under the Prepetition Loan Documents and as permitted by the Bankruptcy Code.  The PNC Loan

MOTION FOR ENTRY OF ORDER
AUTHORIZING CONTINUED USE OF CASH COLLATERAL

was guaranteed by Robin Mowbray and MWP.  The guaranty from MWP is secured by two

real properties that it owns.

### C.    The Debtor's Prior Cash Collateral Use

On October 18, 2024, the Debtor filed a motion for entry of interim and final orders

authorizing use of cash collateral [Docket No. 5] (the **"First Cash Collateral Motion"**).  On

October 24, 2024, the Court entered an order granting the First Cash Collateral Motion on an

interim basis.  (*See* Docket No. 72.)  Pursuant to the First Stipulation between the Debtor and

PNC, which was approved by order entered on January 24, 2025, the Court granted the First

Cash Collateral Motion on a final basis and authorized the Debtor to use cash collateral

through April 18, 2025, in accordance with the budget attached to that order and on the terms

and conditions of the First Stipulation.  (*See* Docket No. 268.)

On April 8, 2025, the Debtor filed the *Debtor's Motion for Entry of Order Authorizing

Continued Use of Cash Collateral* [Docket No. 394] (the **"Second Cash Collateral Motion"**).

Pursuant to a stipulation with PNC that was approved by order entered on April 22, 2025

[Docket No. 419], the Court continued the hearing on the Second Cash Collateral Motion to

May 20, 2025, and authorized the use of cash collateral in accordance with the budget attached

to the Second Cash Collateral Motion through the continued hearing.  On May 19, 2025, the

Court entered an order continuing the hearing on the Second Cash Collateral Motion to May

28, 2025.  (*See* Docket No. 453.)  Pursuant to a second *Stipulation Authorizing Use of Cash

Collateral* [Docket No. 459] (the **"Second Stipulation"**) between the Debtor and PNC, which

was approved by an order entered on May 27, 2025, the Court authorized the Debtor to use

cash collateral on a final basis in accordance with the budget attached to the Second

Stipulation through July 17, 2025 and on the terms and conditions of the Second Stipulation.

(*See* Docket No. 462.)  The Second Stipulation permitted the Debtor to continue cash collateral

use on the terms of the First Stipulation with certain specified modifications.

On July 10, 2025, the Debtor filed the *Debtor's Motion for Entry of Order Authorizing

Continued Use of Cash Collateral* [Docket No. 522] (the **"Third Cash Collateral Motion"**).

Pursuant to a third *Stipulation Authorizing Use of Cash Collateral* [Docket No. 531] (the "**Third Stipulation**") between the Debtor and PNC, which was approved by the order entered on July 14, 2025, the Court authorized the Debtor to use cash collateral on a final basis in accordance with the Prior Budget through October 17, 2025 and on the terms and conditions of the Third Stipulation. (*See* Docket No. 462.)  The Third Stipulation permitted the Debtor to continue cash collateral use on the terms of the First Stipulation as modified by the Second Stipulation.

To date post-petition, the Debtor has generated positive cash flow.  The Debtor's cash on hand increased from $4,238,515 as of the Petition Date to $9,967,075 as of September 12, 2025.  Moreover, the Debtor has kept its operations consistent with the Prior Budget or better than projected.  Attached hereto as **Exhibit 3** is a variance report of the Debtor's actual operations as compared to the Prior Budget through September 12, 2025.  During the period covered by the Prior Budget through September 12, 2025, the Debtor's operating cash flow exceeded its projected operating cash flow by $1,146,721 or 327%.  (*See* Ex. 3.)  During the period covered by the Prior Budget through September 12, 2025, the Debtor paid $1,074,397 to PNC, equipment lenders, and equipment lessors collectively, which includes principal payments.  (*See id.*)  This sum is in addition to amounts paid during the period covered by prior cash collateral periods.

## V.    THE COURT SHOULD AUTHORIZE THE USE OF CASH COLLATERAL

Section 363(c) provides that a trustee or debtor-in-possession may not use cash collateral, unless secured parties consent, or the court, after notice and a hearing, authorizes the proposed use.  *See* 11 U.S.C. § 363(c).  A bankruptcy court may authorize a debtor's use of cash collateral without the consent of a secured creditor provided the secured creditor's interest in such cash collateral is adequately protected.  *See* 11 U.S.C. §§ 363(c), (e).  "However, the protection afforded to secured creditors is not absolute."  *In re ProAlert, LLC*, 314 B.R. 436, 441 (B.A.P. 9th Cir. 2004).  Rather, as articulated by the United States Supreme Court, a

9

secured creditor is entitled to adequate protection only from a post-petition decline in value of

its collateral, as of the petition date.  *See In re Timbers of Inwood Forest*, 484 U.S. 365, 370

(1988).

The Debtor requires the use of cash collateral to pay necessary operating expenses and

the costs of administering this Case.  The Debtor is proposing to use cash collateral in

accordance with the Budget and on the same terms as previously agreed to with PNC and

approved by the Court.  The expenses that the Debtor seeks authority to pay are those

necessary to operate the business, *i.e.*, payroll, equipment maintenance, fuel, union dues,

insurance, payments on account of operating and capital leases, expenses for personnel in the

field, and other key operating costs due over the next nineteen weeks and through the

Confirmation Hearing.  The Debtor's proposed use of cash collateral is necessary to preserve

the value of the Debtor's estate for the benefit of all creditors.

A.       **The Proposed Use of Cash Collateral Will Not Cause a Decline in the Value**
          **of the Cash Collateral**

Secured creditors are adequately protected where income is being generated and the

used cash is replaced by new revenues from operations.  For example, as stated by one

bankruptcy court:

> With regards to rents, a court must look to the stream of future rents
> to determine whether adequate protection is required.  This is because
> the lien on each month's rents replaces the lien on the prior month's
> rents, so there is a replacement lien of equal value under Section 361
> of the Bankruptcy Code.  Therefore, as long as the debtor generates a
> continuous income stream, the debtor's use of the rental income does
> not diminish the value of the collateral.  The rationale is that the
> protected cash proceeds are being used to generate new collateral
> which will be of at least equivalent value of those replaced.
> Accordingly, if the underlying collateral is not declining in value, the
> additional cash collateral may be used by the debtor to pay
> administrative expenses as well as to maintain and improve the
> underlying collateral.

*In re Wrecclesham Grange, Inc.*, 221 B.R. 978, 981 (Bankr. M.D. Fla. 1997) (citations

omitted); *see also In re Ledgemere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990)

(stating that a secured creditor is adequately protected so long as receivables being collected

MOTION FOR ENTRY OF ORDER
AUTHORIZING CONTINUED USE OF CASH COLLATERAL

and used by debtor are being replaced by sufficient new receivables in which creditor is granted a security interest).

Here, the proposed use of cash collateral will not cause a decline in the value of any interests in such cash collateral. As of the Petition Date, the Debtor had approximately $4,238,515 on hand and is projected to have $5,112,430 on hand at the end of the Budget. (*See* Ex. 1.)  The Debtor seeks to use cash collateral to pay only those expenses necessary to operate the Debtor's business in the ordinary course, to fund the costs of this Case, and to make significant payments to PNC, equipment lenders, and equipment lessors. The Budget is reasonable based on the Debtor's actual income and expenses post-petition. The Debtor's projected revenues and expenses are based on the Debtor's recent historical trends adjusted based on management's expectations regarding future operations. (*See* Weiss Decl. at ¶ 4.) Moreover, as demonstrated by the variance report, the Debtor has generally remained on budget or has performed better than budgeted during this Case. (*See* Ex. 3.)

The value of PNC's interest in cash will not decline by the proposed use of cash collateral. PNC is being granted a replacement lien on the Debtor's post-petition revenues. As stated above, the Debtor is projected to end the budgeted period with more cash than it had as of the Petition Date. This is so notwithstanding the fact that the Debtor will pay PNC the collective sum of $1,400,000 during the term covered by the Budget. Moreover, the Debtor's positive operational performance to date is projected to continue. Over the next nineteen weeks, the Debtor is projected to generate cumulative positive cash flow from operations of $556,358. This positive cash flow includes the projected receipts from a new customer secured by the Debtor post-petition. (*See* Weiss Decl. at ¶ 5.)

While the Debtor's cash balance is projected to decline during the proposed cash collateral period, such decline is due, in large part, to a few extraordinary expenses. The Debtor is projecting payments on account of insurance totaling $1,669,378. (*See* Ex. 1.)  This amount includes insurance payments that were in the Prior Budget and were not required to be made. (*See* Ex. 3, reflecting a $1,232,813 positive variance). The Debtor is proposing to make

significant payments to PNC, equipment lenders, and equipment lessors in the collective

amount of $3,437,123.  The amounts to be paid to certain secured creditors have increased

based on the Debtor's post-petition negotiations with such secured creditors.  (*See* Weiss Decl.

at ¶ 3.)  Moreover, these payments are not redressing some diminution in value, but, instead,

will reduce the balances owed, resulting in a net benefit to the estate.  The Debtor is also

projecting payments on account of professional's fees (if and to the extent allowed by the

Court).  In addition to these expenses, the Debtor is awaiting approximately $700,000 on

account of work for FEMA, reflecting a 10% retention that is due to be paid.

However, even with the payments to secured creditors and on account of allowed

professional fees, the Debtor's cash on hand will remain above the amount as of the Petition

Date, which is the test for diminution.  The value of any interest in cash collateral as of the

Petition Date is not projected to decline over the proposed cash-collateral period.  Because

there is no decline, any creditors asserting an interest in the Debtor's cash as of the Petition

Date are adequately protected.

**B.**    **Entities Holding an Interest in the Debtor's Cash Are Adequately**
         **Protected**

Secured creditors are adequately protected by the use of cash collateral to continue the

operation of the debtor's business.  *See, e.g.*, *In re Glasstream Boats, Inc.*, 110 B.R. 611, 612

(M.D. Ga. 1990) (stating that it was in best interest of both debtor and creditor that debtor

"continue in its operation as a manufacturing facility" and that "denial of this motion would

result in another shut down of the assembly line, which the court doesn't feel is in the best

interest of either party"); *In re Cann & Saul Steel Co.*, 76 B.R. 479, 483 (E.D. Pa.

1987) (stating that continued operation of manufacturer debtor was in best interest of secured

creditor in that it was likely that secured creditor would realize more funds than it would by

requiring the debtor to cease operations); *In re Stein*, 19 B.R. 458, 460 (Bankr. E.D. Pa.

1982) (finding that use of cash collateral was necessary to continued operations of debtor, and

that creditor's "secured position can only be enhanced by the continued operation of the

[debtor's business]"); *In re Pine Lake Village Apartment Co.*, 16 B.R. 750, 756 (Bankr. S.D.N.Y. 1982) (permitting debtor to use cash collateral generated from rental income to preserve value of real property which also secured creditor's claim); *In re 499 W. Warren Street Assoc., Ltd. P'ship*, 142 B.R. 53, 56 (Bankr. N.D.N.Y. 1992) ("A secured creditor's interest in the collateral itself is adequately protected when a portion of the rents are applied to its operation and maintenance."); *In re Karl A. Neise, Inc.*, 16 B.R. 600, 602 (Bankr. S.D. Fla. 1981) (holding that a marginally secured creditor is adequately protected by lien in post-petition property acquired by debtors; debtors can use cash collateral "in the normal operation of their business").

The proposed use of cash collateral will enable the Debtor to continue to operate its business and preserve its value as a going concern.  The Debtor seeks to use cash collateral to pay necessary expenses to continue the operation of its business without interruption.  The operation of the Debtor's business protects PNC and all creditors by maximizing the value of the Debtor, its operations, and assets as a whole as a going concern.  The Debtor has performed well to date and has increased the value of the estate.  (*See, e.g.*, Ex. 3.)  As evidenced by the Budget, continued operation of the Debtor's business will generate additional revenues and preserve the value of cash collateral and of the Debtor's overall business.  (*See* Ex. 1.)  In contrast, the cessation of the Debtor's business would cause the loss of revenues and a decline in the value of the Debtor's business.

## VI.    RESERVATION OF RIGHTS

Nothing contained herein shall operate as a waiver of any of the Debtor's claims, rights, objections, or remedies as to any party or claim.  Without limiting the foregoing, the Debtor reserves the right to seek to modify the relief requested herein as may be necessary to facilitate the case and the Debtor's operations, or as may otherwise be necessary to comply with the requirements of any order entered in this case.  Moreover, nothing contained herein, the Budget, or any actions taken pursuant to such relief requested is intended or shall be construed

MOTION FOR ENTRY OF ORDER
AUTHORIZING CONTINUED USE OF CASH COLLATERAL

as: (i) an admission as to the validity, priority, or enforceability of any claim against the

Debtor or lien against the Debtor's property, (ii) a waiver of the Debtor's rights to dispute any

claim on any grounds, (iii) a promise to pay any claim; or (iv) an approval or assumption of

any agreement, contract, or lease under § 365 of the Bankruptcy Code (or otherwise affect the

Debtor's rights under § 365 of the Bankruptcy Code to assume or reject any executory contract

with any party).  Likewise, if this Court grants the relief sought herein, any payment made

pursuant to the Court's order is not intended and should not be construed as an admission to the

validity of any claim or a waiver of the Debtor's rights to dispute such claim subsequently.

Finally, the relief requested herein shall not oblige the Debtor to accept any services.

## VII.    CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter an order granting

the relief requested herein, and such other and further relief as is just and proper.


Dated:  September 24, 2025                    **RAINES FELDMAN LITTRELL LLP**

                                             By:    _/s/ Robert S. Marticello_
                                                    ROBERT S. MARTICELLO
                                                    MICHAEL L. SIMON
                                                    Counsel for Debtor and Debtor-in-Possession

## DECLARATION OF BRIAN WEISS

I, Brian Weiss, declare as follows:

1.      I am a co-founder and partner of Force Ten Partners, LLC ("**Force 10**") and the Chief Restructuring Officer of The Original Mowbray's Tree Service, Inc., the debtor and debtor-in-possession in the above-captioned case (the "**Debtor**").  I know each of the following facts to be true of my own personal knowledge, except as otherwise stated and, if called as a witness, I could and would competently testify with respect thereto.  I make this declaration in support of the *Motion for Entry of Order Authorizing Continued Use of Cash Collateral* (the "**Motion**").  Unless otherwise defined in this declaration, all terms defined in the Motion are incorporated herein by this reference.

2.      The budget attached to the Motion as **Exhibit 1** (the "**Budget**") was prepared by Ruben Sainos, the Debtor's CFO, with the assistance of myself and others at Force 10 under my supervision and at my direction.  I believe the Budget is reasonable based on the Debtor's actual recent pre-petition income and expenses.  The Budget includes those expenses necessary to operate over the next 19-week period, such as payroll, equipment maintenance, fuel, union dues, insurance, payments on account of capital and operating leases, and other operating costs, payments to PNC Bank, equipment lenders, and equipment lessors, and the costs to fund this case.

3.      The Budget contemplates significant payments to PNC, equipment lenders, and equipment lessors.  Certain of such proposed payments have been increased in the Budget (from prior budgets) based on the Debtor's post-petition negotiations with the secured creditors.

4.      The Debtor's projected receipts and expenses are based on its recent historical trends adjusted based on the expectations of the Debtor's management.  As set forth in the Budget, the Debtor projects an ending cash balance over such nineteen-week period of $5,112,430 (including after payments to secured creditors and allowed restructuring costs), an

MOTION FOR ENTRY OF ORDER
AUTHORIZING CONTINUED USE OF CASH COLLATERAL

amount in excess of the Debtor's $4,238,515 cash balance as of the October 18, 2024, petition date (the **"Petition Date"**).

5.      This positive cash flow includes the projected receipts from a new customer secured by the Debtor post-petition.

6.      In my opinion, the use of cash collateral will enable the Debtor to continue to operate and preserve its value as a going concern, generate additional revenue, and preserve the value of any interest in cash collateral as of the Petition Date over the 19-week period in the Budget.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 24th day of September, 2025

BRIAN WEISS

MOTION FOR ENTRY OF ORDER
AUTHORIZING CONTINUED USE OF CASH COLLATERAL

### DECLARATION OF RUBEN SAINOS

I, Ruben Sainos, declare as follows:

1.      I am the Chief Financial Officer (the "**CFO**") of The Original Mowbray's Tree Service, Inc., the debtor and debtor-in-possession in the above-captioned case (the "**Debtor**") and have served in such capacity since October 2023.  I know each of the following facts to be true of my own personal knowledge, except as otherwise stated and, if called as a witness, I could and would competently testify with respect thereto.  I make this declaration in support of the *Motion for Entry of Order Authorizing Continued Use of Cash Collateral* (the "**Motion**").  Unless otherwise defined in this declaration, all terms defined in the Motion are incorporated herein by this reference.

2.      I prepared the budget attached to the Motion as **Exhibit 1** (the "**Budget**") with the assistance of the Debtor's CRO and others at Force Ten Partners, LLC.  In my opinion, the Budget is reasonable based on the Debtor's actual recent income and expenses.  The Debtor's projected revenues are based on the Debtor's recent historical trends adjusted based on the expectations of the Debtor's management.  The Debtor's projected expenses are similarly based on the Debtor's recent historical expense trends and future expected costs.  As set forth in the Budget, the Debtor projects an ending cash balance over such nineteen-week period of $5,112,430 (including after restructuring costs), an amount in excess of the Debtor's $4,238,515 cash balance as of the October 18, 2024, petition date.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 24th day of September, 2025

*RUBEN SAINOS*

RUBEN SAINOS

MOTION FOR ENTRY OF ORDER
AUTHORIZING CONTINUED USE OF CASH COLLATERAL

# EXHIBIT 1

| The Original Mowbray's Tree Service Inc. Weekly Cash Flow Week Ending | 1 Ended 10/24/25 | 2 Ended 10/31/25 | 3 Ended 11/7/25 | 4 Ended 11/14/25 | 5 Ended 11/21/25 | 6 Ended 11/28/25 | 7 Ended 12/5/25 | 8 Ended 12/12/25 | 9 Ended 12/19/25 | 10 Ended 12/26/25 | 11 Ended 1/2/26 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Operating Receipts** | | | | | | | | | | | |
| Collections | 132,245 | 132,245 | 319,000 | 136,000 | 136,000 | 136,000 | 319,000 | 136,000 | 136,000 | 136,000 | 319,000 |
| Pino/Phx Mgmt. Fees / Lease | 184,750 | 184,750 | 199,750 | 199,750 | 199,750 | 199,750 | 199,750 | 199,750 | 199,750 | 199,750 | 199,750 |
| Pino/Phx Line of Credit | 61,250 | 61,250 | 61,250 | 61,250 | 61,250 | 61,250 | 61,250 | 61,250 | 61,250 | 61,250 | 61,250 |
| **Total Receipts** | **378,245** | **378,245** | **580,000** | **397,000** | **397,000** | **397,000** | **580,000** | **397,000** | **397,000** | **397,000** | **580,000** |
| **Operating Disbursements** | | | | | | | | | | | |
| Salaries & Wages | 148,934 | 148,937 | 158,910 | 158,912 | 158,914 | 158,917 | 158,909 | 158,904 | 124,406 | 124,408 | 124,410 |
| Health Insurance | 84,955 | - | - | - | - | 84,955 | - | - | - | 84,955 | - |
| Worker's Comp | 41,326 | - | - | 47,990 | - | - | - | 43,988 | - | - | - |
| Union Dues | 38,000 | - | - | 38,000 | - | - | - | 38,000 | - | - | - |
| Occupancy | - | - | 6,011 | - | - | - | 6,011 | - | - | - | 6,011 |
| Insurance | - | 113,263 | - | - | - | 79,849 | - | 374,000 | - | 543,599 | - |
| Utilities | 5,276 | 4,515 | 11,895 | 3,220 | 3,462 | 3,462 | 11,895 | 3,220 | 3,462 | 3,462 | 11,895 |
| Repair and Maintenance | 14,861 | 11,061 | 5,900 | 5,700 | 5,900 | 5,900 | 5,900 | 5,700 | 5,700 | 9,500 | 5,900 |
| Office Supplies | 5,903 | 5,869 | 5,977 | 6,076 | 6,094 | 6,125 | 6,156 | 6,268 | 6,286 | 6,193 | 6,012 |
| Vehicles Expenses | 33,200 | 42,238 | 48,181 | 48,195 | 48,163 | 48,175 | 38,188 | 38,202 | 32,917 | 32,879 | 32,892 |
| OC Professionals | 3,841 | 6,601 | 3,966 | 3,652 | 3,698 | 6,448 | 3,802 | 3,859 | 3,920 | 6,686 | 4,057 |
| Tools and Supplies | 40,218 | 40,276 | 50,126 | 50,178 | 50,226 | 49,986 | 40,040 | 40,085 | 40,133 | 40,177 | 40,231 |
| Property Taxes | - | - | - | - | - | - | 8,000 | - | - | - | - |
| Bank Expenses | - | 1,650 | - | - | - | 1,650 | - | - | - | 1,650 | - |
| Other | 32,939 | 11,993 | 87,049 | 12,108 | 11,442 | 11,192 | 11,213 | 86,235 | 11,258 | 11,283 | 11,308 |
| **Total Operating Disbursements** | **449,454** | **386,403** | **378,015** | **374,031** | **291,501** | **456,661** | **290,115** | **798,461** | **228,083** | **864,792** | **242,716** |
| **Operating Cash Flow** | **(71,208)** | **(8,158)** | **201,985** | **22,969** | **105,499** | **(59,661)** | **289,885** | **(401,461)** | **168,917** | **(467,792)** | **337,284** |
| **Cumulative Operating Cash Flow** | **(71,208)** | **(79,366)** | **122,619** | **145,588** | **251,087** | **191,426** | **481,311** | **79,850** | **248,767** | **(219,025)** | **118,259** |
| **Financing** | | | | | | | | | | | |
| PNC Adequate Protection / Principal Payments | - | 350,000 | - | - | - | - | 350,000 | - | - | - | 350,000 |
| Equipment Loans | - | - | 489,517 | 19,764 | - | - | 489,517 | 19,764 | - | - | 489,517 |
| **Total Financing** | **-** | **350,000** | **489,517** | **19,764** | **-** | **-** | **839,517** | **19,764** | **-** | **-** | **839,517** |
| **Cash Flow After Financing** | **(71,208)** | **(358,158)** | **(287,532)** | **3,205** | **105,499** | **(59,661)** | **(549,631)** | **(421,225)** | **168,917** | **(467,792)** | **(502,232)** |
| **Cumulative Cash Flow After Financing** | | | | | | | | | | | |
| **Restructuring Disbursements** | | | | | | | | | | | |
| Force Ten Partners (CRO) | - | - | 100,000 | - | - | - | 100,000 | - | - | - | 100,000 |
| Raines Feldman (Debtor's Counsel) | - | - | 75,000 | - | 300,000 | - | 75,000 | - | 75,000 | - | 75,000 |
| Grobstein Teeple | - | - | 10,000 | - | 40,000 | - | 10,000 | - | - | - | 10,000 |
| Examiner Fees | - | - | - | - | 250,000 | - | - | - | - | - | - |
| United States Trustee | 70,372 | - | - | - | - | - | - | - | - | - | - |
| **Total Restructuring Disbursements** | **70,372** | **-** | **185,000** | **-** | **590,000** | **-** | **185,000** | **-** | **75,000** | **-** | **185,000** |
| **Beginning Cash Balance** | 9,461,444 | 9,319,864 | 8,961,706 | 8,489,174 | 8,492,379 | 8,007,879 | 7,948,218 | 7,213,587 | 6,792,361 | 6,886,278 | 6,418,486 |
| Net Change in Cash | (141,580) | (358,158) | (472,532) | 3,205 | (484,501) | (59,661) | (734,631) | (421,225) | 93,917 | (467,792) | (687,232) |
| **Ending Cash Balance** | **9,319,864** | **8,961,706** | **8,489,174** | **8,492,379** | **8,007,879** | **7,948,218** | **7,213,587** | **6,792,361** | **6,886,278** | **6,418,486** | **5,731,254** |

| The Original Mowbray's Tree Service Inc. | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Weekly Cash Flow | Ended | Ended | Ended | Ended | Ended | Ended | Ended | Ended | Ended | Ended | Ended |
| Week Ending | 10/24/25 | 10/31/25 | 11/7/25 | 11/14/25 | 11/21/25 | 11/28/25 | 12/5/25 | 12/12/25 | 12/19/25 | 12/26/25 | 1/2/26 |
| *Collateral Package* | | | | | | | | | | | |
| Cash | 9,319,864 | 8,961,706 | 8,489,174 | 8,492,379 | 8,007,879 | 7,948,218 | 7,213,587 | 6,792,361 | 6,886,278 | 6,418,486 | 5,731,254 |
| Accounts Receivable | 3,965,923 | 4,645,073 | 4,445,323 | 4,245,573 | 4,045,823 | 4,709,973 | 4,510,223 | 4,310,473 | 4,110,723 | 4,774,873 | 4,575,123 |
| FF&E (Net Book Value) | 334,343 | 334,343 | 334,343 | 334,343 | 334,343 | 334,343 | 334,343 | 334,343 | 334,343 | 334,343 | 334,343 |
| Pledged Allen Street Property (net, non debtor) | 1,762,500 | 1,762,500 | 1,762,500 | 1,762,500 | 1,762,500 | 1,762,500 | 1,762,500 | 1,762,500 | 1,762,500 | 1,762,500 | 1,762,500 |
| Pledged Sacramento Property (net, non debtor) | 1,500,000 | 1,500,000 | 1,500,000 | 1,500,000 | 1,500,000 | 1,500,000 | 1,500,000 | 1,500,000 | 1,500,000 | 1,500,000 | 1,500,000 |
| **Total Collateral** | 16,882,630 | 17,203,623 | 16,531,341 | 16,334,796 | 15,650,545 | 16,255,034 | 15,320,653 | 14,699,678 | 14,593,844 | 14,790,203 | 13,903,220 |
| *PNC Debt* | | | | | | | | | | | |
| Beginning | 5,118,225 | 5,118,225 | 4,822,898 | 4,822,898 | 4,822,898 | 4,822,898 | 4,822,898 | 4,525,265 | 4,525,265 | 4,525,265 | 4,525,265 |
| (+) Estimated Accrual for Fees and Interest | - | 54,673 | - | - | - | - | 52,367 | - | - | - | 50,043 |
| (-) Adequate Protection / Principal Payments | - | (350,000) | - | - | - | - | (350,000) | - | - | - | (350,000) |
| **Ending Balance** | 5,118,225 | 4,822,898 | 4,822,898 | 4,822,898 | 4,822,898 | 4,822,898 | 4,525,265 | 4,525,265 | 4,525,265 | 4,525,265 | 4,225,307 |
| **Equity Cushion (Deficiency)** | 3.30x | 3.57x | 3.43x | 3.39x | 3.25x | 3.37x | 3.39x | 3.25x | 3.22x | 3.27x | 3.29x |
| **Equity Cushion (Deficiency) in $** | 11,764,405 | 12,380,725 | 11,708,443 | 11,511,898 | 10,827,647 | 11,432,137 | 10,795,388 | 10,174,413 | 10,068,580 | 10,264,938 | 9,677,913 |
| *Accounts Receivable Roll Forward* | | | | | | | | | | | |
| **Accounts Receivable - Beginning Balance** | 4,150,673 | 3,965,923 | 4,645,073 | 4,445,323 | 4,245,573 | 4,045,823 | 4,709,973 | 4,510,223 | 4,310,473 | 4,110,723 | 4,774,873 |
| (+) Sales - Tree Services | 132,245 | 132,245 | 319,000 | 136,000 | 136,000 | 136,000 | 319,000 | 136,000 | 136,000 | 136,000 | 319,000 |
| (+) Sales - Pino/Phx Mgmt. Fees, Interest Income, Leases | - | 863,900 | - | - | - | 863,900 | - | - | - | 863,900 | - |
| (-) Collections - Tree Services | (132,245) | (132,245) | (319,000) | (136,000) | (136,000) | (136,000) | (319,000) | (136,000) | (136,000) | (136,000) | (319,000) |
| (-) Collections - Pino/Phx Mgmt. Fees, Interest Income, Leases | (184,750) | (184,750) | (199,750) | (199,750) | (199,750) | (199,750) | (199,750) | (199,750) | (199,750) | (199,750) | (199,750) |
| **Accounts Receivable - Ending Balance** | 3,965,923 | 4,645,073 | 4,445,323 | 4,245,573 | 4,045,823 | 4,709,973 | 4,510,223 | 4,310,473 | 4,110,723 | 4,774,873 | 4,575,123 |

| The Original Mowbray's Tree Service Inc. Weekly Cash Flow Week Ending | 12 Ended 1/9/26 | 13 Ended 1/16/26 | 14 Ended 1/23/26 | 15 Ended 1/30/26 | 16 Ended 2/6/26 | 17 Ended 2/13/26 | 18 Ended 2/20/26 | 19 Ended 2/27/26 | 19 Week Total |
|---|---|---|---|---|---|---|---|---|---|
| *Operating Receipts* | | | | | | | | | |
| Collections | 136,000 | 136,000 | 219,000 | 136,000 | 136,000 | 136,000 | 136,000 | 136,000 | 3,208,491 |
| Pino/Phx Mgmt. Fees / Lease | 199,750 | 199,750 | 199,750 | 199,750 | 199,750 | 199,750 | 199,750 | 199,750 | 3,765,250 |
| Pino/Phx Line of Credit | 61,250 | 61,250 | 61,250 | 61,250 | 61,250 | 61,250 | 61,250 | 61,250 | 1,163,750 |
| **Total Receipts** | **397,000** | **397,000** | **480,000** | **397,000** | **397,000** | **397,000** | **397,000** | **397,000** | **8,137,491** |
| | | | | | | | | | |
| *Operating Disbursements* | | | | | | | | | |
| Salaries & Wages | 124,410 | 124,411 | 124,411 | 124,411 | 124,411 | 124,410 | 124,410 | 124,410 | 2,619,844 |
| Health Insurance | - | - | - | 84,955 | - | - | - | 84,955 | 424,775 |
| Worker's Comp | - | 39,158 | - | - | - | 42,910 | - | - | 215,372 |
| Union Dues | - | 38,000 | - | - | - | 38,000 | - | - | 190,000 |
| Occupancy | - | - | - | - | 6,011 | - | - | - | 24,044 |
| Insurance | - | 103,790 | - | 175,543 | - | 103,790 | - | 175,543 | 1,669,378 |
| Utilities | 3,220 | 3,462 | 3,462 | 3,220 | 11,895 | 3,220 | 3,462 | 3,462 | 101,170 |
| Repair and Maintenance | 5,900 | 5,700 | 5,700 | 9,500 | 5,900 | 5,900 | 5,700 | 9,500 | 139,422 |
| Office Supplies | 6,031 | 6,051 | 6,068 | 6,079 | 6,092 | 21,108 | 6,117 | 6,120 | 130,626 |
| Vehicles Expenses | 32,894 | 32,895 | 32,894 | 32,893 | 32,896 | 32,898 | 32,899 | 32,899 | 706,400 |
| OC Professionals | 2,007 | 1,945 | 1,869 | 4,575 | 60,878 | 1,876 | 1,869 | 4,585 | 130,135 |
| Tools and Supplies | 40,227 | 40,217 | 40,202 | 40,180 | 40,177 | 40,170 | 40,172 | 40,170 | 803,194 |
| Property Taxes | - | - | - | - | - | - | - | - | 8,000 |
| Bank Expenses | - | - | - | 1,650 | - | - | - | 1,650 | 8,250 |
| Other | 11,334 | 32,361 | 11,390 | 11,419 | 11,450 | 11,482 | 11,516 | 11,551 | 410,523 |
| **Total Operating Disbursements** | **226,023** | **427,990** | **225,996** | **494,426** | **299,710** | **425,764** | **226,146** | **494,846** | **7,581,133** |
| **Operating Cash Flow** | **170,977** | **(30,990)** | **254,004** | **(97,426)** | **97,290** | **(28,764)** | **170,854** | **(97,846)** | **556,358** |
| **Cumulative Operating Cash Flow** | **289,237** | **258,246** | **512,251** | **414,824** | **512,115** | **483,350** | **654,204** | **556,358** | **556,358** |
| | | | | | | | | | |
| *Financing* | | | | | | | | | |
| PNC Adequate Protection / Principal Payments | - | - | - | 350,000 | - | - | - | - | 1,400,000 |
| Equipment Loans | 19,764 | - | - | - | 489,517 | 19,764 | - | - | 2,037,123 |
| **Total Financing** | **19,764** | **-** | **-** | **350,000** | **489,517** | **19,764** | **-** | **-** | **3,437,123** |
| **Cash Flow After Financing** | **151,213** | **(30,990)** | **254,004** | **(447,426)** | **(392,226)** | **(48,528)** | **170,854** | **(97,846)** | **(2,880,765)** |
| **Cumulative Cash Flow After Financing** | | | | | | | | | |
| | | | | | | | | | |
| *Restructuring Disbursements* | | | | | | | | | |
| Force Ten Partners (CRO) | - | - | - | - | 100,000 | - | - | - | 400,000 |
| Raines Feldman (Debtor's Counsel) | - | - | - | - | - | - | - | - | 600,000 |
| Grobstein Teeple | - | - | - | - | 10,000 | - | - | - | 80,000 |
| Examiner Fees | - | - | - | - | - | - | - | - | 250,000 |
| United States Trustee | - | - | 67,878 | - | - | - | - | - | 138,250 |
| **Total Restructuring Disbursements** | **-** | **-** | **67,878** | **-** | **110,000** | **-** | **-** | **-** | **1,468,250** |
| | | | | | | | | | |
| Beginning Cash Balance | 5,731,254 | 5,882,467 | 5,851,477 | 6,037,603 | 5,590,176 | 5,087,950 | 5,039,422 | 5,210,276 | 9,461,444 |
| Net Change in Cash | 151,213 | (30,990) | 186,126 | (447,426) | (502,226) | (48,528) | 170,854 | (97,846) | (4,349,015) |
| **Ending Cash Balance** | **5,882,467** | **5,851,477** | **6,037,603** | **5,590,176** | **5,087,950** | **5,039,422** | **5,210,276** | **5,112,430** | **5,112,430** |

| The Original Mowbray's Tree Service Inc. Weekly Cash Flow Week Ending | 12 Ended 1/9/26 | 13 Ended 1/16/26 | 14 Ended 1/23/26 | 15 Ended 1/30/26 | 16 Ended 2/6/26 | 17 Ended 2/13/26 | 18 Ended 2/20/26 | 19 Ended 2/27/26 | 19 Week Total | | Est'd Pet Date | Change |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| *Collateral Package* | | | | | | | | | | | | |
| Cash | 5,882,467 | 5,851,477 | 6,037,603 | 5,590,176 | 5,087,950 | 5,039,422 | 5,210,276 | 5,112,430 | 5,112,430 | | | |
| Accounts Receivable | 4,375,373 | 4,175,623 | 3,975,873 | 4,640,023 | 4,440,273 | 4,240,523 | 4,040,773 | 4,704,923 | 4,704,923 | | | |
| FF&E (Net Book Value) | 334,343 | 334,343 | 334,343 | 334,343 | 334,343 | 334,343 | 334,343 | 334,343 | 334,343 | | | |
| Pledged Allen Street Property (net, non debtor) | 1,762,500 | 1,762,500 | 1,762,500 | 1,762,500 | 1,762,500 | 1,762,500 | 1,762,500 | 1,762,500 | 1,762,500 | | | |
| Pledged Sacramento Property (net, non debtor) | 1,500,000 | 1,500,000 | 1,500,000 | 1,500,000 | 1,500,000 | 1,500,000 | 1,500,000 | 1,500,000 | 1,500,000 | | | |
| **Total Collateral** | 13,854,684 | 13,623,943 | 13,610,319 | 13,827,043 | 13,125,067 | 12,876,788 | 12,847,892 | 13,414,196 | 13,414,196 | | 13,788,450 | (374,254) |
| *PNC Debt* | | | | | | | | | | | | |
| Beginning | 4,225,307 | 4,225,307 | 4,225,307 | 4,225,307 | 3,923,008 | 3,923,008 | 3,923,008 | 3,923,008 | 5,118,225 | | | |
| (+) Estimated Accrual for Fees and Interest | - | - | - | 47,700 | - | - | - | - | 204,783 | | | |
| (-) Adequate Protection / Principal Payments | - | - | - | (350,000) | - | - | - | - | (1,400,000) | | | |
| **Ending Balance** | **4,225,307** | **4,225,307** | **4,225,307** | **3,923,008** | **3,923,008** | **3,923,008** | **3,923,008** | **3,923,008** | **3,923,008** | | **7,041,686** | **(3,118,678)** |
| **Equity Cushion (Deficiency)** | **3.28x** | **3.22x** | **3.22x** | **3.52x** | **3.35x** | **3.28x** | **3.28x** | **3.42x** | **3.42x** | | **1.96x** | **1.46x** |
| **Equity Cushion (Deficiency) in $** | **9,629,376** | **9,398,636** | **9,385,012** | **9,904,035** | **9,202,059** | **8,953,781** | **8,924,884** | **9,491,188** | **9,491,188** | | **6,746,764** | **2,744,424** |
| *Accounts Receivable Roll Forward* | | | | | | | | | | | | |
| **Accounts Receivable - Beginning Balance** | **4,575,123** | **4,375,373** | **4,175,623** | **3,975,873** | **4,640,023** | **4,440,273** | **4,240,523** | **4,040,773** | **4,150,673** | | | |
| (+) Sales - Tree Services | 136,000 | 136,000 | 219,000 | 136,000 | 136,000 | 136,000 | 136,000 | 136,000 | 3,208,491 | | | |
| (+) Sales - Pino/Phx Mgmt. Fees, Interest Income, Leases | - | - | - | 863,900 | - | - | - | 863,900 | 4,319,500 | | | |
| (-) Collections - Tree Services | (136,000) | (136,000) | (219,000) | (136,000) | (136,000) | (136,000) | (136,000) | (136,000) | (3,208,491) | | | |
| (-) Collections - Pino/Phx Mgmt. Fees, Interest Income, Leases | (199,750) | (199,750) | (199,750) | (199,750) | (199,750) | (199,750) | (199,750) | (199,750) | (3,765,250) | | | |
| **Accounts Receivable - Ending Balance** | **4,375,373** | **4,175,623** | **3,975,873** | **4,640,023** | **4,440,273** | **4,240,523** | **4,040,773** | **4,704,923** | **4,704,923** | | | |

# EXHIBIT 2

**RAINES FELDMAN LITTRELL LLP**
Robert S. Marticello, State Bar No. 244256
*rmarticello@raineslaw.com*
Michael L. Simon, State Bar No. 300822
*msimon@raineslaw.com*
4675 MacArthur Ct, Suite 1550
Newport Beach, CA 92660
Telephone:    (310) 440-4100
Facsimile:    (310) 499-4877

Counsel for The Original Mowbray's Tree Service,
Inc., Debtor and Debtor-In-Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>THE ORIGINAL MOWBRAY'S TREE SERVICE, INC., a Delaware corporation,<br><br>          Debtor and Debtor-in-Possession. | Case No.: 8:24-bk-12674-SC<br><br>Chapter: 11<br><br>(Jointly Administered with Case Nos. 8:25-bk-10542-SC and 8:25-bk-10543-SC) |
| In re:<br><br>MOWBRAY WATERMAN PROPERTY, LLC,<br><br>          Debtor and Debtor-in-Possession. | **[PROPOSED] ORDER GRANTING DEBTOR'S MOTION FOR ENTRY OF ORDER AUTHORIZING CONTINUED USE OF CASH COLLATERAL** |
| In re:<br><br>ROBIN ELAINE MOWBRAY,<br><br>          Debtor and Debtor-in-Possession. | <u>**Hearing Information:**</u><br>**Date:**    October 15, 2025<br>**Time:**    1:30 p.m.<br>**Place:**    Courtroom 5C<br>              411 West Fourth Street,<br>              Santa Ana, CA 92701 |
| ☒   Affects THE ORIGINAL MOWBRAY TREE SERVICE, INC.<br><br>☐   Affects MOWBRAY WATERMAN PROPERTY, LLC<br><br>☐   Affects ROBIN ELAINE MOWBRAY<br><br>☐   Affects All Debtors | |

1

1    On October 15, 2025 at 1:30 p.m., a hearing was held on the *Debtor's Motion for Entry*

2    *of Order Authorizing Continued Use of Cash Collateral* (the "**Motion**") filed by The Original

3    Mowbray's Tree Service, Inc., the affected debtor and debtor-in-possession in the above-

4    captioned jointly-administered cases (the "**Debtor**").  Appearances were as noted on the

5    record.  Capitalized terms not expressly defined herein shall have the meanings ascribed to

6    them in the Motion.

7    Having considered the Motion, all papers submitted in support thereof and opposition

8    thereto, the statements and arguments of counsel on the record, and finding that notice and

9    service of the Motion were proper,

10    **IT IS HEREBY ORDERED** that:

11    1.    The Motion is granted.

12    2.    The Debtor is authorized to use cash collateral on a final basis from October 18

13    18, 2025, through and including February 27, 2026 (the "**Cash Collateral Period**") in

14    accordance with the budget attached hereto as **<u>Exhibit 1</u>** (the "**Budget**") pursuant to the terms

15    and conditions of *Stipulation Authorizing Use of Cash Collateral* [Docket No. 255] (the "**First**

16    **Stipulation**"), as modified by the *Stipulation Authorizing Use of Cash Collateral* [Docket No.

17    459] (the "**Second Stipulation**") and the *Stipulation Authorizing Use of Cash Collateral*

18    [Docket No. 531] (the "**Third Stipulation**").

19    3.    The Budget shall be considered a "Budget" as such term is defined in the First

20    Stipulation.

21    ###

22

23

24

25

26

27

28

2

# EXHIBIT 3

| Variance Reporting | Week 8 | Week 8 | Week 8 | Week 8 | Post-Petition Cumulative through Week 8 | | | |
|---|---|---|---|---|---|---|---|---|
| | Actual | Projected | Variance $ | Variance % | Actual | Projected | Variance $ | Variance % |
| Week Ending | 9/12/25 | 9/12/25 | 9/12/25 | 9/12/25 | 9/12/25 | 9/12/25 | 9/12/25 | 9/12/25 |
| *Operating Receipts* | | | | | | | | |
| Collections | 284,089 | 217,000 | 67,089 | 30.9% | 1,601,801 | 1,841,000 | (239,199) | -13.0% |
| Pino/Phx Mgmt. Fees / Lease | 185,000 | 184,750 | 250 | 0.1% | 1,602,135 | 1,478,000 | 124,135 | 8.4% |
| Pino/Phx Line of Credit | 62,500 | 61,250 | 1,250 | 2.0% | 497,500 | 490,000 | 7,500 | 1.5% |
| **Total Receipts** | **531,589** | **463,000** | **68,589** | **14.8%** | **3,701,436** | **3,809,000** | **(107,564)** | **-2.8%** |
| *Operating Disbursements* | | | | | | | | |
| Salaries & Wages | 122,280 | 129,810 | 7,529 | 5.8% | 1,066,934 | 1,100,431 | 33,497 | 3.0% |
| Health Insurance | 134 | - | (134) | 0.0% | 127,838 | 84,955 | (42,883) | -50.5% |
| Worker's Comp | 27,577 | - | (27,577) | 0.0% | (121,594) | 40,942 | 162,536 | 397.0% |
| Union Dues | 31,571 | - | (31,571) | 0.0% | 70,041 | 42,133 | (27,909) | -66.2% |
| Occupancy | - | - | - | 0.0% | 10,499 | 12,022 | 1,524 | 12.7% |
| Insurance | - | - | - | 0.0% | - | 1,232,813 | 1,232,813 | 100.0% |
| Utilities | 242 | 3,072 | 2,829 | 92.1% | 97,404 | 40,043 | (57,361) | -143.2% |
| Repair and Maintenance | 1,850 | 11,061 | 9,211 | 83.3% | 36,020 | 92,689 | 56,670 | 61.1% |
| Office Supplies | 6,745 | 5,322 | (1,423) | -26.7% | 51,267 | 43,388 | (7,879) | -18.2% |
| Vehicles Expenses | 57,821 | 36,073 | (21,747) | -60.3% | 314,588 | 292,258 | (22,330) | -7.6% |
| OC Professionals | - | 6,852 | 6,852 | 100.0% | 8,031 | 63,364 | 55,333 | 87.3% |
| Tools and Supplies | 40,498 | 37,008 | (3,490) | -9.4% | 508,460 | 296,200 | (212,261) | -71.7% |
| Property Taxes | - | - | - | 0.0% | 11,232 | 13,000 | 1,768 | 13.6% |
| Bank Expenses | - | - | - | 0.0% | 2,066 | 3,300 | 1,234 | 37.4% |
| Other | 8,148 | 12,667 | 4,519 | 35.7% | 21,222 | 100,752 | 79,531 | 78.9% |
| **Total Operating Disbursements** | **296,867** | **241,865** | **(55,002)** | **-22.7%** | **2,204,006** | **3,458,291** | **1,254,285** | **36.3%** |
| **Operating Cash Flow** | **234,722** | **221,135** | **13,587** | **6.1%** | **1,497,430** | **350,709** | **1,146,721** | **327.0%** |
| **Cumulative Operating Cash Flow** | | | | | | | | |
| *Financing* | | | | | | | | |
| PNC Adequate Protection | - | - | - | 0.0% | 700,000 | 700,000 | - | 0.0% |
| Equipment Loans | - | - | - | 0.0% | 374,397 | 922,589 | 548,192 | 59.4% |
| **Total Financing** | **-** | **-** | **-** | **0.0%** | **1,074,397** | **1,622,589** | **548,192** | **33.8%** |
| **Cash Flow After Financing** | **234,722** | **221,135** | **13,587** | **6.1%** | **423,033** | **(1,271,880)** | **1,694,913** | **-133.3%** |
| **Cumulative Cash Flow After Financing** | | | | | | | | |
| *Restructuring Disbursements* | | | | | | | | |
| Force Ten Partners (CRO) | 198,000 | - | (198,000) | 0.0% | 350,000 | 350,000 | - | 0.0% |
| Raines Feldman (Debtor's Counsel) | - | - | - | 0.0% | 34,020 | 150,000 | 115,980 | 77.3% |
| Grobstein Teeple | - | - | - | 0.0% | - | 20,000 | 20,000 | 100.0% |
| United States Trustee | - | - | - | 0.0% | 65,090 | 62,452 | (2,637) | -4.2% |
| **Total Restructuring Disbursements** | **198,000** | **-** | **(198,000)** | **0.0%** | **449,110** | **582,452** | **133,343** | **22.9%** |
| Beginning Cash Balance | 9,930,353 | 8,210,024 | 1,720,329 | 21.0% | 9,993,152 | 10,285,492 | (292,340) | -2.8% |
| Net Change in Cash | 36,722 | 221,135 | (184,413) | -83.4% | (26,077) | (1,854,333) | 1,828,256 | -98.6% |
| **Ending Cash Balance** | **9,967,075** | **8,431,159** | **1,535,916** | **18.2%** | **9,967,075** | **8,431,159** | **1,535,916** | **18.2%** |

# EXHIBIT 4

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| RAINES FELDMAN LITTRELL LLP<br>Robert S. Marticello, State Bar No. 244256<br>rmarticello@raineslaw.com<br>Michael L. Simon, State Bar No. 300822<br>msimon@raineslaw.com<br>4675 MacArthur Ct, Suite 1550<br>Newport Beach, CA 92660<br>Telephone: (310) 440-4100<br>Facsimile: (310) 499-4877<br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:* The Original Mowbray's Tree Service | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA -  SANTA ANA DIVISION**

| In re:<br><br>THE ORIGINAL MOWBRAY'S TREE SERVICE, INC., a Delaware corporation<br><br><br><br><br><br>Debtor(s). | CASE NO.:  8:24-bk-12674-SC<br>CHAPTER:  11 |
|---|---|
| | **STATEMENT REGARDING<br>CASH COLLATERAL OR<br>DEBTOR IN POSSESSION FINANCING<br>[FRBP 4001; LBR 4001-2]** |
| | DATE:          10/15/2025<br>TIME:           1:30 p.m.<br>COURTROOM:  5C<br>ADDRESS:      411 West Fourth Street<br>                       Santa Ana, CA 92701 |

| Secured party(ies): PNC Bank |
|---|

The Debtor has requested the approval of either (1) a motion for use of cash collateral, or postpetition financing, or both, or (2) through a separately-filed motion, a stipulation providing for the use of cash collateral, or postpetition financing, or both.  The proposed form of order on the motion or the stipulation contains the following provisions or findings of fact:

| Disclosures Tracking FRBP 4001(c)(1)(B)(i) through (xi) and (d)(1)(B) | Page No.: | Line No. (if applicable) |
|---|---|---|
| ☐ (i): "[A] grant of priority or a lien on property of the estate under § 364(c) or (d)" | | |
| ☐ (ii): "[T]he providing of adequate protection or priority for a claim that arose before the commencement of the case, including the granting of a lien on property of the estate to secure the claim, or the use of property of the estate or credit obtained under § 364 to make cash payments on account of the claim"<br><br>     ☐ Cross-collateralization, *i.e.*, clauses that secure prepetition debt by postpetition assets in which the secured party would not otherwise have a security interest by virtue of its prepetition security agreement or applicable law<br><br>     ☐ Roll-up, *i.e.*, provisions deeming prepetition debt to be postpetition debt or using postpetition loans from a prepetition secured party to pay part or all of that secured party's prepetition debt, other than as provided in § 552(b) | | |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| | | | |
|---|---|---|---|
| *Continued from page 1* | | | |
| | ☐ Grant a replacement lien in an amount in excess of the dollar amount of the lien on cash collateral as of the petition date | | |
| ☐ | (iii): "[A] determination of the validity, enforceability, priority, or amount of a claim that arose before the commencement of the case, or of any lien securing the claim" | | |
| ☐ | (iv): "[A] waiver or modification of Code provisions or applicable rules relating to the automatic stay" | | |
| | ☐ Automatic relief from the automatic stay upon occurrence of certain events. | | |
| ☐ | (v): "[A] waiver or modification of any entity's authority or right to file a plan, seek an extension of time in which the debtor has the exclusive right to file a plan, request the use of cash collateral under § 363(c), or request authority to obtain credit under § 364" | | |
| ☐ | (vi): "[T]he establishment of deadlines for filing a plan of reorganization, for approval of a disclosure statement, for a hearing on confirmation, or for entry of a confirmation order" | | |
| ☐ | (vii): "[A] waiver or modification of the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate, or on the foreclosure or other enforcement of the lien" | | |
| ☐ | (viii): "[A] release, waiver, or limitation on any claim or other cause of action belonging to the estate or the trustee, including any modification of the statute of limitations or other deadline to commence an action" | | |
| ☐ | (ix): "[T]he indemnification of any entity" | | |
| ☐ | (x): "[A] release, waiver, or limitation of any right under § 506(c)" | | |
| | ☐ The granting of any lien on any claim or cause of action arising under § 506(c) | | |
| ☐ | (xi): "The granting of any lien on any claim or cause of action arising under §§ 544, 545, 547, 548, 549, 553(b), 723(a), or 724(a)" | | |
| **Additional Disclosures Required by LBR 4001-2** | | Page No.: | Line No. (if applicable) |
| ☐ | With respect to a professional fee carve out, disparate treatment for professionals retained by a creditors' committee from that provided for the professionals retained by the debtor | | |
| ☐ | Pay down prepetition principal owed to a creditor | | |
| ☐ | Findings of fact on matters extraneous to the approval process | | |

| | | |
|---|---|---|
| <u>09/24/2025</u> | <u>Robert S. Marticello</u> | <u>/s/ Robert S. Marticello</u> |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:


A true and correct copy of the foregoing document entitled: **STATEMENTREGARDING CASH COLLATERAL OR DEBTOR IN POSSESSION FINANCING [FRBP 4001; LBR 4001-2]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____  _____  _____
*Date*                    *Printed Name*                                      *Signature*

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
4675 MacArthur Court, Suite 1550, Newport Beach, California 92660

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S MOTION FOR ENTRY OF ORDER AUTHORIZING CONTINUED USE OF CASH COLLATERAL; MEMORANDUM OF POINTS AND AUTHORITIES; AND DELCARATIONS OF BRIAN WEISS AND RUBEN SAINOS IN SUPPORT**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **September 24, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **September 24, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**Personal Delvery**
Hon. Scott C. Clarkson
U.S. Bankruptcy Court
Ronald Reagan Federal Building
411 West Fourth Street, Suite 5130
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| September 24, 2025 | Connie-Marie Santiago | /s/ Connie-Marie Santiago |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

1.    **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- **Shraddha Bharatia**    notices@becket-lee.com
- **Jeffrey W Broker**    jbroker@brokerlaw.biz
- **Kenneth J Catanzarite**    kcatanzarite@catanzarite.com
- **Lauren N Gans**    lgans@elkinskalt.com, lmasse@elkinskalt.com
- **Jessica L Giannetta**    jessica@giannettalawcorp.com, melanie@giannettaenrico.com
- **Robert P Goe**    rgoe@goeforlaw.com,
  kmurphy@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com
  m
- **Marshall F Goldberg**    mgoldberg@glassgoldberg.com, jbailey@glassgoldberg.com
- **Alan Craig Hochheiser**    ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com
- **Merdaud Jafarnia**    bkca@alaw.net, mjafarnia@ecf.inforuptcy.com
- **Raffi Khatchadourian**    raffi@hemar-rousso.com
- **Valery Loumber**    valloumlegal@gmail.com
- **Michael B Lubic**    michael.lubic@klgates.com,
  jonathan.randolph@klgates.com,klgatesbankruptcy@klgates.com
- **James MacLeod**    jmacleod@dunninglaw.com, nancy@dunninglaw.com
- **Kathleen P March**    kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net
- **Robert S Marticello**    rmarticello@raineslaw.com, bclark@raineslaw.com;csantiago@raineslaw.com
- **David W. Meadows**    david@davidwmeadowslaw.com
- **Karen S. Naylor**    Becky@ringstadlaw.com, Karen@ringstadlaw.com;Arlene@ringstadlaw.com
- **Estela O Pino**    epino@epinolaw.com, staff@epinolaw.com;clerk@epinolaw.com
- **Donald W Reid**    don@donreidlaw.com, 5969661420@filings.docketbird.com
- **Todd C. Ringstad**    becky@ringstadlaw.com, arlene@ringstadlaw.com
- **Amitkumar Sharma**    amit.sharma@aisinfo.com
- **Jeffrey S Shinbrot**    jeffrey@shinbrotfirm.com, sandra@shinbrotfirm.com;tanya@shinbrotfirm.com
- **Thomas E Shuck**    tshuck@pmcos.com, efilings@pmcos.com
- **Michael Simon**    msimon@raineslaw.com, bclark@raineslaw.com;csantiago@raineslaw.com
- **Derek A Simpson**    derek@dsimpsonlegal.com
- **Ahren A Tiller**    ahren.tiller@blc-sd.com, 4436097420@filings.docketbird.com;brett.bodie@blc-
  sd.com;anika@blc-sd.com;derek@blc-sd.com;kreyes@blc-sd.com;megan@blc-sd.com;nicole@blc-
  sd.com;danny@blc-sd.com;angie@blc-sd.com;kreyes@blc-sd.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov
- **Sharon Z. Weiss**    sharon.weiss@bclplaw.com,
  raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com,sharon-weiss-7104@ecf.pacerpro.com
- **Jennifer C Wong**    bknotice@mccarthyholthus.com, jwong@ecf.courtdrive.com
- **Mandy Youngblood**    csbk@gmfinancial.com
- **Roye Zur**    rzur@elkinskalt.com,
  lwageman@elkinskalt.com;1648609420@filings.docketbird.com;rzur@ecf.courtdrive.com;lmasse@elkinskalt.com

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.