1  **RAINES FELDMAN LITTRELL LLP**
   Robert S. Marticello, State Bar No. 244256
2  *rmarticello@raineslaw.com*
   Michael L. Simon, State Bar No. 300822
3  *msimon@raineslaw.com*
   4675 MacArthur Ct, Suite 1550
4  Newport Beach, California 92660
   Telephone:   (310) 440-4100
5  Facsimile:   (310) 499-4877

6  Counsel for The Original Mowbray's Tree
   Service, Inc., Debtor and Debtor-In-Possession
7

8                 **UNITED STATES BANKRUPTCY COURT**

9        **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| | |
|---|---|
| 10  In re: | Case No.: 8:24-bk-12674-SC |
| 11  THE ORIGINAL MOWBRAY'S TREE<br>SERVICE, INC., a Delaware corporation, | Chapter:  11 |
| 12                Debtor and Debtor-in-Possession. | (Jointly Administered with Case Nos.<br>8:25-bk-10542-SC and 8:25-bk-10543-SC) |
| 13 | |
| 14  In re: | **DEBTOR'S MOTION FOR ORDER<br>AUTHORIZING:** |
| 15  MOWBRAY WATERMAN PROPERTY,<br>LLC, | **(1) SALE OF PERSONAL PROPERTY<br>PURSUANT TO 11 U.S.C. §§ 363(b)<br>AND (f); AND** |
| 16                Debtor and Debtor-in-Possession. | |
| 17  In re: | **(2) EMPLOYMENT OF RITCHIE BROS.<br>AUCTIONEERS (AMERICA) INC. AS<br>AUCTIONEER** |
| 18  ROBIN ELAINE MOWBRAY, | |
| 19                Debtor and Debtor-in-Possession. | **[Supporting Declaration and Statement of<br>Disinterestedness of Devin Norris and<br>Declarations of Brian Weiss and Ruben<br>Sainos filed concurrently herewith]** |
| 20  ☒  Affects THE ORIGINAL<br>    MOWBRAY TREE SERVICE, INC. | |
| 21 | |
| 22  ☐  Affects MOWBRAY WATERMAN<br>    PROPERTY, LLC | **[Application for Order Shortening Time filed<br>concurrently herewith]** |
| 23  ☐  Affects ROBIN ELAINE<br>    MOWBRAY | <u>Hearing Information:</u> |
| 24 | **Date:**   To be determined<br>**Time:**   To be deteremined |
| 25  ☐  Affects All Debtors | **Place:**   Courtroom 5C |
| 26 | 411 West Fourth Street,<br>Santa Ana, CA 92701 |
| 27 | |
| 28 | |

1

1  **TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY**

2  **JUDGE:**

3      The Original Mowbray's Tree Service, Inc., the affected debtor and debtor-in-possession in

4  the above-captioned jointly administered cases (the "**Debtor**"), hereby files this *Debtor's Motion for*

5  *Order Authorizing: (1) Sale of Personal Property Pursuant to 11 U.S.C. §§ 363(b) and (f); and (2)*

6  *Employment of Richie Bros. Auctioneers (America) Inc. as Auctioneer* (the "**Motion**").  In support

7  of the Motion, the Debtor submits the following memorandum of points and authorities, the

8  concurrently-filed declaration and statement of disinterestedness of Devin Norris, and the

9  concurrently-filed declarations of Brian Weiss and Ruben Sainos.

10

11  **I.       INTRODUCTION**

12      By this Motion, the Debtor seeks authority to employ Ritchie Bros. Auctioneers (America),

13  Inc. ("**Ritchie Brothers**"), as its auctioneer on the terms and conditions set forth in the agreement

14  attached hereto as **Exhibit 1** (the "**Agreement**") to sell the 109 vehicles and items of equipment

15  described in **Schedule A of Exhibit 1** (collectively, the "**Equipment**") at an online public auction

16  sale.  The Agreement guarantees a gross minimum sale price of $2,615,475 (the "**Guaranteed Sale**

17  **Price**").  At the Guaranteed Sale Price, after deducting Ritchie Brothers's commission, the

18  Agreement guarantees that the Debtor will receive at least **$2,313,475** in sale proceeds (the

19  "**Guaranteed Recovery**" or "**Guaranteed Floor**").  To the extent that the collective auction sale

20  price exceeds the Guaranteed Sale Price, the Debtor will receive 88.75% and Ritchie Brothers will

21  receive 11.75% of such excess sale proceeds.

22      The proposed auction and Agreement are in the best interest of the estate.  The Equipment is

23  no longer needed for the Debtor's ongoing operations.  The auction will expose the Equipment to

24  the market and, through a well-qualified auctioneer, permit the Debtor to maximize the Equipment's

25  value for the benefit of the estate.  Based on a third-party appraisal obtained by the Debtor, the

26  Guaranteed Recovery approximates the $2,371,600 orderly liquidation value of the Equipment after

27  selling costs.

28

MOTION

Accordingly and as further detailed below, the Debtor requests that the Court enter an order approving the employment of Ritchie Brothers as auctioneer and the Agreement, and authorizing the sale of the Equipment on the terms and conditions set forth in the Agreement and below.

II.     **BACKGROUND**

    A.      **General Background**

On October 18, 2024 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") commencing the above-captioned chapter 11 case (the "**Case**"). The Debtor is operating as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

Established in 1972 by Gloria and John Mowbray (the "**Founders**"), the Debtor has been a cornerstone in California for providing vegetation management services for over 50 years. The Debtor began as a modest venture and has grown into a resilient company, dedicated to safeguarding communities and the environment. The Debtor continues to be a family owned and operated business, is a member of WMBE (Women and Minority Business Enterprise), and is committed to providing its client-partners with the safest and most efficient solution to their vegetation management needs.

The services provided by the Debtor include, without limitation, manual and mechanical clearing, integrated vegetation management, storm and emergency, right-of-way maintenance, and high-hazard tree removal and crane services (collectively, "**Vegetation Management Services**"). Tree-trimming around power lines, clearing vegetation to prevent forest fires, removal of debris and charred remains after major wildfires in California, and assisting with damage remediation in response to hurricanes—these are the types of important services that the Debtor provides to the communities in which it serves.

    B.      **The Debtor's Vehicles and Equipment**

The Equipment that the Debtor seeks authority to auction through this Motion is no longer needed for the Debtor's ongoing operations. (*See* Sainos Decl. at ¶ 2; Weiss Decl. at ¶ 3.) During

MOTION

the case, the Debtor obtained an appraisal of certain equipment from Hilco Valuation Services, LLC, that valued the equipment as of December 18, 2024.  Under the appraisal, as of December 18, 2024, the Equipment had an orderly liquidation value of approximately $2,371,600 after selling costs of 12%.  (*See* Weiss Decl. at ¶ 3.)

**III.    PROPOSED AUCTION AND EQUIPMENT SALE**

      **A.    The Equipment to Be Sold**

      Attached hereto as **Exhibit 1, Schedule A** is a list of the Equipment that the Debtor seeks authority to auction and sell through the Motion.

      **B.    Liens**

      Altec Capital Services, LLC ("**Altec**"), asserts a first-priority lien in 29 of the 109 items of Equipment.  PNC Bank, N.A. ("**PNC**"), has a lien secured by all or substantially all of the Debtor's assets.  The Debtor believes that no other creditors assert a lien in the Equipment.

      **C.    The Auction and the Terms of the Agreement**

      The salient terms of the Agreement are described below.  A copy of the Agreement, which fully describes the terms of the auction, is attached hereto as **Exhibit 1**.

      1.    **Sale Date.**  Ritchie Brothers will serve as the auctioneer of the Equipment.  Ritchie Brothers will offer the Equipment for sale at an unreserved public auction on December 18, 2025 (the "**Auction**").

      2.    **Marketing**.  Ritchie Brothers will use commercially reasonably efforts to maximize the sale price of the Equipment at the Auction, including by conducting comprehensive, integrated print and online marketing of the Auction and the Equipment, paid search, and paid social media advertising.  The Equipment will be listed for auction and the marketing process will begin upon entry of an order approving this Motion.

      3.    **The Auction**.  The sale of the Equipment at the Auction will be on an "as is" "where is" basis to the highest bidder with all faults and without representations or warranties expressed or implied and free and clear of all claims and liens as provided by 11 U.S.C. § 363(f).

MOTION

4.    **Guaranteed Sale Price.**  The Agreement guarantees that the Debtor shall receive the Guaranteed Sale Price of $2,615,475 for all of the Equipment, except that Ritchie Brothers will be entitled to deduct the Commission (defined below) from the Guaranteed Sale Price.  The sale is estimated to net at least the Guaranteed Recovery of $2,313,475 in cash to the Debtor (subject to liens and interests attaching to such proceeds, as set forth below).

5.    **Commission and Amounts Received in Excess of Guaranteed Sale Price.**  If and to the extent that the total sale price of the Equipment at the Auction exceeds the Guaranteed Floor of $2,313,475, then Ritchie Brothers shall be entitled to a commission payable at the conclusion of the Auction in the amount of 100% of the proceeds in excess of the Guaranteed Floor up to the Guaranteed Sale Price of $2,615,475 for a commission of $302,000.  If and to the extent that the total sale price of the Equipment at the Auction exceeds the Guaranteed Sale Price of $2,615,475, in addition to the $302,000 commission detailed above, Ritchie Brothers shall be entitled to 11.25% of any proceeds realized from the sale of the Equipment in excess of the Guaranteed Sale Price (collectively with the commission up to $302,000, the "**Commission**").  The Debtor shall be entitled to 88.75% of any proceeds realized from the sale of the Equipment in excess of the Guaranteed Sale Price.

6.    **Auctioneer's Bond**.  Ritchie Brothers has obtained and will maintain an auctioneer's surety bond in the amount of $3,000,000 (the "**Auctioneer's Bond**").  A true and correct copy of the Auctioneer's Bond is attached to hereto as **Exhibit 2**.

7.    **Court Approval.**  The Agreement is subject to this Court's approval.

**D.    Ritchie Brothers Qualifications**

Ritchie Brothers is a full-service auction, liquidation, and asset advisory firm.  Ritchie Brothers is a large auctioneer of commercial assets and vehicles who sells billions of dollars of equipment each year, frequently in the bankruptcy context.  Ritchie Brothers' recent experience includes serving as the debtors' auctioneer and co-sales agent in the *Yellow Corporation* bankruptcy cases in the United States Bankruptcy Court for the District of Delaware, lead case no. 23-11-069

MOTION

(CTG).  Richie Brothers' engagement will be led by Devin Norris, Richie Brothers' National Director, Finance & Insolvency.  (*See* Norris Decl. at ¶ 2.)

## IV.    **LEGAL ANALYSIS**

### A.    **The Debtor May Employ an Auctioneer that Does Not Hold or Represent an Interest Adverse to the Estate**

"Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title."  11 U.S.C. § 327(a).  The Debtor is a debtor-in-possession and, pursuant to 11 U.S.C. § 1107(a), has the rights of a trustee, including the right to seek to employ an auctioneer.

Except as provided herein, to the best of the Debtor's knowledge, and based on the Norris Declaration:

1.    Except as specifically set forth in Norris Declaration attached hereto, Ritchie Brothers does not have any connection with the Debtor, the principals of the Debtor, insiders, creditors, any other party or parties in interest, their respective attorneys and accountants, or any person employed in the Office of the United States Trustee.  (*See* Norris Decl. at ¶¶ 5-6.)

2.    Ritchie Brothers is not a creditor of the Debtor.  Ritchie Brothers is not an equity security holder or an insider of the Debtor.  (*See id.* at ¶ 7.)

3.    Ritchie Brothers is not and was not an investment banker for any outstanding security of the Debtor.  (*See id.* at ¶ 8.)

4.    Ritchie Brothers has not been within three (3) years before the date of the filing of the petition herein, an investment banker for a security of the Debtor, or an auditor/attorney for such an investment banker in connection with the offer, sale or issuance of any security of the Debtor.  (*See id.* at ¶ 9.)

MOTION

5.      Ritchie Brothers is not and was not, within two (2) years before the date of the filing of the petition herein, a director, officer, or employee of the Debtor or of any investment banker for any security of the Debtor.  (*See id.* at ¶ 10.)

6.      Ritchie Brothers does not represent an individual or entity which holds an interest adverse to the Debtor.  (*See id.* at ¶ 5.)

7.      None of Ritchie Brothers' partners, agents, or employees is related to the bankruptcy judge in this Case.  (*See id.* at ¶ 11.)

8.      Ritchie Brothers is disinterested within the meaning of 11 U.S.C. §§ 327(a) and 101(14).  (*See id.* at ¶ 5.)

Ritchie Brothers has obtained an auctioneer's bond in favor of the Debtor for the auction of the Equipment (the "**Auctioneer's Bond**").  The Auctioneer's Bond is in the amount of $3,000,000, which the Debtor believes is sufficient to protect the value of the Equipment until the Auction.  A true and correct copy of the Auctioneer's Bond is attached to hereto as **Exhibit 2.**

**B.      The Debtor May Sell Property of the Estate Pursuant to 11 U.S.C. § 363(b)**

Section 363(b) empowers a debtor-in-possession to "use, sell or lease . . . other than in the ordinary course of business, property of the estate."  *See* 11 U.S.C. §§ 363(b) & 1107(a).  In considering a proposed transaction to use, sell, or lease, courts look at whether the transaction is in the best interests of the estate based on the facts and history of the case.  *See In re America West Airlines,* 166 B.R. 908, 912 (Bankr. D. Ariz. 1994) (citing *In re Lionel Corp.,* 722 F.2d 1063, 1071 (2d Cir. 1983)).  This requires examination of the "business justification" for the proposed sale.  *See In re 240 North Brand Partners, Ltd.,* 200 B.R. 653 (B.A.P. 9th Cir. 1996); *see also In re Wilde Horse Enterprises, Inc.,* 136 B.R. 830 (Bankr. C.D. Cal. 1991); *In re Ernst Home Center, Inc.*, 209 B.R. 974 (Bankr. W.D. Wash. 1997).

In approving any sale outside the ordinary course of business, the court must not only articulate a sufficient business reason for the sale, it must further find it is in the best interest of the estate, *i.e.,* it is fair and reasonable, that it has been given adequate marketing, that it has been negotiated and proposed in good faith, that the purchaser is proceeding in good faith, and that it is an

MOTION

"arms-length" transaction.  *See In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991); *see also In re 240 North Brand Partners, Ltd.,* 200 B.R. 653 (B.A.P. 9th Cir. 1996).  A bankruptcy court's power to authorize a sale under § 363(b) is reviewed for abuse of discretion.  *See In re Walter*, 83 B.R. 14, 19 (B.A.P. 9th Cir. 1988).

Here, the proposed Auction has a legitimate business justification and is in the best interests of the estate.  The Equipment is no longer needed for the Debtor's ongoing operations.  The Auction will expose the Equipment to the market and, through a well-qualified auctioneer, permit the Debtor to maximize the Equipment's value for the benefit of the estate.  Assuming the Motion is granted by November 21st, the Equipment will be marketed for a period of approximately 28 days.  The Debtor understands that this will provide sufficient marketing time to maximize the value of the Equipment.  (*See* Norris Decl. at ¶ 4.)

The proposed Auction will generate at least $2,313,475 in cash for the Debtor.  This amount approximates the orderly liquidation value of the Equipment as of about one year ago pursuant to a third-party appraisal obtained by the Debtor.  (*See* Weiss Decl. at ¶ 3.)  Moreover, the Agreement provides for a sharing of proceeds in excess of the Guaranteed Sale Price of $2,615,475.  The Debtor shall receive 88.75% of any proceeds in excess of the Guaranteed Sale Price of $2,615,475.  Thus, the Auction permits the Debtor to maximize the Equipment's value for the benefit of the estate while protecting the downside by guaranteeing that the Debtor will sell the Equipment approximately at its orderly liquidation value as of about one year ago.  The Debtor also expects that the sale of the Equipment will reduce its insurance costs moving forward, providing further benefit to the estate.

Accordingly, the Debtor requests that the Court authorize, in accordance with the Agreement, the Auction of the Equipment and the payment of the Commission from the sale proceeds.

### C.    Sale of the Equipment Free and Clear of Liens, Claims, and Interests

Pursuant to § 363(f), the Debtor seeks authority to sell the Equipment free and clear of all liens, claims, and interests, with such liens, claims, and interests to attach to the proceeds of the sale

MOTION

received by the Debtor, subjects to any rights and defenses of the Debtor and other parties in

interests with respect thereto.

Section 363(f) provides as follows:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
>
> (1)    Applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2)    Such entity consents;
>
> (3)    Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)    Such interest is in bona fide dispute; or
>
> (5)    Such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f); *see also In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988) (holding that because section 363(f) is written in the disjunctive, court may approve sale "free and clear" provided at least one of the requirements is met).

Because subsections (1) through (5) of § 363(f) are written in the disjunctive, authority to sell the Property free and clear of any and all interests therein should be granted if any of the conditions are met with respect to each interest holder.  *See In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988).

The Ninth Circuit has stated that the availability of a foreclosure sale under state law satisfies § 363(f)(1).  *See Matter of Spanish Peaks Holdings II, LLC*, 872 F.3d 892, 900 (9th Cir. 2017) ("Section 363(f)(1) does not require an actual or anticipated foreclosure sale.  It is satisfied if such a sale would be legally permissible.").  Other courts have held that foreclosure, receivership, and other state law proceedings and sales can satisfy § 363(f)(5).  *See In re Jolan, Inc.*, 403 B.R. 866, 869-70 (Bankr. W.D. Wash. 2009) (identifying foreclosure, receivership, probate, and tax sale proceedings as possible "legal and equitable proceedings by which lienholders may be compelled to accept money satisfactions . . ." pursuant to § 363(f)(5)); *see also In re Bos. Generating, LLC*, 440

MOTION

1    B.R. 302, 333 (Bankr. S.D.N.Y. 2010) (following *Jolan* and stating that "the existence of judicial

2    and nonjudicial foreclosure and enforcement actions under state law can satisfy section 363(f)(5).").

3         A sale free and clear of liens, claims, and interests is necessary to maximize the value of the

4    Equipment.  The Agreement requires that the sale be free and clear of liens, claims, and interests.

5    (*See* Ex. 1 at § 1.02.)  The Debtor expects Altec and PNC to consent to the terms of the sale.  *See* 11

6    U.S.C. § 363(f)(2).  A sale free and clear is particularly appropriate under the circumstances

7    because any lien will attach to the sale proceeds received by the Debtor with the same validity,

8    priority, force, and effect as it had at such time, subject to the rights and defenses of the Debtor or

9    any party in interest.  The Debtor submits that holders of liens, claims, or interests will be

10   adequately protected by the availability of the sale proceeds to satisfy their liens, claims, or

11   interests.

12

13   **V.**    **WAIVER OF THE STAY IS APPROPRIATE**

14        Under the Federal Rules of Bankruptcy Procedure, an order authorizing the sale of property

15   is stayed for 14 days after the entry of the order, unless the court orders otherwise. *See* Fed. R. Bank.

16   P. 6004(h).  The Advisory Committee Note states that the court may, in its discretion, order that the

17   stay in inapplicable so that the sale or assumption may take place immediately upon entry of the

18   order.  *See* Fed. R. Bankr. P. 6004(g) Advisory Committee's Note.

19        Here, the waiver of the stay imposed by Fed. R. Bank. P. 6004(h) is appropriate.  The

20   Auction is scheduled for December 18th.  An order granting the Motion that is effective sooner will

21   add legitimacy to the pre-Auction marketing process.  Accordingly, the Debtor requests that the

22   Court waive the stay imposed by Rule 6004(h).

23

24   **VI.**    **CONCLUSION**

25        Based on the foregoing, the Debtor respectfully requests that this Court enter an order:

26        1.    Authorizing the Debtor to employ Richie Brothers as an auctioneer to sell the

27   Equipment at the Auction pursuant to the Agreement attached as Exhibit 1;

28

MOTION

1      2.      Approving the terms of the Agreement;

2      3.      Authorizing the sale of the Equipment at the Auction as-is, where-is, without

3    representations or warranties, free and clear of any and all liens and interests pursuant to 11 U.S.C.

4    §§ 363(b) and (f);

5      4.      Authorizing the payment of the Commission to Ritchie Brothers without further

6    order of the Court in accordance with the Agreement;

7      5.      Authorizing the Debtor to take any and all necessary action to consummate the sale

8    of the Equipment at the Auction;

9      6.      Waiving any requirements for lodging periods of the order approving this Motion

10    imposed by Local Bankruptcy Rule 9021-1 and any other applicable bankruptcy rules;

11      7.      Waiving the stay imposed by Federal Rule of Bankruptcy Procedure 6004(h) and

12    any other applicable bankruptcy rules; and

13      8.      For such other and further relief as the Court may deem just and proper.

14

15                                    Respectfully submitted,

16    DATED:  November 17, 2025            **RAINES FELDMAN LITTRELL LLP**

17

18                                    By:     */s/ Michael L. Simon*
                                      ROBERT S. MARTICELLO
19                                    MICHAEL L. SIMON
                                      Counsel for The Original Mowbray's Tree Services,
20                                    Inc., the Debtor and Debtor-in-Possession

21

22

23

24

25

26

27

28

MOTION

# EXHIBIT 1



# CONTRACT TO AUCTION
## (CHAPTER 11 – GUARANTEE)

**DATED** this _____ day of _____, 20_____.

**BETWEEN**:

**RITCHIE BROS. AUCTIONEERS (AMERICA) INC**., having its head office at 4000
Pine Lake Road in the City of Lincoln, in the State of Nebraska, 68516.
Web Site: www.rbauction.com

(the **"Auctioneer"**)

OF THE FIRST PART

**AND**:

The Original Mowbray's Tree Services, Inc., the debtor and debtor-in-possession in Case
No. 8:24-bk-12674-SC pending in the United States Bankruptcy Court for the Central
District of California (the "**Court**"), and having a place of business located at 5271
California Ave. Suite 270, Irvine California 92617, Attn: Brian Weiss, CRO c/o Force
Ten Partners, LLC.

Telephone No.            949-357-2368,
E-Mail Address          bweiss@forcetenpartners.com,

(the **"Owner"**)

OF THE SECOND PART

## TERMS AND CONDITIONS OF THIS CONTRACT

### Agreement

The above parties recognize that the Owner is operating as a debtor-in-possession under Chapter
11 of the United States Bankruptcy Code and that this *Contract to Auction* (the "**Contract**") is
subject to the approval of the Court, having jurisdiction over such proceedings.  Notwithstanding
any other provision herein, this Contract shall be null and void, without penalty to either party, if
Court approval of this Contract is not received on or before December 1st, 2025.

For valuable consideration, the above parties enter into this Contract, which sets out their
respective rights, obligations and undertakings regarding the sale by unreserved public auction of
all those items described on Schedule "A" attached hereto (collectively, the "**Equipment**").

US Ch11 Guar R01_14                                                    Initials _____  _____

10657258.1

## SECTION 1: AUCTIONEER'S OBLIGATIONS AND RESPONSIBILITIES

1.01    **Sale Date** – The Auctioneer shall, as agent of the Owner, offer the Equipment, together with any additional items delivered by the Owner to the auction site for sale, in whole or in part, pursuant to a Bankruptcy Court order approving this Contract  (the "**Order**"), at unreserved public auction on or about the 18th day of December, 2025, at the City of Los Angeles, in the State of California (the "**Auction**").

1.02    **The Auction** – The sale of the Equipment at the Auction under this Agreement shall be on an "as is" "where is" basis to the highest bidder with all faults and without representations or warranties expressed or implied and free and clear of all claims and liens as provided by 11 U.S.C. § 363(f).

1.03    **Marketing** – Auctioneer shall use commercially reasonable efforts to maximize the sale price of the Equipment at the Auction, conducting comprehensive, integrated print and online marketing of the auction and assets being sold, including paid search and paid social media advertising.

1.04    **Payment** – The Auctioneer shall make payment to the Owner within twenty-one (21) days after the Auction of the amount due and owing to the Owner under this Contract from monies collected from the sale of the Equipment in accordance with this Contract and after making all deductions permitted under this Contract.  In no event, shall the payment by the Auctioneer to the Owner be less than the Gross Minimum Guarantee (as defined below) minus any commission in accordance with subparagraph 1.06.

1.05    **Guarantee** – The Auctioneer guarantees gross sale proceeds of two million six hundred fifteen thousand four hundred seventy-five dollars ($2,615,475) (the "Gross Minimum Guarantee") from the sale of the Equipment.  From this sum, the Auctioneer shall be entitled to deduct a commission of three hundred two thousand dollars ($302,000).  After such deduction, the Owner shall be entitled to receive minimum guaranteed proceeds of two million three hundred thirteen thousand four hundred seventy-five dollars ($2,313,475) (the "Net Minimum Guarantee"). In the sole event that title documentation for any portion of the Equipment is unavailable to the Auctioneer, and such assets are therefor unable to be sold in the Auction contemplated herein, the Gross Minimum Guarantee shall be reduced by an amount equal to the fair market value of the affected assets, as mutually agreed upon by the Parties acting reasonably. In the event the Parties are unable to reach agreement on such valuation, the fair market value shall be determined by the Court, whose determination shall be final and binding. The Commission shall be recalculated on a proportionate basis to reflect any corresponding reduction in the total guaranteed package value.

1.06    **Commission and Amounts Received In Excess of Guarantee** – Any proceeds realized from the sale of the Equipment in excess of the Gross Minimum Guarantee shall be divided eighty-eight and three-quarters percent (88.75%) to the Owner and eleven and one-quarter percent (11.25%) to the Auctioneer.

1.07    **Other** – The Auctioneer shall (at no cost to Owner):

(a)    allow the Owner access to records concerning the sale of the Equipment at the Auction, excluding the names or contact information of the buyers thereof;

(b)    supervise the preparation and organization of the Auction;

(c)    provide auctioneers and accountants required for an auction of this type;

(d)    ensure on-site food catering services are available to those in attendance at the Auction;

(e)    provide listing catalogs of the lots offered for sale to potential buyers at the Auction; and

(f)    collect and remit State and local sales tax arising upon the sale of the Equipment at the auction.

1.08    **Sale Site** – The Auctioneer shall provide, at no cost to Owner, a suitable site for conduct of the Auction.

1.087   **Auctioneer's Bond** – The Auctioneer has obtained and will maintain in place, for the duration of this Contract, an auctioneer's surety bond in the amount of ($3,000,000). The Auctioneer shall provide evidence of such bond upon request.as necessary to obtain Court approval of this Contract.

## SECTION 2:  OWNER'S REPRESENTATIONS AND WARRANTIES:

2.01    **Title and Condition**

**The Owner represents and warrants that:**

(a)    the Owner is operating under the provisions of Chapter 11 of the Bankruptcy Code, and it will seek an order of the Court authorizing the sale of the Equipment free and clear of any and all liens and interests pursuant to 11 U.S.C. § 363(f);

(b)    the Owner has complied or will comply with all laws, requirements and notices necessary to allow the sale of the Equipment;

(c)    the Equipment is in good operating condition, free of material defects, except as disclosed to the Auctioneer;

(d)    the description of the Equipment is accurately set forth on Schedule "A" attached and in the case of motor vehicle Equipment, such Equipment has never been re-built, salvaged or glidered except as disclosed to the Auctioneer;

(e)    all odometer and hour meters on the Equipment reflect actual mileage or usage unless otherwise disclosed to the Auctioneer on Schedule "A";

(f)    the offering for sale, advertising or selling of the Equipment will not contravene or infringe upon any patent, copyright, trademark, agreement or similar right of any third party; and

(g)    the Owner and its signatories are duly authorized by to enter into this Contract, subject to Court approval.

## SECTION 3:  OWNER'S OBLIGATIONS AND RESPONSIBILITIES:

**3.01**    **Refurbishing** – [Intentionally Deleted]


**3.02**    **Delivery** – The Owner shall deliver the Equipment, at the Owner's cost, to the Auction site on or before the 27th day of November, 2025:

   (a)    in good operating condition, free of material defects except as disclosed to the Auctioneer, with adequate fuel and batteries and starting at the key;

   (b)    free of hazardous materials other than normal operating fuels, oils, and lubricants;

   (c)    in a condition equivalent to or better than its condition when viewed by the Auctioneer's representative on or about the 16th day of October, 2025; and

   (d)    in compliance with all applicable Environmental Protection Agency ("EPA") rules and regulations.

together with all documents evidencing the Owner's title (if and to the extent the Owner owns such Equipment), and/or necessary to transfer title, to the Equipment, properly endorsed (taking into consideration the Order of the Bankruptcy Court authorizing the sale of the Equipment).

The Owner hereby assigns Power of Attorney to the Auctioneer for the sole and limited purpose of executing on the Owner's behalf, all documents required to transfer title to, and permit registration or ownership of, any part of the Equipment by the purchaser thereof consistent with the terms of this Contract.


**3.03**    **Searching and Title Documents** – The Owner:

   (a)    shall conduct searches or use other means available, as deemed necessary by the Owner for the disclosure of liens and encumbrances, and include all such creditors in Court notices seeking authority under 11 U.S.C. § 363 to sell the Equipment; in no case shall the Auctioneer have a duty to conduct such searches, nor be responsible for the results thereof.


**3.04**    **Risk of Loss, Insurance -** The Owner shall:

   (a)    be responsible for loss or damage to the Equipment, other than loss or damage arising as a result of the negligence of the Auctioneer, its agents or employees, until the earliest of:

      i       The Auction sale of such Equipment; and

      ii.     the removal of the Equipment from the Auction site by the applicable purchaser; or

      iii.    receipt by the Owner of all proceeds from the sale of the Equipment.

   (b)    insure the Equipment, to its fair market value against all perils so that in the event of damage to, or destruction of, the Equipment or any part thereof; and

   (c)    upon request, provide Auctioneer with a copy of the insurance certificate, to the satisfaction of the Auctioneer.

US Ch11 Guar R01_14                                        Initials _____  _____


10657258.1

**3.05    Indemnity** – The Owner shall defend, indemnify and save the Auctioneer, its parents, subsidiaries and affiliates, and each of their officers, directors, shareholders, employees, and agents harmless against all claims, demands, suits, actions, causes of action, damages, costs or charges whatsoever arising from:

(a)    any material breach of the representations, warranties or covenants set out herein;

(b)    failure by the Owner to comply with any laws relating to the Owner's right to sell the Equipment, unless such is cured by Owner obtaining an order of the Court permitting the sale of the Equipment;

(c)    hazardous materials associated with the Equipment or contamination resulting from any leakage, spills, or malfunction of the Equipment;

(d)    deficiencies in the provision of documents required for the purpose of titling or registering any part of the Equipment by any purchaser thereof;

(e)    any deficiency in compliance with applicable EPA rules or regulations,

(f)    any negligence, unlawful act, or willful misconduct of the Owner in connection with this Contract; and

(g)    any infringement of a patent, copyright, trademark, agreement or similar right of any third party caused by the offering for sale, advertising or sale of any part of the Equipment.

**3.06    No Buybacks, Unreserved Auction Sale** – The Owner shall not bid, directly or indirectly, nor allow any other person to bid on the Owner's behalf, or for the Owner's benefit, by agency or otherwise, on the Equipment or any part thereof at the Auction;

Owner acknowledges the Auction is unreserved and the Auctioneer shall have no obligation or duty to withdraw the Equipment or any part thereof from the Auction sale or to cancel the Auction.  The Equipment shall be sold to the highest bidder on the date of the Auction.

**3.07    Specific Performance** – The Owner shall not withdraw the Equipment or any part thereof from the Auction sale absent the express written agreement of the parties or if the Court does not approve this Contract.  If the Owner is in breach of this provision, then in addition to any other remedies set out in this Contract, the parties hereto agree:

(a)    the damages to the Auctioneer's business reputation and customer relations are not readily ascertainable;

(b)    available remedies at law are not adequate in the event of breach; and

(c)    the Auctioneer may not be made whole solely by monetary recompense;

therefore, the Auctioneer may elect, at its sole option, to apply for an order for specific performance of this Contract.

**3.08    Other** – The Owner shall:

(a)    comply with all legislation, regulations, or requirements of any authority of competent jurisdiction relating to the sale of the Equipment;

    (b)    be responsible for the payment of any tax or duty whatsoever that may legally be construed as being the responsibility of the Owner; and

    (c)    provide the Auctioneer with copies of the Bankruptcy Court orders: (i) approving the sale of the Equipment pursuant to 11 U.S.C. § 363(f), and (ii) approving this Contract.

**3.09**    <u>**Sale Site**</u> – [Intentionally Deleted]

## <u>SECTION 4:  MUTUAL AGREEMENTS</u>

**4.01**    <u>**Timeliness**</u> – Time is of the essence of this Contract.

**4.02**    <u>**Waiver**</u> – A waiver by either party of any breach of any of the provisions herein shall be limited to such particular instance and shall not operate as a waiver of, or be deemed to waive, any other or future breaches of the same or any other provisions hereof.

**4.03**    <u>**Legal Costs**</u> – Should either party be required to participate in any action or proceeding in respect of this Contract, the prevailing party shall be entitled to recover all costs, including attorney's fees, incurred as a result thereof.

**4.04**    <u>**Prohibition of Pre-Sale**</u> – Neither the Auctioneer nor the Owner shall sell or offer for sale any part of the Equipment prior to the auction without the written permission of the other.

**4.05**    <u>**Default by Owner**</u>:

If:

    (a)    the Owner withdraws or fails to timely deliver the Equipment or any part thereof or any documents required hereunder that cannot be obtained pursuant to an order of the Court and such prevents the sale of such Equipment pursuant to an Order of the Court, or if the Auction sale does not occur as a result of the actions or inaction of the Owner; or

    (b)    the Owner, directly or indirectly, bids or permits another to bid on Owner's behalf or for the Owner's benefit, by agency or otherwise, on the Equipment or any part thereof at the auction; or

    (c)    the Owner's representations and warranties set out in Section 2 hereof are not true, complete and correct in all material respects;

then:

    (d)    the Auctioneer's guarantee of minimum gross proceeds from the sale of the affected Equipment shall be unenforceable at the option of the Auctioneer;

    (e)    commissions shall be payable to the Auctioneer upon demand, based upon the fair market value of any withdrawn or undelivered parts of the Equipment as if they had been sold;

(f)    any advances made by the Auctioneer to the Owner shall become due and repayable immediately; and

(g)    the Owner will upon demand, reimburse the Auctioneer for all reasonable out-of-pocket expenses incurred in preparation for the Auction as to the affected Equipment.

If, as a result of the actions or inactions of the Owner, the Auctioneer's guarantee of minimum gross proceeds from the sale of the Equipment is unenforceable, the commission rate to be paid by the Owner to the Auctioneer shall be ten percent (10%) of the gross proceeds on the Equipment sold at the Auction or, in the case of the Equipment not sold at the Auction, ten percent (10%) of the fair market value of such Equipment.

In the event the Owner is in violation of subparagraph 4.05 (b), in addition to any other rights or remedies the Auctioneer may have under this Contract, the Auctioneer shall, at its sole discretion, have the right to sell or re-sell the Equipment by public or private sale and the Owner shall pay to the Auctioneer as liquidated damages in addition to all other amounts due hereunder, an amount equal to fifteen percent (15%) of the proceeds realized from such sale or resale with the Owner to receive the balance of the proceeds received from such sale.

**4.06**    **Auctioneer's Right to Withdraw From Contract / Rescind Sale** – Notwithstanding any other provisions of this Contract, the Auctioneer shall have the right, at its discretion, to withdraw from this Contract and its obligations hereunder shall be unenforceable by the Owner if the Owner is in material breach of any of its representations or warranties hereunder.

If, pursuant to this section, the Equipment or any part thereof is not sold at the Auction, such Equipment shall be deemed to have been withdrawn by the Owner and the provisions of subparagraph 4.05(d), (e) and (f) shall apply.

**4.07**    **Use of Equipment** – The Owner authorizes the Auctioneer to operate the Equipment for the sole and limited purpose of demonstrating it at the Auction.

**4.08**    **Lots** – The Auctioneer shall divide the Equipment into such lots as it may in its absolute discretion deem desirable for sale at the Auction.  The Auctioneer shall not be liable for any loss or damages claimed in respect of the manner in which the Equipment is divided into lots nor in respect of any failure to divide the Equipment into lots.

**4.09**    **Administrative Fee** – The Owner acknowledges that the Auctioneer may charge purchasers an administrative fee based on the selling price of each lot.

**4.10**    **Collection of Proceeds** – The Auctioneer shall collect the full proceeds from the sale of the Equipment and the Auctioneer shall:

(a)    withhold for its benefit all amounts payable to the Auctioneer hereunder, including the Commission; and

(b)    the Owner directs that all other funds realized from the sale of the Equipment be paid out in accordance with the terms of the Order approving the sale.

**4.12**   **Uncollected Proceeds** – The Auctioneer may, as it deems necessary, re-auction any part of the Equipment not sold or paid for at the Auction and the Owner acknowledges that no monies in excess of the Gross Minimum Guarantee , less all deductions permitted under this Contract, shall be payable by the Auctioneer for any part of the Equipment until it has been paid for in full by the purchaser thereof.

**4.13**   **Other Consignments** – Equipment belonging to other owners may be sold at the Auction.

**4.14**   **Owner's Name** – The Owner authorizes the Auctioneer to use Owner's name, trademark and logo in advertising the auction.

**4.15**   **Entire Agreement** – This Contract:

(a)   constitutes the entire agreement between the parties and supersedes and takes the place of all prior contracts, understandings, representations or warranties;

(b)   may not be amended except in writing.  There are no understandings, agreements, promises, terms, conditions, or warranties expressed or implied, whether orally or by law, statute or trade usage, other than as specifically stated herein; and

(c)   shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, executors, administrators, successors and assigns.

**4.16**   **Internet Bidding and Timed Auction Lot System** – The Auctioneer may in its sole discretion offer certain lots for sale, in conjunction with its public unreserved auction, to registered bidders using its proprietary online bidding service or using its silent "timed auction lot" system. The Auctioneer shall use its best efforts to ensure that such technologies and systems are available at all auctions for which they have been advertised, however at any given sale

(a)   only those lots which the Auctioneer deems appropriate shall be offered using such technologies and systems, and

(b)   certain circumstances concerning the Internet and the technology in use are beyond the Auctioneer's control, and such systems may not be available at any given time or auction.

The Owner agrees that the Auctioneer shall be held harmless from any and all claims, demands, suits, actions, costs or causes of action, damages, costs, or charges arising from the Auctioneer's decision whether or not to use such technologies or systems or its failure to offer such systems at any time.

**4.17**   **Force Majeure** – Neither party shall be held liable or responsible to the other party nor be deemed to have defaulted under or breached this Contract for failure or delay in fulfilling or performing any term of this Contract when such failure or delay is caused by or results from causes beyond the reasonable control of the affected party, including but not limited to fires, strikes, floods, adverse weather that has the potential to injure persons or damage property, acts of war, terrorism, riot, or public disorder, acts of God, lawful acts of public authorities or electronic failures and internet service provider.

4.18 **Jurisdiction and Waiver of Jury Trial** – This Contract is subject to and governed by the laws of the State of Washington. The Court shall have sole jurisdiction to resolve all disputes relating to this Contract and the sale of any Equipment.  The parties irrevocably waive the right to demand a trial by jury in any dispute arising from or relating to this Contract.

4.19 **Notice** – Any notice given hereunder shall be delivered by prepaid registered mail to the parties hereto at the address set out on page 1, with any notice to the Auctioneer sent to the attention of Legal Affairs.

4.20 **Headings** – All headings in this Contract are for reference purposes only and this Contract shall be interpreted without reference to such headings.

4.21 **Severability** - If any provision of this Contract is held by a court of competent jurisdiction to be contrary to law, then the remaining provisions of this Contract will remain in full force and effect.

4.22 **Execution by Facsimile, Electronic Transmission and Counterpart** – This Contract may be executed by fax, PDF, or other electronic transmission and in counterpart, each of which when taken together shall be deemed to constitute an original and form part of the same document, and, upon acceptance by the Auctioneer, be effective and binding on both parties.

4.23 **Privacy** – Information provided in this Contract will be retained by the Auctioneer in accordance with its formal Privacy Statement, provided on the Auctioneer's website at www.rbauction.com.

4.24 **Further Assurances** - The parties shall execute such further documents and do any and all such further things as may be necessary to implement and carry out the intent of this Contract.

IN WITNESS WHEREOF this Contract has been executed by the parties hereto as of the date first above written.

_____**(in Chapter 11)**
(COMPANY – Name of Owner)

Per: _____
(Signature)

_____
(Print Name of person signing)

Cust. #:

**RITCHIE BROS. AUCTIONEERS (AMERICA) INC.**

Per: _____
(Signature)

_____
(Print Name)

**Schedule A**

**(Equipment to be Auctioned)**

# Original Mowbrays Tree Service Inc

**IronPlanet Pricing Package #135259**

Friday, November 14, 2025

| Seller Ref Number | Year | Make | Model | Type | Serial Number |
|---|---|---|---|---|---|
| 529 | 2017 | Ford | F-750 Super Duty | Bucket Truck (BTB) | 1FDNF7DC0HDB02254 |
| 511 | 2015 | Ford | F-750 Super Duty | Bucket Truck (BTB) | 3FRXF7FC2FV728252 |
| 527 | 2015 | Ford | F-750 Super Duty | Bucket Truck (BTB) | 3FRXF7FC6FV718517 |
| 805 | 2017 | Ford | 2017 F-750 Super Duty | Bucket Truck (BTB) | 1FDNF7DC9HDB04827 |
| CH 469 | 2017 | Ford | 2017 F-750 Super Duty | Bucket Truck (BTB) | 1FDXF7DC4HDB09040 |
| CH 478 | 2017 | Ford | 2017 F-750 Super Duty | Bucket Truck (BTB) | 1FDXF7DC3HDB09241 |
| 532 | 2016 | Freightliner | M2 106 | Bucket Truck (BTB) | 1FVACXDT3GHHA2319 |
| 538 | 2016 | Freightliner | M2 106 | Bucket Truck (BTB) | 1FVACXDT4GHHA2328 |
| 542 | 2016 | Freightliner | M2 106 | Bucket Truck (BTB) | 1FVACXDT5GHHA2323 |
| 799 | 2017 | Freightliner | 2017 M2 106 | Bucket Truck (BTB) | 1FVACXDT3HHJE0873 |
| 765 | 2016 | Freightliner | 2016 M2 106 | Bucket Truck (BTB) | 1FVACXDT7GHHD1399 |
| 759 | 2016 | Freightliner | 2016 M2 106 | Bucket Truck (BTB) | 1FVACXDT6GHHD1295 |
| 510 | 2011 | International | DURASTAR 4300 | Bucket Truck (BTB) | 1HTMMAAMXBH326456 |
| 440 | 2011 | International | DURASTAR 4300 | Bucket Truck (BTB) | 1HTMMAAM0BH288221 |
| 768 | 2012 | International | 2012 DuraStar 4300 | Bucket Truck (BTB) | 3HAMMAAM8CL549557 |
|  | 2017 | Morbark | M15RX (winch) | Wood Chipper (CIA) | 4S8SZ1610HW041042 |
|  | 2017 | Morbark | M15RX (winch) | Wood Chipper (CIA) | 4S8SZ1619HW041041 |
|  | 2017 | Morbark | M15RX (winch) | Wood Chipper (CIA) | 4S8SZ1617HW041037 |
|  | 2017 | Morbark | M15RX | Wood Chipper (CIA) | 4S8SZ1616HW041062 |
|  | 2016 | Morbark | M15RX | Wood Chipper (CIA) | 4S8SZ1615GW040984 |
|  | 2017 | Morbark | M15RX | Wood Chipper (CIA) | 4S8SZ1616HW041028 |
|  | 2018 | Morbark | M15R | Wood Chipper (CIA) | 4S8Z1616HW025699 |
| CH 374 | 2019 | Vermeer | BC 1000XL 74HP | Wood Chipper (CIA) | 1VRY11197K1028099 |
| 609 | 2020 | Vermeer | BC 1000XL | Wood Chipper (CIA) | 1VRY11190L1029600 |
| 616 | 2020 | Vermeer | BC 1000XL | Wood Chipper (CIA) | 1VRY11194L1029857 |
| 682 | 2020 | Vermeer | BC 1000XL | Wood Chipper (CIA) | 1VRY11196L1029472 |
| 691 | 2019 | Vermeer | BC 1000XL | Wood Chipper (CIA) | 1VRY11191K1028664 |
| CH 352 | 2018 | Vermeer | BC 1000XL | Wood Chipper (CIA) | 1VRY11190J1026550 |
| CH 377 | 2018 | Vermeer | BC 1000XL | Wood Chipper (CIA) | 1VRY11196J1026018 |
| CH 346 | 2017 | Vermeer | BC 1000XL | Wood Chipper (CIA) | 1VRY11191H1024459 |
| CH 390 | 2017 | Vermeer | BC 1000XL | Wood Chipper (CIA) | 1VRY11199H1024094 |
| CH 393 | 2017 | Vermeer | BC 1000XL | Wood Chipper (CIA) | 1VRY11198H1024118 |
| CH 341 | 2016 | Vermeer | BC 1000XL | Wood Chipper (CIA) | 1VRY11198G1023274 |
| CH 356 | 2017 | Vermeer | BC 1000XL | Wood Chipper (CIA) | 1VRY1119XH1024492 |
| CH 375 | 2016 | Vermeer | BC 1000XL | Wood Chipper (CIA) | 1VRY11198G1023923 |
| CH 339 | 2016 | Vermeer | BC 1000XL | Wood Chipper (CIA) | 1VRY11195G1022907 |
| Track Chipper 0003 | 2019 | Vermeer | 2019 BC 1000XL | Wood Chipper (CIA) | 1VRY11194K1028142 |
| Track Chipper 0004 | 2019 | Vermeer | 2019 BC 1000XL | Wood Chipper (CIA) | 1VRY11192K1028141 |
|  | 2019 | Vermeer | 2019 BC 1000XL | Wood Chipper (CIA) | 1VRY1119XK1028176 |
|  | 2019 | Vermeer | 2019 BC 1000XL | Wood Chipper (CIA) | 1VRY11199K1028136 |

| CH 285 | 2018 | Vermeer | 2018 BC 1000XL 74HP | Wood Chipper (CIA) | 1VRY11197J1026531 |
|---|---|---|---|---|---|
| CH 284 | 2018 | Vermeer | 2018 BC 1000XL 74HP | Wood Chipper (CIA) | 1VRY11198J1026134 |
| 859 | 2018 | Vermeer | 2018 BC 1000XL 74HP | Wood Chipper (CIA) | 1VRY11199J1026532 |
| CH 237 | 2018 | Vermeer | 2018 BC 1000XL | Wood Chipper (CIA) | 1VRY11190J1027018 |
| CH 232 | 2019 | Vermeer | 2018 BC 1000XL | Wood Chipper (CIA) | 1VRY11199K1027343 |
| CH 297 | 2019 | Vermeer | 2018 BC 1000XL | Wood Chipper (CIA) | 1VRY11191K1027353 |
| CH 301 | 2019 | Vermeer | 2018 BC 1000XL | Wood Chipper (CIA) | 1VRY11190K1027246 |
| 318 | 2015 | Ford | F-750 Super Duty | :Misc. Truck (TRU) | 3FRXF7FC8FV728255 |
| 274 | 2016 | Ford | F-250 Super Duty | Pickup (PCB) | 1FT7X2B66GEA65326 |
| 273 | 2016 | Ford | F-250 Super Duty | Pickup (PCB) | 1FT7X2B68GEA99008 |
| 277 | 2016 | Ford | F-250 Super Duty | Pickup (PCB) | 1FT7X2B64GEB24938 |
| 267 | 2016 | Ford | F-250 Super Duty | Pickup (PCB) | 1FT7X2B6XGEA23211 |
| 268 | 2016 | Ford | F-250 Super Duty | Pickup (PCB) | 1FT7X2B63GEA93049 |
| 246 | 2015 | Ford | F-250 Super Duty | Pickup (PCB) | 1FT7X2B67FEB88129 |
| 248 | 2015 | Ford | F-250 Super Duty | Pickup (PCB) | 1FT7X2B63FEB88130 |
| 587 | 2018 | Freightliner | M2 106 | Bucket Truck (BTB) | 3ALACXFC7JDJP0777 |
| 723 | 2017 | Freightliner | M2 106 | Bucket Truck (BTB) | 3ALACXDT7HDJH6362 |
| 381 | 2017 | Freightliner | M2 106 | Bucket Truck (BTB) | 1FVACXDT1HHHY8493 |
| 449 | 2017 | Freightliner | M2 106 | :Misc. Truck (TRU) | 1FVACXDT3HHHL5584 |
| 475 | 2017 | Freightliner | M2 106 | :Misc. Truck (TRU) | 1FVACXDT2HHJE0878 |
| 383 | 2017 | Freightliner | M2 106 | Bucket Truck (BTB) | 1FVACXDT5HHHY8495 |
| 358 | 2016 | Freightliner | M2 106 | Bucket Truck (BTB) | 1FVACXDT5GHGT1404 |
| 343 | 2016 | Freightliner | M2 106 | :Misc. Truck (TRU) | 1FVACXDT2GHGT1411 |
| 442 | 2016 | Freightliner | M2 106 | Bucket Truck (BTB) | 1FVACXDT5GHHA4976 |
| 329 | 2016 | Freightliner | M2 106 | Bucket Truck (BTB) | 1FVACXDT6GHHB3704 |
| 441 | 2016 | Freightliner | M2 106 | :Misc. Truck (TRU) | 1FVACXDT9GHHA4978 |
| 392 | 2016 | Freightliner | M2 106 | :Misc. Truck (TRU) | 1FVACXDT9GHHA8366 |
| 721 | 2016 | Freightliner | M2 106 | Bucket Truck (BTB) | 1FVACXDT4GHGT1409 |
| 354 | 2016 | Freightliner | M2 106 | :Misc. Truck (TRU) | 1FVACXDT6GHHA2315 |
| 722 | 2017 | Freightliner | M2 106 | Bucket Truck (BTB) | 3ALACXDT5HDJG0967 |
| 316 | 2016 | Freightliner | M2 106 | :Misc. Truck (TRU) | 1FVACXDT7GHHA2324 |
| 310 | 2016 | Freightliner | M2 106 | Bucket Truck (BTB) | 1FVACXDTXGHHA2317 |
| 255 | 2015 | Freightliner | M2 106 | Bucket Truck (BTB) | 1FVACXDT0FHGS3385 |
| 173 | 2012 | Freightliner | M2 106 | Bucket Truck (BTB) | 1FVACXDTXCHBD8579 |
| CH 286 | 2017 | Morbark | M15RX (winch) | Wood Chipper (CIA) | 4S8SZ1612HW041043 |
| CH 294 | 2017 | Morbark | M15RX (winch) | Wood Chipper (CIA) | 4S8SZ1616HW041045 |
| CH 161 | 2016 | Vermeer | BC 1500XL | Wood Chipper (CIA) | 1VR2161V8G1006703 |
| CH 350 | 2019 | Vermeer | BC 1000XL | Wood Chipper (CIA) | 1VRY1119XK1028064 |
| CH 362 | 2019 | Vermeer | BC 1000XL | Wood Chipper (CIA) | 1VRY11194K1028139 |
| CH 428 | 2020 | Vermeer | BC 1000XL | Wood Chipper (CIA) | 1VRY11197L1029559 |
| CH 238 | 2017 | Vermeer | BC 1000XL | Wood Chipper (CIA) | 1VRY11190H1024176 |
| CH 248 | 2017 | Vermeer | BC 1000XL | Wood Chipper (CIA) | 1VRY11195H1024237 |
| CH 246 | 2017 | Vermeer | BC 1000XL | Wood Chipper (CIA) | 1VRY11192H1024129 |
| CH 247 | 2017 | Vermeer | BC 1000XL | Wood Chipper (CIA) | 1VRY11192H1024180 |
| CH 279 | 2017 | Vermeer | BC 1000XL | Wood Chipper (CIA) | 1VRY11190H1024419 |
| CH 278 | 2017 | Vermeer | BC 1000XL | Wood Chipper (CIA) | 1VRY11192H1024437 |

| | | | | | |
|---|---|---|---|---|---|
| CH 275 | 2017 | Vermeer | BC 1000XL | Wood Chipper (CIA) | 1VRY11198H1024278 |
| CH 298 | 2016 | Vermeer | BC 1000XL | Wood Chipper (CIA) | 1VRY11196G1023483 |
| CH 206 | 2016 | Vermeer | BC 1000XL | Wood Chipper (CIA) | 1VRY1119XG1023681 |
| CH 190 | 2016 | Vermeer | BC 1000XL | Wood Chipper (CIA) | 1VRY11194G1023224 |
| CH 185 | 2016 | Vermeer | BC 1000XL | Wood Chipper (CIA) | 1VRY11191G1023200 |
| CH 231 | 2017 | Vermeer | BC 1000XL | Wood Chipper (CIA) | 1VRY11195H1024044 |
| CH 314 | 2017 | Vermeer | BC 1000XL | Wood Chipper (CIA) | 1vry11195h1024187 |
| CH 189 | 2016 | Vermeer | BC 1000XL | Wood Chipper (CIA) | 1VRY11194G1023207 |
| CH 123 | 2015 | Vermeer | BC 1000XL | Wood Chipper (CIA) | 1VRY11192F1022605 |
| CH 173 | 2016 | Vermeer | BC 1000XL | Wood Chipper (CIA) | 1VRY11197G1023041 |
| CH 146 | 2016 | Vermeer | BC 1000XL | Wood Chipper (CIA) | 1VRY11199G1022909 |
| CH 165 | 2016 | Vermeer | BC 1000XL | Wood Chipper (CIA) | 1VRY1119XG1023003 |
| | 2016 | Freightliner | M2 106 | Boom Truck (BTD) | 1FVACXDT8GHHD1296 |
| 547 | 2019 | Ford | F-750 Super Duty | Chipper Truck (CHP) | 1FDNX7DC2KDF14003 |
| 546 | 2019 | Ford | F-750 Super Duty | Chipper Truck (CHP) | 1FDNX7DC1KDF14140 |
| 564 | 2017 | Ford | F-750 Super Duty | Chipper Truck (CHP) | 1FDNX7DC3HDB02763 |
| CH 321 | 2017 | Ford | F-750 Super Duty | Chipper Truck (CHP) | 1FDNX7DC8HDB05433 |
| CH 332 | 2017 | Ford | F-750 Super Duty | Chipper Truck (CHP) | 1FDNX7DC8HDB05447 |
| 596 | 2017 | Ford | F-750 Super Duty | Chipper Truck (CHP) | 1FDNX7DC3HDB05436 |
| CH 319 | 2017 | Ford | F-750 Super Duty | Chipper Truck (CHP) | 1FDNX7DC7HDB12177 |
| 597 | 2017 | Ford | F-750 Super Duty | Chipper Truck (CHP) | 1FDNX7DC4HDB11004 |
| CH 333 | 2020 | Ford | F-550 Super Duty | Chipper Truck (CHP) | 1FDUF5HT0LDA07177 |
| CH 337 | 2020 | Ford | F-550 Super Duty | Chipper Truck (CHP) | 1FDUF5HT3LDA10378 |
| **109 Items** | | | | | |

# EXHIBIT 2

Bond Number: 0874048

## AUCTIONEER BOND

**KNOW ALL MEN BY THESE PRESENTS** that we, RITCHIE BROS. OF AMERICA, INC. (hereinafter called Principal), as Principal, and the HARCO NATIONAL INSURANCE COMPANY, its home office in Raleigh, Nc  27605 (hereinafter called Surety), as Surety, are held and firmly bound unto the UNITED STATES OF AMERICA (hereinafter called Obligee), in the full and just sum of THREE MILLION  AND NO/100 ($3,000,000.00) Dollars, for the payment of which, well and truly to be made, the Principal and Surety hereby bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

**NOW THEREFORE**, the condition of this obligation is such that if the said Principal shall faithfully account for all money, assets and effects of bankruptcy case, THE ORIGINAL MOWBRAY'S TREE SERVICE, INC.; CASE #8:224-BK-12674, in which the Principal is serving as auctioneer, then this obligation to be void; otherwise to remain in full force in effect.

The liability of the Surety hereunder shall not exceed the aggregate sum of THREE MILLION  AND NO/100 ($3,000,000.00) Dollars, for all claims asserted against this bond.

This bond shall remain in full force and effect from NOVEMBER 14, 2025 to FEBRUARY 14, 2026.

**SIGNED AND SEALED THIS 14TH day of NOVEMBER, 2025.**


RITCHIE BROS. OF AMERICA, INC.

By: _____


HARCO NATIONAL INSURANCE COMPANY

By: _____
    CATHERINE C. KEHOE, ATTORNEY-IN-FACT

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
4675 MacArthur Court, Suite1550, Newport Beach, CA 92660

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S MOTION FOR ORDER AUTHORIZING: (1) SALE OF PERSONAL PROPERTY PURUSANT TO 11 U.S.C. §§ 363(b) AND (f); AND EMPLOYMENT OF RITCHIE BROS. AUCTIONEERS (AMERICA) INC. AS AUCTIONEER**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **November 17, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

⊠  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **November 17, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**Personal Delivery**
Hon. Scott C. Clarkson
U.S. Bankruptcy Court
Ronald Reagan Federal Building
411 West Fourth Street, Suite 5130
Santa Ana, CA 92701-4593

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 17, 2025 | Connie-Marie Santiago | /s/ Connie-Marie Santiago |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

# F 9013-3.1.PROOF.SERVICE

1.    **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- **Shraddha Bharatia**    notices@becket-lee.com
- **Jeffrey W Broker**    jbroker@brokerlaw.biz
- **Kenneth J Catanzarite**    kcatanzarite@catanzarite.com
- **Lauren N Gans**    lgans@elkinskalt.com, lmasse@elkinskalt.com
- **Jessica L Giannetta**    jessica@giannettalawcorp.com, melanie@giannettaenrico.com
- **Robert P Goe**    rgoe@goeforlaw.com,
  kmurphy@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.co
  m
- **Marshall F Goldberg**    mgoldberg@glassgoldberg.com, jbailey@glassgoldberg.com
- **Alan Craig Hochheiser**    ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com
- **Merdaud Jafarnia**    bkca@alaw.net, mjafarnia@ecf.inforuptcy.com
- **Raffi Khatchadourian**    raffi@hemar-rousso.com
- **Valery Loumber**    valloumlegal@gmail.com
- **Michael B Lubic**    michael.lubic@klgates.com,
  jonathan.randolph@klgates.com,klgatesbankruptcy@klgates.com
- **James MacLeod**    jmacleod@dunninglaw.com, nancy@dunninglaw.com
- **Charity J Manee**    cmanee@goeforlaw.com, kmurphy@goeforlaw.com
- **Kathleen P March**    kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net
- **Robert S Marticello**    rmarticello@raineslaw.com, bclark@raineslaw.com;csantiago@raineslaw.com
- **David W. Meadows**    david@davidwmeadowslaw.com
- **Karen S. Naylor**    Becky@ringstadlaw.com, Karen@ringstadlaw.com;Arlene@ringstadlaw.com
- **Estela O Pino**    epino@epinolaw.com, staff@epinolaw.com;clerk@epinolaw.com
- **Donald W Reid**    don@donreidlaw.com, 5969661420@filings.docketbird.com
- **Todd C. Ringstad**    becky@ringstadlaw.com, arlene@ringstadlaw.com
- **Amitkumar Sharma**    amit.sharma@aisinfo.com
- **Jeffrey S Shinbrot**    jeffrey@shinbrotfirm.com, sandra@shinbrotfirm.com;tanya@shinbrotfirm.com
- **Thomas E Shuck**    tshuck@pmcos.com, efilings@pmcos.com
- **Michael Simon**    msimon@raineslaw.com, bclark@raineslaw.com;csantiago@raineslaw.com
- **Derek A Simpson**    derek@dsimpsonlegal.com
- **Ahren A Tiller**    ahren.tiller@blc-sd.com, 4436097420@filings.docketbird.com;brett.bodie@blc-
  sd.com;anika@blc-sd.com;derek@blc-sd.com;kreyes@blc-sd.com;megan@blc-sd.com;nicole@blc-
  sd.com;danny@blc-sd.com;angie@blc-sd.com;kreyes@blc-sd.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov
- **Sharon Z. Weiss**    sharon.weiss@bclplaw.com,
  raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com,sharon-weiss-7104@ecf.pacerpro.com
- **Jennifer C Wong**    bknotice@mccarthyholthus.com, jwong@ecf.courtdrive.com
- **Mandy Youngblood**    csbk@gmfinancial.com
- **Roye Zur**    rzur@elkinskalt.com,
  lwageman@elkinskalt.com;1648609420@filings.docketbird.com;rzur@ecf.courtdrive.com;lmasse@elkinskalt.com

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                              **F 9013-3.1.PROOF.SERVICE**