ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
ROYE ZUR, State Bar No. 273875
  rzur@elkinskalt.com
LAUREN N. GANS, State Bar No. 247542
  lgans@elkinskalt.com
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400
Facsimile: 310.746.4499

Attorneys for Debtor and Debtor-in-Possession
Mowbray Waterman Property, LLC

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

| | |
|---|---|
| In re | Case No.   8:24-bk-12674-SC |
| THE ORIGINAL MOWBRAY'S TREE SERVICE, INC., | Jointly administered with: |
|        Debtor and Debtor-In-Possession. | Case No.   8:25-bk-10542-SC<br>Case No.   8:25-bk-10543-SC |
| In re | Chapter 11 |
| MOWBRAY WATERMAN PROPERTY, LLC, | **DEBTOR'S MOTION FOR ORDER: (1) AUTHORIZING SALE OF REAL PROPERTY LOCATED AT 386 S. ALLEN ST., SAN BERNARDINO, CA PURSUANT TO 11 U.S.C. § 363(b) AND (f); (2) APPROVING OVERBID PROCEDURES; (3) APPROVING BUYER, SUCCESSFUL BIDDER, AND BACK-UP BIDDER AS GOOD-FAITH PURCHASERS PURSUANT TO 11 U.S.C. § 363(m); AND (4) AUTHORIZING PROPOSED PAYMENT OF PROCEEDS OF SALE; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF ROBIN MOWBRAY AND CODY MORAN IN SUPPORT** |
|        Debtor and Debtor-In-Possession. | |
| In re | |
| ROBIN ELAINE MOWBRAY, | |
|        Debtor and Debtor-In-Possession. | |
| ☐  Affects THE ORIGINAL MOWBRAY'S TREE SERVICE, INC. | |
| ☒  Affects MOWBRAY WATERMAN PROPERTY, LLC | **Hearing Date & Time** |
| ☐  Affects ROBIN ELAINE MOWBRAY | Date:      December 17, 2025<br>Time:      1:30 p.m.<br>Place:     Courtroom 5C<br>           411 W. 4th St.<br>           Santa Ana, CA 92701 |
| ☐  Affects all Debtors | |
| | Hon. Scott C. Clarkson |

1   **TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY**

2   **JUDGE:**

3       Mowbray Waterman Property, LLC, the debtor and debtor-in-possession in the above-

4   captioned Chapter 11 case (the "Debtor"),  hereby submits this *Motion for Order: (1) Authorizing*

5   *Sale of Real Property Located at 386 S. Allen St., San Bernardino, CA Pursuant to 11 U.S.C. §*

6   *363(b) and (f); (2) Approving Overbid Procedures; (3) Approving Buyer, Successful Bidder, and*

7   *Back-Up Bidder as Good-Faith Purchaser Pursuant to 11 U.S.C. § 363(m); and (4) Authorizing*

8   *Proposed Payment of Proceeds of Sale* (the "Motion") .  In support of the Motion, the Debtor

9   submits the following memorandum of points and authorities, and the attached declarations of Robin

10  Mowbray and Cody Moran.

11              <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

12  **I.      <u>INTRODUCTION</u>**

13      The Debtor seeks to sell the property located at 386 S. Allen St., San Bernadino, CA 92408

14  (the "Property").  The Property is 1.9 acres of vacant commercial property comprising five separate

15  parcels (APNs 0136-251-28, 02136-251-29, 0136-251-30, 0136-251-31, 0136-251-40 ).   The

16  proposed sale is a noncontingent "all cash" sale to Boone Trucking, Inc. (the "Buyer") for

17  $1,950,000.00, subject to competing bids.  The Debtor has marketed the Property for approximately

18  two years and the Buyer's offer is, at present, the highest and best offer received for the Property.

19  Moreover, the overbid procedures proposed herein are reasonable, are designed to stimulate further

20  bidding, and will ensure that the Property is sold for the highest and best price.  The sale of the

21  Property will generate significant cash for the estate and pay down the secured claim of PNC Bank,

22  N.A. ("PNC Bank").

23  **II.     <u>BACKGROUND</u>**

24      **A.      <u>General Background Regarding the Debtor</u>**

25      On February 19, 2025, the Debtor filed a voluntary Chapter 11 bankruptcy petition under

26  the Bankruptcy Code.

27      The Debtor owns four real properties in California, after having sold one non-income

28  generating property for approximately $370,000, during the course of the case.  Two of the four

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

remaining real properties are income-producing.  The Debtor has two secured creditors, Bank of the Sierra ("BOTS"), in connection with a loan for $2,990,000 on one of its properties, and PNC Bank, as explained below.  Robin Mowbray ("Robin"), a debtor in bankruptcy case no. 8:25-bk-10543-SC (the "Robin Case") is the Debtor's managing member and 51% owner, with the remaining 49% owned by the Gloria Mowbray Separate Property Trust, a special needs trust of which Robin Mowbray is the Trustee, and her father, John Mowbray is the beneficiary. The Debtor has no employees but contracts with Robin to provide various management services.

**B.    Events Leading to the Filing of the Case**

The Debtor is a defendant in state court litigation brought by Ronnie Jordan (the "Jordan Litigation").  Mr. Jordan was terminated from The Original Mowbray's Tree Service, Inc. ("MTS")[1] (of which Ms. Mowbray is the 100% owner) in January, 2022 and now asserts, among other things, that he is entitled to over $63 million in damages resulting from his termination by MTS.  In addition to seeking millions of dollars in damages against MTS, Mr. Jordan also is seeking damages against the Debtor, claiming to have also been employed by the Debtor.  The Debtor denies that Mr. Jordan ever was employed by the Debtor or that there is any basis for liability to Mr. Jordan.

Trial was set to begin in the Jordan Litigation in February 2025. The Debtor was compelled to file the Waterman Case to protect its business and the value of its estate for all stakeholders, while restructuring the Debtor's legitimate obligations in an orderly and fair and equitable manner.

In addition, in connection with an agreement by PNC Bank to forbear on the joint debt owed to it by the Debtor and MTS, on July 18, 2024, the Debtor, which had already guaranteed MTS's obligations to PNC Bank, granted PNC Bank a security interest in two of its real properties, one of which is the Property.  The Debtor was compelled to file its case to protect its business and the value of its estate for all stakeholders, while restructuring the Debtor's legitimate obligations in an orderly and fair and equitable manner.

**C.    Joint Administration**

On September 5, 2025, the Court issued an order directing joint administration of the

---

[1] MTS is a debtor in case no. 8:24-bk-12674-SC, the lead case number under which the Debtor's case and the Robin Case are being jointly administered.

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

1    bankruptcy cases filed by MTS, the Debtor, and Robin, with the MTS Case as the lead case.  [Docket

2    No. 821]

3        **D.**    **The Debtors' Joint Plan**

4        On September 18, 2025, the Court entered the ordering approving the Debtor's joint

5    disclosure statement with MTS and Robin (the "Disclosure Statement") and setting the solicitation

6    and voting schedule for the joint plan of reorganization proposed by the Debtor, MTS and Robin

7    (the "Plan"), the deadlines for discovery related to Plan confirmation, and the hearing on Plan

8    confirmation for February 18, 2026.  [Docket No. 896.]

9        The Plan is a joint plan proposed by the Debtor, MTS, and Robin, resolving all three

10   bankruptcy cases and treating the claims against each on fair and equitable terms. The Plan should

11   be viewed as two plans—one for a consolidated Debtor and MTS, and another for Robin.  MTS and

12   the Debtor are pursuing a joint plan because they believe their respective reorganizations are

13   intertwined and a joint plan is the most efficient and sensible method for them  to move their three

14   cases forward towards a common and successful exit.

15       Under the Plan, the Debtor's bankruptcy estate will be substantively consolidated and

16   combined with MTS. Such consolidation is part of the compromise embodied in the Plan. As a

17   result, upon the Plan's effective date, the assets and liabilities of the Debtor and its bankruptcy estate

18   will become assets and liabilities of MTS.  The Plan treats the Claims asserted in the Debtor's case

19   as Claims against MTS.  The Debtor and MTS are jointly liable on the debt owed to PNC Bank.

20       **E.**    **Marketing of the Property**

21       On April 28, 2025, the Court entered an order authorizing the Debtor's employment of Lee

22   & Associates Commercial Real Estate Services, Inc.- Riverside ("L&A Riverside") to assist with

23   the marketing and sale of the Property.  [Docket No. 61 in Case No. 8:25-bk-10542-SC.]

24       L&A Riverside has been marketing the Property on behalf of the Debtor since November

25   2023, and has been offered for sale with a listing price of $2,350,000.  To date, multiple prospective

26   buyers have inquired and/or toured the Property, and the Debtor has received two offers to purchase

27   the Property.  Given the amount and non-contingent nature of the offer received from the Buyer, the

28   Broker believes that the Buyer's offer is the best offer received to date. (Declaration of Cody Moran,

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

1    ¶ 4.)

2         **F.**    **Lien Against the Property**

3         There is one lien on the Property – the deed of trust held by PNC Bank – as set forth in PNC

4    Bank's Proof of Claim No. 9-1 filed against the Debtor's estate.  The Debtor understands that PNC

5    Bank consents to the sale of the Property free and clear of its lien, provided that the net proceeds of

6    the sale be used to pay down PNC Bank's secured claim against the Debtor.  This Motion seeks

7    authorization to pay such net proceeds to PNC Bank.

8    **III.**    **TERMS OF THE PROPOSED SALE**

9         The salient terms of the proposed sale are described below.  A copy of the *Standard Offer,*

10   *Agreement and Escrow Instructions for Purchase of Real Estate (Vacant Land)* along with the

11   addenda thereto (the "Agreement"), which fully describe the terms of the sale, is attached hereto as

12   Exhibit "2."

13        1.    **Buyer**.  Boone Trucking, Inc., or its Assignee.

14        2.    **Property to be sold**.  The Property – *i.e.*, the real property located at 386 S. Allen

15   St., San Bernardino, CA 92408.

16        3.    **Purchase price**.  The purchase price for the Property is $1,950,000 (the "Purchase

17   Price"), payable as follows: (a) a $65,000 deposit (the "Deposit") has been deposited into escrow;

18   and (b) the balance of the Purchase Price shall be paid to escrow within 15 days of the entry of an

19   order by the Court authorizing the sale.  The Deposit is non-refundable except as set forth in the

20   Addendum to the Agreement.

21        4.    **"As is" sale**.  All of the Buyer's contingencies have been waived.  The Buyer is

22   acquiring the Property on an "as is" and "where is" basis without representations, warranties or

23   recourse whatsoever.

24        5.    **Free and clear**.  The sale of the Property to Buyer shall be free and clear of any liens

25   pursuant to 11 U.S.C. § 363(f).  The net proceeds of the sale shall be used to pay down the secured

26   claim held by PNC Bank.

27        6.    **Escrow fees**.  Escrow fees shall be paid on a 50/50 basis by the Debtor and the Buyer.

28        7.    **Non-contingent**.  The Agreement is non-contingent and the Buyer has waived all

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

1    contingencies or due diligence requirements other than Bankruptcy Court approval.

2        8.    **Court approval**.  The Agreement is subject to this Court's approval.

3        9.    **Overbids**.  The sale of the Property is subject to overbids.

4        10.    **Commissions**.  The listing broker and any cooperating brokers are entitled to share

5    a total of 6.00% commission on the Purchase Price (3.00% to Seller's broker and 3.00% to Buyer's

6    broker).  Buyer's broker is Toby Tewell, also of L&A Riverside.

7    **IV.    PROPOSED OVERBID PROCEDURES**

8        The Property will be sold subject to overbid at an open auction ("Auction") to be conducted

9    by the Court at the time that this Motion is heard.  The Debtor proposes the following overbid

10    procedures to govern any bidding:

11        1.    **The Bid Deadline**.  The Bid Deadline is 5:00 p.m. (P.S.T.) on December 15, 2025

12    (about 48 hours prior to the Auction).  A Qualified Bidder that desires to make a bid must deliver a

13    Qualified Bid to the Debtor's Broker, Cody Moran (cmoran@lee-associates.com) so that it is

14    received by the Bid Deadline.

15        2.    **Due Diligence**.  Any due diligence must have been completed by the Bid Deadline.

16    Any person seeking due diligence or wishing to view the Property shall contact Cody Moran at

17    cmoran@lee-associates.com or (951) 276-3624.  The Debtor may withhold due diligence if the

18    Potential Bidder does not become, or the Debtor determines, in its discretion, that the Potential

19    Bidder is not likely to become, a Qualified Bidder.

20        3.    **Qualified Bidder**.  Only "Qualified Bidders" may bid on the Property.  To become

21    a Qualified Bidder, any person or entity who wishes to bid on the Property (each such person or

22    entity, a "Potential Bidder") must, by the Bid Deadline, deliver to the Debtor's counsel written proof

23    satisfactory to the Debtor that the Potential Bidder is financially capable of consummating the

24    proposed sale, including financial statements, copies of recent statements of bank accounts, evidence

25    of certified funds, a commitment for financing, and/or such other financial information as may be

26    requested by the Debtor to allow the Debtor to make a reasonable determination, in its sole and

27    absolute discretion.  Qualified Bidder status shall be determined by the Debtor, in its sole discretion,

28    and no Potential Bidder shall have standing to challenge the Debtor's determinations or the results

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

of the Auction.

4.    **Qualified Bid**.  Bids by Qualified Bidders for the purchase of the Property must be submitted by the Bid Deadline as specified below and must meet the following requirements:

(a)    A bid must be in writing in the form of an executed California Residential Purchase Agreement and Joint Escrow Instructions (C.A.R. Form CPA).

(b)    A bid must exceed the Purchase Price by at least $20,000 and otherwise be on terms, in the Debtor's business judgment, no less favorable than the Agreement.

(c)    A bid must contemplate purchasing the Property "as is," "where is," and "with all faults."

(d)    A bid must be irrevocable and unconditional, subject to only Bankruptcy Court approval.

(e)    A bid must propose a closing date no later than the date that is fifteen (15) days after entry of an order by the Bankruptcy Court approving the sale.

(f)    A bid must be accompanied by a deposit in the amount of $65,000, made by wire transfer, certified funds, or cashier's check payable to the Debtor, which deposit is refundable only if the Qualified Bidder is not deemed the Winning Bidder (as defined below) or if the Qualified Bidder is deemed the Winning bidder but the sale is not consummated because the Bankruptcy Court does not approve the sale to such Qualified Bidder.

(g)    The bid must not request or entitle the Qualified Bidder to any break-up fee, topping fee, termination fee, broker's fee, expense reimbursement, or similar type of payment.

(h)    The bid must be irrevocable until the completion of the Auction and, if such Qualified Bidder is the Winning Bidder, then the bid must be irrevocable until the closing of the sale.  By submitting a bid, the Qualified Bidder agrees to serve as a Back-up Bidder if such bidder's Qualified Bid is selected by the Debtor as the next highest or otherwise next best bid after the Winning Bid (as defined below) (the "Back-up Bid," and the Qualified Bidder making the Back-up Bid, the "Back-up Bidder").

A bid received from a Qualified Bidder that meets all of the above requirements will be deemed a "Qualified Bid," except as otherwise provided below.

5.    **Auction**.  If no Qualified Bid is received by the Debtor by the Bid Deadline, then the Debtor will request that the Court approve the sale of the Property to the Buyer and there will be no

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

Auction.  If a Qualified Bid is timely received by the Debtor, then the Court will hold the Auction. The Auction of the Property will take place virtually via Zoom at 1:30 p.m. (P.S.T.) on December 17, 2025, or such different time or other place as may be determined by the Debtor in its sole discretion.  Any change in the time or place of the Auction shall be promptly provided in writing to all Qualified Bidders who have submitted Qualified Bids.  The Auction shall be governed by the following procedures:

(a)    Only Qualified Bidders who submitted a Qualified Bid are eligible to attend and bid at the Auction;

(b)    Any person attending and wishing to bid at the Auction on behalf of a Qualified Bidder must certify in writing that he or she has the authority to bind the Qualified Bidder by any bid that is submitted and by the outcome of the Auction;

(c)    Only Qualified Bidders who submitted a Qualified Bid may submit new bids at the Auction;

(d)    The Auction will be held virtually in Court via Zoom, with access information provided by the Debtor prior to the Auction; and

(e)    The Auction will be conducted openly and with all competing bids submitted in the virtual presence of other bidders; provided, however, that the Debtor reserves the right, in its discretion, to place bidders in separate breakout rooms and to permit competing bids to be submitted in such rooms and not in the presence of other bidders.

6.    **Overbids**.  Qualified Bidders present at the Auction will be entitled to submit overbids.  The starting bid at the Auction shall be the Qualified Bid designated by the Debtor, in its sole and absolute discretion, as the highest and best bid for the Property received by the Bid Deadline (the "Initial Successful Bid.")  The Qualified Bidder who submitted the Initial Successful Bid (the "Initial Successful Bidder") will be entitled and required to purchase the Property upon the terms set forth in the agreement executed by such Qualified Bidder, unless the Initial Successful Bid is not the Winning Bid (as defined below).  The Auction shall be governed by the following overbid procedures:

(a)    The initial overbid at the Auction must be at least $20,000 more than the Initial

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

1   Successful Bid;

2         (b)    Subsequent overbids must be in minimum increments of $10,000;

3         (c)    The Auction shall continue until the Debtor determines, in its sole discretion, which

4   bid is the highest and best bid for the Property (the "Winning Bid"), subject to final Bankruptcy

5   Court approval.  In making its decision, the Debtor shall consider, without limitation, the amount of

6   the purchase price, the form of consideration being offered, the likelihood of the bidder's ability to

7   close the transaction and perform thereunder, and the timing thereof.  No bidder, including the

8   Buyer, the Initial Successful Bidder, and any Qualified Bidder, shall have standing to challenge the

9   Debtor's determination of the Winning Bid.  The Qualified Bidder submitting such Winning Bid

10  shall be the "Winning Bidder," and shall have such rights and responsibilities of the purchaser, as

11  set forth in the purchase agreement executed by such bidder at the amount of the Winning Bid;

12        (d)    The Debtor may, in its sole discretion and subject to Bankruptcy Court approval,

13  designate one or more Back-Up Bids, which shall become the Winning Bid if the Winning Bidder

14  fails to consummate the sale;

15        (e)    The Winning Bid and any Back-Up Bid(s) are irrevocable; and

16        (f)    The Winning Bid and the Back-Up Bid(s) shall be subject to Bankruptcy Court

17  approval.

18        7.    **Disqualification**.  Any entity or person that the Debtor determines fails to submit a

19  timely, conforming bid shall be disqualified from bidding for the Property.  The Debtor reserves the

20  right to disqualify any Potential Bidder or Qualified Bidder who does not cooperate in the sale,

21  marketing or overbid process or who takes any act that the Debtor determines negatively impacted

22  the sale, marketing or overbid process, the value of the Property, or the purchase price received for

23  the Property.  Disqualification of Potential or Qualified Bidders is left to the Debtor's sole discretion.

24  **V.**    **ARGUMENT**

25      **A.**    **The Debtor May Sell Property of the Estate Pursuant to 11 U.S.C. § 363(b)**

26      Section 363(b) empowers a debtor-in-possession to "use, sell or lease . . . other than in the

27  ordinary course of business, property of the estate."  *See* 11 U.S.C. §§ 363(b) & 1107(a).  In

28  considering a proposed transaction to use, sell, or lease, courts consider whether the transaction is

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

in the best interests of the estate based on the facts and history of the case.  See *In re Am. W. Airlines*, 166 B.R. 908, 912 (Bankr. D. Ariz. 1994) (citing *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)).  This requires examination of the "business justification" for the proposed sale.  *See In re 240 N. Brand Partners, Ltd.*, 200 B.R. 653 (9th Cir. BAP 1996); *see also In re Wilde Horse Enters., Inc.*, 136 B.R. 830 (Bankr. C.D. Cal. 1991); *In re Ernst Home Ctr., Inc.*, 209 B.R. 974 (Bankr. W.D. Wash. 1997).

In approving any sale outside the ordinary course of business, the court must not only articulate a sufficient business reason for the sale, it must further find it is in the best interest of the estate, *i.e.*, it is fair and reasonable, that it has been given adequate marketing, that it has been negotiated and proposed in good faith, that the purchaser is proceeding in good faith, and that it is an "arms-length" transaction.  *See Wilde Horse Enters.*, 136 B.R. at 841.  A bankruptcy court's power to authorize a sale under § 363(b) is reviewed for abuse of discretion.  *See In re Walter*, 83 B.R. 14, 19 (9th Cir. BAP 1988).

Here, the proposed transaction has a legitimate business justification.  The sale of the Property will generate significant cash and allow for a substantial paydown of PNC Bank's secured claim, which will inure to the benefit of the estate and provide a path for the confirmation of the Plan.  The Buyer's offer represents the best offer obtained by listing the Property on the open market for over 24 months, and is therefore consistent with market value.  (*See* Moran Decl., at ¶ _.)  The Broker will continue to market the Property in order to increase the chances that qualified overbids are submitted.  Moreover, the Debtor has proposed overbid procedures to ensure the estate receives the highest and best price for the Property at the hearing.  Accordingly, the Debtor requests that the Court authorize the sale of the Property, and the payment of the Broker's commission and ordinary costs of sale from the sale proceeds.

**B.**    **<u>The Debtor May Sell the Property Free and Clear of Any Liens, Claims, and Interests</u>**

Section 363(f) provides as follows:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

(1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2)    such entity consents;

(3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)    such interest is in bona fide dispute; or

(5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  Because subsections (1) through (5) of Bankruptcy Code § 363(f) are written in the disjunctive, authority to sell the Property free and clear of any and all interests therein should be granted if any of the conditions are met with respect to each interest holder.

As discussed above, the Debtor understands that PNC Bank consents to the sale of the Property free and clear of its lien, provided that the net proceeds are used to pay down its secured claim.

**C.    The Debtor's Proposed Use of the Net Sale Proceeds Should Be Approved**

The Court should authorize the Debtor to pay the net proceeds of the sale to PNC Bank in partial satisfaction of its secured claim, because it is in the best interests of the Debtor's estate.  The proposed payment to PNC Bank will benefit general unsecured creditors because (1) it will reduce the interest that is accruing on PNC Bank's secured claim, and (2) it will free up cash and speed up payments to unsecured creditors under the Plan.  Accordingly, it should be approved.

**D.    The Buyer of the Property Should Be Deemed a "Good Faith Purchaser" Pursuant to 11 U.S.C. § 363(m)**

Section 363(m) provides:

The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).  A good faith buyer "is one who buys 'in good faith' and 'for value.'"  *Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 281 (9th Cir. 1992) (citing *In re Abbotts Dairies of Pa., Inc.*,

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

788 F.2d 143,147 (3d Cir. 1986)).  "[L]ack of good faith is [typically] shown by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."  *Id.* (quoting *Community Thrift & Loan v. Suchy (In re Suchy)*, 786 F.2d 900, 902 (9th Cir. 1985)).

Here, the Buyer is buying in good faith and has offered to pay fair value for the Property. The Buyer's offer is the best offer received to date and it remains subject to overbid.  The Buyer has no connections to the Debtor, and the Agreement to purchase the Property is the product of "arm's-length" discussions.  (*See* Declaration of Robin Elaine Mowbray, at ¶ 4.)  Moreover, the sale will be conducted in a commercially reasonable manner following appropriate notice and pursuant to the proposed overbid procedures.  Based on such facts and circumstances, the Debtor believes that this Court can properly determine that the Buyer, the Successful Bidder, and any Back-Up Bidders are "good faith purchasers" pursuant to 11 U.S.C. § 363(m).

### E.    <u>The Court Has the Authority to Implement the Proposed Overbid Procedures</u>

Bankruptcy courts routinely exercise the discretion to approve reasonable sale procedures, including overbid procedures, breakup fees, and other mechanisms to promote bidding and to ensure that the sale is effectuated according to principles of good faith and fair dealing.  *See*, *e.g.*, *In re Integrated Resources, Inc.*, 135 B.R. 746, 750-51 (Bankr. S.D.N.Y. 1992); *In re Mama's Original Food Inc.*, 234 B.R. 500, 505 (C.D. Cal. 1999).  Presumably, the court's authority to approve sale procedures lies within the court's power to issue any order that is necessary or appropriate to carry out a § 363(b) sale.  *See* 11 U.S.C. § 105(a).  Bid procedures should stimulate bidding to obtain the highest value, and not discourage competition.  *See In re Mama's Original Food Inc.*, 234 B.R. at 505.

The Bid Procedures are fair and reasonable and should foster competitive bidding.  An established set of court-approved procedures will provide interested parties with certainty regarding the sale process and ensure fairness between bidders.  (*See* Moran Decl., at ¶ 6.)  The bid procedures contain necessary provisions and do not contain any onerous terms that would chill bidding by interested third parties.  The minimum initial bid amount is reasonable as, at $20,000, it represents approximately 1.0% of the Purchase Price and should not discourage bids.  To become a Qualified

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

Bidder, an interested party must provide information demonstrating the financial wherewithal to close and must commit to close if it is the winning bidder (upon Court approval). Overall, the bid procedures will help the Debtor secure the highest and best price for the Property and foster a fair, competitive, orderly bidding process among only financially capable bidders who can actually close.

## VI.    CONCLUSION

Based on the foregoing, the Debtor respectfully requests that the Court enter an order:

1.    Granting the Motion in its entirety;

2.    Authorizing the Debtor to sell the Property to the Buyer, the Successful Bidder, or the Back-Up Bidder, as is, where is, without representations or warranties, free and clear of any and all liens and interests pursuant to 11 U.S.C. § 363(b) and (f);

3.    Approving the terms of the Agreement attached as Exhibit "2";

4.    Determining that the Buyer, the Successful Bidder, and the Back-Up Bidder are "good faith purchasers" pursuant to 11 U.S.C. § 363(m);

5.    Authorizing the Debtor to pay the Broker's commission to the listing broker and any cooperating brokers as set forth herein, and ordinary costs of sale of the Property from the proceeds of sale;

6.    Authorizing the Debtor to pay the net proceeds of the sale to PNC Bank in partial satisfaction of its secured claim;

7.    Approving the overbid procedures set forth in this Motion;

8.    Authorizing the Debtor to execute any documents or take any actions reasonably necessary to effectuate the terms of the Agreement and consummate the sale of the Property;

9.    Waiving any requirements for lodging periods of the order granting this Motion imposed by Local Bankruptcy Rule 9021-1 and any other applicable bankruptcy rules;

10.    Waiving the stay of the order granting this Motion imposed by Federal Rule of Bankruptcy Procedure 6004(h) and any other applicable bankruptcy rules; and

/ / /

/ / /

/ / /

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

1       11.     For such other and further relief as the Court deems appropriate.

DATED:  November 25, 2025      ELKINS KALT WEINTRAUB REUBEN
GARTSIDE LLP

By: _____
     ROYE ZUR
     LAUREN GANS
     Attorneys for Debtor and Debtor-in-Possession
     Mowbray Waterman Property, LLC

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

## DECLARATION OF CODY MORAN

I, Cody Moran, declare:

1.      I am a licensed real estate professional employed by Lee & Associates Commercial Real Estate Services, Inc. - Riverside ("Broker").  I know each of the following facts to be true of my own personal knowledge, except as otherwise stated and, if called as a witness, I could and would competently testify with respect thereto.  I make this declaration in support of the *Motion for Order: (1) Authorizing Sale of Real Property Located at 386 S. Allen St., San Bernardino, CA Pursuant to 11 U.S.C. § 363(b) and (f); (2) Approving Overbid Procedures; (3) Approving Buyer, Successful Bidder, and Back-Up Bidder as Good-Faith Purchasers Pursuant to 11 U.S.C. § 363(m); and (4) Authorizing Proposed Payment of Net Proceeds of Sale* (the "Motion").  Unless otherwise defined in this declaration, all terms defined in the Motion are incorporated herein by this reference.

2.      The Broker was retained by the Debtor in or about November 2023 to market and sell the Property.  I am the real estate agent who personally handled the listing, marketing, and sale of the Property on behalf of the Debtor.  The Property was listed for sale in February 2025 at the price of $2,350,000.

3.      To date, numerous prospective buyers have toured the Property and I have received multiple written offers to purchase the Property, though some of them subsequently were withdrawn.

4.      I believe that the offer presented by the Buyer is the best offer received to date.

5.      Because the Buyer's offer represents the best offer obtained by listing the Property on the open market for over 24 months, I believe the proposed sale price is consistent with market value.

6.      I have reviewed the proposed overbid procedures and believe they are fair and reasonable, and should foster competitive bidding.  I believe that an established set of court-approved procedures will provide interested parties with certainty regarding the sale process and promote fairness among bidders.

/ / /

/ / /

/ / /

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

7.      I intend to notify all those who have expressed an interest in the Property of the date and time of the auction, and will provide them with a description of the overbid procedures.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the _25th_ day of November, 2025, at Riverside, California.

DocuSigned by:

_Cody Moran_

Cody Moran

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP<br>10345 W. Olympic Blvd.<br>Los Angeles, California 90064<br>Telephone: 310.746.4400 • Facsimile: 310.746.4499

## DECLARATION OF ROBIN ELAINE MOWBRAY

I, Robin Elaine Mowbray, declare as follows:

1.    I am the managing member of Mowbray Waterman Property, LLC (the "Debtor"), one of the debtors and debtors-in-possession in the above-captioned jointly-administered Chapter 11 cases.  I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently testify to the matters stated herein.  I make this declaration in support of the *Motion for Order: (1) Authorizing Sale of Real Property Located at 386 S. Allen St., San Bernardino, CA Pursuant to 11 U.S.C. § 363(b) and (f); (2) Approving Overbid Procedures; (3) Approving Buyer, Successful Bidder, and Back-Up Bidder as Good-Faith Purchasers Pursuant to 11 U.S.C. § 363(m); and (4) Authorizing Payment of Real Estate Broker's Commission and Ordinary Costs of Sale* (the "Motion").  Unless otherwise defined in this declaration, all terms defined in the Motion are incorporated herein by this reference.

2.    I obtained a preliminary title report from First American Title Company for the Property dated November 7, 2025.  A true and correct copy of the preliminary title report is attached hereto as **Exhibit 1**.

3.    A true and correct copy of the Agreement, with all addenda thereto, is attached hereto as **Exhibit 2**.  The Agreement represents the entirety of my agreement with the Buyer related to the Property.

4.    I do not have any connections with the Buyer and do not know the Buyer.  The sale of the Property to the Buyer was conducted at arm's length through my broker and the Buyer's broker.

I declare under penalty of perjury that the foregoing is true and correct.

Executed November 25 2025, at San Bernardino, California.

*Robin E. Mowbray*
Robin Elaine Mowbray

5631559

# EXHIBIT 1

**First American**

**Transaction Identification Data, for which the Company assumes no liability as set forth in Commitment Condition 5.e.:**

Issuing Agent: First American Title Insurance Company National Commercial Services
Issuing Office: 901 Via Piemonte, Suite 150, Ontario, CA 91764
Commitment No.: **NCS-1202042-ONT1**
Issuing Office File No.: NCS-1202042-ONT1
Property Address: 386 South Allen Street,San Bernardino, CA 92408
Reference No.: 386 South Allen St.
Revision No.: 04
Escrow Officer/Assistant: /
Phone: /
Email: /
Title Officer/Assistant: Roger Derilo/ IE Title Assistants
Phone: (909)510-5822/
Email: rderilo@firstam.com/ ietitleassistants@firstam.com

## SCHEDULE A

1.  Commitment Date: November 07, 2025 at 7:30 AM

2.  Policy to be issued:
    a.  ALTA® Standard Owner's Policy
        Proposed Insured: Boone Trucking Inc.
        Proposed Amount of Insurance: $1,950,000.00
        The estate or interest to be insured: See Item 3 below
    b.  2021 ALTA Policy - form(s) To Be Determined
        Proposed Insured: To Be Determined
        Proposed Amount of Insurance: $0.00
        The estate or interest to be insured: See Item 3 below

3.  The estate or interest in the Land at the Commitment Date is:

    Fee

4.  The Title is, at the Commitment Date, vested in:

    Mowbray Waterman Property, LLC, a California limited liability company

5.  The Land is described as follows:

    See Exhibit A attached hereto and made a part hereof

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First American Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.

 **First American**

Commitment for Title Insurance
California - 2021 v. 01.00 (07-01-2021)

Commitment No. NCS-1202042-ONT1

## SCHEDULE B, PART I—Requirements

All of the following Requirements must be met:

A.    The Proposed Insured must notify the Company in writing of the name of any party not referred to in this Commitment who will obtain an interest in the Land or who will make a loan on the Land. The Company may then make additional Requirements or Exceptions.

B.    Pay the agreed amount for the estate or interest to be insured.

C.    Pay the premiums, fees, and charges for the Policy to the Company.

D.    Documents satisfactory to the Company that convey the Title or create the Mortgage to be insured, or both, must be properly authorized, executed, delivered, and recorded in the Public Records.

E.    Releases(s) or Reconveyance(s) of Item(s): 25

F.    Other: None

G.    You must give us the following information:
a.    Any off-record leases, surveys, etc.
b.    Statement(s) of Identity, all parties.
c.    Other: None

The following additional requirements, as indicated by "X", must be met:

☒    H.    Provide information regarding any off-record matters, which may include, but are not limited to:  leases, recent works of improvement, or commitment statements in effect under the Environmental Responsibility Acceptance Act, Civil Code Section 850, et seq.

☒    I.    The Company's Owner's Affidavit form (attached hereto) must be completed and submitted prior to close in order to satisfy this requirement. This Commitment will then be subject to such further exceptions and/or requirements as may be deemed necessary.

☒    J.    An ALTA/NSPS survey of recent date, which complies with the current minimum standard detail requirements for ALTA/NSPS land title surveys, must be submitted to the Company for review. This Commitment will then be subject to such further exceptions and/or requirements as may be deemed necessary.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First American Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.

First American

Commitment for Title Insurance
California - 2021 v. 01.00 (07-01-2021)

☒     K.     The following LLC documentation is required from the seller:
a. a copy of the Articles of Organization.
b. a copy of the Operating Agreement, if applicable.
c. a Certificate of Good Standing and/or other evidence of current Authority to Conduct Business within the State.
d. express Company Consent to the current transaction.

☐     L.     The following partnership documentation is required:
a. a copy of the partnership agreement, including all applicable amendments thereto.
b. a Certificate of Good Standing and/or other evidence of current Authority to Conduct Business within the State.
c. express Partnership Consent to the current transaction.

☐     M.     The following corporation documentation is required:
a. a copy of the Articles of Incorporation.
b. a copy of the Bylaws, including all applicable Amendments thereto.
c. a Certificate of Good Standing and/or other evidence of current Authority to Conduct Business within the State.
d. express Corporate Resolution consenting to the current transaction.

☒     N.     Based upon the Company's review of that certain partnership/operating agreement dated Not disclosed for the proposed insured herein, the following requirements must be met: Any further amendments to said agreement must be submitted to the Company, together with an affidavit from one of the general partners or members stating that it is a true copy, that said partnership or limited liability company is in full force and effect, and that there have been no further amendments to the agreement. This Commitment will then be subject to such further requirements as may be deemed necessary.

☐     O.     A copy of the complete lease, as referenced in Schedule A, #3 herein, together with any amendments and/or assignments thereto, must be submitted to the Company for review, along with an affidavit executed by the present lessee stating that it is a true copy, that the lease is in full force and effect, and that there have been no further amendments to the lease. This Commitment will then be subject to such further requirements as may be deemed necessary.

☒     P.     Approval from the Company's Underwriting Department must be obtained for issuance of the policy contemplated herein and any endorsements requested thereunder. This Commitment will then be subject to such further requirements as may be required to obtain such approval.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First American Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.

**First American**

☒　　Q.　Potential additional requirements, if ALTA Extended coverage is contemplated hereunder, and work on the land has commenced prior to close, some or all of the following requirements, and any other requirements which may be deemed necessary, may need to be met:
a. The Company's "Indemnity Agreement I" must be executed by the appropriate parties.
b. Financial statements from the appropriate parties must be submitted to the Company for review.
c. A copy of the construction contract must be submitted to the Company for review.
d. An inspection of the Land must be performed by the Company for verification of the phase of construction.
e. The Company's "Mechanic's Lien Risk Addendum" form must be completed by a Company employee, based upon information furnished by the appropriate parties involved.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First American Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.

**First American**

Commitment for Title Insurance
California - 2021 v. 01.00 (07-01-2021)

Commitment No. NCS-1202042-ONT1

## SCHEDULE B, PART II—Exceptions

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This Commitment and the Policy treat any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document will be excepted from coverage.**

The Policy will not insure against loss or damage resulting from the terms and conditions of any lease or easement identified in Schedule A, and will include the following Exceptions unless cleared to the satisfaction of the Company:

1.  Any defect, lien, encumbrance, adverse claim, or other matter that appears for the first time in the Public Records or is created, attaches, or is disclosed between the Commitment Date and the date on which all of the Schedule B, Part I—Requirements are met.

2.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

3.  Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

4.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

5.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

6.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

7.  Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, geothermal resources, uranium, clay, rock, sand and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First American Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.

 **First American**

**Commitment for Title Insurance**
**California - 2021 v. 01.00 (07-01-2021)**

8.    General and special taxes and assessments for the fiscal year 2025-2026.

    First Installment:                    $3,715.17, OPEN
    Penalty:                               $0.00
    Second Installment:          $3,715.16, OPEN
    Penalty:                               $0.00
    Tax Rate Area:                 007012
    A. P. No.:                        0136-251-28-0-000

9.    General and special taxes and assessments for the fiscal year 2025-2026.

    First Installment:                    $1,277.63, OPEN
    Penalty:                               $0.00
    Second Installment:          $1,277.62, OPEN
    Penalty:                               $0.00
    Tax Rate Area:                 007012
    A. P. No.:                        0136-251-29-0-000

10.    General and special taxes and assessments for the fiscal year 2025-2026.

    First Installment:                    $2,298.77, OPEN
    Penalty:                               $0.00
    Second Installment:          $2,298.76, OPEN
    Penalty:                               $0.00
    Tax Rate Area:                 007012
    A. P. No.:                        0136-251-30-0-000

11.    General and special taxes and assessments for the fiscal year 2025-2026.

    First Installment:                    $3,715.17, OPEN
    Penalty:                               $0.00
    Second Installment:          $3,715.16, OPEN
    Penalty:                               $0.00
    Tax Rate Area:                 007012
    A. P. No.:                        0136-251-31-0-000

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First American Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.

First American

Commitment for Title Insurance
California - 2021 v. 01.00 (07-01-2021)

12.  General and special taxes and assessments for the fiscal year 2025-2026.

| | |
|---|---|
| First Installment: | $3,715.17, OPEN |
| Penalty: | $0.00 |
| Second Installment: | $3,715.16, OPEN |
| Penalty: | $0.00 |
| Tax Rate Area: | 007012 |
| A. P. No.: | 0136-251-40-0-000 |

13.  This item has been intentionally deleted.

14.  This item has been intentionally deleted.

15.  The lien of supplemental taxes, if any, assessed pursuant to Chapter 3.5 commencing with Section 75 of the California Revenue and Taxation Code.

16.  The rights, if any, of a city, public utility or special district, pursuant to Section 8345 et seq. of the California Streets and Highways Code, to preserve a public easement in Martin Street and a portion of Dorothy Street as the same was vacated by the document recorded October 8, 1926 as Book 146, Page 200 of Official Records.

The location of the easement cannot be determined from record information.

17.  An easement for construction and maintenance of sewer pipe line and incidental purposes, recorded June 18, 1928 as Book 382, Page 256 of Official Records.

| | |
|---|---|
| In Favor of: | The City of San Bernardino, a Municipal Corporation |
| Affects: | as described therein |

(Affects Parcel No. 3)

18.  An easement for water pipe lines and incidental purposes in the document recorded December 9, 1946 as Book 1970, Page 217 of Official Records.

The location of the easement cannot be determined from record information.

(Affects Parcel No. 1)

19.  Right of way for pipe line for the conveyance of water from the well located on Lot 7, block "C", Shay's Half Acres No. 2, over and across property herein described, and other property, as contained in the deed from R. H. Frazier, a widow, to Roscoe E. Darling, recorded August 31, 1934, in Book 989, Page 294, Official Records.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First American Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.

First American

The location of the easement cannot be determined from record information.

(Affects Parcel No. 3)

20. An easement for underground electrical supply systems and communication systems and incidental purposes, recorded March 27, 1990 as Instrument No. 90-115721 of Official Records.

| | |
|---|---|
| In Favor of: | Southern California Edison Company |
| Affects: | as described therein |

(Affects Parcel No. 2)

21. This item has been intentionally deleted.

22. Water rights, claims or title to water, whether or not shown by the Public Records.

23. Any facts, rights, interests or claims which would be disclosed by a correct ALTA/NSPS survey.

24. Rights of parties in possession.

25. A Deed of Trust to secure an original indebtedness of $20,000,000.00 recorded July 18, 2024 as Instrument No. 2024-0168380 of Official Records.

| | |
|---|---|
| Dated: | July 9, 2024 |
| Trustor: | Mowbray Waterman Property, LLC, a California limited liability company |
| Trustee: | Fidelity National Title Company, a California corporation |
| Beneficiary: | PNC Bank, National Association, a national banking association |

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First American Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.

**First American**

Commitment for Title Insurance
California - 2021 v. 01.00 (07-01-2021)

---

### INFORMATIONAL NOTES

**ALERT - CA Senate Bill 2 imposes an additional fee of $75 up to $225 at the time of recording on certain transactions effective January 1, 2018. Please contact your First American Title representative for more information on how this may affect your closing.**

1. The property covered by this report is vacant land.

2. According to the public records, there has been no conveyance of the land within a period of twenty-four months prior to the date of this report, except as follows:

   None

3. This preliminary report/commitment was prepared based upon an application for a policy of title insurance that identified land by street address or assessor's parcel number only. It is the responsibility of the applicant to determine whether the land referred to herein is in fact the land that is to be described in the policy or policies to be issued.

   The map attached, if any, may or may not be a survey of the land depicted thereon. First American Title Insurance Company expressly disclaims any liability for loss or damage which may result from reliance on this map except to the extent coverage for such loss or damage is expressly provided by the terms and provisions of this Commitment or the Policy, if any, to which the map is attached.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First American Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

---

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.

First American

Commitment for Title Insurance
California - 2021 v. 01.00 (07-01-2021)

Commitment No. NCS-1202042-ONT1

## EXHIBIT A

The Land referred to herein below is situated in the City of San Bernardino, County of San Bernardino, State of California, and is described as follows:

Parcel No. 1:

Lot 6 and The South 50 feet of Lots 12, 13, 14 and 15, Block "D", of SHAY'S HALF ACRES NO. 2, in the City of San Bernardino, County of San Bernardino, State of California, as per plat recorded in Book 23 of Maps, Page(s) 60 records of said county, and that portion of Dorothy Street, now vacated, lying between the North and South boundary lines of said Lot 6, extended West to the East line of the right of way of the Atchison, Topeka and Santa Fe Railroad: also that portion of Block 8, of the RANCHO SAN BERNARDINO, in the City of San Bernardino, as per plat recorded in Book 23 of Maps, Page(s) 60, records of said county, described as follows:

Beginning at a point 579.30 feet North of the Southeast corner of said Block 8; thence North 50 feet along the West line of Allen Street; Thence West 402.13 feet; more or less, to the East line of the right of way of the Atchison, Topeka and Santa Fe Railway; thence Southeasterly along said right of way line to the Northwest corner of Lot 7, in Block "E" of SHAY'S HALF ACRES no. 2, recorded in Book 23 of Maps, Page 60, records of said county; Thence East 395.21 feet to the Point of Beginning; being that parcel of land, as shown on plat recorded in Book 23 of Maps, Page(s) 60, records of said county, as Martin Street and portion of Dorothy Street.

Note: said Martin Street and portion of Dorothy Street were vacated by Ordinance No. 1305 of the Common Council of the City of San Bernardino, recorded October 8, 1926 in Book 146, Page(s) 200, Official Records.

Parcel No. 2:

Lot 5 and a portion of Lots 12, 13, 14 and 15 in Block "D" of SHAY'S A HALF ACRES NO. 2, and a portion of Dorothy Street abandoned, in the City of San Bernardino, County of San Bernardino, State of California, as per plat recorded in Book 23 of Maps, Page(s) 60, records of said county, described as a whole as follows:

Beginning at a point 679.30 feet North of the Southeast corner of Block 8, RANCHO SAN BERNARDINO, as per plat recorded in Book 7 of Maps, Page(s) 2, record of said county; Thence North along the West line of Allen Street 50 feet; Thence West 409.58 feet, more or less, to the East line of the right of way of the Atchison, Topeka and Santa Fe Railroad; thence Southeasterly along said right of way line to a point due West of the Point of Beginning; thence East to the Point of Beginning.

Parcel No. 3:

Lot 4 and that portion of Lots 12, 13, 14 and 15, Block "D", SHAYS HALF ACRES NO. 2, in the County of San Bernardino, State of California, as per plat recorded in Book 23 of Maps, Page(s) 60, records of said

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First American Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.

 **First American**

county, and that portion of Dorothy Street, as shown on said map, described as follows:

Beginning at a point on the West line of Allen Street, which point is 729.30 feet North of the Southeast corner of Block 8 of the RANCHO SAN BERNARDINO; thence North 50 feet along the West line of Allen Street; Thence West 424.48 feet, more or less, to the Easterly line of the Atchison, Topeka and Santa Fe Railroad right of way; thence Southeasterly along said right of way line to a point due West of the Point of Beginning; thence East 417.03 feet, more or less, to the Point of Beginning.

For conveyancing purposes only: APN 0136-251-28-0-000 (Affects Parcel No. 2);
0136-251-29-0-000 (Affects Lot 6 of Parcel No. 1);
0136-251-30-0-000 (Affects Portion of Parcel No. 1);
0136-251-31-0-000 (Affects Portion of Parcel No. 1); and
0136-251-40-0-000 (Affects Parcel No. 3)

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First American Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.

First American

Commitment for Title Insurance
California - 2021 v. 01.00 (07-01-2021)

## ALTA COMMITMENT FOR TITLE INSURANCE
### issued by
### FIRST AMERICAN TITLE INSURANCE COMPANY

## NOTICE

**IMPORTANT—READ CAREFULLY:** THIS COMMITMENT IS AN OFFER TO ISSUE ONE OR MORE TITLE INSURANCE POLICIES. ALL CLAIMS OR REMEDIES SOUGHT AGAINST THE COMPANY INVOLVING THE CONTENT OF THIS COMMITMENT OR THE POLICY MUST BE BASED SOLELY IN CONTRACT.

THIS COMMITMENT IS NOT AN ABSTRACT OF TITLE, REPORT OF THE CONDITION OF TITLE, LEGAL OPINION, OPINION OF TITLE, OR OTHER REPRESENTATION OF THE STATUS OF TITLE. THE PROCEDURES USED BY THE COMPANY TO DETERMINE INSURABILITY OF THE TITLE, INCLUDING ANY SEARCH AND EXAMINATION, ARE PROPRIETARY TO THE COMPANY, WERE PERFORMED SOLELY FOR THE BENEFIT OF THE COMPANY, AND CREATE NO EXTRACONTRACTUAL LIABILITY TO ANY PERSON, INCLUDING A PROPOSED INSURED.

THE COMPANY'S OBLIGATION UNDER THIS COMMITMENT IS TO ISSUE A POLICY TO A PROPOSED INSURED IDENTIFIED IN SCHEDULE A IN ACCORDANCE WITH THE TERMS AND PROVISIONS OF THIS COMMITMENT. THE COMPANY HAS NO LIABILITY OR OBLIGATION INVOLVING THE CONTENT OF THIS COMMITMENT TO ANY OTHER PERSON.

## COMMITMENT TO ISSUE POLICY

Subject to the Notice; Schedule B, Part I—Requirements; Schedule B, Part II—Exceptions; and the Commitment Conditions, First American Title Insurance Company, a Nebraska Corporation (the "Company"), commits to issue the Policy according to the terms and provisions of this Commitment. This Commitment is effective as of the Commitment Date shown in Schedule A for each Policy described in Schedule A, only when the Company has entered in Schedule A both the specified dollar amount as the Proposed Amount of Insurance and the name of the Proposed Insured.

If all of the Schedule B, Part I—Requirements have not been met within six months after the Commitment Date, this Commitment terminates and the Company's liability and obligation end.

**FIRST AMERICAN TITLE INSURANCE COMPANY**

Sally F. Tyler, President

Lisa W. Cornehl, Secretary

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First American Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

**First American**

Commitment for Title Insurance
California - 2021 v. 01.00 (07-01-2021)

## COMMITMENT CONDITIONS

1.  DEFINITIONS

    a.  "Discriminatory Covenant": Any covenant, condition, restriction, or limitation that is unenforceable under applicable law because it illegally discriminates against a class of individuals based on personal characteristics such as race, color, religion, sex, sexual orientation, gender identity, familial status, disability, national origin, or other legally protected class.

    b.  "Knowledge" or "Known": Actual knowledge or actual notice, but not constructive notice imparted by the Public Records.

    c.  "Land": The land described in Item 5 of Schedule A and improvements located on that land that by State law constitute real property. The term "Land" does not include any property beyond that described in Schedule A, nor any right, title, interest, estate, or easement in any abutting street, road, avenue, alley, lane, right-of-way, body of water, or waterway, but does not modify or limit the extent that a right of access to and from the Land is to be insured by the Policy.

    d.  "Mortgage": A mortgage, deed of trust, trust deed, security deed, or other real property security instrument, including one evidenced by electronic means authorized by law.

    e.  "Policy": Each contract of title insurance, in a form adopted by the American Land Title Association, issued or to be issued by the Company pursuant to this Commitment.

    f.  "Proposed Amount of Insurance": Each dollar amount specified in Schedule A as the Proposed Amount of Insurance of each Policy to be issued pursuant to this Commitment.

    g.  "Proposed Insured": Each person identified in Schedule A as the Proposed Insured of each Policy to be issued pursuant to this Commitment.

    h.  "Public Records": The recording or filing system established under State statutes in effect at the Commitment Date under which a document must be recorded or filed to impart constructive notice of matters relating to the Title to a purchaser for value without Knowledge. The term "Public Records" does not include any other recording or filing system, including any pertaining to environmental remediation or protection, planning, permitting, zoning, licensing, building, health, public safety, or national security matters.

    i.  "State": The state or commonwealth of the United States within whose exterior boundaries the Land is located. The term "State" also includes the District of Columbia, the Commonwealth of Puerto Rico, the U.S. Virgin Islands, and Guam.

    j.  "Title": The estate or interest in the Land identified in Item 3 of Schedule A.

2.  If all of the Schedule B, Part I—Requirements have not been met within the time period specified in the Commitment to Issue Policy, this Commitment terminates and the Company's liability and obligation end.

---

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First American Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

---

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.

First American

**3.** The Company's liability and obligation is limited by and this Commitment is not valid without:
   a.   the Notice;
   b.   the Commitment to Issue Policy;
   c.   the Commitment Conditions;
   d.   Schedule A;
   e.   Schedule B, Part I—Requirements; and
   f.   Schedule B, Part II—Exceptions; and
   g.   a counter-signature by the Company or its issuing agent that may be in electronic form.

**4.**   COMPANY'S RIGHT TO AMEND
The Company may amend this Commitment at any time. If the Company amends this Commitment to add a defect, lien, encumbrance, adverse claim, or other matter recorded in the Public Records prior to the Commitment Date, any liability of the Company is limited by Commitment Condition 5. The Company is not liable for any other amendment to this Commitment.

**5.**   LIMITATIONS OF LIABILITY
   a.   The Company's liability under Commitment Condition 4 is limited to the Proposed Insured's actual expense incurred in the interval between the Company's delivery to the Proposed Insured of the Commitment and the delivery of the amended Commitment, resulting from the Proposed Insured's good faith reliance to:
   i.     comply with the Schedule B, Part I—Requirements;
   ii.    eliminate, with the Company's written consent, any Schedule B, Part II—Exceptions; or
   iii.   acquire the Title or create the Mortgage covered by this Commitment.
   b.   The Company is not liable under Commitment Condition 5.a. if the Proposed Insured requested the amendment or had Knowledge of the matter and did not notify the Company about it in writing.
   c.   The Company is only liable under Commitment Condition 4 if the Proposed Insured would not have incurred the expense had the Commitment included the added matter when the Commitment was first delivered to the Proposed Insured.
   d.   The Company's liability does not exceed the lesser of the Proposed Insured's actual expense incurred in good faith and described in Commitment Condition 5.a. or the Proposed Amount of Insurance.
   e.   The Company is not liable for the content of the Transaction Identification Data, if any.
   f.   The Company is not obligated to issue the Policy referred to in this Commitment unless all of the Schedule B, Part I—Requirements have been met to the satisfaction of the Company.
   g.   The Company's liability is further limited by the terms and provisions of the Policy to be issued to the Proposed Insured.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First American Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

**First American**

Commitment for Title Insurance
California - 2021 v. 01.00 (07-01-2021)

**6.** LIABILITY OF THE COMPANY MUST BE BASED ON THIS COMMITMENT; CHOICE OF LAW AND CHOICE OF FORUM

  a. Only a Proposed Insured identified in Schedule A, and no other person, may make a claim under this Commitment.

  b. Any claim must be based in contract under the State law of the State where the Land is located and is restricted to the terms and provisions of this Commitment. Any litigation or other proceeding brought by the Proposed Insured against the Company must be filed only in a State or federal court having jurisdiction.

  c. This Commitment, as last revised, is the exclusive and entire agreement between the parties with respect to the subject matter of this Commitment and supersedes all prior commitment negotiations, representations, and proposals of any kind, whether written or oral, express or implied, relating to the subject matter of this Commitment.

  d. The deletion or modification of any Schedule B, Part II—Exception does not constitute an agreement or obligation to provide coverage beyond the terms and provisions of this Commitment or the Policy.

  e. Any amendment or endorsement to this Commitment must be in writing and authenticated by a person authorized by the Company.

  f. When the Policy is issued, all liability and obligation under this Commitment will end and the Company's only liability will be under the Policy.

**7.** IF THIS COMMITMENT IS ISSUED BY AN ISSUING AGENT
The issuing agent is the Company's agent only for the limited purpose of issuing title insurance commitments and policies. The issuing agent is not the Company's agent for closing, settlement, escrow, or any other purpose.

**8.** PRO-FORMA POLICY
The Company may provide, at the request of a Proposed Insured, a pro-forma policy illustrating the coverage that the Company may provide. A pro-forma policy neither reflects the status of Title at the time that the pro-forma policy is delivered to a Proposed Insured, nor is it a commitment to insure.

**9.** CLAIMS PROCEDURES
This Commitment incorporates by reference all Conditions for making a claim in the Policy to be issued to the Proposed Insured. Commitment Condition 9 does not modify the limitations of liability in Commitment Conditions 5 and 6.

**10.** CLASS ACTION
ALL CLAIMS AND DISPUTES ARISING OUT OF OR RELATING TO THIS COMMITMENT, INCLUDING ANY SERVICE OR OTHER MATTER IN CONNECTION WITH ISSUING THIS COMMITMENT, ANY BREACH OF A COMMITMENT PROVISION, OR ANY OTHER CLAIM OR DISPUTE ARISING OUT OF OR RELATING TO THE TRANSACTION GIVING RISE TO THIS COMMITMENT, MUST BE BROUGHT IN AN INDIVIDUAL CAPACITY. NO PARTY MAY SERVE AS PLAINTIFF, CLASS MEMBER, OR PARTICIPANT IN ANY CLASS OR REPRESENTATIVE PROCEEDING. ANY POLICY ISSUED PURSUANT TO THIS COMMITMENT WILL CONTAIN A CLASS ACTION CONDITION.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First American Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.

 *First American*

**Commitment for Title Insurance**
**California - 2021 v. 01.00 (07-01-2021)**

**11.** ARBITRATION

The Policy contains an arbitration clause. All arbitrable matters when the Proposed Amount of Insurance is $2,000,000 or less may be arbitrated at the election of either the Company or the Proposed Insured as the exclusive remedy of the parties. A Proposed Insured may review a copy of the arbitration rules at http://www.alta.org/arbitration.

---

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First American Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.

# EXHIBIT 2



# STANDARD OFFER, AGREEMENT AND ESCROW INSTRUCTIONS
# FOR PURCHASE OF REAL ESTATE
## (Vacant Land)

Dated:  September 29, 2025

**1.  Buyer.**

1.1   Boone Trucking, Inc. and/or Assignee  , ("**Buyer**") hereby offers to purchase the real property, hereinafter described, from the owner thereof ("**Seller**") (collectively, the "**Parties**" or individually, a "**Party**"), through an escrow ("**Escrow**") to close ~~30 or~~  15  days after the waiver or satisfaction of the Buyer's Contingencies,  ("**Expected Closing Date**") to be held by  Town & Country Escrow Corporation (Attn: Pamela Walker)  ("**Escrow Holder**") whose address is  1030 La Bonita Drive, Suite 338, San Marcos, CA 92078 , Phone No.  951-737-8860 , Facsimile No. ____ upon the terms and conditions set forth in this agreement ("**Agreement**").  Buyer shall have the right to assign Buyer's rights hereunder, but any such assignment shall not relieve Buyer of Buyer's obligations herein unless Seller expressly releases Buyer.

1.2   The term "**Date of Agreement**" as used herein shall be the date when by execution and delivery (as defined in paragraph 20.2) of this document or a subsequent counteroffer thereto, Buyer and Seller have reached agreement in writing whereby Seller agrees to sell, and Buyer agrees to purchase, the Property upon terms accepted by both Parties.

**2.  Property.**

2.1   The real property ("**Property**") that is the subject of this offer consists of (insert a brief physical description)  approximately 1.9 acres on five separate parcels  is located in the County of  San Bernardino , is commonly known as (street address, city, state, zip)  386 S. Allen Street, San Bernardino, CA 92408  and is legally described as:  to be provided through Escrow  (APN:  0136-251-28/29/30/31/40 .)

2.2   If the legal description of the Property is not complete or is inaccurate, this Agreement shall not be invalid and the legal description shall be completed or corrected to meet the requirements of  First American Title Company (Attn: Roger Derilo)  ("**Title Company**"), which shall issue the title policy hereinafter described.

2.3   The Property includes, at no additional cost to Buyer, the permanent improvements thereon, including those items which pursuant to applicable law are a part of the property, as well as the following items, if any, owned by Seller and at present located on the Property:  N/A  (collectively, the "**Improvements**").

2.4   Except as provided in Paragraph 2.3, the Purchase Price does not include Seller's personal property, furniture and furnishings, and  N/A  all of which shall be removed by Seller prior to Closing.

**3.  Purchase Price.**

3.1   The purchase price ("**Purchase Price**") to be paid by Buyer to Seller for the Property shall be ☑  $1,950,000.00 , ~~or (complete only if purchase price will be determined based on a per unit cost instead of a fixed price) ____ per unit.  The unit used to determine the Purchase Price shall be: ☐ lot ☐ acre ☐ square foot ☐ other ____ prorating areas of less than a full unit.  The number of units shall be based on a calculation of total area of the Property as certified to the Parties by a licensed surveyor in accordance with paragraph 9.1(g).  However, the following rights of way and other areas will be excluded from such calculation: ____~~.  The Purchase Price shall be payable as follows:

*(Strike any not applicable)*

(a)   Cash down payment, including the Deposit as defined in paragraph 4.3 (or if an all cash transaction, the Purchase Price):

~~(b)   Amount of "New Loan" as defined in paragraph 5.1, if any:~~

~~(c)   Buyer shall take title to the Property subject to and/or assume the following existing deed(s) of trust ("**Existing Deed(s) of Trust**") securing the existing promissory note(s) ("**Existing Note(s)**"):~~
~~(i)   An Existing Note ("**First Note**") with an unpaid principal balance as of the Closing of approximately:~~

~~Said First Note is payable at ____ per month, including interest at the rate of ____% per annum until paid (and/or the entire unpaid balance is due on ____).~~
~~(ii)   An Existing Note ("**Second Note**") with an unpaid principal balance as of the Closing of approximately:~~

~~Said Second Note is payable at ____ per month, including interest at the rate of ____% per annum until paid (and/or the entire unpaid balance is due on ____).~~
~~(d)   Buyer shall give Seller a deed of trust ("**Purchase Money Deed of Trust**") on the property, to secure the promissory note of Buyer to Seller described in paragraph 6 ("**Purchase Money Note**") in the amount of:~~

3.2   If Buyer is taking title to the Property subject to, or assuming, an Existing Deed of Trust and such deed of trust permits the beneficiary to demand payment of fees including, but not limited to, points, processing fees, and appraisal fees as a condition to the transfer of the Property, Buyer agrees to pay such fees up to a maximum of 1.5% of the unpaid principal balance of the applicable Existing Note.

**4.  Deposits.**

4.1  ~~Buyer has delivered to Broker a check in the sum of ____, payable to Escrow Holder, to be delivered by Broker to Escrow Holder within 2 or ____ business days after both Parties have executed this Agreement and the executed Agreement has been delivered to Escrow Holder,~~ or ☑ within 2 or ____ business days after both Parties have executed this Agreement and the executed Agreement has been delivered to Escrow Holder Buyer shall deliver to Escrow Holder a check in the sum of  $65,000.00 .  If said check is not received by Escrow Holder within said time period then Seller may elect to unilaterally terminate this transaction by giving written notice of such election to Escrow Holder whereupon neither Party shall have any further liability to the other under this Agreement.  Should Buyer and Seller not enter into an agreement for purchase and sale, Buyer's check or funds shall, upon request by Buyer, be promptly returned to Buyer.

4.2   Additional deposits:

(a)   Within 5 business days after the Date of Agreement, Buyer shall deposit with Escrow Holder the additional sum of ____ to be applied



INITIALS                                        INITIALS

to the Purchase Price at the Closing.

b Within 5 business days after the contingencies discussed in paragraph 9.1 a through m are approved or waived, Buyer shall deposit with Escrow Holder the additional sum of ____ to be applied to the Purchase Price at the Closing.

c If an Additional Deposit is not received by Escrow Holder within the time period provided then Seller may notify Buyer, Escrow Holder, and Brokers, in writing that, unless the Additional Deposit is received by Escrow Holder within 2 business days following said notice, the Escrow shall be deemed terminated without further notice or instructions.

4.3 Escrow Holder shall deposit the funds deposited with it by Buyer pursuant to paragraphs 4.1 and 4.2 (collectively the "**Deposit**", in a State or Federally chartered bank in an interest bearing account whose term is appropriate and consistent with the timing requirements of this transaction. The interest therefrom shall accrue to the benefit of Buyer, who hereby acknowledges that there may be penalties or interest forfeitures if the applicable instrument is redeemed prior to its specified maturity. Buyer s Federal Tax Identification Number is ____ . NOTE: Such interest bearing account cannot be opened until Buyer s Federal Tax Identification Number is provided.

4.4 Notwithstanding the foregoing, within 5 days after Escrow Holder receives the monies described in paragraph 4.1 above, Escrow Holder shall release $100 of said monies to Seller as and for independent consideration for Seller s execution of this Agreement and the granting of the contingency period to Buyer as herein provided. Such independent consideration is non-refundable to Buyer but shall be credited to the Purchase Price in the event that the purchase of the Property is completed.

4.5 pon waiver of all of Buyer s contingencies the Deposit shall become non-refundable but applicable to the Purchase Price except in the event of a Seller breach, or in the event that the Escrow is terminated pursuant to the provisions of Paragraph 9.1 n (Destruction, Damage or Loss or 9.1 o Material Change .

. **Financing Contingency.** *(Strike i not applicable)*

5.1 This offer is contingent upon Buyer obtaining from an insurance company, financial institution or other lender, a commitment to lend to Buyer a sum equal to at least ____ of the Purchase Price, on terms acceptable to Buyer. Such loan "**New Loan**" shall be secured by a first deed of trust or mortgage on the Property. If this Agreement provides for Seller to carry back junior financing, then Seller shall have the right to approve the terms of the New Loan. Seller shall have days from receipt of the commitment setting forth the proposed terms of the New Loan to approve or disapprove of such proposed terms. If Seller fails to notify Escrow Holder, in writing, of the disapproval within said days it shall be conclusively presumed that Seller has approved the terms of the New Loan.

5.2 **If Buyer shall fail to notify its Bro er, Escrow Holder and Seller, in writing within** ___45___ **days following the Date of Agreement, that the New Loan has not een o tained, it shall e conclusively presumed that Buyer has either o tained said New Loan or has waived this New Loan contingency.**

5.3 If Buyer shall notify its Broker, Escrow Holder and Seller, in writing, within the time specified in paragraph 5.2 hereof, that Buyer has not obtained said New Loan, this Agreement shall be terminated, and Buyer shall be entitled to the prompt return of the Deposit, plus any interest earned thereon, less only Escrow Holder and Title Company cancellation fees and costs, which Buyer shall pay.

. **Seller Financing.** Purchase Money Note . *(Strike i not applicable)*

~~6.1 If Seller approves Buyer s financials see paragraph 6.5 the Purchase Money Note shall provide for interest on unpaid principal at the rate of ____ per annum, with principal and interest paid as follows: ____ . The Purchase Money Note and Purchase Money Deed of Trust shall be on the current forms commonly used by Escrow Holder, and be junior and subordinate only to the Existing Note s and/or the New Loan expressly called for by this Agreement.~~

~~6.2 The Purchase Money Note and/or the Purchase Money Deed of Trust shall contain provisions regarding the following see also paragraph 10.3 b :~~

~~a repay ent. Principal may be prepaid in whole or in part at any time without penalty, at the option of the Buyer.~~

~~b ate er. A late charge of 6 shall be payable with respect to any payment of principal, interest, or other charges, not made within 10 days after it is due.~~

~~c e n Sale. In the event the Buyer sells or transfers title to the Property or any portion thereof, then the Seller may, at Seller s option, require the entire unpaid balance of said Note to be paid in full.~~

~~6.3 If the Purchase Money Deed of Trust is to be subordinate to other financing, Escrow Holder shall, at Buyer s expense prepare and record on Seller s behalf a request for notice of default and/or sale with regard to each mortgage or deed of trust to which it will be subordinate.~~

~~6.4 WARNING CALIFORNIA LAW DOES NOT ALLOW DEFICIENC UDGEMENTS ON SELLER FINANCING. IF BU ER ULTIMATEL DEFAULTS ON THE LOAN, SELLER S SOLE REMED IS TO FORECLOSE ON THE PROPERT .~~

~~6.5 Seller s obligation to provide financing is contingent upon Seller s reasonable approval of Buyer s financial condition. Buyer to provide a current financial statement and copies of its Federal tax returns for the last 3 years to Seller within 10 days following the Date of Agreement. Seller has 10 days following receipt of such documentation to satisfy itself with regard to Buyer s financial condition and to notify Escrow Holder as to whether or not Buyer s financial condition is acceptable. If Seller fails to notify Escrow Holder, in writing, of the disapproval of this contingency within said time period, it shall be conclusively presumed that Seller has approved Buyer s financial condition. If Seller is not satisfied with Buyer s financial condition or if Buyer fails to deliver the required documentation then Seller may notify Escrow Holder in writing that Seller Financing will not be available, and Buyer shall have the option, within 10 days of the receipt of such notice, to either terminate this transaction or to purchase the Property without Seller financing. If Buyer fails to notify Escrow Holder within said time period of its election to terminate this transaction then Buyer shall be conclusively presumed to have elected to purchase the Property without Seller financing. If Buyer elects to terminate, Buyer s Deposit shall be refunded less Title Company and Escrow Holder cancellation fees and costs, all of which shall be Buyer s obligation.~~

. **Real Estate Bro ers.**

.1 Each Party acknowledges receiving a Disclosure Regarding Real Estate Agency Relationship, confirms and consents to the following agency relationships in this transaction with the following real estate broker s "**Bro ers**" and/or their agents Agent s :

Seller s Brokerage Firm Lee & Associate Commercial Real Estate Services, Inc. - Riverside License No. 01048055 is the broker of check one : the Seller or ☑ both the Buyer and Seller dual agent .

Seller s Agent Cody Moran / Les Copelin License No. 02036603 / 00995220 is check one : the Seller s Agent salesperson or broker associate or ☑ both the Seller s Agent and the Buyer s Agent dual agent .

Buyer s Brokerage Firm Lee & Associates Commercial Real Estate Services, Inc. - Riverside License No. 01048055 is the broker of check one : the Buyer or ☑ both the Buyer and Seller dual agent .

Buyer s Agent Toby Tewell License No. 01822772 is check one : the Buyer s Agent salesperson or broker associate or ☑ both the Buyer s Agent and the Seller s Agent dual agent .

The Parties acknowledge that other than the Brokers and Agents listed above, there are no other brokers representing the Parties and Buyer shall pay any fees and/or commissions under this Agreement. Buyer shall use the services of Buyer s Broker exclusively in connection with any and all negotiations and offers with respect to the Property for a period of 1 year from the date inserted for reference purposes at the top of page 1.

.2 Buyer and Seller each represent and warrant to the other that he/she/it has had no dealings with any person, firm, broker, agent or finder in connection with the negotiation of this Agreement and/or the consummation of the purchase and sale contemplated herein, other than the Brokers and Agents named in paragraph .1, and no broker, agent or other person, firm or entity, other than said Brokers and Agents is/are entitled to any commission or finder s fee in connection with this transaction as the result of any dealings or acts of such Party. Buyer and Seller do each hereby agree to indemnify, defend, protect and hold the other harmless from and against any costs, expenses or liability for compensation,

INITIALS ___KM___      INITIALS ___TB___

© 2019 AIR CRE. All Rights Reserved.
Last Edited: 9/29/2025 10:34 AM

commission or charges which may be claimed by any broker  agent  finder or other similar party other than said named   rokers and  gents by reason of any dealings or act of the indemnifying Party

**8    Escrow and Closing**

pon acceptance hereof by Seller this   greement  including any counteroffers incorporated herein by the Parties, shall constitute not only the agreement of purchase and sale between   uyer and Seller  but also instructions to   scrow   older for the consummation of the   greement through the  scrow   older   scrow   older shall not prepare any further escrow instructions restating or amending the   greement unless specifically so instructed by the Parties or a   roker herein  Subject to the reasonable approval of the Parties,  scrow   older may however  include its standard general escrow provisions  In the event that there is any conflict between the provisions of the   greement and the provisions of any additional escrow instructions the provisions of the   greement shall prevail as to the Parties and the  scrow   older

s soon as practical after the receipt of this   greement and any relevant counteroffers,  scrow   older shall ascertain the  ate of greement as defined in paragraphs   and   and advise the Parties and   rokers  in writing, of the date ascertained

scrow   older is hereby authorized and instructed to conduct the  scrow in accordance with this   greement  applicable law and custom and practice of the community in which  scrow   older is located  including any reporting requirements of the Internal Revenue  ode  In the event of a conflict between the law of the state where the Property is located and the law of the state where the  scrow   older is located  the law of the state where the Property is located shall prevail

Subject to satisfaction of the contingencies herein described  scrow   older shall close this escrow  the **"Closing"**  by recording a general warranty deed  a grant deed in   alifornia  and the other documents required to be recorded  and by disbursing the funds and documents in accordance with this   greement

uyer and Seller shall each pay one half of the  scrow   older s charges and Seller shall pay the usual recording fees and any required documentary transfer taxes  Seller shall pay the premium for a standard coverage owner s or joint protection policy of title insurance   See also paragraph

scrow   older shall verify that all of   uyer s contingencies have been satisfied or waived prior to   losing  The matters contained in paragraphs   subparagraphs  b  c  d  e  g  i  n and o   and   are  however  matters of agreement between the Parties only and are not instructions to  scrow   older

7  If this transaction is terminated for non satisfaction and non waiver of a   uyer s Contingency, as defined in Paragraph   or disapproval of any other matter subject to   uyer s approval  then neither of the Parties shall thereafter have any liability to the other under this   greement except to the extent of a breach of any affirmative covenant or warranty in this   greement  In the event of such termination,   uyer shall  subject to the provisions of paragraph   be promptly refunded all funds deposited by   uyer with  scrow   older  less only the $   provided for in paragraph   and the Title   ompany and  scrow   older cancellation fees and costs  all of which shall be   uyer s obligation  If this transaction is terminated as a result of Seller s breach of this   greement then Seller shall pay the Title   ompany and  scrow   older cancellation fees and costs

The   losing shall occur on the  xpected   losing   ate or as soon thereafter as the  scrow is in condition for   losing; provided  however that if the   losing does not occur by the  xpected   losing   ate is not extended by mutual instructions of the Parties, a Party not then in default under this   greement may notify the other Party  scrow   older and   rokers in writing that  unless the   losing occurs within   business days following said notice, the  scrow shall be deemed terminated without further notice or instructions.

xcept as otherwise provided herein  the termination of  scrow shall not relieve or release either Party from any obligation to pay  scrow   older s fees and costs or constitute a waiver  release or discharge of any breach or default that has occurred in the performance of the obligations, agreements  covenants or warranties contained therein

If this  scrow is terminated for any reason other than Seller s breach or default  then as a condition to the return of   uyer s deposit   uyer shall within   days after written request deliver to Seller  at no charge  copies of all surveys  engineering studies  soil reports  maps  master plans feasibility studies and other similar items prepared by or for   uyer that pertain to the Property

**9    Contingencies to Closing**

IF  BEFORE E  PIRATION OF THE APPLICABLE TIME  BU  ER FAILS TO PRO  IDE ESCROW HOLDER WRITTEN NOTICE OF BU  ER S DISAPPRO  AL OF AN   OF BU  ER S CONTINGENCIES OR AN   OTHER MATTER THAT IS SUB ECT TO BU  ER S APPRO  AL IN THIS AGREEMENT  THEN BU  ER SHALL BE CONCLUSI  EL   DEEMED TO HA  E SATISFIED SUCH BU  ER S CONTINGENCIES AND/OR APPRO  ED OF SUCH OTHER MATTERS  If a number of days is completed in any of the optional spaces in subparagraphs   a through m  then such number shall apply and override the pre printed number even if the pre printed number is not stricken  The   losing of this transaction is contingent upon the satisfaction or waiver of the following contingencies:

a   i   lo   r  Seller shall make to   uyer through  scrow all of the applicable disclosures required by law  See  IR  R   **"AIR"** standard form entitled **"Seller s Mandatory Disclosure Statement"** and provide   uyer with a completed Property Information Sheet   **"Property Information Sheet"** concerning the Property  duly executed by or on behalf of Seller in the current form or equivalent to that published by the  IR within ~~or~~ __ days following the  ate of   greement   uyer has   days from the receipt of said disclosures to approve or disapprove the matters disclosed

b   y i l Inspection   uyer has  ~~or~~ 45   days following the ~~receipt of the Property Information Sheet or the~~  ate of   greement ~~whichever is later~~ to satisfy itself with regard to the physical aspects and size of the Property

c   H   rdo   t n  Conditions R port   uyer has  ~~or~~ 45   days following the ~~receipt of the Property Information Sheet or the~~  ate of   greement ~~whichever is later~~ to satisfy itself with regard to the environmental aspects of the Property  Seller recommends that   uyer obtain a  azardous Substance Conditions Report concerning the Property and relevant adjoining properties.   ny such report shall be paid for by   uyer   **"Ha ardous Su  stance"** for purposes of this   greement is defined as any substance whose nature and  or quantity of existence  use  manufacture  disposal or effect, render it subject to   ederal  state or local regulation, investigation, remediation or removal as potentially injurious to public health or welfare   **"Ha ardous Su  stance Condition"** for purposes of this   greement is defined as the existence on  under or relevantly adjacent to the Property of a  azardous Substance that would require remediation and  or removal under applicable   ederal  state or local law

d   oil Inspection   uyer has  ~~or~~ 45   days following the ~~receipt of the Property Information Sheet or the~~  ate of   greement ~~whichever is later~~ to satisfy itself with regard to the condition of the soils on the Property  Seller recommends that   uyer obtain a soil test report   ny such report shall be paid for by   uyer  Seller shall provide   uyer copies of any soils report that Seller may have within   days following the  ate of   greement

e   Go   rn   nt l Appro   l    uyer has  ~~or~~ 45   days following the   ate of   greement to satisfy itself with regard to approvals and permits from governmental agencies or departments which have or may have jurisdiction over the Property and which   uyer deems necessary or desirable in connection with its intended use of the Property  including  but not limited to  permits and approvals required with respect to zoning  planning  building and safety  fire, police  handicapped  and   mericans with Disabilities   ct requirements  transportation and environmental matters.
NOT   Past uses of the Property may no longer be allowed  In the event that the Property must be rezoned  it is   uyer s responsibility to obtain the rezoning from the appropriate government agencies  Seller shall sign all documents   uyer is required to file in connection with rezoning  conditional use permits and or other  development approvals

f   Conditions o Title   scrow   older shall cause a current commitment for title insurance  **"Title Commitment"** concerning the Property issued by the Title   ompany as well as legible copies of all documents referred to in the Title   ommitment  **"Underlying Documents"** and a scaled and dimensioned plot showing the location of any easements to be delivered to   uyer within  ~~or~~ __ days following the  ate of   greement   uyer has   days from the receipt of the Title   ommitment  the   nderlying   ocuments and the plot plan to satisfy itself with regard to the condition of title. The disapproval by   uyer of any monetary encumbrance, which by the terms of this   greement is not to remain against the Property after the   losing shall not be considered a failure of this contingency, as Seller shall have the obligation, at Seller s expense to satisfy

INITI  LS                                                    INITI  LS

©    IR  R   ll Rights Reserved                                          Last   dited        M
O   L    Revised                                                    Page   of

and remove such disapproved monetary encumbrance at or before the losing

g. *S r ey*  uyer has  ~~or~~ 45  days following the ~~receipt of the Title ommitment and nderlying ocuments~~ Date of Agreement to satisfy itself with regard to any  LT title supplement based upon a survey prepared to merican Land Title Association "**ALTA**" standards for an owner s policy by a licensed surveyor showing the legal description and boundary lines of the Property any easements of record and any improvements poles structures and things located within  feet of either side of the Property boundary lines  ny such survey shall be prepared at uyer s direction and expense If uyer has obtained a survey and approved the LT title supplement uyer may elect within the period allowed for uyer s approval of a survey to have an  LT extended coverage owner s form of title policy in which event uyer shall pay any additional premium attributable thereto

h. *Existing ea e and enancy State ent*  Seller shall within  ~~or~~  days following the ate of greement provide both uyer and scrow older with legible copies of all Leases subleases or rental arrangements (collectively, "**Existing Leases**" affecting the Property and with a tenancy statement "**Estoppel Certificate**" in the latest form or equivalent to that published by the  IR executed by Seller and or each tenant and subtenant of the Property  Seller shall use its best efforts to have each tenant complete and execute an  stoppel Certificate  If any tenant fails or refuses to provide an  stoppel Certificate then Seller shall complete and execute an  stoppel Certificate for that tenancy  uyer has  days from the receipt of said Existing Leases and  stoppel Certificates to satisfy itself with regard to the  xisting Leases and any other tenancy issues

i. ~~*ner* Association  Seller shall within  or  days following the ate of greement provide uyer with a statement and transfer package from any owner s association servicing the Property  Such transfer package shall at a minimum include copies of the association's bylaws articles of incorporation, current budget and financial statement  uyer has  days from the receipt of such documents to satisfy itself with regard to the association~~

j. *t er A ree ent*  Seller shall within  ~~or~~ days following the ate of greement provide uyer with legible copies of all other agreements "**Other Agreements**" known to Seller that will affect the Property after losing  uyer has  days from the receipt of said Other greements to satisfy itself with regard to such greements

k. *inancin*  If paragraph  hereof dealing with a financing contingency has not been stricken  the satisfaction or waiver of such New Loan contingency.

l. ~~*Existing ote*  If paragraph  c has not been stricken  Seller shall within  or  days following the ate of greement provide uyer with legible copies of the Existing Notes  Existing eeds of Trust and related agreements collectively, "**Loan Documents**" to which the Property will remain subject after the losing scrow older shall promptly request from the holders of the Existing Notes a beneficiary statement "**Beneficiary Statement**" confirming  the amount of the unpaid principal balance  the current interest rate  and the date to which interest is paid and  the nature and amount of any impounds held by the beneficiary in connection with such loan  uyer has  or  days following the receipt of the Loan ocuments and Beneficiary Statements to satisfy itself with regard to such financing  uyer s obligation to close is conditioned upon uyer being able to purchase the Property without acceleration or change in the terms of any Existing Notes or charges to uyer except as otherwise provided in this greement or approved by uyer provided  however  uyer shall pay the transfer fee referred to in paragraph hereof  Likewise if Seller is to carry back a Purchase Money Note then Seller shall within  or  days following the ate of greement provide uyer with a copy of the proposed Purchase Money Note and Purchase Money eed of Trust  uyer has  or  days from the receipt of such documents to satisfy itself with regard to the form and content thereof~~

m. *er onal roperty*  In the event that any personal property is included in the Purchase Price  uyer has  ~~or~~ 45  days following the ate of greement to satisfy itself with regard to the title condition of such personal property  Seller recommends that  uyer obtain a report  ny such report shall be paid for by  uyer  Seller shall provide  uyer copies of any liens or encumbrances affecting such personal property that it is aware of within  ~~or~~ days following the ate of greement

n. *Destruction, a a eor o*  Subsequent to the ate of greement and prior to losing there shall not have occurred a destruction of or damage or loss to the Property or any portion thereof from any cause whatsoever which would cost more than $ to repair or cure If the cost of repair or cure is $ or less  Seller shall repair or cure the loss prior to the losing  uyer shall have the option, within  days after receipt of written notice of a loss costing more than $ to repair or cure to either terminate this greement or to purchase the Property notwithstanding such loss  but without deduction or offset against the Purchase Price  If the cost to repair or cure is more than $ and uyer does not elect to terminate this greement uyer shall be entitled to any insurance proceeds applicable to such loss nless otherwise notified in writing, scrow older shall assume no such destruction, damage or loss has occurred prior to losing

o. *Material an e*  uyer shall have  days following receipt of written notice of a Material hange within which to satisfy itself with regard to such change "**Material Change**" shall mean a substantial adverse change in the use occupancy tenants title, or condition of the Property that occurs after the date of this offer and prior to the losing  nless otherwise notified in writing, scrow older shall assume that no Material hange has occurred prior to the losing

p. *Seller er or ance*  The delivery of all documents and the due performance by Seller of each and every undertaking and agreement to be performed by Seller under this greement

q. *rokera e ee*  Payment at the losing of such brokerage fee as is specified in this greement or later written instructions to scrow older executed by Seller and rokers "**Bro erage Fee**" It is agreed by the Parties and scrow older that rokers are a third party beneficiary of this greement insofar as the rokerage ee is concerned and that no change shall be made with respect to the payment of the rokerage ee specified in this greement without the written consent of rokers

The contingencies specified in subparagraphs  a through m are for the benefit of and may be waived by  uyer and are referred to collectively as "**Buyer's Contingencies**" and individually as a "**Buyer's Contingency** "

uyer s timely and written disapproval or conditional approval of a uyer s Contingency or any other matter that is subject to uyer s approval in this greement shall constitute disapproval thereof "**Disapproved Item s** "  oncurrent with notice of a isapproved Item uyer may make a request to Seller regarding such  isapproved Item "**Buyer's Re uest**" If uyer fails to make a timely and written uyer s Request then this greement shall terminate due to the non satisfaction and non waiver of a contingency. Seller may respond to a uyer s Request within  days following uyer s receipt thereof "**Seller's Response**"  Seller s acceptance of a uyer s Request shall amend this greement accordingly If Seller fails to provide a timely and written Seller s Response then Seller s Response shall be deemed to be a rejection of uyer s Request  uyer may within  days following the earlier of uyer s receipt of a Seller s Response which is not an acceptance of uyer s Request or the date of Seller s deemed rejection of a uyer s Request "**Buyer's Reply Period**" reply to a Seller s Response "**Buyer's Reply**" and elect to i terminate this greement due to the non satisfaction and non waiver of the applicable contingency, ii accept the Seller s Response in which event this greement shall be amended accordingly or iii withdraw uyer s Request and waive the isapproved Item in which event uyer shall accept the Property subject to the isapproved Item If uyer fails to provide a timely and written uyer s Reply then uyer shall be deemed to have elected to terminate this greement as of the end of the uyer s Reply Period  The date uyer accepts a Seller s Response or withdraws a uyer s Request and waives a isapproved Item shall be the date of uyer s approval of the isapproved Item Party shall provide to scrow older copy of all notices of a isapproved Item uyer s Request Seller s Response and uyer s Reply and scrow older shall promptly provide copies thereof to the other Party nless the Parties in writing agree otherwise if the xpected losing ate is a specific calendar date and a uyer s Reply Period expires after such specific calendar date then notwithstanding paragraph the xpected losing ate shall be extended to be business days after the earlier of the date uyer withdraws a uyer s Request and waives the applicable isapproved Item or uyer accepts the applicable Seller s Response

The Parties acknowledge that extensive local state and ederal legislation establish broad liability upon owners and or users of real property for the investigation and remediation of azardous Substances The determination of the existence of a azardous Substance Condition and the evaluation of the impact of such a condition are highly technical and beyond the expertise of rokers The Parties acknowledge that they have been advised by rokers to consult their own technical and legal experts with respect to the possible presence of azardous Substances on the

Property or adjoining premises, and Buyer and Seller are not relying upon any investigation by or statement of Brokers with respect thereto. The Parties hereby assume all responsibility for the impact of such Hazardous Substances upon their respective interests herein.

**10.   Documents Required at or Before Closing.**

10.1 Five days prior to the Closing date Escrow Holder shall obtain an updated Title Commitment concerning the Property from the Title Company and provide copies thereof to each of the Parties.

10.2 Seller shall deliver to Escrow Holder in time for delivery to Buyer at the Closing:

(a)   Grant or general warranty deed, duly executed and in recordable form, conveying fee title to the Property to Buyer.

(b)   If applicable, the Beneficiary Statements concerning Existing Note(s).

(c)   If applicable, the Existing Leases and Other Agreements together with duly executed assignments thereof by Seller and Buyer. The assignment of Existing Leases shall be on the most recent Assignment and Assumption of Lessor's Interest in Lease form published by the AIR or its equivalent.

(d)   An affidavit executed by Seller to the effect that Seller is not a "foreign person" within the meaning of Internal Revenue Code Section 1445 or successor statutes. If Seller does not provide such affidavit in form reasonably satisfactory to Buyer at least 3 business days prior to the Closing, Escrow Holder shall at the Closing deduct from Seller's proceeds and remit to the Internal Revenue Service such sum as is required by applicable Federal law with respect to purchases from foreign sellers.

(e)   If the Property is located in California, an affidavit executed by Seller to the effect that Seller is not a "nonresident" within the meaning of California Revenue and Tax Code Section 18662 or successor statutes. If Seller does not provide such affidavit in form reasonably satisfactory to Buyer at least 3 business days prior to the Closing, Escrow Holder shall at the Closing deduct from Seller's proceeds and remit to the Franchise Tax Board such sum as is required by such statute.

(f)   If applicable, a bill of sale, duly executed, conveying title to any included personal property to Buyer.

(g)   If the Seller is a corporation, a duly executed corporate resolution authorizing the execution of this Agreement and the sale of the Property.

10.3 Buyer shall deliver to Seller through Escrow:

(a)   The cash portion of the Purchase Price and such additional sums as are required of Buyer under this Agreement shall be deposited by Buyer with Escrow Holder, by federal funds wire transfer, or any other method acceptable to Escrow Holder in immediately collectable funds, no later than 2:00 P.M. on the business day prior to the Expected Closing Date provided, however, that Buyer shall not be required to deposit such monies into Escrow if at the time set for the deposit of such monies Seller is in default or has indicated that it will not perform any of its obligations hereunder. Instead, in such circumstances in order to reserve its rights to proceed Buyer need only provide Escrow with evidence establishing that the required monies were available.

(b)   If a Purchase Money Note and Purchase Money Deed of Trust are called for by this Agreement, the duly executed originals of those documents, the Purchase Money Deed of Trust being in recordable form, together with evidence of fire insurance on the improvements in the amount of the full replacement cost naming Seller as a mortgage loss payee, and a real estate tax service contract (at Buyer's expense), assuring Seller of notice of the status of payment of real property taxes during the life of the Purchase Money Note.

(c)   The Assignment and Assumption of Lessor's Interest in Lease form specified in paragraph 10.2(c) above, duly executed by Buyer.

(d)   Assumptions duly executed by Buyer of the obligations of Seller that accrue after Closing under any Other Agreements.

(e)   If applicable, a written assumption duly executed by Buyer of the loan documents with respect to Existing Notes.

(f)   If the Buyer is a corporation, a duly executed corporate resolution authorizing the execution of this Agreement and the purchase of the Property.

10.4 At Closing, Escrow Holder shall cause to be issued to Buyer a standard coverage (or ALTA extended, if elected pursuant to 9.1(g)) owner's form policy of title insurance effective as of the Closing, issued by the Title Company in the full amount of the Purchase Price, insuring title to the Property vested in Buyer, subject only to the exceptions approved by Buyer. In the event there is a Purchase Money Deed of Trust in this transaction, the policy of title insurance shall be a joint protection policy insuring both Buyer and Seller.

**IMPORTANT: IN A PURCHASE OR EXCHANGE OF REAL PROPERTY, IT MAY BE ADVISABLE TO OBTAIN TITLE INSURANCE IN CONNECTION WITH THE CLOSE OF ESCROW SINCE THERE MAY BE PRIOR RECORDED LIENS AND ENCUMBRANCES WHICH AFFECT YOUR INTEREST IN THE PROPERTY BEING ACQUIRED. A NEW POLICY OF TITLE INSURANCE SHOULD BE OBTAINED IN ORDER TO ENSURE YOUR INTEREST IN THE PROPERTY THAT YOU ARE ACQUIRING.**

**11.   Prorations and Adjustments.**

11.1 *Taxes.* Applicable real property taxes and special assessment bonds shall be prorated through Escrow as of the date of the Closing, based upon the latest tax bill available. The Parties agree to prorate as of the Closing any taxes assessed against the Property by supplemental bill levied by reason of events occurring prior to the Closing. Payment of the prorated amount shall be made promptly in cash upon receipt of a copy of any supplemental bill.

11.2 *Insurance.* **WARNING:** Any insurance which Seller may have maintained will terminate on the Closing. Buyer is advised to obtain appropriate insurance to cover the Property.

11.3 *Rentals, Interest and Expenses.* Scheduled rentals, interest on Existing Notes, utilities, and operating expenses shall be prorated as of the date of Closing. The Parties agree to promptly adjust between themselves outside of Escrow any rents received after the Closing.

11.4 *Security Deposit.* Security Deposits held by Seller shall be given to Buyer as a credit to the cash required of Buyer at the Closing.

11.5 *Post Closing Matters.* Any item to be prorated that is not determined or determinable at the Closing shall be promptly adjusted by the Parties by appropriate cash payment outside of the Escrow when the amount due is determined.

11.6 *Variations in Existing Note Balances.* In the event that Buyer is purchasing the Property subject to an Existing Deed of Trust(s), and in the event that a Beneficiary Statement as to the applicable Existing Note(s) discloses that the unpaid principal balance of such Existing Note(s) at the closing will be more or less than the amount set forth in paragraph 3.1(c) hereof ("**Existing Note Variation**"), then the Purchase Money Note(s) shall be reduced or increased by an amount equal to such Existing Note Variation. If there is to be no Purchase Money Note, the cash required at the Closing per paragraph 3.1(a) shall be reduced or increased by the amount of such Existing Note Variation.

11.7 *Variations in New Loan Balance.* In the event Buyer is obtaining a New Loan and the amount ultimately obtained exceeds the amount set forth in paragraph 5.1, then the amount of the Purchase Money Note, if any, shall be reduced by the amount of such excess.

11.8 *Owner's Association Fees.* Escrow Holder shall: (i) bring Seller's account with the association current and pay any delinquencies or transfer fees from Seller's proceeds, and (ii) pay any up front fees required by the association from Buyer's funds.

**12.   Representations and Warranties of Seller and Disclaimers.**

12.1 Seller's warranties and representations shall survive the Closing and delivery of the deed for a period of 3 1 years, and any lawsuit or action based upon them must be commenced within such time period. Seller's warranties and representations are true, material and relied upon by Buyer and Brokers in all respects. Seller hereby makes the following warranties and representations to Buyer and Brokers:

(a)   *Authority of Seller.* Seller is the owner of the Property and/or subject to approval by the Bankruptcy Court overseeing Seller's Bankruptcy Case, has the full right, power and authority to sell, convey and transfer the Property to Buyer as provided herein, and to perform Seller's obligations hereunder.

(b)   *Maintenance During Escrow and Equipment Condition At Closing.* Except as otherwise provided in paragraph 9.1(n) hereof, Seller shall maintain the Property until the Closing in its present condition, ordinary wear and tear excepted.

(c)   *Hazardous Substances/Storage Tanks.* Seller has no knowledge, except as otherwise disclosed to Buyer in writing, of the existence or prior existence on the Property of any Hazardous Substance, nor of the existence or prior existence of any above or below ground storage tank.

INITIALS                                                                 INITIALS

© 2019 AIR CRE. All Rights Reserved.
OFAL-15.30, Revised 10-13-2022

Last Edited: 9/29/2025 10:34 AM

d    *Compliance.* Except as otherwise disclosed in writing, Seller has no knowledge of any aspect or condition of the Property which violates applicable laws  rules  regulations, codes or covenants  conditions or restrictions, or of improvements or alterations made to the Property without a permit where one was required  or of any unfulfilled order or directive of any applicable governmental agency or casualty insurance company requiring any investigation, remediation, repair maintenance or improvement be performed on the Property.

e    *Changes in Agreements.* Prior to the Closing  Seller will not violate or modify any Existing Lease or Other Agreement  or create any new leases or other agreements affecting the Property  without Buyer s written approval  which approval will not be unreasonably withheld.

f    *Possessory Rights.* Seller has no knowledge that anyone will  at the Closing  have any right to possession of the Property  except as disclosed by this Agreement  or otherwise in writing to Buyer.

g    *Mechanics' Liens.* There are no unsatisfied mechanics  or materialmens  lien rights concerning the Property.

h    *Actions, Suits or Proceedings.* Seller has no knowledge of any actions, suits or proceedings pending or threatened before any commission  board  bureau  agency  arbitrator  court or tribunal that would affect the Property or the right to occupy or utilize same.

i    *Notice of Changes.* Seller will promptly notify Buyer and Brokers in writing of any Material Change  see paragraph 9.1 o  affecting the Property that becomes known to Seller prior to the Closing.

j    *No Tenant Bankruptcy Proceedings.* Seller has no notice or knowledge that any tenant of the Property is the subject of a bankruptcy or insolvency proceeding.

k    *No Seller Bankruptcy Proceedings.* ~~Seller is not the subject of a bankruptcy  insolvency or probate proceeding.~~

l    *Personal Property.* Seller has no knowledge that anyone will  at the Closing  have any right to possession of any personal property included in the Purchase Price nor knowledge of any liens or encumbrances affecting such personal property  except as disclosed by this Agreement  or otherwise in writing to Buyer.

12.2 Buyer hereby acknowledges that  except as otherwise stated in this Agreement  Buyer is purchasing the Property in its existing condition and will  by the time called for herein  make or have waived all inspections of the Property Buyer believes are necessary to protect its own interest  in  and its contemplated use of  the Property. The Parties acknowledge that  except as otherwise stated in this Agreement  no representations, inducements  promises  agreements  assurances  oral or written, concerning the Property  or any aspect of the occupational safety and health laws  Hazardous Substance laws  or any other act  ordinance or law  have been made by either Party or Brokers  or relied upon by either Party hereto.

12.3 In the event that Buyer learns that a Seller representation or warranty might be untrue prior to the Closing  and Buyer elects to purchase the Property anyway then  and in that event  Buyer waives any right that it may have to bring an action or proceeding against Seller or Brokers  regarding said representation or warranty.

12.4 Any environmental reports  soils reports  surveys  feasibility studies and other similar documents which were prepared by third party  consultants and provided to Buyer by Seller or Seller s representatives, have been delivered as an accommodation to Buyer and without any  representation or warranty as to the sufficiency, accuracy  completeness  and/or validity of said documents  all of which Buyer relies on at its own  risk. Seller believes said documents to be accurate  but Buyer is advised to retain appropriate consultants to review said documents and investigate  the Property.

**1 .  Possession.**
Possession of the Property shall be given to Buyer at the Closing  subject to the rights of tenants under Existing Leases.

**1 .  Bu er s Entr .**
At any time during the Escrow period  Buyer  and its agents and representatives, shall have the right at reasonable times and subject to rights of  tenants  to enter upon the Property for the purpose of making inspections and tests specified in this Agreement.  No destructive testing shall be  conducted  however without Seller s prior approval which shall not be unreasonably withheld. Following any such entry or work  unless otherwise  directed in writing by Seller  Buyer shall return the Property to the condition it was in prior to such entry or work  including the recompaction or  removal of any disrupted soil or material as Seller may reasonably direct.  All such inspections and tests and any other work conducted or materials  furnished with respect to the Property by or for Buyer shall be paid for by Buyer as and when due and Buyer shall indemnify  defend  protect and  hold harmless Seller and the Property of and from any and all claims  liabilities, losses  expenses  including reasonable attorneys' fees   damages  including those for injury to person or property  arising out of or relating to any such work or materials or the acts or omissions of Buyer  its agents  or employees in connection therewith.

**1 .  Furt er Documents and Assurances.**
The Parties shall each  diligently and in good faith  undertake all actions and procedures reasonably required to place the Escrow in condition for  Closing as and when required by this Agreement.  The Parties agree to provide all further information  and to execute and deliver all further  documents  reasonably required by Escrow Holder or the Title Company.

**1 .  Attorneys' Fees.**
If any Party or Broker brings an action or proceeding  including arbitration) involving the Property whether founded in tort  contract or equity  or to  declare rights hereunder  the Prevailing Party  as hereafter defined) in any such proceeding  action, or appeal thereon  shall be entitled to  reasonable attorneys' fees and costs.  Such fees may be awarded in the same suit or recovered in a separate suit  whether or not such action or  proceeding is pursued to decision or judgment.  The term "**Pre ailing Part** " shall include  without limitation, a Party or Broker who substantially  obtains or defeats the relief sought  as the case may be  whether by compromise  settlement, judgment  or the abandonment by the other Party or  Broker of its claim or defense.  The attorneys' fees award shall not be computed in accordance with any court fee schedule  but shall be such as to  fully reimburse all attorneys' fees reasonably incurred.

**1 .  Prior Agreements  Amendments.**
17.1 This Agreement supersedes any and all prior agreements between Seller and Buyer regarding the Property.
17.2 Amendments to this Agreement are effective only if made in writing and executed by Buyer and Seller.

**1 .  Bro er s Rig ts.**
18.1 If this sale is not consummated due to the default of either the Buyer or Seller  the defaulting Party shall be liable to and shall pay to  Brokers the Brokerage Fee that Brokers would have received had the sale been consummated.  If Buyer is the defaulting party  payment of said  Brokerage Fee is in addition to any obligation with respect to liquidated or other damages.
18.2   pon the Closing  Brokers are authorized to publicize the facts of this transaction.

**1 .  Notices.**
19.1   henever any Party  Escrow Holder or Brokers herein shall desire to give or serve any notice, demand  request  approval  disapproval or  other communication, each such communication shall be in writing and shall be delivered personally  by messenger or by mail  postage prepaid  to  the address set forth in this agreement or by facsimile transmission  electronic signature  digital signature  or email.
19.2 Service of any such communication shall be deemed made on the date of actual receipt if personally delivered  or transmitted by facsimile  transmission  electronic signature  digital signature  or email.  Any such communication sent by regular mail shall be deemed given 48 hours after  the same is mailed.  Communications sent by   nited States Express Mail or overnight courier that guarantee next day delivery shall be deemed  delivered 24 hours after delivery of the same to the Postal Service or courier.  If such communication is received on a Saturday  Sunday or legal  holiday  it shall be deemed received on the next business day.
19.3 Any Party or Broker hereto may from time to time, by notice in writing, designate a different address to which  or a different person or  additional persons to whom  all communications are thereafter to be made.

INITIALS                                    INITIALS

© 2019 AIR CRE.  All Rights Reserved.
OFAL 15.30  Revised 10 13 2022

Last Edited: 9/29/2025 10:34 AM
Page 6 of 9

**Duration of Offer.**

20.1 If this offer is not accepted by Seller on or before 5:00 P.M. according to the time standard applicable to the city of <u>San Bernardino</u> on the date of <u>ctober ,</u>, it shall be deemed automatically revoked.

20.2 The acceptance of this offer, or of any subsequent counteroffer hereto, that creates an agreement between the Parties as described in paragraph 1.2, shall be deemed made upon delivery to the other Party or either Broker herein of a duly executed writing unconditionally accepting the last outstanding offer or counteroffer.

**LIQUIDATED DAMAGES   T  is Liquidated Damages paragrap  is applica  le onl  if initialed     ot  Parties)**
**THE PARTIES AGREE THAT IT WOULD BE IMPRACTICABLE OR EXTREMELY DIFFICULT TO FIX PRIOR TO SIGNING THIS AGREEMENT  THE ACTUAL DAMAGES WHICH WOULD BE SUFFERED BY SELLER IF BUYER FAILS TO PERFORM ITS OBLIGATIONS UNDER THIS AGREEMENT  THEREFORE  IF AFTER THE SATISFACTION OR WAIVER OF ALL CONTINGENCIES PROVIDED FOR THE BUYER'S BENEFIT BUYER BREACHES THIS AGREEMENT  SELLER SHALL BE ENTITLED TO LIQUIDATED DAMAGES IN THE AMOUNT OF ____,_____  UPON PAYMENT OF SAID SUM TO SELLER  BUYER SHALL BE RELEASED FROM ANY FURTHER LIABILITY TO SELLER  AND ANY ESCROW CANCELLATION FEES AND TITLE COMPANY CHARGES SHALL BE PAID BY SELLER**



_____          _____
Buyer's Initials                                  Seller's Initials

**ARBITRATION OF DISPUTES**  (This Arbitration of Disputes paragraph is applicable only if initialed by both Parties.)
ANY CONTROVERSY AS TO WHETHER SELLER IS ENTITLED TO LIQUIDATED DAMAGES AND/OR BUYER IS ENTITLED TO THE RETURN OF THE DEPOSIT SHALL BE DETERMINED BY BINDING ARBITRATION ADMINISTERED BY THE  UDICIAL ARBITRATION   MEDIATION SERVICES  INC  " AMS"  IN ACCORDANCE WITH ITS COMMERCIAL ARBITRATION RULES  "COMMERCIAL RULES"   ARBITRATION HEARINGS SHALL BE HELD IN THE COUNTY WHERE THE PROPERTY IS LOCATED   SUCH CONTROVERSY SHALL BE ARBITRATED BY A SINGLE ARBITRATOR  APPOINTED UNDER THE COMMERCIAL RULES WHO HAS HAD AT LEAST 5 YEARS OF  EXPERIENCE IN THE TYPE OF REAL ESTATE THAT IS THE SUB ECT OF THIS AGREEMENT  THE ARBITRATOR SHALL HEAR AND DETERMINE SAID CONTROVERSY IN ACCORDANCE WITH APPLICABLE LAW OF THE  URISDICTION WHERE THE PROPERTY IS LOCATED  THE INTENTION OF THE PARTIES AS EXPRESSED IN THIS AGREEMENT AND ANY AMENDMENTS THERETO  AND UPON THE EVIDENCE PRODUCED AT AN ARBITRATION HEARING  PRE ARBITRATION DISCOVERY SHALL BE PERMITTED IN ACCORDANCE WITH THE COMMERCIAL RULES OR STATE LAW APPLICABLE TO ARBITRATION PROCEEDINGS  THE ARBITRATOR SHALL RENDER AN AWARD WITHIN 3  DAYS AFTER THE CONCLUSION OF THE HEARING  WHICH MAY INCLUDE ATTORNEYS' FEES AND COSTS TO THE PREVAILING PARTY PER PARAGRAPH  6 HEREOF AND SHALL BE ACCOMPANIED BY A REASONED OPINION  THE FAILURE OR REFUSAL OF A PARTY TO PAY SUCH PARTY'S REQUIRED SHARE OF THE DEPOSITS FOR ARBITRATOR COMPENSATION OR ADMINISTRATIVE CHARGES SHALL CONSTITUTE A WAIVER BY SUCH PARTY TO PRESENT EVIDENCE OR CROSS EXAMINE WITNESSES  BUT SUCH WAIVER SHALL NOT ALLOW FOR A DEFAULT  UDGMENT AGAINST THE NON PAYING PARTY IN THE ABSENCE OF EVIDENCE AND LEGAL ARGUMENT AS THE ARBITRATOR MAY REQUIRE FOR MA ING AN AWARD   UDGMENT MAY BE ENTERED ON THE AWARD IN ANY COURT OF COMPETENT  URISDICTION NOTWITHSTANDING THE FAILURE OF A PARTY DULY NOTIFIED OF THE ARBITRATION HEARING TO APPEAR THEREAT

22.2 B   ER'S RESORT TO OR PARTICIPATION IN S  CH ARBITRATION PROCEEDINGS SHALL NOT BAR S  IT IN A CO  RT OF COMPETENT  RISDICTION B  THE B   ER FOR DAMAGES AND/OR SPECIFIC PERFORMANCE  NLESS AND  NTIL THE ARBITRATION RES  LTS IN AN A  ARD TO THE SELLER OF LI  IDATED DAMAGES, IN  HICH EVENT S  CH A  ARD SHALL ACT AS A BAR AGAINST AN  ACTION B  ER FOR DAMAGES AND/OR SPECIFIC PERFORMANCE.

22.3 NOTICE: B  INITIALING IN THE SPACE BELO   O  ARE AGREEING TO HAVE AN  DISP TE ARISING O T OF THE MATTERS INCL  DED IN THE "ARBITRATION OF DISP  TES" PROVISION DECIDED B  NE  TRAL ARBITRATION AS PROVIDED B  CALIFORNIA LA   AND O  ARE GIVING  P AN RIGHTS  O  MIGHT POSSESS TO HAVE THE DISP  TE LITIGATED IN A CO  RT OR  R  TRIAL. B  INITIALING IN THE SPACE BELO   O  ARE GIVING  P O  R  DICIAL RIGHTS TO DISCOVER AND APPEAL,  NLESS S  CH RIGHTS ARE SPECIFICALL  INCL  DED IN THE "ARBITRATION OF DISP  TES" PROVISION. IF O  REF  SE TO S  BMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION,  O  MA  BE COMPELLED TO ARBITRATE  NDER THE A  THORIT  OF THE CALIFORNIA CODE OF CIVIL PROCED  RE.  O  R AGREEMENT TO THIS ARBITRATION PROVISION IS VOL  NTAR .

E  HAVE READ AND  NDERSTAND THE FOREGOING AND AGREE TO S  BMIT DISP  TES ARISING O T OF THE MATTERS INCL  DED IN THE "ARBITRATION OF DISP  TES" PROVISION TO NE  TRAL ARBITRATION.

_____          _____
Buyer's Initials                                  Seller's Initials

**3   Miscellaneous**

23.1 **Binding Effect**.  Buyer and Seller both acknowledge that they have carefully read and reviewed this Agreement and each term and provision contained herein.  In addition, this Agreement shall be binding on the Parties without regard to whether or not paragraphs 21 and 22 are initialed by both of the Parties.  Paragraphs 21 and 22 are each incorporated into this Agreement only if initialed by both Parties at the time that the Agreement is executed.  Signatures to this Agreement accomplished by means of electronic signature or similar technology shall be legal and binding.

23.2 **Applica  le La** .  This Agreement shall be governed by, and paragraph 22.3 is amended to refer to, the laws of the state in which the Property is located.  Any litigation or arbitration between the Parties hereto concerning this Agreement shall be initiated in the county in which the Property is located.

23.3 **Time of Essence**.  Time is of the essence of this Agreement.

23.4 **Counterparts**.  This Agreement may be executed by Buyer and Seller in counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument.  Escrow Holder, after verifying that the counterparts are identical except for the signatures, is authorized and instructed to combine the signed signature pages on one of the counterparts, which shall then constitute the Agreement.

23.5 **Wai  er of  ur  Trial**.  **THE PARTIES HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO TRIAL BY  URY IN ANY ACTION OR PROCEEDING INVOLVING THE PROPERTY OR ARISING OUT OF THIS AGREEMENT**

23.6 **Conflict**.  Any conflict between the printed provisions of this Agreement and the typewritten or handwritten provisions shall be controlled by the typewritten or handwritten provisions.  **Seller and Bu  er must initial an  and all handwritten pro  isions.**

23.7   **3  Exc  ange**.  Both Seller and Buyer agree to cooperate with each other in the event that either or both wish to participate in a 1031 exchange.  Any party initiating an exchange shall bear all costs of such exchange.  The cooperating Party shall not have any liability (special or otherwise) for damages to the exchanging Party in the event that the sale is delayed and/or that the sale otherwise fails to qualify as a 1031 exchange.

23.8 **Da  s**.  nless otherwise specifically indicated to the contrary, the word "days" as used in this Agreement shall mean and refer to calendar days.

**4   Disclosures Regarding t  e Nature of a Real Estate Agenc  Relationship.**

24.1 The Parties and Brokers agree that their relationship(s) shall be governed by the principles set forth in the applicable sections of the

_____          _____
INITIALS                                          INITIALS

© 2019 AIR CRE.  All Rights Reserved.
OFAL-15.30, Revised 10-13-2022

alifornia  ivil  ode  as summarized in paragraph

hen entering into a discussion with a real estate agent regarding a real estate transaction, a  uyer or Seller should from the outset understand what type of agency relationship or representation it has with the agent or agents in the transaction.   uyer and Seller acknowledge being advised by the   rokers in this transaction, as follows

a    *Seller s Agent*    Seller s agent under a listing agreement with the Seller acts as the agent for the Seller only    Seller s agent or subagent has the following affirmative obligations:    *To the Seller*    fiduciary duty of utmost care  integrity  honesty  and loyalty in dealings with the Seller    *To the Buyer and the Seller*  a    iligent exercise of reasonable skills and care in performance of the agent s duties.  b    duty of honest and fair dealing and good faith  c    duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to  or within the diligent attention and observation of  the Parties.    n agent is not obligated to reveal to either Party any confidential information obtained from the other Party which does not involve the affirmative duties set forth above

b    *Buyer s Agent*    selling agent can with a  uyer s consent  agree to act as agent for the  uyer only  In these situations, the agent is not the Seller s agent  even if by agreement the agent may receive compensation for services rendered  either in full or in part from the Seller   n agent acting only for a  uyer has the following affirmative obligations.    *To the Buyer*    fiduciary duty of utmost care  integrity  honesty  and loyalty in dealings with the  uyer    *To the Buyer and the Seller*  a    iligent exercise of reasonable skills and care in performance of the agent s duties. b    duty of honest and fair dealing and good faith  c    duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to  or within the diligent attention and observation of the Parties.    n agent is not obligated to reveal to either Party any confidential information obtained from the other Party which does not involve the affirmative duties set forth above

c    *Agent Representing Both Seller and Buyer*    real estate agent  either acting directly or through one or more associate licensees  can legally be the agent of both the Seller and the  uyer in a transaction, but only with the knowledge and consent of both the Seller and the  uyer  In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the  uyer  a    fiduciary duty of utmost care  integrity  honesty and loyalty in the dealings with either Seller or the  uyer  b  Other duties to the Seller and the  uyer as stated above in their respective sections  a  or  b  of this paragraph    In representing both Seller and  uyer  the agent may not  without the express permission of the respective Party  disclose to the other Party confidential information, including  but not limited to  facts relating to either  uyer s or Seller s financial position, motivations, bargaining position, or other personal information that may impact price  including Seller s willingness to accept a price less than the listing price or  uyer s willingness to pay a price greater than the price offered    The above duties of the agent in a real estate transaction do not relieve a Seller or  uyer from the responsibility to protect their own interests   uyer and Seller should carefully read all agreements to assure that they adequately express their understanding of the transaction.    real estate agent is a person qualified to advise about real estate  If legal or tax advice is desired  consult a competent professional   uyer has the duty to exercise reasonable care to protect  uyer including as to those facts about the Property which are known to  uyer or within  uyer s diligent attention and observation.   oth Seller and  uyer should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change

d    *Further Disclosures*    Throughout this transaction   uyer and Seller may receive more than one disclosure  depending upon the number of agents assisting in the transaction.   uyer and Seller should each read its contents each time it is presented  considering the relationship between them and the real estate agent in this transaction and that disclosure   uyer and Seller each acknowledge receipt of a disclosure of the possibility of multiple representation by the   roker representing that principal   This disclosure may be part of a listing agreement  buyer representation agreement or separate document   uyer understands that  roker representing  uyer may also represent other potential buyers who may consider  make offers on or ultimately acquire the Property  Seller understands that  roker representing Seller may also represent other sellers with competing properties that may be of interest to this  uyer    uyer  rokers have no responsibility with respect to any default or breach hereof by either Party  The Parties agree that no lawsuit or other legal proceeding involving any breach of duty  error or omission relating to this transaction may be brought against  roker more than one year after the  ate of  greement and that the liability  including court costs and attorneys' fees  of any   roker with respect to any breach of duty  error or omission relating to this   greement shall not exceed the fee received by such   roker pursuant to this   greement; provided  however  that the foregoing limitation on each   roker s liability shall not be applicable to any gross negligence or willful misconduct of such   roker

*Confidential Information*    uyer and Seller agree to identify to  rokers as "Confidential" any communication or information given  rokers that is considered by such Party to be confidential.

**2 .  Construction of Agreement.**  In construing this   greement  all headings and titles are for the convenience of the Parties only and shall not be considered a part of this   greement   henever required by the context  the singular shall include the plural and vice versa   This   greement shall not be construed as if prepared by one of the Parties, but rather according to its fair meaning as a whole  as if both Parties had prepared it

**2 .  Additional Pro isions.**

Additional provisions of this offer, if any  are as follows or are attached hereto by an addendum or addenda consisting of paragraphs ____1____ through ____   If there are no additional provisions write "NON "

1    S- S          - S  property  ill be sold in it's as-is   here-is condition

ATTENTION: NO REPRESENTATION OR RECOMMENDATION IS MADE BY AIR CRE OR BY ANY BRO ER AS TO THE LEGAL SUFFICIENCY, LEGAL EFFECT, OR TAX CONSEQUENCES OF THIS AGREEMENT OR THE TRANSACTION TO WHICH IT RELATES.  THE PARTIES ARE URGED TO:

1.    SEE  ADVICE OF COUNSEL AS TO THE LEGAL AND TAX CONSEQUENCES OF THIS AGREEMENT.
2.    RETAIN APPROPRIATE CONSULTANTS TO REVIEW AND INVESTIGATE THE CONDITION OF THE PROPERTY.  SAID INVESTIGATION SHOULD INCLUDE BUT NOT BE LIMITED TO: THE POSSIBLE PRESENCE OF HA ARDOUS SUBSTANCES, THE  ONING OF THE PROPERTY, THE INTEGRITY AND CONDITION OF ANY STRUCTURES AND OPERATING SYSTEMS, AND THE SUITABILITY OF THE PROPERTY FOR BUYER S INTENDED USE.

WARNING: IF THE PROPERTY IS LOCATED IN A STATE OTHER THAN CALIFORNIA, CERTAIN PROVISIONS OF THIS AGREEMENT MAY NEED TO BE REVISED TO COMPLY WITH THE LAWS OF THE STATE IN WHICH THE PROPERTY IS LOCATED.

NOTE:
1.    THIS FORM IS NOT FOR USE IN CONNECTION WITH THE SALE OF RESIDENTIAL PROPERTY.
2.    IF EITHER PARTY IS A CORPORATION, IT IS RECOMMENDED THAT THIS AGREEMENT BE SIGNED BY TWO CORPORATE OFFICERS.

S                    S



INITI LS



INITI LS

The undersigned Buyer offers and agrees to buy the Property on the terms and conditions stated and acknowledges receipt of a copy hereof.

Date: 2025-Sep-30 | 11:21 PDT
_____

| BROKER | BUYER |
|---|---|
| Lee & Associates Commercial Real Estate Services, Inc. - Riverside | Boone Trucking, Inc. and/or Assignee |
| |  |
| Attn:  Toby Tewell | By: _____ |
| Title:  Vice President | Name Printed:  Thomas Boone |
| | Title: _____ |
| Address:  4193 Flat Rock Drive, Suite 100, Riverside, CA 92505 | Phone:  909-721-5086 |
| | Fax: _____ |
| Phone:  951-276-3600 | Email:  tom@boonetrucking.net |
| Fax:  951-276-3650 | |
| Email:  ttewel@leeriverside.com | |
| Federal ID No.:  33-0355610 | By: _____ |
| Broker DRE License #:  01048055 | Name Printed: _____ |
| Agent DRE License #:  01822772 | Title: _____ |
| | Phone: _____ |
| | Fax: _____ |
| | Email: _____ |
| | |
| | Address:  1935 S. Oaks Avenue, Ontario, CA 91762 |
| | Federal ID No.: _____ |

**27. Acceptance.**

27.1 Seller accepts the foregoing offer to purchase the Property and hereby agrees to sell the Property to Buyer on the terms and conditions therein specified.

27.2 In consideration of real estate brokerage service rendered by Brokers, Seller agrees to pay Brokers a real estate Brokerage Fee in a sum equal to  6  % of the Purchase Price to be divided between the Brokers as follows: Seller's Broker  3  % and Buyer's Broker  3  %. This Agreement shall serve as an irrevocable instruction to Escrow Holder to pay such Brokerage Fee to Brokers out of the proceeds accruing to the account of Seller at the Closing.

27.3 Seller acknowledges receipt of a copy hereof and authorizes Brokers to deliver a signed copy to Buyer.

**NOTE: A PROPERTY INFORMATION SHEET IS REQUIRED TO BE DELIVERED TO BUYER BY SELLER UNDER THIS AGREEMENT.**

Date: 2025-Oct-01 | 12:26 PDT
_____

| BROKER | SELLER |
|---|---|
| Lee & Associate Commercial Real Estate Services, Inc. - Riverside | Mowbray Waterman Property, LLC |
| | By:  Robin Mowbray |
| Attn:  Cody Moran / Les Copelin | Name Printed:  Robin Mowbray |
| Title:  Vice President / Senior Vice President | Title: _____ |
| | Phone:  909-389-0077 |
| Address:  3240 Mission Inn Avenue, Riverside, CA 92507 | Fax: _____ |
| Phone:  951-276-3600 | Email:  robin@mowbrays.com |
| Fax:  951-276-3650 | |
| Email:  cmoran@leeriverside.com / lcopelin@leeriverside.com | By: _____ |
| Federal ID No.:  33-0355610 | Name Printed: _____ |
| Broker DRE License #:  01048055 | Title: _____ |
| Agent's DRE License #:  02036603 / 00995220 | Phone: _____ |
| | Fax: _____ |
| | Email: _____ |
| | |
| | Address:  686 E. Mill Street, Suite 2, San Bernardino, CA 92415 |
| | Federal ID No.: _____ |

AIR CRE  *  https://www.aircre.com  *  213-687-8777  *  contracts@aircre.com
NOTICE:  No part of these works may be reproduced in any form without permission in writing.

INITIALS        INITIALS

© 2019 AIR CRE.  All Rights Reserved.
OFAL-15.30, Revised 10-13-2022

Last Edited: 9/29/2025 10:34 AM
Page 9 of 9



## DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP
### As re uired by the Ci i Code

hen you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

### SELLER S AGENT

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only.  A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller:  A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
    a    Diligent exercise of reasonable skill and care in performance of the agent's duties.
    b    A duty of honest and fair dealing and good faith.
    c    A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties.
    An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

### BUYER S AGENT

A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only.  This includes a Buyer's agent under a buyer-broker representation agreement with the Buyer.  In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller.  An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer:  A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
    a    Diligent exercise of reasonable skill and care in performance of the agent's duties.
    b    A duty of honest and fair dealing and good faith.
    c    A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties.
An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

### AGENT REPRESENTING BOTH SELLER AND BUYER

A real estate agent, either acting directly or through one or more salesperson and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.
In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
    a    A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
    b    Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

### SELLER AND BUYER RESPONSIBILITIES

Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as a dual agent.  Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.  The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect their own interests.  ou should carefully read all agreements to assure that they adequately express your understanding of the transaction.  A real estate agent is a person qualified to advise about real estate.  If legal or tax advice is desired, consult a competent professional.  If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.  Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and sub ect to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction.  The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form.  ou should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction.
**This disc osure form inc udes the pro isions of Sections 2 7 .13 to 2 7 .2  inc usi e of the Ci i Code set forth on page 2. Read it carefu y.**
**I/ E ACKNO  LEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK  OR A SEPARATE PAGE .**

☐ Buyer   ☑ Seller   ☐ Lessor   ☐ Lessee    *Robin Mowbray*    Date 2025-Oct-01 | 12:26 PDT
                                   535733954426408...

☑ Buyer   ☐ Seller   ☐ Lessor   ☐ Lessee    *Thomas Boone*    2025-Sep-30 | 11:21 PDT
                                   AA4FF0226F1B4FF...    Date:

Agent:   Lee & Associates Commercial Real Estate Services, Inc. - Riverside   DRE Lic. #:   01048055
       Real Estate Broker  Firm

By:   Cody Moran/Les Copeline/Tobe Tewel    DRE Lic. #:   02036603 / 00995220 /01822772   Date:
       Salesperson or Broker-Associate

THIS FORM HAS BEEN PREPARED B  AIR CRE. NO REPRESENTATION IS MADE AS TO THE  E AL  ALIDIT  OR ADE   AC  OF THIS FORM FOR AN  SPECIFIC TRANSACTION. PLEASE SEE  LE AL CO  NSEL AS TO THE APPROPRIATENESS OF THIS FORM.

**AIR CRE  *  https://www.aircom.com  *  213-687-8777  *  contracts@aircre.com**
**NOTICE:  No part of these works may be reproduced in any form without permission in writing.**



INITIALS



INITIALS

© 2019 AIR CRE.  All Rights Reserved.
AD-3.11, Revised 12-31-2024

Last Edited: 9/29/2025 10:34 AM

**DIS LOSURE REG RDING RE L EST TE GEN Y REL TIONSHIP**

**IVIL ODE SE TIONS 0 9 THROUGH 0 9 4( 0 9 PPE RS ON THE FRONT)**

0 9    s used in this section and Sections    and    to    inclusive the following terms have the following meanings
**(a)**  gent  means a person acting under provisions of Title  (commencing with Section    ) in a real property transaction, and includes a person who is licensed as a real estate broker under hapter  (commencing with Section    ) of Part  of Division  of the  usiness and Professions    ode  and under whose license a listing  is executed or an offer to purchase is obtained  The agent in the real property transaction bears responsibility for that agent s salespersons or broker associates who perform as agents of the agent    hen a salesperson or broker associate owes a duty to any principal  or to any buyer or seller who is not a principal  in a real property transaction, that duty is equivalent to the duty owed to that party to the broker for whom the salesperson or broker associate functions. **(b)**   uyer  means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent  or who seeks the services of an agent in more than a casual  transitory or preliminary manner  with the ob ect of entering into a real property transaction.   uyer  includes vendee or lessee of real property **(c)**   ommercial real property  means all real property in the state  except ( ) single family residential real property ( ) dwelling units made sub ect to  hapter  (commencing with Section    ) of Title   ( ) a mobile home as defined in Section    ( ) vacant land or ( ) a recreational vehicle as defined in Section    **(d)**  Dual agent  means an agent acting, either directly or through a salesperson or broker associate  as agent for both the seller and the buyer in a real property transaction. **(e)** "Listing agreement  means a written contract between a seller of real property and an agent  by which the agent has been authorized to sell the real property or to find or obtain a buyer including rendering other services for which a real estate license is required to the seller pursuant to the terms of the agreement **(f)**  Seller s agent  means a person who has obtained a listing of real property to act as an agent for compensation. **(g)** "Listing price  is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller s agent **(h)** "Offering price  is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property **(i)** "Offer to purchase  means a written contract executed by a buyer acting through a buyer s agent that becomes the contract for the sale of the real property upon acceptance by the seller **( )** Real property  means any estate specified by subdivision ( ) or ( ) of Section    in property and includes ( ) single family residential property ( ) multi unit residential property with more than four dwelling units ( ) commercial real property ( ) vacant land ( ) a ground lease coupled with improvements  or ( ) a manufactured home as defined in Section    of the Health and Safety  ode or a mobile home as defined in Section    of the Health and Safety  ode  when offered for sale or sold through an agent pursuant to the authority contained in Section    of the usiness and Professions  ode **(k)** Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer  seller  or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase **( )** Single family residential property  or  single family residential real property  means any of the following  ( ) Real property improved with one to four dwelling units including a leasehold exceeding one year s duration. ( )   unit in a residential stock cooperative  condominium or planned unit development ( ) mobilehome or manufactured home when offered for sale or sold through a real estate broker pursuant to Section    of the  usiness and Professions  ode **(m)** Sell   sale  or sold  refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer  transactions for the creation of a real property sales contract within the meaning of Section    and transactions for the creation of a leasehold exceeding one year s duration. **(n)**  Seller  means the transferor in a real property transaction and includes an owner who lists real property with an agent  whether or not a transfer results  or who receives an offer to purchase real property of which they are the owner from an agent on behalf of another  Seller  includes both a vendor and a lessor of real property **(o)**   uyer s agent  means an agent who represents a buyer in a real property transaction. **(p)**  buyer broker representation agreement  means a written contract between a buyer of real property and a buyer s agent by which the buyer s agent has been authorized by the buyer to provide services set forth in subdivision (a) of Section    of the  usiness and Professions  ode for or on behalf of the buyer for which a real estate license is required pursuant to the terms of the contract

0 9 4 **(a)**   copy of the disclosure form specified in Section    shall be provided in a real property transaction as follows **( )** The seller s agent  if any  shall provide the disclosure form to the seller before entering into the listing agreement **( )** The buyer s agent shall provide the disclosure form to the buyer as soon as practicable before execution of a buyer broker representation agreement and execution of the buyer s offer to purchase  If the offer to purchase is not prepared by the buyer s agent  the buyer s agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer **(b)** The agent providing the disclosure form specified in Section    shall obtain a signed acknowledgment of receipt from the buyer or seller except as provided in Section

0 9    In any circumstance in which the seller or buyer refuses to sign an acknowledgment of receipt pursuant to Section    the agent shall set forth  sign  and date a written declaration of the facts of the refusal

0 9    Reproduced on Page    of this  D form

0 9 **(a)**   s soon as practicable, the  buyer s agent  shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer s agent  or as a dual agent representing both the buyer and the seller  This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller  the buyer  and the buyer s agent prior to or coincident with execution of that contract by the buyer and the seller respectively. **(b)**   s soon as practicable, the seller s agent shall disclose to the seller whether the seller s agent is acting in the real property transaction as the seller s agent  or as a dual agent representing both the buyer and seller  This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller s agent prior to or coincident with the execution of that contract by the seller

**( )**   ONFIRM TION  The following agency relationships are confirmed for this transaction.
Seller's Brokerage Firm  DO NOT COMPLETE, SAMPLE ONLY  License Number _____
Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent)
Seller's Agent  DO NOT COMPLETE, SAMPLE ONLY  License Number _____
Is (check one): ☐ the Seller's Agent. (salesperson or broker associate); or ☐ both the Buyer's Agent and the Seller's Agent. (dual agent)
Buyer's Brokerage Firm  DO NOT COMPLETE, SAMPLE ONLY  License Number _____
Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent)
Buyer's Agent  DO NOT COMPLETE, SAMPLE ONLY  License Number _____
Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate); or ☐ both the Buyer's Agent and the Seller's Agent. (dual agent)
**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section    n agent s duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker

0 9    (Repealed pursuant to    alifornia Legislative session)

0 9   9 The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer   listing agent and a selling agent may agree to share any compensation or commission paid  or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

0 9   0 Nothing in this article prevents an agent from selecting, as a condition of the agent s employment  a specific form of agency relationship not specifically prohibited by this article if the requirements of Section    and Section    are complied with

0 9 **(a)**   dual agent may not  without the express permission of the seller  disclose to the buyer any confidential information obtained from the seller **(b)**   dual agent may not  without the express permission of the buyer  disclose to the seller any confidential information obtained from the buyer **(c)** "Confidential information" means facts relating to the client s financial position, motivations, bargaining position, or other personal

INITI LS ___    INITI LS ___

©    IR  RE  ll Rights Reserved    Last Edited    M
D    Revised    Page  of

Docusign Envelope ID: 45B48A45-521B-4CDA-A4C2-845FC8DF4472

information that may impact price  such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. **(d)** This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price

0 9    Nothing in this article precludes a seller s agent from also being a buyer s agent  If a seller or buyer in a transaction chooses to not be represented by an agent  that does not  of itself  make that agent a dual agent

0 9    **(a)**    contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the ob ect of the agency with the written consent of the parties to the agency relationship.  **(b)**    lender or an auction company retained by a lender to control aspects of a transaction of real property sub ect to this part  including validating the sales price shall not require  as a condition of receiving the lender s approval of the transaction, the homeowner or listing agent to defend or indemnify the lender or auction company from any liability alleged to result from the actions of the lender or auction company    ny clause  provision  covenant  or agreement purporting to impose an obligation to defend or indemnify a lender or an auction company in violation of this subdivision is against public policy void  and unenforceable

0 9  4 Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees  subagents  and employees or to relieve agents and their associate licensees  subagents  and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure



INITI  LS



INITI  LS

©        IR   RE     ll Rights Reserved                                                                Last Edited                        M
D        Revised                                                                                                Page   of

### Addendum No. __ and Counteroffer to Standard Offer, Agreement and Escrow Instructions for Purchase of Real Estate (Vacant Land) Dated September 29, 2025

This is an Addendum and Counteroffer (the "Addendum") to the September 29, 2025 "Standard Offer, Agreement and Escrow Instructions for Purchase of Real Estate" (the "PSA") for the purchase of the real property commonly known as 386 S. Allen St., San Bernardino (the "Property") by Boone Trucking, Inc. and/or its Assignee ("Buyer") from Mowbray Waterman Property, LLC ("Seller"), the debtor and debtor-in-possession in the jointly-administered bankruptcy cases pending in the U.S. Bankruptcy Court for the Central District of California (the "Bankruptcy Court"), Lead Case No. 8:24-bk-12674-SC (the "Bankruptcy Case").

When fully-executed below, this Addendum will constitute conclusive evidence of the contract for the sale and purchase of the Property (the "Sale") on the terms of the PSA and this Addendum, subject to approval by the Bankruptcy Court in the Bankruptcy Case. This Addendum modifies and supplements the terms of the PSA, and if and to the extent there is any conflict between the PSA and this Addendum, this Addendum shall control.

1.      Purchase Price: The purchase price for the Property shall be $1,950,000.00 (the "Purchase Price").

2.      Initial Deposit: Within two (2) business days after both Parties have executed the PSA and this Addendum and the PSA and the Addendum have been delivered to Escrow Holder, Buyer shall deliver to Escrow Holder a deposit in the amount of $65,000.00, to be applied to the Purchase Price at the Closing. The contact information for the Escrow Holder is as follows:

> Town & Country Escrow Corporation
> Attn: Pamela Walker
> 1030 La Bonita Drive, Suite 338
> San Marcos, CA 92078
> Tel: (951) 808-3924
> Email: pwalker@tcescrowcorp.com

3.      Bankruptcy Court Approval: The Sale is expressly subject to Bankruptcy Court approval in the Bankruptcy Case. The Seller will file a motion to approve the Sale with the Bankruptcy Court pursuant to section 363 of the United States Bankruptcy Code (11 U.S.C. § 363) (the "Approval Motion"). As part of such motion, the Seller will request a finding of Buyer's "good faith" in accordance with section 363(m) of the Bankruptcy Code, and that the Sale be free and clear of all liens, claims, and encumbrances to the greatest extent permitted pursuant to section 363(f) of the Bankruptcy Code.

4.      Tender of Balance of Purchase Price/Closing: The Sale shall close, with Buyer tendering the full Purchase Price (less the Deposit), by the later of the following dates (the "Closing"): (a) five (5) calendar days after satisfaction or waiver of Buyer's Contingencies (as that term is defined in the PSA); and (b) the fifteenth (15th) calendar day after the entry of an order by the Bankruptcy Court authorizing the Sale.

5715171

Docusign Envelope ID: d5B48AA5-521B-4CDA-A4C2-64E5C8D5A472

5.      Property Sold "As Is, Where Is":  Upon expiration of the due diligence period referenced in the PSA, Seller is selling the Property in an "as is, where is" condition or basis by quitclaim deed, with all faults, and without any representations, recourse, or warranties whatsoever, implied or express, including, without limitation, representations or warranties as to title, oil and mineral rights, city or government agency notifications regarding work to be done, marketability of title, ownership, physical condition, compliance with state, city, or federal statutes, codes, ordinances, or regulations, geological stability, zoning, suitability for improvements on the Property, nor any assurances regarding the sub-divisibility of the Property.  If any state or local ordinance law require that the Property be brought into compliance, Buyer, at its sole expense, shall comply with and pay for any such requirements.

6.      Transfer of Property:  Seller shall convey and Buyer shall accept title to the Property that will be insured by a standard ALTA insurance policy, without material exception, subject only to the terms of this Addendum and any further documentation of the Sale consistent with this Addendum.

7.      "Free and Clear" Sale:   The Sale shall be free and clear of all liens, claims, and encumbrances to the fullest extent permitted by section 363 of the Bankruptcy Code.

8.      Assessments, Taxes, and Escrow Fees:  Buyer and Seller shall each pay one-half of the Escrow Holder's charges.  Buyer shall pay the usual recording fees.  Seller shall pay any required City and County documentary transfer taxes. Seller shall pay the premium for a standard coverage ALTA owner's or joint protection policy of title insurance (but not including a survey).

9.      Insurance:  Buyer shall, at Buyer's sole expense, acquire any and all insurance policies that Buyer desires to cover the Property.   Seller does not agree to acquire or transfer any insurance policies to Buyer.

10.     Overbid:  The Sale is subject to notice to creditors and other parties in interest, and shall be subject to higher and better bids through and including the hearing on the Approval Motion, pursuant to sale and overbid procedures determined in Seller's discretion and subject to approval by the Bankruptcy Court.  Buyer recognizes that multiple offers and/or counteroffers may be presented to Seller, and Seller shall have the right to select the highest and best bid to submit to the Bankruptcy Court for approval.

11.     Brokers and Commissions:  Subject to approval by the Bankruptcy Court, Seller shall pay a commission, through escrow, totaling six percent (6.00%) of the Purchase Price, split equally between Buyer's agent and Seller's agent.  No commission shall be due and payable except from the cash proceeds of an actual sale of the Property to Buyer and upon closing of such sale.

12.     Termination:  In the event of a termination of the PSA or this Addendum for any reason, no liability or obligations shall accrue to the bankruptcy estate or Seller based on any such

Docusign Envelope ID: 45B48A45-521B-4CDA-A4C2-64E5C8DF4472

termination. Buyer's sole remedy, in the event that escrow fails to close as a result of Seller's inability to close escrow, shall be a refund of the Deposit in full.

13.    Non-Refundability and Forfeiture of Deposit: The entirety of the Deposit shall be non-refundable and forfeited to Seller's bankruptcy estate upon Seller's submission of the Approval Motion to the Bankruptcy Court. Notwithstanding the immediately preceding sentence, in the event: (a) the Bankruptcy Court enters an order that denies the Seller's request to sell the Property to Buyer; or (b) the Bankruptcy Court enters an order that authorizes the sale to another bidder and Buyer is not a backup bidder, Seller shall refund the entire Deposit to Buyer along with up to $6,000.00 (six thousand dollars) for Buyer's due diligence costs, including but not limited to the cost of the appraisal, Phase I environmental study, and any title costs/fees within seven (7) calendar days following entry of such order by the Bankruptcy Court. In the event Buyer is overbid and is a backup bidder, Debtor shall refund the entire Deposit to Buyer only if the Sale closes to the winning bidder and within seven (7) calendar days following such closing. If Buyer fails to close the Sale by the Closing Date, then Seller shall be entitled to retain the entirety of the Deposit as liquidated damages.

_____ **(Buyer's initials)**

14.    Bankruptcy Court Jurisdiction: The Bankruptcy Court shall have jurisdiction to interpret and enforce the terms of this Addendum and the PSA. This Addendum and the PSA shall be construed pursuant to the laws of the State of California, except to the extent preempted by applicable federal bankruptcy law.

(Remainder of page intentionally left blank)

Docusign Envelope ID: 45B48A45-521B-4CDA-A4C2-64E5C8DF4472

15.     Waiver:  Except as otherwise provided herein, no omission or delay to exercise any right or power accruing upon any default, omission, or failure of performance hereunder shall impair any right or power or shall be construed to be a waiver thereof, but any such right and power may be exercised from time to time and as often as may be deemed expedient. No waiver, amendment, release, or modification of the PSA shall be established by conduct, custom, or course of dealing.

**Read, understood, and agreed to:**

**SELLER:**

Dated:  September __, 2025

Robin Mowbray                                               2025-Oct-01 | 12:26 PDT

535733985426408

Mowbray Waterman Property, LLC, a California limited liability company, debtor and debtor-in-possession

By: Robin Mowbray
Its:  Managing Member

**BUYER:**

Dated:  September __, 2025    2025-Sep-30 | 11:21 PDT

Thomas Boone

AA4FF0226F1B4FF...

Boone Trucking, Inc. and/or Assignee

By:  Thomas Boone
Its:



An Independently Owned Escrow Company

1030 La Bonita Dr., Ste. 338
San Marcos, CA 92078
951.737.8860
www.TCEscrowCorp.com

# AMENDED/ADDITIONAL ESCROW INSTRUCTIONS

Pamela Walker
Town & Country Escrow Corp.
pwalker@tcescrowcorp.com

**Date:** November 21, 2025
**Title No.:** NCS 1202042-ONT1
**Escrow No.:** 41100-1
**Property:** 386 South Allen Street
San Bernardino, CA 92408

THE ABOVE NUMBERED ESCROW IS HEREBY AMENDED AND/OR SUPPLEMENTED AS FOLLOWS:

**Contingency (Waived/Satisfied):** The Buyer has fully investigated the subject property and performed any tests or inspection that the Buyer deems necessary to approve the subject property for the Buyer's intended use. The Buyer(s) hereby removes all of the Buyer(s) contingencies, including financing. The Buyers deposit shall be deemed non refundable liquidated damages in the event this escrow is not consummated through the fault of the Buyer(s). Upon close of this Escrow said sums shall apply to the purchase price.

**Close of Escrow:** The consummation date of this escrow is hereby extended from December 23, 2025 to on or before December 30, 2025.

ALL OTHER TERMS AND CONDITIONS TO REMAIN THE SAME.

EACH OF THE BELOW SIGNED STATES THAT HE/SHE/THEY HAS/HAVE READ THE FOREGOING INSTRUCTIONS AND UNDERSTANDS AND AGREES TO THEM AND ACKNOWLEDGE RECEIPT OF A COPY OF SAME.

SELLER(S):

Mowbray Waterman Property, LLC, a California Limited Liability Company

By: _Robin Mowbray_ 2025-Nov-21 | 12:36 PST
—————5357339854264006—————
Robin Mowbray, Managing Member

BUYER(S):

Boone Trucking Inc., a California Corporation

By: _Thomas Boone_ 2025-Nov-21 | 12:37 PST
—————AAE723FC3845E—————
Thomas Boone, Secretary

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
10345 W. Olympic Blvd., Los Angeles, CA 90064

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S MOTION FOR ORDER: (1) AUTHORIZING SALE OF REAL PROPERTY LOCATED AT 386 S. ALLEN ST., SAN BERNARDINO, CA PURSUANT TO 11 U.S.C. § 363(b) AND (f); (2) APPROVING OVERBID PROCEDURES; (3) APPROVING BUYER, SUCCESSFUL BIDDER, AND BACK-UP BIDDER AS GOOD-FAITH PURCHASERS PURSUANT TO 11 U.S.C. § 363(m); AND (4) AUTHORIZING PROPOSED PAYMENT OF PROCEEDS OF SALE; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF ROBIN MOWBRAY AND CODY MORAN IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) November 25, 2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) November 25, 2025, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) November 25, 2025, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 25, 2025 | Lauren B. Wageman | /s/ Lauren B. Wageman |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- **Shraddha Bharatia**    notices@becket-lee.com
- **Jeffrey W Broker**    jbroker@brokerlaw.biz
- **Kenneth J Catanzarite**    kcatanzarite@catanzarite.com
- **Lauren N Gans**    lgans@elkinskalt.com, lmasse@elkinskalt.com
- **Jessica L Giannetta**    jessica@giannettalawcorp.com, melanie@giannettaenrico.com
- **Robert P Goe**    rgoe@goeforlaw.com, kmurphy@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com
- **Marshall F Goldberg**    mgoldberg@glassgoldberg.com, jbailey@glassgoldberg.com
- **Alan Craig Hochheiser**    ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com
- **Merdaud Jafarnia**    bkca@alaw.net, mjafarnia@ecf.inforuptcy.com
- **Raffi Khatchadourian**    raffi@hemar-rousso.com
- **Valery Loumber**    valloumlegal@gmail.com
- **Michael B Lubic**    michael.lubic@klgates.com, jonathan.randolph@klgates.com,klgatesbankruptcy@klgates.com
- **James MacLeod**    jmacleod@dunninglaw.com, nancy@dunninglaw.com
- **Charity J Manee**    cmanee@goeforlaw.com, kmurphy@goeforlaw.com
- **Kathleen P March**    kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net
- **Robert S Marticello**    rmarticello@raineslaw.com, bclark@raineslaw.com;csantiago@raineslaw.com
- **David W. Meadows**    david@davidwmeadowslaw.com
- **Karen S. Naylor**    Becky@ringstadlaw.com, Karen@ringstadlaw.com;Arlene@ringstadlaw.com
- **Estela O Pino**    epino@epinolaw.com, staff@epinolaw.com;clerk@epinolaw.com
- **Donald W Reid**    don@donreidlaw.com, 5969661420@filings.docketbird.com
- **Todd C. Ringstad**    becky@ringstadlaw.com, arlene@ringstadlaw.com
- **Amitkumar Sharma**    amit.sharma@aisinfo.com
- **Jeffrey S Shinbrot**    jeffrey@shinbrotfirm.com, sandra@shinbrotfirm.com;tanya@shinbrotfirm.com
- **Thomas E Shuck**    tshuck@pmcos.com, efilings@pmcos.com
- **Michael Simon**    msimon@raineslaw.com, bclark@raineslaw.com;csantiago@raineslaw.com
- **Derek A Simpson**    derek@dsimpsonlegal.com
- **Ahren A Tiller**    ahren.tiller@blc-sd.com, 4436097420@filings.docketbird.com;brett.bodie@blc-sd.com;anika@blc-sd.com;derek@blc-sd.com;kreyes@blc-sd.com;megan@blc-sd.com;nicole@blc-sd.com;danny@blc-sd.com;angie@blc-sd.com;kreyes@blc-sd.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov
- **Sharon Z. Weiss**    sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com,sharon-weiss-7104@ecf.pacerpro.com
- **Jennifer C Wong**    bknotice@mccarthyholthus.com, jwong@ecf.courtdrive.com
- **Mandy Youngblood**    csbk@gmfinancial.com
- **Roye Zur**    rzur@elkinskalt.com, lwageman@elkinskalt.com;1648609420@filings.docketbird.com;rzur@ecf.courtdrive.com;lmasse@elkinskalt.com

2. **SERVED BY UNITED STATES MAIL**:

| | | |
|---|---|---|
| Force Ten Partners LLC<br>5271 California Ste 270<br>Irvine, CA 92617 | Grobstein Teeple LLP<br>Grobstein Teeple LLP<br>23832 Rockfield Blvd Ste 245<br>Lake Forest, CA 92630 | Hahn Fife & Company<br>1055 E. Colorado Blvd #5<br>Pasadena, CA 91106 |
| Hilco Valuation Services LLC<br>Attn: Eric Kaup, EVP, CCO<br>5 Revere Dr, Ste 300<br>Northbrook, IL 60062 | Queenie K Ng<br>411 West Fourth St.<br>Suite 7160<br>Santa Ana, CA 92701 | Raines Feldman Littrell LLP<br>3200 Park Center Dr Ste 250<br>Costa Mesa, CA 92626 |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

F 9013-3.1.PROOF.SERVICE

| Brian Weiss<br>5271 California Ste 270<br>Irvine, CA 92617 | Honorable Scott C. Clarkson<br>United States Bankruptcy Court<br>Ronald Reagan Federal Building and<br>Courthouse<br>411 West Fourth Street, Suite 5130 /<br>Courtroom 5C<br>Santa Ana, CA 92701-4593 |
| --- | --- |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**