Robert P. Goe – State Bar No. 137019
Jeffrey W. Broker – State Bar No. 53226
Charity J. Manee – State Bar No. 286481
**GOE FORSYTHE & HODGES LLP**
17701 Cowan, Building D, Suite 210
Irvine, CA 92614
Email: rgoe@goeforlaw.com
          jbroker@goeforlaw.com
          cmanee@goeforlaw.com
Telephone:  (949) 798-2460
Facsimile:   (949) 955-9437

Kenneth J. Catanzarite (SBN 113750)
**CATANZARITE LAW CORPORATION**
2331 West Lincoln Avenue
Anaheim, California 92801
Email: kcatanzarite@catanzarite.com
Telephone:     (714) 520-5544
Facsimile:      (714) 520-0680

Attorneys for Creditor Ronnie Jordan

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>THE ORIGINAL MOWBRAY TREE SERVICE, INC.,<br><br>Debtor(s) | Chapter 11<br><br>LEAD CASE NO.: 8:24-bk-12674-SC<br><br>JOINTLY ADMINISTERED WITH:<br><br>CASE NO. 8:25-bk-10542-SC<br><br>CASE NO. 8:25-bk-10543-SC |
| In re:<br><br>MOWBRAY WATERMAN PROPERTY, LLC,<br><br>Debtor(s) | **RESPONSE AND OBJECTIONS TO THE SECOND DECLARATION OF RUBEN SAINOS AND DECLARATION OF ROYE ZUR GIVEN IN SUPPORT OF DEBTORS' JOINT PLAN (AS AMENDED AND MODIFIED) AND EVIDENTIARY OBJECTIONS TO SUCH DECLARATIONS; REQUEST FOR JUDICIAL NOTICE FILED CONCURRENTLY HEREWITH** |
| In re:<br><br>ROBIN ELAINE MOWBRAY<br><br>Debtor(s) | **Continued Plan Confirmation Hearing:**<br>Date:  March 4, 2026<br>Time:  1:30 p.m.<br>Place   Courtroom 5C<br>          411 W. Fourth Street |
| __X__  Affects all Debtors<br>_____  Affects The Original Mowbray Tree Service, Inc. | |

| | |
|---|---|
| _____ Affects Mowbray Waterman Property, LLC | Santa Ana, CA 92701 |
| _____ Affects Robin Elaine Mowbray | |
| Debtor(s) | |

Creditor Ronnie Jordan submits this response and objections to the second[1] declaration of Ruben Sainos [Docket No. 1465] ("Sainos Supp. Declaration") and Roye Zur [Docket No. 1466] ("Zur Declaration") with evidentiary objections thereto.  Defined terms used herein have the same meaning as in the Plan or Second Modified Plan (defined below).

## I.    PREFATORY STATEMENT

Debtors filed the *Second Amended Joint Chapter 11 Plan of Reorganization* ("Plan") on September 18, 2025.  Jordan timely filed his preliminary objection to the Plan [Docket No. 1378] ("Initial Objection") on January 16, 2026, in accordance with the deadlines established by the Court, in which Jordan requested an evidentiary hearing.  Debtors filed their *Debtors' (1) Motion To Approve Non-Material Modifications To The Second Amended Joint Chapter 11 Plan Of Reorganization; (2) Memorandum In Support Of Confirmation Of The Second Amended Joint Chapter 11 Plan Of Reorganization; And (3) Omnibus Response To Objections To Confirmation* [Docket No. 1435] ("Debtors' Brief") on February 5, 2026 with their evidence in support of confirmation of the Plan.  Jordan filed his reply to Debtors' Brief on February 13, 2026 [Docket No. 1448 and supporting filings] ("Reply"), which was aimed at defeating the then-existing and patently unconfirmable Plan that was predicated on the MWP Consolidation, among other fatal defects.  The Reply specifically noted on page 35 of 385 the lack of evidence in support of the Plan and in particular, no declarations of Robin Mowbray or the CRO Brian Weiss.

On February 18, 2025, the Court held a hearing on confirmation of Plan at which the Court stated it was prepared to deny confirmation given at least one fundamental flaw in the Plan, namely that Debtors sought the MWP Consolidation in violation of established Ninth Circuit law, among other potential material defects the Court commented upon.  Shockingly Debtors' counsel

---

[1] MTS CFO Ruben Sainos already gave a declaration in support of confirmation of the Plan. [See Docket No. 1438]. Mr. Sainos is deeply conflicted by providing self-serving testimony for MWP in an effort to get the MTS Plan confirmed.

1

admitted it could not meet the Bonham test, meaning that the Plan violated FRBP 9011 causing

Jordan to expend hundreds of thousands of dollars in legal fees opposing a Plan that could never

be confirmed.  As made clear during the February 18, 2026 hearing by counsel for the Rodriguez

Plaintiffs, the MWP Consolidation was a material term of the Rodriguez Compromise.  Debtors

needed the support of the Rodriguez Plaintiffs to achieve confirmation of the Plan in a fashion that

would vest all equity interests in MTS current owner (Robin Mowbray) without having to satisfy

the absolute priority rule. The Court then gave the Debtors and Rodriguez Plaintiffs the option of a

continued hearing to afford them the opportunity to try to resolve their conundrum (which they

accepted) and continued the confirmation hearing to February 26, 2026 at 1:00 p.m.  At the

request of Debtors, the Court orally granted permission to Debtors to file a redline of any potential

changes arising out of any resolution they may have achieved.

        The evening before the continued hearing on confirmation, on February 25, 2026 after 5:00

p.m., Debtors submitted in redline a materially different and conceptually new *Second Modified*

*Second Amended Joint Chapter 11 Plan of Reorganization* (the "Second Modified Plan")[2].

Among other sweeping changes, the Debtors removed the MWP Consolidation in favor of a new

concept achieving the exact same goal that prevented the MWP Consolidation of gratuitously

transferring millions of dollars of equity from the MWP bankruptcy estate's assets to MTS via the

"MWP Pledge," to provide the insurance policy on MTS plan payments the Rodriguez Plaintiffs

counsel stated on February 18, 2026[3] was the reason for the MWP Consolidation term.  In an

effort to belie this gratuitous transfer that embodies the same inequitable improprieties of the

MWP Consolidation, the Modified Plan created a new general unsecured Class 20 of MWP

creditors and proposes to pay it an arbitrary $1.5 million in the aggregate, which MTS argued is

equal to or greater than would be received by such creditors in a chapter 7 liquidation scenario.

All the while Robin Mowbray and the Trust keep all the equity in MTS and MWP for free

(Classes 21 and 22).

---

[2] Debtors have never filed the Second Modified Plan with exhibits.

[3] At the hearing at minute 46 Ahren Tiller stated the amount of the MWP equity was "massive" and far more than the
Debtors' alleged liquidation value.

At the second hearing on confirmation held on February 26, 2026, the Court apparently disagreed with many of the objections Jordan's counsel was able to cobble together in the matter of hours and state orally as best as could be expected.  Again, the Second Modified Plan was filed after hours on the night before the hearing, giving Jordan a few hours to analyze a completely new plan concept.  However, the reason for the Sainos Supp. Declaration and Zur Declaration is that it was argued by Jordan persuasively that Debtors had submitted zero evidence to support any factual assertions surrounding the liquidation value of MWP (among other things).  Instead of denying confirmation of the Second Modified Plan, the Court further continued the hearing on confirmation of the Second Modified Plan, expressly permitting Debtors to supplement the evidentiary record and reluctantly permitting Jordan to object to their new submissions by March 3, 2026.

Jordan therefore submits the following objections to the newly offered evidence.  Jordan notes and repeats his request for an evidentiary hearing (first made in his Initial Objection), and objects to being denied the opportunity to cross-examine these witnesses on their newly offered and belated testimony, pursuant to Federal Rules of Bankruptcy Procedure ("FRBP") 9014 and 3020.[4]  Because Jordan has not been granted an evidentiary hearing, some of the impeachment evidence he would otherwise offer live is being submitted as part of his response where possible.  Other testimony Jordan would elicit during cross-examination cannot be substituted.

## II.    THE MWP LIQUIDATION ANALYSIS IS FALSE, INACCURATE, MISLEADING AND DEMONSTRATES SERIOUS MISMANAGEMENT OF THE DEBTOR'S ESTATE AND DELIBERATE AND EGREGIOUS BREACHES OF FIDUDIARY DUTIES BY MWP ESTATE FIDUCIARIES.

The Court has to scratch its head and ask how as a fiduciary to its creditors MWP and its conflicted counsel can support the gifting of its assets to MTS for zero consideration.  These cases are not and never will be consolidated.  Robin Mowbray owns and controls both MWP and MTS

---

[4] Additionally, Federal Rule of Bankruptcy Procedure 3020(b) suggests the Court is required to hold an evidentiary hearing where confirmation is contested. "If no objection is timely filed, the court may, without receiving evidence, determine that the plan was proposed in good faith and not by any means forbidden by law." FRBP 3020(b) in pertinent part.

and is deeply conflicted.  She has no problem selling out the MWP creditors for the benefit of

MTS and to appease the Rodriguez Plaintiffs so that she walks away with ownership and control

of both entities, for free.  It is clear MTS counsel, Mr. Marticello is driving the bus and Mr. Zur is

playing along to accomplish Robin Mowbray's objectives, notwithstanding the harm to Jordan.

The Zur Declaration and Sainos Supp. Declaration are offered apparently to provide

evidentiary support for the assertions made in the MWP Liquidation Analysis that is Exhibit 5 to

the Index **filed on September 18, 2025** and attached for the Court's convenience to the RJN as

**Exhibit 1**.  While the testimony is inadmissible from these witnesses, as detailed below, there is a

more serious fundamental problem with what is being presented to the Court.  The MWP

Liquidation Analysis that is about a half a year old now is materially inaccurate and does not

remotely present an accurate depiction of what a liquidation of MWP would yield on the effective

date of the Second Modified Plan.  This is because the debt to PNC, which Jordan always argued

was being overstated and double-counted by MWP and MTS to drive down the liquidation values

of their estates, has been substantially paid down since September 18, 2025.   PNC is fully secured

by the assets of MTS alone and should be completely removed from the MWP Liquidation

Analysis.[5]

The Second Modified Plan inaccurately provides,

"Within one (1) year after the Effective Date and to the extent not sold prior thereto (the
"**Sale Deadline**"), the ~~MTS~~ MWP Reorganized Debtor shall close sales of Allen Street.
Property and the Elder Creek Property. The MWP Reorganized Debtor will cause the sale
of the Elder Creek Property as needed to fund the MWP GUC Payment was [sic] required
in the Plan. The ~~MTS~~ MWP Reorganized Debtor may extend the Sale Deadline for "cause"
by motion filed with the Bankruptcy Court prior to the expiration of the Sale Deadline.

Second Modified Plan, , at 63:19-24.  In fact, MWP has already closed the sale of "Allen Street"

and as a result of that very recent sale,  PNC has been paid at least $1,823,980.62 on account of its

secured claim, *by MWP.*

Late in 2025, MWP obtained a Court order authorizing it to sell a real property located at

386 South Allen St. San Bernardino CA 92408 ("Allen Street") encumbered by a Deed of Trust in

---

[5] In the MTS Liquidation Analysis PNC is shown as being fully secured and will recover one-hundred-percent (100%)
payment either through the MTS Plan or liquidation.  Attached to the RJN as **Exhibit 2** is a true and correct copy of
the pertinent page of the MTS Liquidation Analysis.

favor of PNC which was given as guaranty by MWP for MTS' secured debt to PNC. While the

Sale Order was entered on December 19, 2025, according to MWP's MOR for January 2026 filed

on February 23, 2026, the sale of that property closed on January 14, 2026. *See* MWP MOR for

January 2026 [Docket No. 1455] attached as **Exhibit 3** to the RJN, at page 16 of 32 (disclosing for

the first time that PNC was paid "$1,823,980.62" from the sale by MWP of Allen Street and that

such sale closed according to the MOR on January 14, 2026).[6]

The payment by MWP to PNC from the Allen Street sales proceeds was made on account

of MWP's secured guarantee of MTS' secured debt to PNC. The DS [Docket 891] at page 16 of

149, explains,

> "As of the MTS Petition Date, MTS owed PNC approximately $7,038,514 under the PNC
> Loan, which is secured by liens on all or substantially all of MTS's assets (excluding real
> property). The PNC Loan was guaranteed by Robin Mowbray and MWP, an affiliate of the
> Debtor. The guaranty from MWP is secured by two real properties that it owns."

Additionally, on page 25 of 149 of the DS, it provides,

> The Allen St. Property is 1.9 acres of vacant commercial property comprising five separate
> parcels (APNs 0136-251-28, 02136-251-29, 0136-251-30, 0136-251-31, 0136-251-40).
> The Elder Creek Property is 8.16 acres of vacant commercial property (APN 066-0010-
> 032-000). There is currently no tenant on either property. PNC has a lien on both the Allen
> St. Property and the Elder Creek Property in order to secure MWP's guaranty of the PNC
> Loan. Both the Allen St. Property and the Elder Creek Property are listed for sale. The net
> proceeds from the sale of either such property would pay down the claim of PNC (asserted
> against both MWP and MTS).

Id. at p. 25 of 149.

Despite very recently paying and satisfying a huge portion of the PNC claim, the MWP

Liquidation Analysis the Debtors are trying to get the Court to adopt (that again, is at least

approximately six months old) has not been amended and updated to deduct the paydown of

PNC's secured claim or to include MWP's resulting in the post-petition subrogation claim which

accrued in favor MWP against MTS upon making payment to PNC of a debt primarily owed by

MTS.

Section 509 of the Bankruptcy Code provides very clearly,

(a) Except as provided in subsection (b) or (c) of this section, an entity that is liable with

---

[6] MWP failed to and has not filed a required FRBP 6004(f)(1)(A) and Local Bankruptcy Rule LBR 6004-1(g), which
states "Report of Sale. Unless otherwise ordered by the court, the report of sale required by FRBP 6004(f)(1) must be
filed and served not later than 21 days after the date of the sale of any property not in the ordinary course of business."

the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment.

(b) Such entity is not subrogated to the rights of such creditor to the extent that—
    (1) a claim of such entity for reimbursement or contribution on account of such payment of such creditor's claim is—
      (A) allowed under section 502 of this title;
      (B) disallowed other than under section 502(e) of this title; or
      (C) subordinated under section 510 of this title; or
    (2) as between the debtor and such entity, such entity received the consideration for the claim held by such creditor.

(c) The court shall subordinate to the claim of a creditor and for the benefit of such creditor an allowed claim, by way of subrogation under this section, or for reimbursement or contribution, of an entity that is liable with the debtor on, or that has secured, such creditor's claim, until such creditor's claim is paid in full, either through payments under this title or otherwise.

11 U.S.C. § 509. As explained by the Ninth Circuit Bankruptcy Appellate Panel,

…subrogation under section 509 requires actual payment of all or part of the claim. "It is only in the latter case of actual payment by the codebtor that subrogation under section 509 is available." 4 *Collier on Bankruptcy* P509.02[3]; *see also Cornmesser v. Swope (In re Cornmesser's, Inc.),* 264 B.R. 159, 162 (Bankr. W.D. Pa. 2001) ("An entity is subrogated to the rights of a creditor for purposes of § 509(a) *if and only if* (1) the entity is liable with the debtor; (2) on a claim of a creditor against the debtor; and (3) *the entity pays such claim.*") (emphasis added). The statute itself provides that an entity "that pays" a claim on which it is jointly liable with a debtor is subrogated "to the extent of such payment." 11 U.S.C. § 509(a).

*Milgard Tempering, Inc. v. DaRosa (In re DaRosa)*, 318 B.R. 871, 878-879 (9th Cir. BAP 2004).

Here, MWP **"is"** subrogated to the secured claim of PNC against MTS in the amount of $1,823,980.62 on account of having made actual payment to PNC on a claim for which it is liable as guarantor with MTS. No competent chapter 7 trustee would fail to monetize this claim. MTS has presently upwards of $12-13 million in cash and the claim of PNC is indisputably oversecured by MTS assets alone (See RJN Exhibit 2), as discussed during the hearing on February 26, 2026 by MTS' counsel and as has been repeated time and again in filings in this case and reflected in the treatment of PNC. MWP's subrogated position to PNC as part of its overall oversecured claim would be paid in full by MTS in the event an actual fiduciary such as a chapter 7 trustee were to liquidate MWP for the benefit of MWP's creditors. This subrogation claim alone exceeds the purported $1.5 million liquidation value purported by MWP in egregious violation of its fiduciary duties.

Further, MTS Claims Analysis shows the Estimated MWP Real Property value with a net of $6,893,847. (Attached to the RJN as **Exhibit 4** is the pertinent page of the MTS Claims

1    Analysis.

2    III.    **THE PLAN CANNOT BE CONFIRMED UNDER SECTION 1129(a)(1)-(3)**

3    **BECAUSE DOING SO WOULD ABET AN INTENTIONAL BREACH OF**

4    **FIDUCIARY DUTY BY MWP AND ITS WOEFULLY CONFLICTED**

5    **BANKRUPTCY ATTORNEYS**

6    At the first hearing on confirmation held on February 18, 2026, the Court commented on

7    the obvious fact that the Plan was being pursued for the benefit of the Debtors' insiders (most of

8    whom are members of the Mowbray family).  The closest insider by nexus is Robin Mowbray who

9    is one of the Debtors, is the majority owner of MWP and the sole owner of MTS.  Robin Mowbray

10   wants to retain her companies for no payment to senior classes not being paid in full and her

11   skilled attorneys have set up her doing just that in the Plan (and now Second Modified Plan),

12   which is completely improper.  However, Robin Mowbray's bankruptcy attorneys happen to also

13   inexplicably represent MWP, a debtor in possession in its own chapter 11 case.  This conflict is

14   the only explanation why the Second Modified Plan was not modified in favor of MWP to

15   maximize the value of its assets and pursue and protect its recently acquired subrogation claim

16   against MTS based on MWP's sale of PNC encumbered real estate resulting in a large, partial

17   satisfaction of MTS' debt to PNC.  If not for this conflict resulting in the goal of retention by

18   Robin Mowbray of the MTS equity at all costs, MWP would never have agreed to the MWP

19   Pledge (or the MWP Consolidation) and would be taking basic steps to fulfill its fiduciary duties .

20   To be clear, the Plan was predicated on MWP selling its own creditors short by

21   consenting to the MWP Consolidation.  Jordan successfully objected to such travesty.  The Second

22   Modified Plan is no different in its objectives and its breaches of fiduciary duty by MWP, which

23   are actually now more pronounced.

24   A debtor in possession steps into the shoes of a trustee, and like a trustee, has a fiduciary

25   responsibility to all the creditors of the bankruptcy estate.  *See In re McConville*, 110 F.3d 47, 50

26   (9th Cir. 1997); *In re Woodson*, 839 F.2d 610, 614 & n.5 (9th Cir. 1988).  That fiduciary

27   responsibility also rests with bankruptcy counsel for the debtor in possession.  *In re Perez*, 30 F.3d

28   1209, 1219 (9th Cir. 1994) (emphasis added) ("Counsel for the estate must keep firmly in mind

that **his client is the estate** and not the debtor individually."). "Under no circumstances, . . . may the lawyer for a bankruptcy estate pursue a course of action, unless he [or she] has determined in good faith and as an exercise of his professional judgment that the course complies with the Bankruptcy Code and serves the best interests of the estate." *Id.*; *see also In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 840 (Bankr. C.D. Cal. 1991) ("In a Chapter 11 proceeding, the attorney for debtor in possession, as an officer of the court charged to perform duties in the administration of the case, has a high fiduciary duty to the estate represented."). In that vein, the duties of a trustee or debtor in possession include the duty "to maximize the assets of the bankruptcy estate to allow maximum recovery for the debtor's creditors." *In re Feiler*, 218 F.3d 948, 952 (9th Cir. 2000); *see also In re Consol. Nevada Corp.*, No. 3:13-BK-51236-GWZ, 2017 WL 6553394, at *7 (B.A.P. 9th Cir. Dec. 21, 2017) (The duty of "a chapter 11 debtor-in-possession (or trustee) is . . . to maximize the economic value of the estate."), *aff'd*, 778 F. App'x 432 (9th Cir. 2019).

A debtor-in-possession has a fundamental duty to maximize the value of the estate, for the benefit of the creditors. *Official Committee of Unsecured Creditors of Cybergenics Corporation, on behalf of Cybergenics Corporation, Debtor in Possession v. Chinery*, 330 F.3d 548, 558-559, 568 (3d Cir. 2003). "Failure to protect and conserve estate property constitutes a breach of fiduciary duty." *In re Sillerman*, 605 B.R. 631, 648 (Bank. S.D.N.Y. 2019) citing *In re Ionosphere Clubs, Inc.*, 113 B.R. at 164, 169 (Bankr. S.D.N.Y. 1990) (Lifland, C.J.). "As a corollary, a debtor-in-possession also has a fiduciary duty to refrain from actions that could damage the estate. *Id.* at 649 (*citing Ionosphere* at 164).

Here, Mr. Zur and the attorneys of Elkins Kalt Weintraub Reuben Gartside LLP, who represent the bankruptcy estate of MWP (controlled by Robin Mowbray) have (1) failed to assert MWP's subrogation (despite Jordan's demand made shortly after successfully stymieing the MWP Consolidation but which Jordan should not have had to make), (2) have joined in and doubled down on seeking confirmation of the Second Modified Plan by arguing the accuracy and legitimacy of the MWP Liquidation Analysis that omits MWP's subrogation claim and includes the PNC secured claim on Elder Creek, (3) failed to ensure proper treatment by MTS of MWP's

subrogation claim and under values it's assets while overstating the liabilities in the Plan and now

Second Modified Plan.  Therefore, the Second Modified Plan embodies and is indeed predicated

on an egregious breach of fiduciary duties in violation of Bankruptcy Code sections 1106, 1107,

704 as incorporated, and long established caselaw regarding the duties of fiduciaries of a

bankruptcy estate to maximize estate assets for the creditors of the estate they represent and serve,

not creditors of another bankruptcy estate.  MWP and its counsel's breach of fiduciary duties

render the Second Modified Plan unconfirmable.

> Courts have denied confirmation pursuant to sections 1129(a)(1)-(2), where the plan, or plan proponent's conduct, is contrary to provisions of title 11 not found in chapter 11. *See e.g., Resorts Int'l v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394, 1401-02 (9th Cir. 1995) (finding that section 1129(a)(1) requires that plan comply with section 524(e) of Bankruptcy Code); *In re Beyond.com Corp.*, 289 B.R. 138, 143 (Bankr. N.D. Cal. 2003) (finding proposed plan that dramatically reduced notice to creditors otherwise applicable under other provisions of the Bankruptcy Code did not comply with section 1129(a)(1)); *In re Wermelskirchen*, 163 B.R. 793, 796 (Bankr. N. D. Ohio 1994) (finding section 521 of Bankruptcy Code applicable provision for purposes of 1129(a)(2)). For purposes of this Memorandum Decision and Order, the Court will assume that section 1129(a)(1)-(2) requires compliance with all "applicable provisions" of the Bankruptcy Code, regardless of whether they appear in chapter 11 or elsewhere in the Bankruptcy Code.

*In re Ditech Holding Corp.*, 606 B.R. 544, 578 (Bankr. S.D.N.Y. 2019).  The objectives of the

Second Modified Plan would achieve results inconsistent with the Bankruptcy Code for largely the

same reasons as the Plan, namely that the Second Modified Plan also represents a scheme and

conspiracy by purported fiduciaries of MWP, MTS and Robin Mowbray to funnel MWP property

to MTS creditors to enable insiders to retain their interests in the Debtors, all at the expense of the

MWP bankruptcy estate and its legitimate creditors.

## IV.    A LIQUIDATION ANALYSIS IS NOT EVIDENCE

To start the MWP Liquidation Analysis is useless as footnote 5 conditions MWP values

stating "pending an appraisal…".  No appraisals have been provided.

MWP's Liquidation Analysis has no evidentiary value.  As noted by the Ninth Circuit in

*Schoenmann v. Bank of the West (In re Tenderloin Health, FKA)*, 849 F.3d 1231 (9th Cir. 2017).

> Although "[t]he hypothetical liquidation analysis must be based on evidence and not assumptions in order to meet the best interests of creditors test," Collier on Bankruptcy ¶ 1129.02 n.98 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2016) [hereinafter "Collier"] (citing I*n re Mcorp Fin., Inc.*, 137 B.R. 219, 228-29 (Bankr. S.D. Tex. 1992)), "a trustee's avoiding powers in a hypothetical chapter 7 case may [] affect the analysis," Id.

¶ 1129.02.

*Id.* at 1237 (emphasis added).  In noting that a liquidation analysis must be "based" on evidence, it is clear that a liquidation analysis itself is not evidence.  The discovery responses of MWP confirm that the liquidation analysis included estimates.  For example, in response to Jordan's interrogatory #11 to MWP, MWP responded, "As set forth in the Plan and the Disclosure Statement, the **estimated net value** of the real property owned by MWP exceeds the value of the Released Claims."  *See* Exhibit X to the Catanzarite Declaration in support of the Initial Objection at page 25 of 44, lines 16-17  (emphasis added). Moreover, the DS itself warns,

**THIS DISCLOSURE STATEMENT CONTAINS "FORWARD-LOOKING STATEMENTS" WITHIN THE MEANING OF FEDERAL SECURITIES LAWS. SUCH STATEMENTS CONSIST OF ANY STATEMENT OTHER THAN A RECITATION OF HISTORICAL FACT AND CAN BE IDENTIFIED BY THE USE OF FORWARDLOOKING TERMINOLOGY SUCH AS "MAY," "EXPECT," "ANTICIPATE," "ESTIMATE" OR "CONTINUE" OR THE NEGATIVE THEREOF OR OTHER VARIATIONS THEREON OR COMPARABLE TERMINOLOGY. THE DEBTORS AND ITS ADVISORS CONSIDER ALL STATEMENTS REGARDING ANTICIPATED OR FUTURE MATTERS TO BE FORWARD-LOOKING STATEMENTS.**

**STATEMENTS CONCERNING THESE AND OTHER MATTERS ARE NOT GUARANTEES OF THE DEBTORS' FUTURE CASH FLOW AVAILABLE FOR DISTRIBUTION TO CREDITORS. THERE ARE RISKS, UNCERTAINTIES, AND OTHER IMPORTANT FACTORS THAT COULD CAUSE THE DEBTORS' ACTUAL CASH FLOWS TO BE DIFFERENT FROM THOSE BEING PROJECTED, AND THE DEBTORS AND ITS ADVISORS UNDERTAKE NO OBLIGATION TO UPDATE THE PROJECTIONS MADE HEREIN. THE READER IS CAUTIONED THAT ALL FORWARD-LOOKING STATEMENTS ARE NECESSARILY SPECULATIVE AND THERE ARE CERTAIN RISKS AND UNCERTAINTIES THAT COULD CAUSE ACTUAL EVENTS OR RESULTS TO DIFFER MATERIALLY FROM THOSE REFERRED TO IN SUCH FORWARD-LOOKING STATEMENTS. THE LIQUIDATION ANALYSIS, PROJECTIONS AND OTHER INFORMATION CONTAINED HEREIN AND ATTACHED HERETO ARE ESTIMATES ONLY, AND THE VALUE OF THE PROPERTY DISTRIBUTED TO HOLDERS OF ALLOWED CLAIMS MAY BE AFFECTED BY MANY FACTORS THAT CANNOT BE PREDICTED. THEREFORE, ANY ANALYSES, ESTIMATES, OR RECOVERY PROJECTIONS MAY OR MAY NOT TURN OUT TO BE ACCURATE.**

DS at page 14 of 149 lines 9-22.

Even though the DS states above the "Liquidation Analysis… are estimates only," and even though the Court agreed that Debtors offered no evidence in support of the MWP Liquidation Analysis, prompting the second continuance, third hearing on confirmation and Sainos Supp. Declaration and Zur Declarations, the MWP Liquidation Analysis remains unsupported by competent evidence as to factual assertions made.  The Sainos Supp. Declaration focuses on the

value of MWP real estate but fails to present any competent lay or expert testimony.  Neither declaration address the changes that have transpired since the MWP Liquidation Analysis was prepared likely in June of 2025 but filed in September 2025.  As detailed above, the amounts of critical inputs in the analysis are quite different (debt and asset values) and Jordan is entitled to cross-examine the Debtors' witnesses.

## V.    THE MWP LIQUIDATION ANALYSIS IS OUTDATED

As detailed above, the MWP Liquidation Analysis was credited at the latest in September 2025, when it was filed.  Jordan has always disputed the accuracy of the MWP Liquidation Analysis (which is contradicted by Debtors' own calculations) but the record is clear that it no longer arguably could reflect a reasonably accurate or justifiable depiction of a hypothetical liquidation scenario for MWP on the Effective Date, which is presumably close to now if the Court were to confirm the Modified Plan.

The following material changes and updates are noticeably missing:

- Accounting for the sale of the Allen Street Property value ($2,200,000 of the real estate sum was attributable to this property). Mr. Sainos testifies he valued the collective five parcels of real estate owned by MWP at the time of his analysis at $9,717,000. It is from this number that the $2.2 million should be deducted, (utilizing his numbers solely for the sake of argument and demonstration with which Jordan, like counsel for the Rodriguez Plaintiffs, vehemently disagrees).

- The Debtor sold the Millwood property for $371,000 after the MWP Liquidation Analysis was prepared, so this too should be reflected as a deduction from the $9,717,000.

- Due to the sale of Millwood, MWP's cash position has improved.  The MWP Liquidation Analysis reflected just $60,000 in cash but it has now according to the most recent MOR, $172,000 for January 2026 (which is attached to the concurrently filed RJN).

- Also, the Allen Street sale gave rise to MWP's secured subrogation claim against MTS in the amount of $1,823,980 (plus costs of sale potentially), as discussed

above.

- Therefore, the assets to which MWP ascribed a value in its analysis (it omitted accounts receivable only) now **equal at least $9,141,980** (again, using MWP's unsupported real estate values that are undoubtedly vastly understated.)

- The MWP Liquidation Analysis being submitted as "evidence" materially misstates the liabilities in failing to eliminate the secured claim of PNC against the Elder Creek Property which MWP says is $2.2 million.   As PNC is massively oversecured by the MTS assets its claim against the Elder Creek Property should be removed but in the event it was ever paid from any sale of the Elder Creek Property it would give rise to an additional subrogation claim of MWP against MTS.

The foregoing changes should have been made by MWP on its own volition if it were not trying to pull one over with the Second Modified Plan and supporting and jointly proposing it. The delta and liquidation value of MWP's assets, again using MWP's estimates of chapter 7 and 11 expenses and unsupported real estate valuations, yield a liquidation value <u>far in excess</u> of $1,500,000.

## VI.    MR. SAINOS IS NOT ABLE TO OFFER EXPERT REAL ESTATE VALUATION TESTIMONY

In the context of real property appraisals, bankruptcy courts generally use the fair market value of real property to make substantive determinations in a Chapter 11 case, and the fair market value is "the price which a willing seller under no compulsion to sell and a willing buyer under no compulsion to buy would agree upon after the property has been exposed to the market for a reasonable time." *In re Courtright*, 57 B.R. 495, 496 (Bankr. Or. 1986).  Bankruptcy courts recognize three approaches used by appraisers to determine fair market value: "(1) the market data or comparable sales approach; (2) the income approach, and (3) the cost or replacement approach." *In re Robinson Ranch, Inc.*, 75 B.R. 606, 609 (Bankr. Mont. 1986).

An expert witness is permitted to testify based on that witness' "knowledge, skill, experience, training, or education," provided that the testimony is helpful to the trier of fact in explaining the evidence, supported by sufficient facts, based on reliable methods, and reflects a

reliable application of those methods. Fed. R. Evid. 702; Fed. R. Bankr. P. 9017. A federal court

has a duty to act as a gatekeeper under Rule 702 of the Federal Rules of Evidence. *Kumho Tire*

*Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509

U.S. 579, 597 (1993). "Ultimately, 'the test under *Daubert* is not the correctness of the expert's

conclusions but the soundness of his methodology.'" *Elosu v. Middlefork Ranch Incorporated*, 26

F.4th 1017, (9th Cir. 2022), quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (*Daubert II*),

43 F.3d 1311 1318 (1995).

> In distinguishing between lay and expert testimony, courts have looked to the Advisory
> Committee's explanation that lay testimony "results from a process of reasoning familiar
> in everyday life." <u>United States v. White</u>, 492 F.3d 380, 401 (6th Cir. 2007) (citation
> omitted) (collecting cases); <u>see also James River</u>, 648 F.3d at 1142 ("[A] person may
> testify as a lay witness only if his opinions or inferences . . . could be reached by any
> ordinary person." (citation omitted)); <u>United States v. VonWillie</u>, 59 F.3d 922, 929 (9th
> Cir. 1995) (explaining that testimony was appropriate lay opinion because the observations
> were "common" and required "a limited amount of expertise, if any"). "[K]nowledge
> derived from previous professional experience falls squarely within the scope of Rule 702
> and thus by definition outside of Rule 701." <u>James River</u>, 648 F.3d at 1142
> (quoting *United States v. Smith*, 640 F.3d 358, 365, 395 U.S. App. D.C. 95 (D.C. Cir.
> 2011)). For example, in <u>James River</u>, the plaintiff sought to introduce lay
> opinion testimony as to the depreciation of land value. The court concluded that calculating
> depreciation required "professional experience" and "[t]echnical judgment" in choosing
> between different calculation methods, and was therefore "beyond the scope of lay
> opinion testimony." <u>Id.</u> at 1142 (distinguishing between testimony about elementary
> mathematical operations, such as taking an average, and testimony about lost business
> profits based on "sophisticated economic models"). In <u>White</u>, auditors testified regarding
> the complicated "structure and procedures inherent in the Medicare program, as well as
> their understanding of certain terms." <u>White</u>, 492 F.3d at 404. The testimony could not be
> considered lay opinion because "[a]n average lay person would be incapable of making
> sense of the various exhibits which the . . . witnesses helped to clarify and link together on
> the basis of the 'reasoning process' employed daily in their highly specialized jobs." <u>Id.</u>; <u>see
> also United States v. Conn</u>, 297 F.3d 548, 554 (7th Cir. 2002) ("[The witness]
> was not asked to summarize his observations in the form of an opinion; rather, he was
> asked to view Mr. Conn's firearms collection in light of his training and experience with
> firearms. Even a lay person familiar with firearms in general would not have the expertise
> to distinguish between firearms that are collector's items and firearms that are not.").

*Everest Stables, Inc. v. Canani*, 2011 U.S. Dist. LEXIS 163107, *10-11 (C.D. Cal. 2011).

Here, MWP is obviously trying to offer expert testimony through Mr. Sainos. Mr. Sainos

is the Chief Financial Officer of MTS. He has no formal employment with MWP and obviously is

conflicted to testify regarding MWP's assets and their values when the very survival of his

employer, MTS, may hinge on the outcome of this dispute. Indeed, Mr. Sainos has a pecuniary

interest in the Court confirming the Second Modified Plan. Additionally, Mr. Sainos was never

disclosed as a valuation expert witness for MWP and does not purport to be "qualified as an expert

by knowledge, skill, experience, training, or education" in conducting real estate valuations.

Federal Rule of Evidence 702.  The Court set a deadline for filing of expert reports in December

2025, by which Jordan abided but which the Debtors have not.  Debtors did not submit any expert

report.  Moreover, Mr. Sainos repeatedly relies on hearsay statements in seeking to offer valuation

data he relied on to "estimate" the values of MWP real estate.  Indeed, his repeated emphasis on

the function he allegedly performed of "estimating" values unequivocally establishes he is not

testifying based on a process of reasoning familiar in everyday life that could be reached by any

ordinary person.  Instead, in his own words, he draws upon MWP's books and records (which are

not relevant to current real estate values) and his 20 years in corporate positions like his current

job as MTS' CFO as well as being privy to alleged hearsay communications and writings (not

produced in discovery), internet searches (also hearsay) and information he obtained from

unspecified brokers and advisors to MWP.  By his own admissions, he is not offering lay

testimony about the values of MWP's commercial real estate, nor would he be qualified to offer

lay testimony on matters of valuing MWP's real estate profile.

  For these reasons and based on the following objections, the Sainos Supp. Declaration is

inadmissible and fails to support any facet of the fundamentally flawed MWP Liquidation

Analysis.

## VII. EVIDENTIARY OBJECTIONS TO THE SECOND SAINOS
   DECLARATION

| EVIDENCE OBJECTED TO IN RUBEN SAINOS DECLARATION [Docket No. 1465] | OBJECTION(S) | COURT'S RULING |
|---|---|---|
| Page 2 ¶1 line 3-11 – "I am the Chief Financial Officer ("CFO") of The Original Mowbray's Tree Service, Inc. ("MTS"), one of the debtors and debtors in possession in the above-captioned jointly administered cases. I have served in such capacity since October 2023. In addition to my position as MTS's CFO, and given that MTS and MWP are family-owned businesses, I actively assist Robin | **Lack of Foundation / No Personal Knowledge – FRE 602:** Under FRE 602, a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. There is insufficient explanation of the foundation | Sustained: _____ Overruled: _____ |

| | EVIDENCE OBJECTED TO IN RUBEN SAINOS DECLARATION [Docket No. 1465] | OBJECTION(S) | COURT'S RULING |
|---|---|---|---|
| 1<br>2 | | | |
| 3<br>4<br>5<br>6<br>7<br>8<br>9 | Mowbray, who is the majority owner of both entities, in managing the financial affairs of Mowbray Waterman Property, LLC ("MWP"), which is a property holding company that does not have any employees. I know each of the following facts to be true of my own personal knowledge, except as otherwise stated and, if called as a witness, I could and would competently testify with respect thereto." | for much of the testimony provided in the declaration, and declarant provides no information that he has any personal knowledge regarding this testimony. Also, critically, witness fails to specify in what ways he "actively assist[s]" Ms. Mowbray in managing MWP. | |
| 10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22 | Page 2 ¶2- lines 12 - 19 –<br>"I have a Master's in Business Administration (MBA), and a Bachelor of Science (BS) in Accounting, and have served in senior financial and accounting positions, including Controller, Director of Finance, Vice President of Finance, and Chief Financial Officer, for various businesses for over twenty (20) years. This includes joining several businesses that were in financial distress, such as MTS, at the time I became employed. Since joining MTS as its CFO and assisting with MWP, I have been very involved in their respective business affairs, financial affairs, and efforts to restructure their operations. Specifically, I am the individual primarily responsible for keeping MWP's books and records." | **Improper Opinion – FRE 701/702:** No expert report was submitted by witness by December 11, 2025 deadline. Witness not qualified to offer expert testimony for real estate or other asset valuation purposes. | Sustained: _____<br>Overruled: _____ |
| 23<br>24<br>25<br>26<br>27<br>28 | Page 2, ¶2- lines 19-22<br>"I have communicated continuously with brokers employed by MWP and have been heavily involved in MWP's efforts to sell its real properties. As a result, I am familiar with MWP's operations, business affairs, books and records, assets (including real properties), and liabilities. " | **Improper Opinion – FRE 701/702-** Witness is not qualified to offer expert testimony for real estate or other asset valuation purposes. Witness admits that his knowledge is based on hearsay statements from third parties (i.e. "as a result") and therefore witness is also not qualified to opine or offer | Sustained: _____<br>Overruled: _____ |

| EVIDENCE OBJECTED TO IN RUBEN SAINOS DECLARATION [Docket No. 1465] | OBJECTION(S) | COURT'S RULING |
|---|---|---|
| | valuation testimony as a lay witness. | |
| | **Hearsay – FRE 804:** Any statement or information obtained from the out of court sources described is hearsay without qualifying for an exception. | Sustained: _____ Overruled: _____ |
| Page 2, ¶2, lines 23-25 "Except as otherwise indicated herein, all facts set forth in this Declaration are based on (a) my personal knowledge of MWP's operations and finances, and/or my review of MWP's books and records, or relevant documents, (b) information I received from MWP, its advisors and real estate brokers, and/or (c) my opinion based upon my experience." | **Lack of Foundation / No Personal Knowledge – FRE 602:** Under FRE 602, a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. There is insufficient explanation of the foundation for much of the testimony provided in the declaration, and declarant provides no information that he has any personal knowledge regarding this testimony. Witness admits here to testifying based on information from unspecified "advisors and real estate brokers", admitting his lack of personal knowledge to the matters asserted, none of which seem to derive from MWP's books and records.

**Improper Opinion – FRE 701/702-** Witness is not qualified to offer expert testimony for real estate or other asset valuation purposes.

**Hearsay – FRE 804:** Any statement or information | Sustained: _____ Overruled: _____

Sustained: _____ Overruled: _____

Sustained: _____ Overruled: _____ |

| EVIDENCE OBJECTED TO IN RUBEN SAINOS DECLARATION [Docket No. 1465] | OBJECTION(S) | COURT'S RULING |
|---|---|---|
| | obtained from the out of court sources (MWPs "advisors and real estate brokers") is hearsay without qualifying for an exception. | |
| Page 2&3 ¶3 lines 26 - 28 and lines 1-3 –"With the input and assistance of counsel for MWP, Roye Zur of Elkins Kalt Weintraub Reuben Gartside LLP, I prepared the liquidation analysis for MWP (the "MWP Liquidation Analysis"), which estimates the realizable liquidation value of MWP's assets and the resulting distributions to creditors if MWP was liquidated in a hypothetical Chapter 7 of the Bankruptcy Code." | **Lack of Foundation / No Personal Knowledge – FRE 602:** Under FRE 602, a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Witness admits to relying on MWP counsel to generate the MWP Liquidation Analysis and gives no foundation as to his having personal knowledge and independently formulating or providing any of its contents.<br><br>**Improper Opinion – FRE 701/702-** Witness is not qualified to offer expert testimony for real estate or other asset valuation purposes.<br><br>**Hearsay – FRE 804:** The "input" from MWP's identified counsel is hearsay without qualifying for an exception. | Sustained: _____ Overruled: _____<br><br><br><br><br><br><br><br><br><br><br>Sustained: _____ Overruled: _____<br><br><br><br><br>Sustained: _____ Overruled: _____ |
| Page 3, ¶3, lines 2-3 "A true and correct copy of the MWP Liquidation Analysis is attached to the Disclosure Statement Index [Docket No. 892] as Exhibit 5." | **Improper Opinion – FRE 701/702** (for the same reasons as argued above). | Sustained: _____ Overruled: _____<br><br>Sustained: _____ |

| EVIDENCE OBJECTED TO IN RUBEN SAINOS DECLARATION [Docket No. 1465] | OBJECTION(S) | COURT'S RULING |
|---|---|---|
| | **Lack of foundation/ personal knowledge- FRE 602** as to the source information for the Exhibit. | Overruled: _____ |
| Page 3 ¶4 lines 4 - 6 "As stated in the notes to the MWP Liquidation Analysis, the values for MWP's real properties are based on offers received by MWP for such properties, if any, or publicly available sales data. | **Best Evidence – FRE 1002**: The best evidence rule provides the actual document is required to prove its contents. Here, witness attempts to testify about offers received by MWP real estate and "publicly available" but unspecified sales data. Witness also testifies about the MWP Liquidation Analysis itself which speaks for itself. | Sustained: _____ Overruled: _____ |
| Page 3, ¶4, lines 6-11 "Such values are largely the same values set forth in the "Claims Analysis" prepared by Force Ten Partners attached as Exhibit 11 to the *Index of Exhibits In Support of the Second Amended Joint Disclosure Statement Describing Second Amended Joint Chapter 11 Plan of Reorganization* (the "Disclosure Statement Index") [Docket No. 892]. Indeed, the value attributed to the Elder Creek Property (defined below) by Force Ten Partners in Exhibit 11 is $275,000 lower than the value attributed to that property in the MWP Liquidation Analysis." | **Relevance – FRE 401**: The "Claims Analysis" provided by Mr. Kurtz who admitted he was not the source of information nor qualified to offer testimony on real estate values of MWP has zero evidentiary value for purposes of valuing MWP's real estate for purposes of supporting the MWP Liquidation Analysis. Mr. Kurtz very clearly explained during the hearing held on February 26, 2026 that he is not engaged on MWP matters, which is exactly consistent with the deposition testimony of the MTS CEO, Brian Weiss, of Force Ten Partners which Jordan highlighted in his Reply. | Sustained: _____ Overruled: _____ |
| Page 3 ¶5 lines 12 – 21 "As set forth in the MWP Liquidation Analysis, I | **Lack of Foundation / No Personal Knowledge – FRE** | Sustained: _____ Overruled: _____ |

18

| EVIDENCE OBJECTED TO IN RUBEN SAINOS DECLARATION [Docket No. 1465] | OBJECTION(S) | COURT'S RULING |
|---|---|---|
| estimated the value of MWP's real property located at 686 E. Mill St., San Bernardino, CA 92408 (the "Mill St. Property") at $4,600,000. This value equates to approximately $136.20 per square foot. This value is based, in large part, on the listing price of the real property adjacent to the Mill St. Property – 606 E. Mill St., San Bernardino, CA 92408 – which is listed for $3,800,000 (or $103.64 per square foot), as reflected in the online listing on LoopNet (https://www.loopnet.com/Listing/606-E-Mill-St-San-Bernardino-CA/38845702/). This property is slightly larger than the Mill St. Property (by approximately 3,000 square feet) and has been on the market for over 18 months. Additionally, I have personally observed that this property has been occupied by multiple homeless individuals and vandalized. I believe this set of circumstances has depressed the value of the Mill St. Property." | **602**- the MWP Liquidation Analysis does not set forth that Mr. Sainos valued any property for any purpose.<br><br>**Improper Opinion – FRE 701/702 –** Witness is not qualified to offer expert or lay testimony for real estate or other asset valuation purposes.<br><br>**Hearsay – FRE 804:** as to alleged statements reflected on the website LoopNet regarding the property 606 E. Mill St., San Bernardino, CA 92408.<br><br>**Best Evidence – FRE 1002**: The best evidence rule provides the actual document or recording is required to prove its contents. Here, witness attempts to testify about contents of an internet recording (website page) without producing a copy of it. | Sustained: _____ Overruled: _____<br><br><br>Sustained: _____ Overruled: _____<br><br><br>Sustained: _____ Overruled: _____ |
| Pages 3 & 4 ¶7 line 28, lines 1-8 "As set forth in the MWP Liquidation Analysis, the estimated value of MWP's real property located at 9546 Elder Creek Rd., Sacramento, CA 95829 (the "Elder Creek Property") was $2,200,000. As noted in the MWP Liquidation Analysis, this value was based on the listing price and marketing history of the Elder Creek Property, which has been on the market for approximately three years. Although the Elder Creek Property is listed for $2,600,000, MWP has not received offers in that amount. In estimating the value of the Elder Creek Property, I also considered that, prior | **Lack of Foundation / No Personal Knowledge – FRE 602:** Witness has not provided any foundation for the testimony about the offers MWP has or has not received for the real estate discussed.<br><br>**Improper Opinion – FRE 701/702:** Witness is not qualified to offer expert or lay testimony for real estate or other asset valuation purposes.<br><br>**Hearsay – FRE 804:** | Sustained: _____ Overruled: _____<br><br><br>Sustained: _____ Overruled: _____<br><br><br>Sustained: _____ Overruled: |

19

| EVIDENCE OBJECTED TO IN RUBEN SAINOS DECLARATION [Docket No. 1465] | OBJECTION(S) | COURT'S RULING |
|---|---|---|
| to MWP's bankruptcy filing (in or about January 2025), MWP received an offer of $1,925,000 for the property, but that buyer ultimately withdrew from escrow. The most recent offer received by MWP for the Elder Creek Property is $900,000." | as to alleged offers received and offers not received.<br><br>**Best Evidence – FRE 1002:** The best evidence rule provides the actual document or recording is required to prove its contents. Here, witness attempts to testify about contents of real property offers received by MWP for real estate. | Sustained: _____<br>Overruled: _____ |
| Page 4, ¶9 lines 15 - 20 –"As set forth in the MWP Liquidation Analysis, the estimated value of MWP's real property located at 171 S. Waterman Ave., San Bernardino, CA 92408 (the "Waterman Yard Property") was $346,000, a value reflected in MWP's books and records. The Waterman Yard Property comprises three parcels of unimproved land utilized by MTS and two affiliated entities (Phoenix Traffic Management, Inc. and Pino Tree Service, Inc.) as a parking yard. It is adjacent to multiple other parcels not owned by MWP, some of which contain building improvements." | **Improper Opinion – FRE 701/702:** Witness is not qualified to offer expert or lay testimony for real estate or other asset valuation purposes, which witness appears to be doing based on a book value methodology not legally recognized. | Sustained: _____<br>Overruled: _____ |
| Page 4 ¶10 lines 21 – 24 "The remaining assumptions upon which the MWP Liquidation Analysis is based accompany the MWP Liquidation Analysis, and are based on my review of MWP's books and records and information provided to me by Mr. Zur. I believe those assumptions are reasonable and appropriate. | **Lack of Foundation / No Personal Knowledge – FRE 602:** as to the remaining assumptions referenced.<br><br>**Improper Opinion – FRE 701/702:** Witness is not qualified to offer expert or lay testimony for purposes of valuing assets and liabilities of MWP.<br><br>**Improper Opinion – FRE 704:** The statement is an improper legal conclusion. Experts cannot offer an opinion on their legal | Sustained: _____<br>Overruled: _____<br><br>Sustained: _____<br>Overruled: _____<br><br>Sustained: _____<br>Overruled: _____ |

| EVIDENCE OBJECTED TO IN RUBEN SAINOS DECLARATION [Docket No. 1465] | OBJECTION(S) | COURT'S RULING |
|---|---|---|
| | conclusions (as to the reasonableness of unspecified assumptions) thereby "invading the province of the trial judge." *Nationwide Transport Finance v. Cass Information Systems, Inc*., 523 F.3d 1051, 1058 (9th Cir. 2008). | |
| Pages 4 & 5 ¶11 lines 25 - 28, line 1 "As stated in the MWP Liquidation Analysis, the amount of the debt for PNC was capped at the amount of the two real properties that serve or served as its collateral, the Elder Creek Property and the Allen St. Property, and the amount of the debt for Bank of the Sierra consists of principal and accrued interest (as of the estimated Effective Date of the Plan) and does not include any fees to which Bank of Sierra may otherwise be entitled." | **Improper Opinion – FRE 701/702:** Witness is not qualified to perform or prepare a liquidation analysis or offer lay testimony about the financial condition of MWP and its liabilities given that witness dishonestly fails to disclose that the amount of the PNC debt owed by MWP was vastly reduced in mid-January 2026 and that MTS has further paid down PNC requiring an adjustment to the MWP Liquidation Analysis (including addition of a section 509 subrogation claim against MTS). | Sustained: _____ Overruled: _____ |
| Page 5 ¶12 lines 2 - 6 – "I assisted Mr. Zur in preparing the liquidation analysis for Robin Mowbray (the "RM Liquidation Analysis"), which estimates the realizable liquidation value of Robin Mowbray's nonexempt assets and the resulting distributions to creditors if Robin Mowbray's estate was liquidated in a hypothetical Chapter 7 of the Bankruptcy Code. A true and correct copy of the RM Liquidation Analysis is attached to the Disclosure Statement Index [Docket No. 892] as Exhibit 6." | **Lack of Foundation / No Personal Knowledge – FRE 602:** Under FRE 602, a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. In a shocking admission of impropriety about the fact that the RM Liquidation Analysis' contents being dictated by MWP's conflicted counsel, witness fails to explain how he has any business preparing the | Sustained: _____ Overruled: _____ |

| EVIDENCE OBJECTED TO IN RUBEN SAINOS DECLARATION [Docket No. 1465] | OBJECTION(S) | COURT'S RULING |
|---|---|---|
| | liquidation analysis for his boss's personal bankruptcy case (presumably during his MTS work hours).<br><br>**Improper Opinion – FRE 701/702:** Witness is unqualified as a lay or expert witness to testify about the values of Robin Mowbray's personal assets and her liabilities. | <br><br><br><br><br>Sustained: _____<br>Overruled: _____ |
| Exhibit 6 of the Disclosure Statement Index | **Lack of Foundation / No Personal Knowledge – FRE 602:** Witness has not established any basis for creating a liquidation analysis for Robin Mowbray or that he possesses any personal knowledge of her financial affairs or values of her assets. As noted above, a disclosure statement exhibit has zero evidentiary value and without supporting evidence, is not probative of the assertions it makes.<br><br>**Improper Opinion – FRE 701/702:** Witness is unqualified as a lay or expert witness to testify about the values of Robin Mowbray's personal assets and her liabilities. | Sustained: _____<br>Overruled: _____<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Sustained: _____<br>Overruled: _____ |

## VIII.   EVIDENTIARY OBJECTIONS TO DECLARATION OF ROYE ZUR

| EVIDENCE OBJECTED TO IN ROYE ZUR DECLARATION [Docket No. 1466] | OBJECTION(S) | COURT'S RULING |
|---|---|---|
| Page 3, 6, lines 19-21, "The remaining assumptions under the MWP Liquidation Analysis and the RM | **Lack of Foundation / No Personal Knowledge – FRE 602:** Witness has failed to | Sustained: _____<br>Overruled: _____ |

| EVIDENCE OBJECTED TO IN ROYE ZUR DECLARATION [Docket No. 1466] | OBJECTION(S) | COURT'S RULING |
|---|---|---|
| Liquidation Analysis are based are as set forth in those analyses. I believe those assumptions are reasonable and appropriate." | specify the source of the "remaining assumptions" and whether those were made by he, Mr. Sainos or someone else and therefore, there is no foundation for witness' testimony about such assumptions, which also are unspecified. | |
| | **Improper Opinion – FRE 701, 702 and 704:** The statement is an improper legal conclusion. Experts (which Mr. Zur is not) and lay witnesses cannot offer an opinion on their legal conclusions (as to the reasonableness of unspecified assumptions) thereby "invading the province of the trial judge." *Nationwide Transport Finance v. Cass Information Systems, Inc*., 523 F.3d 1051, 1058 (9th Cir. 2008). | Sustained: _____ Overruled: _____ |

## IX.    CONCLUSION

For the foregoing reasons, all of those stated on the record, the Court should deny confirmation of the Second Modified Plan outright or provide the evidentiary hearing requested by Jordan from the outset, including the ability to cross-examine Mr. Sainos and Mr. Zur.

Dated: March 3, 2026                          Respectfully submitted by

GOE FORSYTHE & HODGES LLP

By: /s/Robert P. Goe_____
        Robert P. Goe
        Charity J. Manee
        Attorneys for Creditor Ronnie Jordan

# REQUEST FOR JUDICIAL NOTICE

In support of his *Response and Objections to the Second Declaration of Ruben Sainos and Declaration of Roye Zur Given in Support of Debtors' Joint Plan (as Amended and Modified) and Evidentiary Objections to Such Declarations*, creditor and respondent Ronnie Jordan ("Jordan") hereby requests pursuant to *Federal Rules of Evidence*, Rule 201, that the Court take judicial notice true and correct copies of the documents described below which are attached exhibits, all of which consist of filings and court records from the instant bankruptcy case.

Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001).  A court must take judicial notice of facts "if requested by a party and supplied with the necessary information."  Fed. R. Evid. 201(d).  A fact is appropriate for judicial notice only if it is not subject to reasonable dispute in that it is (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

Jordan requests judicial notice of the following documents/filings and their contents as follows:

**Exhibit 1** – A true and correct copy of the Mowbray Waterman Property LLC Hypothetical Liquidation Analysis filed September 18, 2025, as Docket No. 892.

**Exhibit 2** – A true and correct copy of page 44 of The Original Mowbray's Tree Service, Inc.'s Hypothetical Claims Analysis filed as Exhibit 11 to Docket No. 892 on September 18, 2025.

**Exhibit 3** – A true and correct copy of the Monthly Operating Report for the month of January 2026 filed on behalf of Mowbray Waterman Property LLC filed on February 23, 2026, as Docket No. 1455.

/ / /

/ / /

/ / /

1    **Exhibit 4** – A true and correct copy of pertinent pages of Mowbray's Tree Service, Inc.'s

2    Hypothetical Claims Analysis filed as Exhibit 11 to Docket No. 892 on September 18, 2025.

3

4    Dated: March 3, 2026                                    Respectfully submitted by

5                                                            GOE FORSYTHE & HODGES LLP

6

7                                                            By: /s/Robert P. Goe
                                                                 Robert P. Goe
8                                                                Charity J. Manee
                                                                 Attorneys for Creditor Ronnie Jordan

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

# EXHIBIT 1

**Mowbray Waterman Property LLC**    **Hypothetical**
**Liquidation Analysis**
*/US$ in OOO's)*

**Summary of Recovery**

The table below summarizes the  projected proceeds that may be available for  distribution to creditors in a hypothetical liquidation of the Debtor's estate under Chapter 7 of
the Bankruptcy Code.  For purposes of this analysis, a potential range of outcomes has been projected in Low and High Scenarios.  The likely outcome is in the middle of this range.

The recoveries below do not reflect the potential negative impact on the distributable value available to the Debtor's creditors on account of any unknown or contingent
liabilities, including, but not limited to, environmental obligations and unasserted claims.

| | (1) Net Book Value as of | | | | Liquidation Value | |
|---|---|---|---|---|---|---|
| | Note | 12/31/25 | Low | High | Low | High |
| **Gross Liquidation Proceeds Available for Distribution** | | | | | | |
| Cash & Cash Equivalents | 2 | $60 | 100% | 100% | $60 | $60 |
| Accounts Receivable | 3 | $168 | 0% | 0% | $0 | $0 |
| Prepaid Expenses | 4 | $46 | 0% | 0% | $0 | $0 |
| Land & Property | 5 | $9,717 | 80% | 92% | $7,774 | $8,940 |
| | | | 100% | 100% | $0 | $0 |
| | | | | | $7,834 | $9,000 |
| | | | | | | |
| **Secured Claims** | | | | | | |
| Bank of the Sierra | 6 | $2,562 | 100.0% | 100.0% | $2,562 | $2,562 |
| PNC Bank | 7 | $4,048 | 100.0% | 100.0% | $4,048 | $4,048 |
| Property Taxes | 8 | $40 | 100.0% | 100.0% | $40 | $40 |
| Franchise Tax Board | | $1 | 100.0% | 100.0% | $1 | $1 |
| | | | | | $6,651 | $6,651 |
| | | | | | | |
| **Chapter 7 Administrative Costs** | | | | | | |
| Chapter 7 Trustee Fees | | | | | $258 | $292 |
| Chapter 7 Professional Fees | | | | | $50 | $50 |
| | | | | | $308 | $342 |
| | | | | | | |
| **Net Proceeds Available for Distribution after Secured Claims** | | | | | $875 | $2,006 |
| | | | | | | |
| **Chapter 11 Administrative Claims** | | | | | | |
| Ch 11 Professional Fees | | $210 | 100.0% | 100.0% | $210 | $210 |
| US Trustee Fees | | $20 | 100.0% | 100.0% | $20 | $20 |
| | | | | | $230 | $230 |
| | | | | | | |
| **Net Proceeds Available for Distribution to Unsecured Creditors** | | | | | $645 | $1,776 |
| | | | | | | |
| **Average Amount Available for Distribution to GUC** | | | | | | $1,211 |

**Mowbray Waterman Property LLC**
**Hypothetical Liquidation Analysis**
*(USD$ in 000's)*

---

**Notes & Significant Assumptions to Liquidation Analysis**

[1] **As of Date:** The Liquidation Date assumed in this analysis is the same as the Effective Date assumed in the Debtor's Financial Projections.

*GROSS LIQUIDATION PROCEEDS AVAILABLE FOR DISTRIBUTION*

[2] **Cash & Cash Equivalents:** The amounts shown are the projected cash balances available to the Debtor as of the Liquidation Date, based on projected

[3] **Accounts Receivable:** Consists of rents owed by MTS. The amounts shown are non collectable given the loan from MTS

[4] **Prepaid Expenses:** Includes the following categories:
   Prepaid insurance policies and retainer to Elkins Kalt firm.

[5] **Land & Property:** Consists in 5 porperties - Pending an appraisal on such property, their current value for purposes of this liquidation analysis is estimated based on offers received (if any) and publicly-available sales data.

| Property | Type | Current Value | Net of 8% Selling Costs |
|---|---|---|---|
| 686 E. Mill St San Bernardino CA | Com Building | $4,600 | $4,232 |
| 396 Allen St San Bernardino CA | Empty Com Lot | $2,200 | $2,024 |
| 9546 Elder Creek Sacramento CA | Empty Com Lot | $2,200 | $2,024 |
| 17332 Millwood Dr. Visalia CA | House | $371 | $341 |
| 171S Waterman Ave San Bernardino CA | Parking Yard | $346 | $319 |
| | | $9,717 | $8,940 |

[6] **Bank of The Sierra:** Includes principal and accrued interest plus a yet-to-be-determined amount of fees as of the Liquidation Date for the Mortgage loan of the 686 E Mill St property in San Bernardino

[7] **PNC:** Claim capped at anticipated net proceeds of Elder Creek and Allen St. Properties

[8] **Property Taxes:** Property taxes owed on Elder Creek property ($40,025.20), per Sacramento County proof of claim.

# EXHIBIT 2

# EXHIBIT 2

**The Original Mowbray's Tree Service, Inc.**
Hypothetical Liquidation Analysis
*(USD$ in 000's)*

Summary of Recovery

The table below summarizes the projected proceeds that may be available for distribution to creditors in a hypothetical liquidation of the Debtor's estate under Chapter 7 of the Bankruptcy Code. For purposes of this analysis, a potential range of outcomes has been projected in Low and High Scenarios. The likely outcome is in the middle of this range.

The recoveries below do not reflect the potential negative impact on the distributable value available to the Debtor's creditors on account of any unknown or contingent liabilities, including, but not limited to, environmental obligations and unasserted claims.

| | Note | [1] Net Book Value as of 6/30/25 | Liquidation Recovery % Low | Liquidation Recovery % High | Liquidation Value Low | Liquidation Value High |
|---|---|---|---|---|---|---|
| **Gross Liquidation Proceeds Available for Distribution** | | | | | | |
| Cash & Cash Equivalents | 2 | 8,740 | 100.0% | 100.0% | 8,740 | 8,740 |
| Accounts Receivable | 3 | 4,924 | 55.8% | 87.2% | 2,746 | 4,293 |
| Prepaid Expenses | 4 | 2,017 | 0.0% | 0.0% | - | - |
| Land | 5 | 245 | 92.0% | 92.0% | 225 | 225 |
| Buildings & Improvements, net | 6 | 261 | 0.0% | 0.0% | - | - |
| Equipment & Autos, net | 7 | 3,211 | 682.3% | 682.3% | 21,912 | 21,912 |
| Deposits | 8 | 244 | 0.0% | 0.0% | - | - |
| Insurance Collateral, net | 9 | 2,787 | 53.8% | 95.4% | 1,499 | 2,658 |
| Liquidation Value of Pino Tree Services, Inc. | 10 | 1,500 | 0.0% | 22.5% | - | 338 |
| Affiliate Notes Receivable | 11 | 12,118 | 40.3% | 58.0% | 4,878 | 7,032 |
| Causes of Action | 12 | Unknown | | | Unknown | Unknown |
| | | | | | 40,000 | 45,198 |
| **Chapter 7 Administrative Costs** | | | | | | |
| Chapter 7 Trustee Fees | 13 | | | | 1,200 | 1,356 |
| Chapter 7 Professional Fees | 14 | | | | 1,250 | 1,250 |
| Operational Wind-down Costs | 15 | | | | 501 | 501 |
| US Trustee Fees | 16 | | | | 320 | 362 |
| | | | | | 2,951 | 3,107 |
| **Net Proceeds Available for Distribution** | | | | | 37,049 | 42,091 |
| **Secured Claims** | | | | | | |
| PNC Bank | 17 | 6,501 | 100.0% | 100.0% | 6,501 | 6,501 |
| Jacobus Pino Note | 18 | 126 | 0.0% | 100.0% | - | 126 |
| Equipment Lenders / Lessors | 19 | 15,937 | 88.2% | 88.2% | 14,064 | 14,064 |
| | | | | | 20,565 | 20,691 |
| **Net Proceeds Available for Distribution after Secured Claims** | | | | | 16,484 | 21,400 |
| **Chapter 11 Administrative Claims** | | | | | | |
| Ch 11 Professional Fees | 20 | 2,410 | 100.0% | 100.0% | 2,410 | 2,410 |
| US Trustee Fees | 21 | 51 | 100.0% | 100.0% | 51 | 51 |
| Accounts Payable & Accrued Expenses | 22 | 682 | 100.0% | 100.0% | 682 | 682 |
| | | | | | 3,144 | 3,144 |
| **Net Proceeds Available for Distribution to Unsecured Creditors** | | | | | 13,341 | 18,257 |
| **Priority Unsecured Claims** | | | | | | |
| Priority Unsecured Claims (Wages & Taxes) | 23 | 125 | 100.0% | 100.0% | 125 | 125 |
| **Total Priority Unsecured Claims** | | | | | 125 | 125 |
| **Amount Available for Distribution to General Unsecured Creditors** | | | | | 13,216 | 18,132 |

| Average Amount Available for Distribution to General Unsecured Creditors | 15,674 |
|---|---|

# EXHIBIT 3

# EXHIBIT 3

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

Santa Ana

In Re. Mowbray Waterman Property LLC

§
§
§
§

Case No. 25-10542

_____ Debtor(s) _____

[X] Jointly Administered

## Monthly Operating Report

Chapter 11

Reporting Period Ended: 01/31/2026

Petition Date: 02/19/2025

Months Pending: 12

Industry Classification: | 6 | 5 | 1 | 9 |

Reporting Method:         Accrual Basis  ⦿         Cash Basis  ○

Debtor's Full-Time Employees (current):                                    0

Debtor's Full-Time Employees (as of date of order for relief):            0

## Supporting Documentation (check all that are attached):

(For jointly administered debtors, any required schedules must be provided on a non-consolidated basis for each debtor)

- [X] Statement of cash receipts and disbursements
- [X] Balance sheet containing the summary and detail of the assets, liabilities and equity (net worth) or deficit
- [X] Statement of operations (profit or loss statement)
- [X] Accounts receivable aging
- [X] Postpetition liabilities aging
- [ ] Statement of capital assets
- [X] Schedule of payments to professionals
- [X] Schedule of payments to insiders
- [X] All bank statements and bank reconciliations for the reporting period
- [X] Description of the assets sold or transferred and the terms of the sale or transfer

*Robin E. Mowbray*

Robin E. Mowbray
Signature of Responsible Party

02/20/2026
Date

Robin E. Mowbray
Printed Name of Responsible Party

960 Sunset Hill Ln. Redlands, CA 92373
Address

STATEMENT: This Periodic Report is associated with an open bankruptcy case; therefore, Paperwork Reduction Act exemption 5 C.F.R. § 1320.4(a)(2) applies.

Debtor's Name  Mowbray Waterman Property LLC                                    Case No.  25-10542

| Part 1: Cash Receipts and Disbursements | Current Month | Cumulative |
|---|---|---|
| a.  Cash balance beginning of month | $202,211 | |
| b.  Total receipts (net of transfers between accounts) | $3,640 | $891,791 |
| c.  Total disbursements (net of transfers between accounts) | $33,788 | $764,150 |
| d.  Cash balance end of month (a+b-c) | $172,063 | |
| e.  Disbursements made by third party for the benefit of the estate | $0 | $0 |
| f.  Total disbursements for quarterly fee calculation (c+e) | $33,788 | $764,150 |

| Part 2:  Asset and Liability Status<br>(Not generally applicable to Individual Debtors. See Instructions.) | Current Month | |
|---|---|---|
| a.  Accounts receivable (total net of allowance) | $151,840 | |
| b.  Accounts receivable over 90 days outstanding (net of allowance) | $124,800 | |
| c.  Inventory  (Book ◯  Market ◯  Other ◉  (attach explanation)) | $0 | |
| d  Total current assets | $330,173 | |
| e.  Total assets | $6,550,981 | |
| f.  Postpetition payables (excluding taxes) | $348,636 | |
| g.  Postpetition payables past due (excluding taxes) | $0 | |
| h.  Postpetition taxes payable | $84,793 | |
| i.  Postpetition taxes past due | $23,614 | |
| j.  Total postpetition debt (f+h) | $433,429 | |
| k.  Prepetition secured debt | $2,545,055 | |
| l.  Prepetition priority debt | $22,000 | |
| m.  Prepetition unsecured debt | $2,435,064 | |
| n.  Total liabilities (debt) (j+k+l+m) | $5,435,548 | |
| o.  Ending equity/net worth (e-n) | $1,115,433 | |

| Part 3:  Assets Sold or Transferred | Current Month | Cumulative |
|---|---|---|
| a.  Total cash sales price for assets sold/transferred outside the ordinary course of business | $1,950,000 | $2,321,000 |
| b.  Total payments to third parties incident to assets being sold/transferred outside the ordinary course of business | $126,019 | $171,959 |
| c.  Net cash proceeds from assets sold/transferred outside the ordinary course of business (a-b) | $1,823,981 | $2,149,041 |

| Part 4:  Income Statement (Statement of Operations)<br>(Not generally applicable to Individual Debtors. See Instructions.) | Current Month | Cumulative |
|---|---|---|
| a.  Gross income/sales (net of returns and allowances) | $58,004 | |
| b.  Cost of goods sold (inclusive of depreciation, if applicable) | $0 | |
| c.  Gross profit (a-b) | $58,004 | |
| d.  Selling expenses | $0 | |
| e.  General and administrative expenses | $9,390 | |
| f.  Other expenses | $345,269 | |
| g.  Depreciation and/or amortization (not included in 4b) | $0 | |
| h.  Interest | $16,932 | |
| i.  Taxes (local, state, and federal) | $10,220 | |
| j.  Reorganization items | $69,459 | |
| k.  Profit (loss) | $-393,267 | $-812,037 |

RJN Exhibit 3
2

Page 2 of 32

Debtor's Name  Mowbray Waterman Property LLC                                    Case No.  25-10542

| **Part 5:  Professional Fees and Expenses** | | | | | | |
|---|---|---|---|---|---|---|
| | | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
| a. | Debtor's professional fees & expenses (bankruptcy) *Aggregate Total* | | $0 | $270,123 | $0 | $270,123 |
| | *Itemized Breakdown by Firm* | | | | | |
| | Firm Name | Role | | | | |
| i | Elkins, Kalt, Weintraub, Reuben | Lead Counsel | $0 | $270,123 | $0 | $270,123 |
| ii | | | | | | |
| iii | | | | | | |
| iv | | | | | | |
| v | | | | | | |
| vi | | | | | | |
| vii | | | | | | |
| viii | | | | | | |
| ix | | | | | | |
| x | | | | | | |
| xi | | | | | | |
| xii | | | | | | |
| xiii | | | | | | |
| xiv | | | | | | |
| xv | | | | | | |
| xvi | | | | | | |
| xvii | | | | | | |
| xviii | | | | | | |
| xix | | | | | | |
| xx | | | | | | |
| xxi | | | | | | |
| xxii | | | | | | |
| xxiii | | | | | | |
| xxiv | | | | | | |
| xxv | | | | | | |
| xxvi | | | | | | |
| xxvii | | | | | | |
| xxviii | | | | | | |
| xxix | | | | | | |
| xxx | | | | | | |
| xxxi | | | | | | |
| xxxii | | | | | | |
| xxxiii | | | | | | |
| xxxiv | | | | | | |
| xxxv | | | | | | |
| xxxvi | | | | | | |

RJN Exhibit 3
3

Debtor's Name Mowbray Waterman Property LLC                                    Case No.  25-10542

| | | | | | |
|---|---|---|---|---|---|
| xxxvii | | | | | |
| xxxvii | | | | | |
| xxxix | | | | | |
| xl | | | | | |
| xli | | | | | |
| xlii | | | | | |
| xliii | | | | | |
| xliv | | | | | |
| xlv | | | | | |
| xlvi | | | | | |
| xlvii | | | | | |
| xlviii | | | | | |
| xlix | | | | | |
| l | | | | | |
| li | | | | | |
| lii | | | | | |
| liii | | | | | |
| liv | | | | | |
| lv | | | | | |
| lvi | | | | | |
| lvii | | | | | |
| lviii | | | | | |
| lix | | | | | |
| lx | | | | | |
| lxi | | | | | |
| lxii | | | | | |
| lxiii | | | | | |
| lxiv | | | | | |
| lxv | | | | | |
| lxvi | | | | | |
| lxvii | | | | | |
| lxviii | | | | | |
| lxix | | | | | |
| lxx | | | | | |
| lxxi | | | | | |
| lxxii | | | | | |
| lxxiii | | | | | |
| lxxiv | | | | | |
| lxxv | | | | | |
| lxxvi | | | | | |
| lxxvii | | | | | |
| lxxviii | | | | | |

Debtor's Name  Mowbray Waterman Property LLC                                    Case No.  25-10542

| | | | | | |
|---|---|---|---|---|---|
| lxxix | | | | | |
| lxxx | | | | | |
| lxxxi | | | | | |
| lxxxii | | | | | |
| lxxxiii | | | | | |
| lxxxiv | | | | | |
| lxxxv | | | | | |
| lxxxvi | | | | | |
| lxxxvi | | | | | |
| lxxxvi | | | | | |
| lxxxix | | | | | |
| xc | | | | | |
| xci | | | | | |
| xcii | | | | | |
| xciii | | | | | |
| xciv | | | | | |
| xcv | | | | | |
| xcvi | | | | | |
| xcvii | | | | | |
| xcviii | | | | | |
| xcix | | | | | |
| c | | | | | |
| ci | | | | | |

| | | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|---|
| b. | Debtor's professional fees & expenses (nonbankruptcy)  *Aggregate Total* | | | $0 | $0 | $0 | $0 |
| | *Itemized Breakdown by Firm* | | | | | | |
| | | Firm Name | Role | | | | |
| | i | | | $0 | $0 | $0 | $0 |
| | ii | | | | | | |
| | iii | | | | | | |
| | iv | | | | | | |
| | v | | | | | | |
| | vi | | | | | | |
| | vii | | | | | | |
| | viii | | | | | | |
| | ix | | | | | | |
| | x | | | | | | |
| | xi | | | | | | |
| | xii | | | | | | |
| | xiii | | | | | | |
| | xiv | | | | | | |

UST Form 11-MOR (12/01/2021)

RJN Exhibit 3
5

Page 5 of 32

Debtor's Name  Mowbray Waterman Property LLC                                        Case No.  25-10542

| | | | | | |
|---|---|---|---|---|---|
| xv | | | | | |
| xvi | | | | | |
| xvii | | | | | |
| xviii | | | | | |
| xix | | | | | |
| xx | | | | | |
| xxi | | | | | |
| xxii | | | | | |
| xxiii | | | | | |
| xxiv | | | | | |
| xxv | | | | | |
| xxvi | | | | | |
| xxvii | | | | | |
| xxviii | | | | | |
| xxix | | | | | |
| xxx | | | | | |
| xxxi | | | | | |
| xxxii | | | | | |
| xxxiii | | | | | |
| xxxiv | | | | | |
| xxxv | | | | | |
| xxxvi | | | | | |
| xxxvii | | | | | |
| xxxvii | | | | | |
| xxxix | | | | | |
| xl | | | | | |
| xli | | | | | |
| xlii | | | | | |
| xliii | | | | | |
| xliv | | | | | |
| xlv | | | | | |
| xlvi | | | | | |
| xlvii | | | | | |
| xlviii | | | | | |
| xlix | | | | | |
| l | | | | | |
| li | | | | | |
| lii | | | | | |
| liii | | | | | |
| liv | | | | | |
| lv | | | | | |
| lvi | | | | | |

Debtor's Name  Mowbray Waterman Property LLC                    Case No.  25-10542

| | | | | | |
|---|---|---|---|---|---|
| lvii | | | | | |
| lviii | | | | | |
| lix | | | | | |
| lx | | | | | |
| lxi | | | | | |
| lxii | | | | | |
| lxiii | | | | | |
| lxiv | | | | | |
| lxv | | | | | |
| lxvi | | | | | |
| lxvii | | | | | |
| lxviii | | | | | |
| lxix | | | | | |
| lxx | | | | | |
| lxxi | | | | | |
| lxxii | | | | | |
| lxxiii | | | | | |
| lxxiv | | | | | |
| lxxv | | | | | |
| lxxvi | | | | | |
| lxxvii | | | | | |
| lxxviii | | | | | |
| lxxix | | | | | |
| lxxx | | | | | |
| lxxxi | | | | | |
| lxxxii | | | | | |
| lxxxiii | | | | | |
| lxxxiv | | | | | |
| lxxxv | | | | | |
| lxxxvi | | | | | |
| lxxxvi | | | | | |
| lxxxvi | | | | | |
| lxxxix | | | | | |
| xc | | | | | |
| xci | | | | | |
| xcii | | | | | |
| xciii | | | | | |
| xciv | | | | | |
| xcv | | | | | |
| xcvi | | | | | |
| xcvii | | | | | |
| xcviii | | | | | |

UST Form 11-MOR (12/01/2021)

Debtor's Name  Mowbray Waterman Property LLC                                    Case No.   25-10542

| | | | | | | |
|---|---|---|---|---|---|---|
| | xcix | | | | | |
| | c | | | | | |
| c. | All professional fees and expenses (debtor & committees) | | $0 | $0 | | |

| Part 6:  Postpetition Taxes | Current Month | Cumulative |
|---|---|---|
| a. Postpetition income taxes accrued (local, state, and federal) | $0 | $0 |
| b. Postpetition income taxes paid (local, state, and federal) | $0 | $0 |
| c. Postpetition employer payroll taxes accrued | $0 | $0 |
| d. Postpetition employer payroll taxes paid | $0 | $0 |
| e. Postpetition property taxes paid | $0 | $122,216 |
| f. Postpetition other taxes accrued (local, state, and federal) | $10,220 | $33,692 |
| g. Postpetition other taxes paid (local, state, and federal) | $0 | $0 |

**Part 7: Questionnaire - During this reporting period:**

| | | |
|---|---|---|
| a. | Were any payments made on prepetition debt?  (if yes, see Instructions) | Yes ● No ○ |
| b. | Were any payments made outside the ordinary course of business without court approval?  (if yes, see Instructions) | Yes ○ No ● |
| c. | Were any payments made to or on behalf of insiders? | Yes ● No ○ |
| d. | Are you current on postpetition tax return filings? | Yes ● No ○ |
| e. | Are you current on postpetition estimated tax payments? | Yes ● No ○ |
| f. | Were all trust fund taxes remitted on a current basis? | Yes ● No ○ |
| g. | Was there any postpetition borrowing, other than trade credit? (if yes, see Instructions) | Yes ○ No ● |
| h. | Were all payments made to or on behalf of professionals approved by the court? | Yes ● No ○ N/A ○ |
| i. | Do you have:       Worker's compensation insurance? | Yes ○ No ● |
| | If yes, are your premiums current? | Yes ○ No ○ N/A ● (if no, see Instructions) |
| | Casualty/property insurance? | Yes ● No ○ |
| | If yes, are your premiums current? | Yes ○ No ○ N/A ● (if no, see Instructions) |
| | General liability insurance? | Yes ○ No ● |
| | If yes, are your premiums current? | Yes ○ No ○ N/A ● (if no, see Instructions) |
| j. | Has a plan of reorganization been filed with the court? | Yes ● No ○ |
| k. | Has a disclosure statement been filed with the court? | Yes ● No ○ |
| l. | Are you current with quarterly U.S. Trustee fees as set forth under 28 U.S.C. § 1930? | Yes ● No ○ |

Debtor's Name Mowbray Waterman Property LLC

Case No. 25-10542

| Part 8: Individual Chapter 11 Debtors (Only) | | |
|---|---|---|
| a. | Gross income (receipts) from salary and wages | $0 |
| b. | Gross income (receipts) from self-employment | $0 |
| c. | Gross income from all other sources | $0 |
| d. | Total income in the reporting period (a+b+c) | $0 |
| e. | Payroll deductions | $0 |
| f. | Self-employment related expenses | $0 |
| g. | Living expenses | $0 |
| h. | All other expenses | $0 |
| i. | Total expenses in the reporting period (e+f+g+h) | $0 |
| j. | Difference between total income and total expenses (d-i) | $0 |
| k. | List the total amount of all postpetition debts that are past due | $0 |
| l. | Are you required to pay any Domestic Support Obligations as defined by 11 U.S.C § 101(14A)? | Yes ○ No ⊙ |
| m. | If yes, have you made all Domestic Support Obligation payments? | Yes ○ No ○ N/A ⊙ |

### Privacy Act Statement

28 U.S.C. § 589b authorizes the collection of this information, and provision of this information is mandatory under 11 U.S.C. §§ 704, 1106, and 1107. The United States Trustee will use this information to calculate statutory fee assessments under 28 U.S.C. § 1930(a)(6). The United States Trustee will also use this information to evaluate a chapter 11 debtor's progress through the bankruptcy system, including the likelihood of a plan of reorganization being confirmed and whether the case is being prosecuted in good faith. This information may be disclosed to a bankruptcy trustee or examiner when the information is needed to perform the trustee's or examiner's duties or to the appropriate federal, state, local, regulatory, tribal, or foreign law enforcement agency when the information indicates a violation or potential violation of law. Other disclosures may be made for routine purposes. For a discussion of the types of routine disclosures that may be made, you may consult the Executive Office for United States Trustee's systems of records notice, UST-001, "Bankruptcy Case Files and Associated Records." *See* 71 Fed. Reg. 59,818 et seq. (Oct. 11, 2006). A copy of the notice may be obtained at the following link: http://www.justice.gov/ust/eo/rules_regulations/index.htm. Failure to provide this information could result in the dismissal or conversion of your bankruptcy case or other action by the United States Trustee. 11 U.S.C. § 1112(b)(4)(F).

**I declare under penalty of perjury that the foregoing Monthly Operating Report and its supporting documentation are true and correct and that I have been authorized to sign this report on behalf of the estate.**

Robin E. Mowbray
_____
Signature of Responsible Party

Manager
_____
Title

Robin E. Mowbray
_____
Printed Name of Responsible Party

02/20/2026
_____
Date

Debtor's Name  Mowbray Waterman Property LLC                    Case No.  25-10542



PageOnePartOne

PageOnePartTwo

PageTwoPartOne

PageTwoPartTwo

Debtor's Name  Mowbray Waterman Property LLC                                    Case No.  25-10542

Bankruptcy1to50

Bankruptcy51to100

NonBankruptcy1to50

NonBankruptcy51to100

Debtor's Name  Mowbray Waterman Property LLC                    Case No.  25-10542



PageThree



PageFour

# ATTACHMENT 1

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA SANTA ANA

Mowbray Waterman Property LLC      Case No. 25-10542

January 2026

**ATTACHMENT**

Part 7: Questionaire. Were any Payments made on Prepetition Debt?
Anwser: Yes

| Name of Payee | Date of Payment | Total Payment Amount | |
|---|---|---|---|
| Bank of the Sierra | 1/13/2026 | 15,153.63 | Bank of the Sierra mortgage payment |
| The Original Mowbrays Tree Service Inc./ PNC | 1/14/2026 | $   1,823,980.62 | On January 14 2026, real property owned by Mowbray Waterman Property LLC ("MWP"), was sold [386 S Allen St. San Bernardino CA 92408]. The property was a collateral for MTS's Line of Credit with PNC. |
| | | | At closing, the escrow proceeds were remitted directly to PNC and applied to the MTS Line of Credit balance. No cash was transferred between MWP and MTS. |
| | | | The payment reduced the intercompany receivable owed by MWP to MTS, while PNC received the cash proceeds directly through escrow. |
| | Total | 1,839,134.25 | |

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA SANTA ANA

Mowbray Waterman Property LLC      Case No. 25-10542

January 2026

**ATTACHMENT**

Part 7: Questionnaire C. Were any Payments made to or on behalf of insiders?

Answer: Yes

| Name of Payee | Date of Payment | Total Payment Amount | |
|---|---|---|---|
| Robin Mowbray | 1/1/2026 | $  8,000.00 | Payment for Management Services |

| | Total | $  8,000.00 |
|---|---|---|

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA SANTA ANA

Mowbray Waterman Property LLC    Case No. 25-10542

January 2026

## DESCRIPTION OF ASSETS SOLD OR TRANSFERRED

| ASSET DESCRIPTION | DATE OF SALE OR TRANSFER | AMOUNT OF THE SALE | TERMS OF THE SALE | NOTES |
|---|---|---|---|---|
| 17322 Millwood Drive Visalia CA 93292 | 11/12/2025 | $   371,000 | Cash | Cash Received at closing : $325,061, Closing Costs $45,939 |
| 386 South Allen St. San Bernardino CA 92408 * | 1/14/2026 | $   1,950,000 | Cash | Cash Received at closing : $0, Closing & Other Costs $126,019.38, Amount of proceeds given to secured creditor (PNC) $1,823,980.62 |
| | Total | $   2,321,000 | | |

* Secured creditor PNC had a lien on this property as collateral for MTS line of credit

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA SANTA ANA

Mowbray Waterman Property LLC     Case No. 25-10542

January 2026

## SCHEDULE OF PAYMENTS TO PROFESSIONALS

| Name of Payee | Date of Payment | Total Payment Amount | |
|---|---|---|---|
| Elkins, Kalt, Weintraub, Reuben, & Gartsi | 11/20/2025 | 234,278.20 | Court Approved Payment |
| | Total | 234,278.20 | |

# ATTACHMENT 2

STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS
Mowbray Waterman Property LLC
January 2026

| SUMMARY: | Beginning Balance | Deposits | | Disbursements | | Ending Balance |
|---|---|---|---|---|---|---|
| | | Receipts | Transfers | Disbursements | Transfers | |
| | - | - | - | - | - | - |
| | - | - | - | - | - | - |
| | - | | | | | - |
| xx2035 (Op) | - | - | - | - | - | |
| xx0121 (DIP)_ | 202,211.36 | 3,640.00 | - | 33,788.23 | | 172,063.13 |
| | | | | | | |
| Total | 202,211.36 | 3,640.00 | - | 33,788.23 | - | 172,063.13 |

Page 1 of 3

| | | | | | | Deposits | | Disbursements | |
|---|---|---|---|---|---|---|---|---|---|
| Date mm/dd/yyyy | Account # | Check Number | Payee/Payor | | Purpose | Receipts | Transfers | Disbursements | Transfers |

STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS
Mowbray Waterman Property LLC - ACCOUNT xx2035 (Op)
January 2026

| Date mm/dd/yyyy | Account # | Check Number | Payee/Payor | Purpose | Receipts | Transfers | Disbursements | Transfers |
|---|---|---|---|---|---|---|---|---|
| | | | | ACCOUNT CLOSED ON 06/12/2025 | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | **Total for Account xx2035 (Op)** | | | | - | - | - | - |

Page 2 of 3

**STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS**
Mowbray Waterman Property LLC - ACCOUNT xx2035 (Op)
January 2026

| Date mm/dd/yyyy | Account # | Check Number | Payee/Payor | Purpose | Deposits Receipts | Transfers | Disbursements Disbursements | Transfers |
|---|---|---|---|---|---|---|---|---|
| 1/21/2026 | | | IPFS | Policy#: MPL9836455-01 | | | 35.00 | |
| 1/30/2026 | | 2423628 | PNC | CORPORATE ACCOUNT ANALYSIS CHARGE | | | 97.38 | |
| 1/6/2026 | | 1137 | Jacinto Martinez | AC repair | | | 850.00 | |
| 1/8/2026 | | | IPFS | Ins Pmt | | | 1,301.50 | |
| 1/26/2026 | | 772780585578 | US TRUSTEE PAYMENT CENTER | Chapter 11 Quarterly Fee | | | 1,550.72 | |
| 1/16/2026 | | 1138 | Jacinto Martinez | AC repair | | | 1,800.00 | |
| 1/6/2026 | | 1136 | Banderas Plumbing | Plumbing repair | | | 5,000.00 | |
| 1/2/2026 | | 1933185 | Robin Mowbray | 2026-01 MANAGMENT FEES | | | 8,000.00 | |
| 1/13/2026 | | 1085523 | Bank of the Sierra | Mortgage Payment | | | 15,153.63 | |
| 1/8/2026 | | | PHOENIX | Rent | 3,640.00 | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| **Total for Account xx0121 (Op)** | | | | | **3,640.00** | **-** | **33,788.23** | **-** |

Page 3 of 3

# ATTACHMENT 3

**MOWBRAY'S WATERMAN PROPERTY LLC**

# Balance Sheet

As of January 31, 2026

4:38 PM

02/19/2026

Accrual Basis

| | | Jan 31, 26 |
|---|---|---:|
| **ASSETS** | | |
| Current Assets | | |
| Checking/Savings | | |
| PNC Checking DIP - 0121 | | 172,063.13 |
| **Total Checking/Savings** | | 172,063.13 |
| Accounts Receivable | | |
| Accounts Receivable | | 151,840.00 |
| **Total Accounts Receivable** | | 151,840.00 |
| Other Current Assets | | |
| Prepaid Insurance | | 6,270.30 |
| **Total Other Current Assets** | | 6,270.30 |
| **Total Current Assets** | | 330,173.43 |
| Fixed Assets | | |
| Buildings | | 2,755,446.00 |
| Land | | 3,696,902.00 |
| Leasehold Improvements | | 546,946.80 |
| Office Equipment | | 606,750.00 |
| Z Accumulated Depreciation | | -1,390,311.00 |
| **Total Fixed Assets** | | 6,215,733.80 |
| Other Assets | | |
| E Amortizable Intangibles | | 5,074.00 |
| **Total Other Assets** | | 5,074.00 |
| **TOTAL ASSETS** | | **6,550,981.23** |
| **LIABILITIES & EQUITY** | | |
| Liabilities | | |
| Current Liabilities | | |
| Accounts Payable | | |
| Accounts Payable | | 266,414.77 |
| **Total Accounts Payable** | | 266,414.77 |
| Credit Cards | | |
| Chase Visa | | 53.94 |
| **Total Credit Cards** | | 53.94 |
| Other Current Liabilities | | |
| Accrual - Other | | 166,960.42 |
| **Total Other Current Liabilities** | | 166,960.42 |
| **Total Current Liabilities** | | 433,429.13 |
| Long Term Liabilities | | |
| Bank of the Sierra Mortgage | | 2,545,054.92 |
| Prepetition Priority Debt | | 22,000.00 |
| Prepetition Unsecured Debt | | 2,435,064.36 |
| **Total Long Term Liabilities** | | 5,002,119.28 |
| **Total Liabilities** | | 5,435,548.41 |
| Equity | | |
| Capital Draw - RM | | -24,720.00 |
| Members Draw | | -156,376.16 |
| Members Equity | | 1,689,795.87 |
| Net Income | | -393,266.89 |
| **Total Equity** | | 1,115,432.82 |
| **TOTAL LIABILITIES & EQUITY** | | **6,550,981.23** |

# ATTACHMENT 4

**MOWBRAY'S WATERMAN PROPERTY L**

3:11 PM

# Profit & Loss

02/20/2026

**January 2026**

Accrual Basis

| | Jan 26 |
|---|---|
| **Ordinary Income/Expense** | |
| **Income** | |
| **Rental Income** | 58,004.00 |
| **Total Income** | 58,004.00 |
| **Gross Profit** | 58,004.00 |
| **Expense** | |
| **Bank Service Charges** | 97.38 |
| **Business Licenses and Permits** | 0.00 |
| **Commissions Expense** | 126,019.38 |
| **Depreciation Expense** | 0.00 |
| **Insurance Expense** | 1,238.88 |
| **Interest Expense** | 16,932.22 |
| **Legal Services** | 0.00 |
| **Management Fees** | 8,000.00 |
| **Office Supplies** | 53.94 |
| **Professional Fees** | 0.00 |
| **Repairs and Maintenance** | 2,650.00 |
| **Restructuring Expenses** | 69,458.72 |
| **Taxes - Income** | 0.00 |
| **Taxes - Property** | 10,220.37 |
| **Total Expense** | 234,670.89 |
| **Net Ordinary Income** | -176,666.89 |
| **Other Income/Expense** | |
| **Other Income** | |
| **Interest Income** | 0.00 |
| **Other Income** | 0.00 |
| **Total Other Income** | 0.00 |
| **Other Expense** | |
| **Gain or Loss Fixed Assets Sales** | 216,600.00 |
| **Total Other Expense** | 216,600.00 |
| **Net Other Income** | -216,600.00 |
| **Net Income** | -393,266.89 |

RJN Exhibit 3

# ATTACHMENT 5

**MOWBRAY'S WATERMAN PROPERTY LLC**

**A/R Aging Summary**

As of January 31, 2026

11:15 AM

02/20/2026

| | Current | 1 - 30 | 31 - 60 | 61 - 90 | > 90 | TOTAL |
|---|---|---|---|---|---|---|
| Mowbray's Tree Service | 0.00 | 13,520.00 | 0.00 | 13,520.00 | 124,800.00 | 151,840.00 |
| **TOTAL** | **0.00** | **13,520.00** | **0.00** | **13,520.00** | **124,800.00** | **151,840.00** |

# ATTACHMENT 6

**MOWBRAY'S WATERMAN PROPERTY LLC**

4:47 PM

# A/P Aging Summary

02/19/2026

As of January 31, 2026

| | Current | 1 - 30 | 31 - 60 | 61 - 90 | > 90 | TOTAL |
|---|---|---|---|---|---|---|
| **CKB VIENNA LLP** | 0.00 | 0.00 | 0.00 | 0.00 | 1,212.50 | 1,212.50 |
| **FRANCHISE TAX BOARD** | 0.00 | 0.00 | 0.00 | 313.64 | 23,300.00 | 23,613.64 |
| **Fullerton, Leemann, Schaefer & Dominick** | 0.00 | 0.00 | 0.00 | 315.00 | 635.00 | 950.00 |
| **IPFS** | 0.00 | 387.18 | 0.00 | 0.00 | 0.00 | 387.18 |
| **SACRAMENTO COUNTY TAX** | 12,938.55 | 0.00 | 0.00 | 0.00 | 0.00 | 12,938.55 |
| **SAN BERNARDINO COUNTY TAX COLLECTOR** | 48,241.10 | 0.00 | 0.00 | 0.00 | 0.00 | 48,241.10 |
| **Soren McAdam** | 0.00 | 1,385.00 | 0.00 | 0.00 | 1,530.00 | 2,915.00 |
| **THE ORIGINAL MOWBRAY'S TREE SERVICE** | 9,129.66 | 15,969.58 | 0.00 | 31,277.71 | 119,779.85 | 176,156.80 |
| **TOTAL** | **70,309.31** | **17,741.76** | **0.00** | **31,906.35** | **146,457.35** | **266,414.77** |

# ATTACHMENT 7

# Corporate Business Account Statement

**PNC BANK**

**For the period    01/01/2026  to  01/30/2026**

MOWBRAY WATERMAN PROPERTY LLC #25-10
DEBTOR IN POSSESSION
686 E MILL ST
SAN BERNARDINO CA 92408-1610

Number of enclosures:    0
Tax ID Number: XX-XXX6229
☎ For Client Services:
    Call 1-800-669-1518

🖥 Visit us at PNC.com/treasury

✉ Write to:  Treas Mgmt Client Care
    500 1St Ave
    Locator P7-Pfsc-03-B
    Pittsburgh PA 15219-3128

---

## Account Summary Information

### Balance Summary

| | Beginning balance | Deposits and other credits | Checks and other debits | Ending balance |
|---|---|---|---|---|
| | 202,211.36 | 3,640.00 | 33,788.23 | 172,063.13 |

| Deposits and Other Credits | Items | Amount | Checks and Other Debits | Items | Amount |
|---|---|---|---|---|---|
| Deposits | 0 | .00 | Checks | 3 | 7,650.00 |
| National Lockbox | 0 | .00 | Returned Items | 0 | .00 |
| ACH Credits | 1 | 3,640.00 | ACH Debits | 3 | 2,887.22 |
| Funds Transfers In | 0 | .00 | Funds Transfers Out | 2 | 23,153.63 |
| Trade Services | 0 | .00 | Trade Services | 0 | .00 |
| Investments | 0 | .00 | Investments | 0 | .00 |
| Zero Balance Transfers | 0 | .00 | Zero Balance Transfers | 0 | .00 |
| Adjustments | 0 | .00 | Adjustments | 0 | .00 |
| Other Credits | 0 | .00 | Other Debits | 1 | 97.38 |
| Total | 1 | 3,640.00 | Total | 9 | 33,788.23 |

### Ledger Balance

| Date | Ledger balance | Date | Ledger balance | Date | Ledger balance |
|---|---|---|---|---|---|
| 01/01 | 202,211.36 | 01/09 | 195,699.86 | 01/22 | 173,711.23 |
| 01/02 | 194,211.36 | 01/12 | 190,699.86 | 01/27 | 172,160.51 |
| 01/07 | 193,361.36 | 01/13 | 175,546.23 | 01/30 | 172,063.13 |
| 01/08 | 197,001.36 | 01/20 | 173,746.23 | | |

## Deposits and Other Credits

### ACH Credits — 1 transaction for a total of $3,640.00

| Date posted | Amount | Transaction description | Reference number |
|---|---|---|---|
| 01/08 | 3,640.00 | Corporate ACH Payments Phoenix Traffic Mwp, Llc | 00026008012315854 |

# Corporate Business Account Statement

MOWBRAY WATERMAN PROPERTY LLC #25-10
DEBTOR IN POSSESSION

**For the period**    01/01/2026  to  01/30/2026
Account number:  XX-XXXX-0121
Page 2 of 2

## Checks and Other Debits

### Checks and Substitute Checks                    3 transactions for a total of $7,650.00

| Date posted | Check number | Amount | Reference number | Date posted | Check number | Amount | Reference number | Date posted | Check number | Amount | Reference number |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 01/07 | 1137 | 850.00 | 012432862 | 01/12 | 1136 | 5,000.00 | 014419516 | 01/20 | 1138 | 1,800.00 | 018426488 |

### ACH Debits                    3 transactions for a total of $2,887.22

| Date posted | Amount | Transaction description | Reference number |
|---|---|---|---|
| 01/09 | 1,301.50 | Corporate ACH Ipfspmtcaf | 00026008016058348 |
| | | Ipfs800-774-8282 D61047 | |
| 01/22 | 35.00 | Corporate ACH J2775 Ooff | 00026021010094001 |
| | | Insurance Pmt In Cz10000Mzzphc | |
| 01/27 | 1,550.72 | Corporate ACH Payment Quarterly Fee 0000 | 00026026011719285 |

### Funds Transfers Out                    2 transactions for a total of $23,153.63

| Date posted | Amount | Transaction description | | Reference number |
|---|---|---|---|---|
| 01/02 | 8,000.00 | Domestic Assist Wire | Robin Mowbray | W2612I0130KQO3RWI |
| 01/13 | 15,153.63 | Domestic Assist Wire | Mowbray's | W261DG4909L9338BB |
| | | Waterman Pro | | |

### Other Debits                    1 transaction for a total of $97.38

| Date posted | Amount | Transaction description | Reference number |
|---|---|---|---|
| 01/30 | 97.38 | Corporate Account Analysis Charge | 0000000000000038864 |

# EXHIBIT 4

# EXHIBIT 4

**Mowbray's Tree Service, Inc.**
**Claims Analysis**

| Select Financial Metrics | *Per CPA Reviewed Financial Statements* | | | | *Unaudited* |
|---|---|---|---|---|---|
| | **2020** | **2021** | **2022** | **2023** | **2024** |
| Net Income (Loss) | 70,290,107 | 24,573,612 | (33,760,298) | (113,594,307) | (2,313) |
| EBITDA | 96,250,158 | 51,120,582 | (11,475,125) | (92,039,328) | 10,529,940 |
| Operating Cash Flow | 53,805,789 | 45,426,271 | 16,792,997 | (11,714,109) | 24,216,706 |
| | | | | | |
| Net Working Capital | 74,856,911 | 68,180,615 | 23,642,511 | (91,249,523) | (69,202,922) |
| Shareholder's Equity | 80,574,798 | 71,066,066 | 25,483,122 | (88,588,889) | (89,487,073) |

| Insider Distributions | 2020 | 2021 | 2022 | 2023 | 2024 | 2023+2024 | **2023+2024 excl Payroll** |
|---|---|---|---|---|---|---|---|
| Gloria Mowbray | 16,418 | 10,047,901 | 638,049 | 0 | 0 | 140,319 | 140,319 |
| Gloria Mowbray Separate Property Trust | 10,586 | 63,514 | 76,529 | 129,814 | 10,505 | 140,319 | 140,319 |
| Richard & Kim Mowbray | 0 | 0 | 24,417 | 0 | 0 | 0 | 0 |
| Richard John Mowbray | 342,569 | 757,368 | 570,376 | 416,323 | 221,947 | 638,270 | 87,279 |
| Robin and or Gloria | 307,622 | 1,135,911 | 0 | 0 | 0 | 0 | 0 |
| Robin Mowbray | 2,020,172 | 22,876,160 | 3,356,698 | 1,570,869 | 87,893 | 1,658,762 | 153,295 |
| | 2,697,367 | 34,880,853 | 4,666,069 | 2,117,006 | 320,345 | 2,437,351 | 380,893 |

| Estimated MWP Real Property Values | | **Est'd Value less Debt** | |
|---|---|---|---|
| 686 E. Mill St., San Bernardino, CA | | 4,600,000 | 4,600,000 |
| 386 Allen St., San Bernardino, CA | | 2,200,000 | 2,200,000 |
| 9546 Elder Creek, Sacramento, CA | | 1,925,000 | 1,925,000 |
| 17332 Millwood Dr., Visalia, CA | | 375,000 | 375,000 |
| 171 S. Waterman Ave., San Bernardino, CA | | 346,000 | 346,000 |
| Less:  Bank of the Sierra Debt | | (2,552,153) | (2,552,153) |
| | | 6,893,847 | 6,893,847 |

| **MWP Real Property Contribution Excess (Deficiency)  vs Insider Distributions during Insolvency Period** | | **4,456,496** | **6,512,954** |
|---|---|---|---|

*Note:*
Excludes the Debtor/ Plan Trustee's legal and expert costs

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 17701 Cowan Ave., Lobby D, Suite 210, Irvine, CA 92614

A true and correct copy of the foregoing document entitled (*specify*): **RESPONSE AND OBJECTIONS TO THE SECOND DECLARATION OF RUBEN SAINOS AND DECLARATION OF ROYE ZUR GIVEN IN SUPPORT OF DEBTORS' JOINT PLAN (AS AMENDED AND MODIFIED) AND EVIDENTIARY OBJECTIONS TO SUCH DECLARATIONS; REQUEST FOR JUDICIAL NOTICE FILED CONCURRENTLY HEREWITH** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On March 3, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) March 3, 2026, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) March 3, 2026, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

- The Honorable Scott Clarkson, USBC, 411 West Fourth Street, Suite 5130, Santa Ana, CA 92701

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 3, 2026 | Kerry A. Murphy | /s/Kerry A. Murphy |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

26

1

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

2

Mailing Information for Case 8:24-bk-12674-SC
Electronic Mail Notice List

3

The following is the list of <u>parties</u> who are currently on the list to receive email notice/service for this case.

4

- **Shraddha Bharatia**    notices@becket-lee.com

5

- **Jeffrey W Broker**    jbroker@brokerlaw.biz
- **Kenneth J Catanzarite**    kcatanzarite@catanzarite.com
- **Lauren N Gans**    lgans@elkinskalt.com, lmasse@elkinskalt.com

6

- **Jessica L Giannetta**    jessica@giannettalawcorp.com, melanie@giannettaenrico.com
- **Robert P Goe**    rgoe@goeforlaw.com,

7

  kmurphy@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston
  @goeforlaw.com

8

- **Marshall F Goldberg**    mgoldberg@glassgoldberg.com, jbailey@glassgoldberg.com
- **Alan Craig Hochheiser**    ahochheiser@mauricewutscher.com,

9

  arodriguez@mauricewutscher.com
- **Merdaud Jafarnia**    bkca@alaw.net, mjafarnia@ecf.inforuptcy.com

10

- **Raffi Khatchadourian**    raffi@hemar-rousso.com
- **Valery Loumber**    valloumlegal@gmail.com

11

- **Michael B Lubic**    michael.lubic@klgates.com,
  jonathan.randolph@klgates.com,klgatesbankruptcy@klgates.com

12

- **James MacLeod**    jmacleod@dunninglaw.com, nancy@dunninglaw.com
- **Charity J Manee**    cmanee@goeforlaw.com, kmurphy@goeforlaw.com

13

- **Kathleen P March**    kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net
- **Robert S Marticello**    rmarticello@raineslaw.com,

14

  bclark@raineslaw.com;csantiago@raineslaw.com
- **David W. Meadows**    david@davidwmeadowslaw.com

15

- **Kenneth Misken**    Kenneth.M.Misken@usdoj.gov
- **Karen S. Naylor**    Becky@ringstadlaw.com, Karen@ringstadlaw.com;Arlene@ringstadlaw.com

16

- **Estela O Pino**    epino@epinolaw.com, staff@epinolaw.com;clerk@epinolaw.com
- **Donald W Reid**    don@donreidlaw.com, angie@donreidlaw.com;don@ecf.courtdrive.com

17

- **Todd C. Ringstad**    becky@ringstadlaw.com, arlene@ringstadlaw.com
- **Amitkumar Sharma**    amit.sharma@aisinfo.com

18

- **Jeffrey S Shinbrot**    jeffrey@shinbrotfirm.com,
  sandra@shinbrotfirm.com;tanya@shinbrotfirm.com

19

- **Thomas E Shuck**    tshuck@pmcos.com, efilings@pmcos.com
- **Michael Simon**    msimon@raineslaw.com, bclark@raineslaw.com;csantiago@raineslaw.com

20

- **Derek A Simpson**    derek@dsimpsonlegal.com
- **Stephen Sommers**    ssommers@justice4you.com

21

- **Ahren A Tiller**    ahren.tiller@blc-sd.com, 4436097420@filings.docketbird.com;brett.bodie@blc-

22

  sd.com;anika@blc-sd.com;derek@blc-sd.com;kreyes@blc-sd.com;megan@blc-
  sd.com;nicole@blc-sd.com;danny@blc-sd.com;angie@blc-sd.com;kreyes@blc-sd.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov

23

- **Sharon Z. Weiss**    sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,sharon-weiss-

24

  7104@ecf.pacerpro.com
- **Jennifer C Wong**    bknotice@mccarthyholthus.com, jwong@ecf.courtdrive.com

25

- **Mandy Youngblood**    csbk@gmfinancial.com
- **Roye Zur**    rzur@elkinskalt.com,

26

  lwageman@elkinskalt.com;1648609420@filings.docketbird.com;rzur@ecf.courtdrive.com;lmasse
  @elkinskalt.com

27

28